Name: PAUL, JEFFERY WILLIAM RegNo: 10517-042

## MENTAL HEALTH

*** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|---|---|

### COMPUTER SKILLS

- ⊝ lacks keyboarding skills
- ⊝ lacks word processing skills
- ⊝ lacks internet navigation skills

— American with learning Disability —

### MENTAL ILLNESS MANAGEMENT

- ⊝ history of mental health diagnosis prior to incarceration
- ⓘ prior outpatient treatment for mental disorder
- ⓘ prior psychotropic treatment for mental disorder
- ⓘ details: hx outpatient mental health tx for hyperactivity, anxiety, and depression. Previously been px'd Ritalin and Elavil.

- ⊕ no mental health diagnosis during incarceration

- ⊝ history of serious suicidal ideation or attempts
- ⓘ prior suicidal ideation

### TRANSITIONAL PLAN

- ⊝ requires medication upon release from custody
- ⊝ medication required: Current Medication- Prozac 40 mg. See BEMR upon release.
- ⊝ requires on-going treatment after release from custody
- ⊝ treatment required: Medication management and counseling as needed.
- ⊝ follow-up medical/mental health appointment: Monthly or as needed.
- ⊕ psychology services recommends RRC placement

See. Tennessee V. Lane 2004 (USSCt)
Supreme Court, Comity

EXIBIT for The 7th Circ.

[illegible]

IN THE US DISTRICT FOR THE 8th Circ.

Jeffery W.Paul
10517-042
P.O.Box 33
Terre Haute,IN.
47808

In Rēm:

The United States of America
Plaintiff

V.

Jeffery W.Paul
Defendant

Case No#6:96 cr 60022-001

on Appeal-from The Western District of Arkansas-JLH/BAB

---

-Affidavit-Exibit/Attachment- RCP/7(b)43(c)

(1.) I,Jeffery William Paul,do hereby swear to the following- That I am currently under Penalty of death in The State of Indiana, United States Federal Jurisdiction,Terre Haute Prison...(&)am attempting to appeal the conviction,because I am innocent(&)have been doing that for 17.10 Years in June of 2014.

(2.) On or about 2005-09,The 8th circuit court of appeals did receive correspondence attributed to me which is described as confessional(&) cited in their decision to deny my release or order a new trial...the message allegedly sent by me is 38 Words long,(&)I deny that I did/ would write that(&)requested to see the envelope(&)handwriting(&)still have not been allowed to do so...(&)speculate the letter may be inchoate but regardless,I would not write The Appeals or District Court(&)Jeopardize my release(&)restitution from a wrongful conviction...

(3.) I deny I wrote any such message to any Court(&)claim that The 8th Circuit violated my Equal rights by refusing to vacate my Conviction (&)order a New Trial,by any standard of review(&)(HAD) cause to believe that I will be allowed,by rights,to call/cross the convicted Perpetrater of that crime,who has exonerated me at least 3 Times on tape(&) in sworn Affidavit. ..which would require NO LESS THAN FULL RESTITUTION of My Fundamental Rights,Release from Prison(&)Due-Process for the Bureau of Prisons;breach of Peace/Genocide against my former Wife(&)I... which I filed Criminal Complaints of.

Sincerely,
Signed Jeffery W. Paul *
6/7/14

IN THE 8th CIRCUIT COURT OF APPEALS

Jeffery William Paul, Appellant

V.

United States of America, Appellee

534 F.3d 832;2008 U.S.App.LEXIS 15571
No.# 05-3431

Submitted:12/10/2007
filed:July:7/22/2008

Certiorari Denied:US Supreme Court-588 US 828,130 S.Ct.51,175 L.Ed.2d 43,2009 US LEXIS 5457(2009)

On Appeal:United States V.Paul 6:96 cv 60022-(JLH)WD/AR
217 F.3d 989,2000 US App.LEXIS 14636(8th Cir. ARK.2000)

---

Two days later, however, the court received a handwritten letter from Paul, in which Paul asked "to be declared competent to waive further appeals hindering the imposition of this sentence upon me." Paul further stated, "I do know that I am guilty of the crime which resulted in Mr. Williams (Sherman) untimely and unnatural death," and "I regret the pain caused by my robbing, kicking and incapacitating Mr. Williams." The letter concluded: "Please consider my appeals dropped." (A 1579). In response to this letter, the court requested that Paul's counsel postpone any meetings between Paul and mental health professionals until further notice from the court. On December 9, after visiting Paul, Paul's counsel filed a document, prepared by counsel and signed by Paul, in which Paul withdrew his "uncounseled expression of his desire to waive his appeal." This document stated that Paul would continue to pursue his § 2255 motion, and that he repudiated the positions expressed



(pg. 2 of 2)(A120)

# A Prisoner's Unflagging Claim of

How does time pass for a person in prison who says he is innocent?

On Wednesday afternoon, a man named Everton Wagstaffe stood outside his cubicle in a dormitory at Greene Correctional Facility, a medium-security prison in Coxsackie, N.Y., 120 miles north of New York City.

JIM DWYER

ABOUT NEW YORK

For three hours, according to an account Mr. Wagstaffe gave to his family and lawyer, he watched as a corrections officer methodically searched the room, big enough for only a twin bed and a locker. Scant attention, if any, was given to his personal belongings, his toiletries and clothing.

Instead, the officer went through every page of Mr. Wagstaffe's legal papers, a mighty stack reflecting years of litigation.

Mr. Wagstaffe, 45, is in the 22nd year of a 25-year maximum sentence for a kidnapping that led to the death of Jennifer Negron, 16, in the East New York section of Brooklyn. From the beginning, he has maintained his innocence

*Email: dwyer@nytimes.com*
*Twitter: @jimdwyernyt*



NATHANIEL BROOKS FOR THE NEW YORK TIMES

Everton Wagstaffe, in 2008, is serving a 25-year maximum sentence.

and, during the last decade, has turned down multiple chances to walk free because they came with requirements that he express remorse for the crime.

An investigation of the convictions of Mr. Wagstaffe and his co-defendant, Reginald Connor, has been underway for about a year by a special unit in the Brooklyn district attorney's office, fol-

WARREN V. RICHLAND COUNTY CIRCUIT COURT. 223 F3d 454 (7th Cir. 2000)
NORTH CAROLINA V. ALFORD. 400 US 25, 27 LEd2d 162, 91 SCt 160 (1970)
Defendant entering "ALFORD PLEA' pleads guilty, but affirmatively protests his factual innocence to charged offense.

# Innocence Meets an Unexplained Intrusion

lowing reports in The New York Times of two new witnesses who support the men's claims of innocence. State appellate judges heard arguments in December on their motion for a new trial.

So why were Mr. Wagstaffe's files searched?

A spokesman for the state's Corrections Department cited a general directive that said supervisors could authorize searches only if there was "reasonable suspicion" of contraband. Mr. Wagstaffe has had no disciplinary infractions in more than a decade, and only minor ones — like being late to a prisoner count — before then. The search yielded nothing, state authorities said.

The Brooklyn district attorney's office claims no credit or blame for the search.

During a visit with Mr. Wagstaffe last year, he told me that he had fought to keep his bearings over the decades by reviewing every syllable committed to paper about the case and by soaking up works of philosophy and literature. His reading included "A Confession," Leo Tolstoy's memoir of his struggles with midlife despair.

"What is my life about?" Mr. Wagstaffe asked. "All this stuff, all this evidence of innocence, has been brought forth, and I think, 'Yes, this is it — straight to the point, no way around it.' But here I am, all these years later."

Mr. Connor, who also insists on his innocence, accepted parole, including a condition that he register as a sex offender, strictly limiting where he can work and live.

Ms. Negron was apparently forced into a car after midnight on Jan. 1, 1992. Around dawn, her body was discovered about a mile away, beaten and partially stripped. There was evidence of a struggle; her hand clutched strands of someone else's hair. Years after the convictions, DNA tests showed that the hair and scrapings from under the victim's fingernails did not come from either Mr. Wagstaffe or Mr. Connor.

Like many crimes during that violent era, the investigation relied on an informant and threadbare supporting evidence. Mr. Wagstaffe and Mr. Connor were identified by a single witness — the informant — a troubled woman who supported her addiction to crack with prostitution. Held in a hotel by the authorities to ensure her court appearance, she testified that she saw Mr. Wagstaffe drag Ms. Negron from the sidewalk outside her home and force her into the front of a car driven by Mr. Connor. The witness also testified that a third man was in the back seat, but no one else was ever charged.

Her account was buttressed by the discovery of a car that she and another witness testified they had seen Mr. Connor in earlier that night. An aunt of the dead girl testified that a headband in the back seat was very much like the one worn by her niece.

But the detectives kept no records of interviews with the owner of the car, and the defense lawyers did not speak with her. After the conviction, the owner said that she and her daughters had taken the car to a New Year's church vigil and that it had not been moved the entire night.

An alibi witness, whose name Mr. Wagstaffe provided within minutes of being arrested, says she was never interviewed by detectives, prosecutors or defense lawyers until last year, after she had spoken with me for an About New York column.

"I have to generate patience and perseverance," Mr. Wagstaffe said, adding a biblical citation: "'Faith is the substance of things hoped for, the evidence of things not seen.'"