**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| JEFFERY WILLIAM PAUL, | : | |
| Petitioner, | : | CIVIL ACTION<br>(Capital Habeas Corpus) |
| v. | : | No. 13-CV-00304-WTL-WGH |
| SUPERINTENDENT, USP Terre Haute,<br>UNITED STATES OF AMERICA | : | |
| Respondents. | : | **Hon. William T. Lawrence**<br>**United States District Judge** |

## PETITIONER'S ANSWER IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

Petitioner, Jeffery William Paul, through counsel, respectfully requests that this Court deny Respondents' Motion to Dismiss and grant Petitioner's Motion for Order Permitting Mental Health Evaluations. In support of his request, Petitioner states as follows:

### INTRODUCTION

Petitioner is a death sentenced inmate in federal custody. On May 8, 2014, this Court appointed undersigned counsel from the Federal Community Defender Office for the Eastern District of Pennsylvania ("FCDO") to represent Petitioner in connection with a previously filed *pro se* petition for a writ of habeas corpus. That same day, this Court ordered counsel to file an amended petition or *take any other action that the case warranted*, and issued a briefing schedule under which Respondents would answer the amended petition after it was filed. Respondents voiced no opposition to this Court's May 8, 2014 orders, and raised no objection to Petitioner's

pending July 9, 2014 request for an extension of time to file an amended petition. Now, more than four months after this Court outlined its briefing schedule, Respondents have changed their position and moved to dismiss Petitioner's *pro se* habeas corpus petition in advance of any counseled filing from Petitioner. Respondents' Motion to Dismiss is at odds with the briefing schedule established by this Court, and, in essence, asks the Court to reconsider its May 8, 2014 order. Respondents offer no grounds that would justify reconsideration, but instead argue for dismissal based on speculation as to what claims Petitioner's counsel plan on raising. As no grounds for reconsideration exist, Respondents' Motion to Dismiss should be denied, and counsel should be permitted to complete their investigation of Petitioner's claims and make an appropriate filing when that investigation is complete.

The change in Respondents' position was apparently precipitated by counsel's September 17, 2014 request for an order permitting two mental health evaluations of Petitioner, which Respondents also oppose. Petitioner is a deeply impaired individual with a history of mental illness that is integrated into the history of this case. These issues continue to impair his functioning, and will likely be relevant to any amended petition filed on Petitioner's behalf. The requested mental health evaluations are necessary for the undersigned's investigation of Petitioner's habeas corpus claims, necessary to investigate Petitioner's competency to be executed, will come at no cost to the Court, and are consistent with the Court's directive for Counsel to take any other action that the case warranted. Petitioner respectfully requests that this Court grant Petitioner's Motion for Order Permitting Mental Health Evaluations and deny Respondents' Motion to Dismiss.

## PROCEDURAL HISTORY

Petitioner is a death-sentenced federal prisoner currently incarcerated at the United States Penitentiary at Terre Haute ("USP-Terre Haute"). Petitioner was convicted and sentenced to death in the United States District Court for the Western District of Arkansas. His conviction and sentence were affirmed on appeal. United States v. Paul, 217 F.3d 989 (8th Cir. 2000) ("Paul-1"). Petitioner filed a petition for post-conviction relief pursuant to 28 U.S.C. § 2255, which was denied. The denial was affirmed on appeal. See United States v. Paul, 534 F.3d 832 (8th Cir. 2008) (cert. denied Oct. 5, 2009) ("Paul-2").

Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 in this Court on August 8, 2013. Dkt. No. 1. On April 18, 2014, Petitioner filed a *pro se* motion requesting that counsel be appointed. Dkt. No. 11. On April 29, 2014, the FCDO filed a Motion to Appoint Counsel on Petitioner's behalf. Dkt. No. 24.

This Court granted Petitioner's April 29, 2014 appointment motion, and appointed the FCDO to Petitioner's case. Dkt. No. 25. This Court then granted Petitioner through July 11, 2014 to file an amended petition for writ of habeas corpus "or take any other action as this case warrants." Dkt. No. 26. This Court's briefing order also directed Respondents to answer Petitioner's amended petition within twenty days of the amended petition's filing date, and allotted Petitioner's counsel with twenty days to respond to Respondents answer. Dkt. No. 26. On July, 9, 2014, Petitioner filed an Unopposed Motion for Extension of Time to File Amended Petition and requested an additional ninety (90) days in which to conduct the research and investigation necessary to file a professionally adequate amended petition. Dkt. No. 36. Respondents had no objection to Petitioner's request for additional time. Dkt. No. 36 at ¶ 5.

On September 17, 2014, Petitioner filed a Motion for Order Permitting Mental Health Evaluations, wherein he requested that this Court order USP-Terre Haute to permit two forensic psychiatrists access to Petitioner for the purpose of evaluating his mental health. Dkt. No. 38. On September 24, 2014, Respondents filed a Motion to Dismiss, wherein they requested that Petitioner's motion for mental health evaluations be denied, and his *pro se* habeas petition be dismissed. Dkt. Nos. 39 and 40.

Petitioner submits the following arguments in response to the Commonwealth's Motion to Dismiss and in support of his Motion for Order Permitting Mental Health Evaluations.

**ARGUMENT**

**A. Respondents' Motion to Dismiss Should Be Denied.**

Respondents' Motion to Dismiss is at odds with the briefing schedule established by this Court. This Court's May 8, 2014 briefing order directed undersigned counsel to file an amended petition or take any other action as this case warrants, and issued a schedule that contemplated an answer from Respondents *after* an amended petition from Petitioner was submitted. Dkt. No. 26. Respondents did not object to this schedule, and, when Petitioner requested an extension of time to file his petition, they did not object to this request either. Dkt. No. 36. By moving to dismiss before a counseled petition has been filed, Respondents are asking this Court to reconsider its May 8, 2014 briefing and appointment orders more than four months after they were issued. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Caisse Nationale de Credit Agricole v. CBI Industries, Inc. 90 F.3d 1264, 1269 (7th Cir. 1996); Oto v. Metropolitan Life Insurance Co., 224 F.3d 601, 605 (7th Cir. 2000). Neither of these conditions are present here. Respondents cite no newly

discovered evidence that would justify reconsideration of this Court's May 8, 2014 briefing order, nor do they claim that this Court's briefing order was a manifest error of law. Accordingly, their Motion to Dismiss should be denied.

Respondents argue that Petitioner's *pro se* habeas corpus petition should be dismissed because, according to Respondents, it should have been filed with the sentencing court in the Western District of Arkansas as a successor petition under 28 U.S.C. § 2255. Dkt. No. 40 at 8. Respondents contend that dismissal is appropriate at this early stage because "it appears Paul and appointed counsel are intent on bringing claims that have been previously raised or could have been raised with the Western District of Arkansas." Dtk. No. 40 at 8-9. They appear to base this conclusion on the fact that counsel stated that Petitioner's prior criminal proceedings were relevant to the instant proceeding, and should be reviewed before any counseled filing is made. Id. at 9.

Respondents' argument is meritless. As Respondents concede, Petitioner is entitled to relief from this Court under 28 U.S.C. § 2241 if "the remedy provided by § 2255 is 'inadequate or ineffective to test the legality of his detention.'" Id. at 9 (citing 28 U.S.C. § 2255(e)). This category of claims includes, *inter alia*, "a non-frivolous claim of actual innocence" that could not have been brought under section 2255. Kramer v. Olson, 347 F.3d 214, 217 (7th Cir. 2003). Section 2241 also encompasses claims attacking the execution (as opposed to the imposition) of the inmate's sentence. Id. As all section 2241 claims should be brought in the district of the inmate's incarceration, id. at 216, this Court has jurisdiction to hear Petitioner's habeas corpus claims if they are cognizable under section 2241. Absent a counseled petition, Respondents have no basis to determine what claims counsel will make on Petitioner's behalf, whether this Court

has jurisdiction to hear them, and whether they fit into the categories outlined above. Undersigned counsel are still in the process of investigating his case and reviewing the relevant materials, and have not yet determined what claims are appropriately made on Petitioner's behalf. Accordingly, Respondents must wait until after Petitioner has made a counseled filing before moving to dismiss it.

Respondents' argument that Petitioner's habeas petition should be dismissed because the undersigned wish to review Petitioner's prior proceedings is similarly meritless. That the prior proceedings are relevant to Petitioner's section 2241 claim does not lead to the conclusion that Petitioner's instant *pro se* habeas is improperly filed, but rather that counsel are conducting the investigation of Petitioner's case that they are ethically obligated to do. The American Bar Association's 2003 Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases makes clear that "[c]ounsel at every stage have an obligation to conduct thorough and independent investigations relating to the issues of both guilt and penalty" and that "[c]ounsel at every stage have an obligation to conduct a full examination of the defense provided to the client at all prior phases of the case." Guideline 10.7, ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, ("ABA Guidelines") (reprinted in 31 Hofstra L. Rev. 913 (Summer 2003); see, also, Guideline 1.1, ABA Guidelines ("These guidelines . . . extend to all stages of every case in which the jurisdiction may be entitled to seek the death penalty, including initial and ongoing investigation, pretrial proceedings, trial, post-conviction review, clemency proceedings and any connected litigation"). Even assuming, *arguendo*, that Petitioner's instant habeas filing was precluded by section 2255, undersigned counsel cannot make that determination without reviewing the proceedings in Arkansas. That

counsel is fulfilling their ethical obligation to thoroughly investigate Petitioner's case before determining what action is appropriate is not a ground for dismissal.

### B. This Court Should Grant Petitioner's Motion for Order Permitting Mental Health Evaluations.

#### 1. Petitioner's Mental Health History.

Petitioner has longstanding mental health issues that continue to affect his functioning to this day. As these issues are relevant to his request for an evaluation, they are summarized below.

Petitioner manifested symptoms of mental illness at a very young age. Family members described visual hallucinations, paranoia, and delusional thinking. E.g., Dec. James Massey, at 3-4 (attached as Exhibit 1). He saw people who were not present, described shadowy figures that he claimed were following him, and repeatedly expressed his belief that others were conspiring against him and that events in his life were being controlled by an unknown third party. Id.; Dec. Paula Paul, 2/10/05, at 1-2 (attached as Exhibit 2). Consistent with a history of mental illness, Petitioner's behavior worsened as he grew older, he had problems with drug use, and he became dysfunctional at home and in the community. Report of Seymour Halleck, M.D., 6/6/06, at 5-7 (attached as Exhibit 3). He was hospitalized at three inpatient mental health facilities and one outpatient facility as a juvenile, was given various mental health diagnoses, and was prescribed psychiatric medication. Id. That Petitioner manifested mental health symptoms in his childhood and early adolescence is consistent with his family history, which includes at least six relatives with alcohol addiction, four relatives who attempted (or successfully committed) suicide, one

relative who committed a homicide, and one relative with a confirmed diagnosis of schizophrenia. Exhibit 2 at 4; Dec. Hubert Massey, 2/11/05, at 6-8 (attached as Exhibit 4).

Petitioner's mental health issues worsened after his arrest on his capital case. Early in trial preparation, Petitioner exhibited several emotional outbursts, causing his trial attorneys to request a psychological evaluation by forensic psychologist H. Anthony Semone, Ph.D. Exhibit 3 at 8; Report of H. Anthony Semone, Ph.D., 5/9/97, at 1 (attached as Exhibit 5). Dr. Semone diagnosed Petitioner with neuropsychological impairment, which was exacerbated by a significant underlying mental health condition and the stress of his upcoming capital trial. Id. at 2. Dr. Semone's testing further reflected that Petitioner suffered from a "borderline psychotic panic or possibly an acutely psychotic decompensation." Id. Dr. Semone concluded that Petitioner's impairments rendered him incompetent. Id. at 3.[1]

Petitioner's condition worsened when his case went to trial. Over the course of the trial proceedings, his demeanor and appearance changed; he appeared bewildered by the events at his trial; his ability to communicate with his attorneys was impaired; he had significant difficulty controlling his emotions; and he engaged in outbursts and erratic gesturing. Dec. H. Anthony Semone, Ph.D., 2/12/05, at 2 (attached as Exhibit 6); Exhibit 1 at 6-7. Dr. Semone, who was

---

[1] Petitioner's case proceeded to trial after the government's mental health experts found him to be competent and Petitioner's then-counsel stipulated to the government's report without presenting Dr. Semone. Paul-2, at 844. Petitioner was also evaluated by psychiatrist Irving Kuo, M.D. who was asked to determine if medication was needed and whether he was competent to proceed. Id. Although Dr. Kuo found him competent at the time of his trial, Dr. Kuo was provided with minimal information regarding Petitioner's background and functioning. Having subsequently been provided with significant, additional information regarding Petitioner's upbringing and mental health history, as well as the mental health history of Petitioner's family, Dr. Kuo indicated that these materials contained evidence that Petitioner suffers from schizophrenia, and was in the early stages of this disease prior to his trial. See Dec. Irving Kuo, M.D., 8/7/08 (attached as Exhibit 7).

present for much of this behavior, had feared that the onset of Petitioner's trial would cause him to decompensate, and confirmed that this behavior was the result of mental illness. Exhibit 6 at 2.

Since his death sentence was issued, Petitioner's mental health condition has continued to devolve. Psychiatrist Seymour Halleck, M.D., who conducted two in-person evaluations of Petitioner in 2002 and 2006, and three telephone interviews of Petitioner from 2002 to 2009, described the radical downturn in Petitioner's functioning since his incarceration at USP-Terre Haute. Petitioner experienced auditory and visual hallucinations, delusions, the inability to engage in linear thinking, paranoia, and emotional instability. Exhibit 3 at 11-16. In 2003, Petitioner attempted to hang himself in his cell, and was discovered hanging, with his head through a makeshift noose, his skin discolored, and his feet off the floor. Id. at 12. Several hours after being revived, he attempted suicide a second time by breaking a nearby window and slitting his wrists with the glass. Id. Dr. Halleck concluded in 2006 that the mental health symptoms that Petitioner exhibited during his adolescence and young-adulthood "evolved into a psychotic disorder related to his genetics and to the stresses of trial and incarceration." Id. at 17. Dr. Halleck further concluded that Petitioner was not competent to assist his then-attorneys with his post-conviction litigation. Id. at 18.

Petitioner's symptoms have continued to worsen since Dr. Halleck's 2006 report. Having reviewed additional records - including writings from Petitioner, and after having consulted with counsel and conducted his final telephone interview in 2009, Dr. Halleck reported in 2010 that Petitioner's current mental health deficits were more severe than before, and that where, "[i]n 2006 there were still periods of time during which he was able to think more clearly and present

his ideas more rationally. These periods of lucidity, however, have been diminishing." Dec. Seymour Halleck, M.D., 1/14/10, at 1 (attached as Exhibit 8). Based on his review of all of the available data, Dr. Halleck concluded that Petitioner was "experiencing a fully developed paranoid schizophrenic disorder. In addition, there is more evidence of organic brain disorder than has been present on other occasions." Id. Dr. Halleck believed that Petitioner was incompetent to be executed, but emphasized that additional procedures - including an in-person evaluation - were necessary to validate the impressions he formed from his record review and telephone interview. Id. at 13.

**2. Mental Health Evaluations Are Necessary for Petitioner's Habeas Corpus Proceedings.**

Habeas petitioners are entitled to funding from the Court for expert assistance when such services are "reasonably necessary" to represent the defendant. 18 U.S.C. § 3599(f). Moreover, where, as here, an inmate is only requesting that experts have access to him for an evaluation, "it is beyond cavil that a plaintiff may retain its own expert medical witness to examine himself and render testimony at trial." Silverstein v. Federal Bureau of Prisons, 2009 U.S. Dist. LEXIS 47646, at 10 (D. Co. 2009) (no showing of good cause required for voluntary evaluation by inmate plaintiff); De'Lonta v. Clarke, 2013 U.S. Dist. LEXIS 122872, at 7 (W.D. Va. 2013) (ordering prison to permit a evaluation of inmate plaintiff).

As discussed above, all counsel in a capital case have "a continuing duty to investigate issues bearing upon penalty and to seek information that supports mitigation or rebuts the prosecution's case in aggravation." Guideline 10.11, ABA Guidelines; Guideline 10.7, ABA Guidelines. Evaluations by mental health experts are significant components of the investigation that counsel is obligated to make:

> In particular, mental health experts are essential to defending capital cases. . . . Counsel's own observations of the client's mental status, while necessary, can hardly be expected to be sufficient to detect the array of conditions . . . that could be of critical importance.

Commentary for Guideline 4.1, ABA Guidelines.

Petitioner's mental health issues have affected his functioning throughout his life, permeated the proceedings that have led to his current incarceration, and continue to affect him today. Because counsel have not completed their investigation, they have not made a final determination as to what claims are available to Petitioner. However, given the pervasive nature of Petitioner's mental health issues, counsel believe that his mental health issues will be relevant to any amended petition that will be filed, and that an investigation into Petitioner's functioning is reasonably necessary for counsel's representation of Petitioner.[2]

There has been no in-person evaluation of Petitioner since 2006. The FCDO has its own budget for experts, so the proposed evaluations will come at no cost to the Court. Respondents have identified no harm that they will incur should the requested evaluations take place. This is a routine request which has been granted in the past since the policy change at USP-Terre Haute requiring such orders. See, e.g., Order, United States v. Corley, No. 02-CR-116 (N.D. Ind., Aug. 11, 2014) (Lozano, U.S.D.J.); Paperless Order, United States v. Higgs, No. 98-CR-520 (D. Md., July 26, 2013) (Messitte, U.S.D.J.). Accordingly, Petitioner respectfully requests that he be permitted to conduct the requested mental health evaluations.

---

[2] Should this Court require further discussion of counsel's analysis as to the relevance of Petitioner's mental health status, counsel respectfully requests that such disclosures be made *ex parte*. See 18 U.S.C. § 3599(e).

### 3. Mental Health Evaluations Are Necessary for Counsel to Investigate Petitioner's Competency.

In addition to the grounds detailed above, Petitioner is entitled to the requested mental health evaluations in order to investigate his competency to be executed under Panetti v. Quarterman, 551 U.S. 930 (2007) and Ford v. Wainwright, 477 U.S. 399 (1986). Petitioner's counsel have an ongoing obligation to investigate Petitioner's functioning in preparation for any proceedings subsequent to his federal habeas proceedings, including competency proceedings. See 18 U.S.C. § 3599(e); Harbison v. Bell, 129 S.Ct. 1481 (2009).

In the context of proceedings regarding a defendant's competency to be executed, the United States Supreme Court has made clear that the right to be heard is fundamental to due process:

> [C]onsistent with the heightened concern for fairness and accuracy that has characterized our review of the process requisite to the taking of a human life, we believe that any procedure that precludes the prisoner or his counsel from presenting material relevant to his sanity or bars consideration of that material by the factfinder is necessarily inadequate. "[T]he minimum assurance that the life-and-death guess will be a truly informed guess requires respect for the basic ingredient of due process, namely, an opportunity to be allowed to substantiate a claim before it is rejected."

Ford, 477 U.S. at 414 (plurality) (quoting Solesbee v. Balkcom, 339 U.S. 9, 23 (1950) (Frankfurter, J., dissenting)). Should an execution warrant be issued, Petitioner's competency will likely be an issue in these post-conviction proceedings. Once a substantial threshold showing of a death sentenced inmate's incompetence has been made, an inmate's due process rights in competency determinations includes the right to an evaluation by an independent mental health expert. Panetti, 551 U.S. at 949-951 (finding that Texas violated the habeas petitioner's due process rights by failing to provide the mentally ill inmate with access to, and the opportunity to present, an expert of his own). As described above in Section (B)(1), supra, Petitioner has had

lifelong issues with mental illness which became exacerbated when he was incarcerated. He has had multiple competency issues over the course of his past legal proceedings, and a mental health status that has continued to deteriorate. Petitioner has made the requisite showing and is entitled to expert evaluations for this purpose.

**4. Respondents Objections to the Evaluations Lack Merit.**

Respondents argue that counsel "cites no authority showing appointed counsel is entitled to seek a mental health evaluation of a petitioner to aid in the filing of a habeas corpus petition." Dkt. No. 40 at 10. However, as the FCDO has its own budget for mental health evaluations and is not requesting funds for such an evaluation to occur, no showing of cause is required. To the extent additional justification is needed, Petitioner submits that the forgoing argument in support of his request.

Additionally, apparently acknowledging that a Ford-Panetti claim would justify an independent mental health evaluation, Respondents argue that such an evaluation would be unnecessary as no execution date has been set, and any Ford-Panetti claim that Petitioner might have is not yet ripe. Dkt. No. 40 at 10. Respondents err. Although the Ford-Panetti analysis focuses on the defendant's competency at the time of his execution, the inmate's mental health history, including the development of his mental illness over time, is a significant component of that analysis. E.g., Ford, 477 U.S. at 402-403 (describing the progression of Mr. Ford's mental health issues over time). Here, Petitioner has proffered specific evidence that he is mentally ill, that his mental health has deteriorated over the course of his incarceration, and that these issues interfere with his competency. As Respondents may contest future claims relating to Petitioner's competence, Petitioner should not be precluded from documenting a history of his illness' development through mental health evaluations conducted by qualified professionals. Simply

put, Respondents cannot, on the one hand, contest Petitioner's claims for relief and, on the other hand, prevent Petitioner from developing those claims.

WHEREFORE, for the foregoing reasons and the reasons described in Petitioner's Motion for Order Permitting Mental Health Evaluations, Petitioner respectfully requests that this Court deny Respondents' Motion to Dismiss and grant Petitioner's Motion for Order Permitting Mental Health Evaluations.

Respectfully submitted,

/s/ Billy H. Nolas
BILLY H. NOLAS
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

/s/ Shawn Nolan
SHAWN NOLAN
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

Dated: October 1, 2014

## CERTIFICATE OF SERVICE

I, Shawn Nolan, Esq., hereby certify that on this 1st day of October, 2014, Petitioner's Answer in Opposition to Respondents Motion to Dismiss has been served via the Electronic Case Filing system on the following counsel of record:

Gerald A. Coraz, Esq.
Assistant United States Attorney
Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048

/s/ Shawn Nolan
SHAWN NOLAN