5

H. Anthony Semone, PhD, DABFM, DABFE
Clinical & Forensic Resources
8825 Patton Road
Wyndmoor, PA 19038

Board Certified
American Board of Forensic Medicine
American College of Forensic Examiners

Tel.: 215-836-7170
Fax: 215-836-0822

9 May 1997

Lynn Williams, Attorney at Law
Wood, Smith, Schnipper & Clay
123 Market Street
Hot Springs, AR 71901

Re: Jeffery William Paul
Dates of Evaluation: 30 Apr 1997 - 3 May 1997

Dear Attorney Williams:

This letter reports the results of my initial evaluation of Mr. Jeffery William Paul. As you know, when I began the mitigation evaluation, I became concerned for your client's competency when I witnessed several flagrant emotional outbursts during the meetings you had arranged at the Garland County Detention Center. Those outbursts occurred when you attempted to explain, clarify, and otherwise involve your client in discussing, understanding and considering the issues involved in his case. Those issues were the plea arrangement offered him by the U. S Attorney; the nature of the charges against him; issues concerning aiding, abetting, and felony murder; sentencing guide-lines and their relationship to being found guilty of lesser included offenses. Mr. Paul's outbursts were so intense that I found it necessary to alert Captain Lacey and his staff at the Detention Center following each of those meetings. I was worried about Mr. Paul's safety and the safety to other prisoners and to Detention Center staff. As a result, I became concerned about his ability to withstand the rigors of trial without demonstrating explosive behavior.

Before my arrival in Hot Springs, you had briefed me about your concern that Mr. Paul was not only difficult to get along with, but also resistant to your attempts to talk with him about his legal situation. You told me of your concern that he would react at trial in the same manner in which he had acted at a prior hearing. At that hearing, Mr. Paul apparently became incensed and threw a packet of paper at a court employee. You told me also that you did not know if his resistance and his explosiveness were feigned, or if they represented psychological problems.

It was within this context that I began my evaluation of Mr. Paul, using a battery of tests which permitted an evaluation of his current psychological and neuropsychological condition. This battery also provided the means by which to assess the credibility of his performances.

My examination of Mr. Paul did provide evidence to support the conclusion that he does in fact have mild neuropsychological impairment. However, his level of impairment was not sufficient to account for his emotional deterioration. I regarded his emotional outbursts instead to reflect the presence of a probable psychological condition interacting with the neuropsychological impairment and the stress brought on by the discussion of the reality of his current legal dilemma.

The results of the MMPI-2 confirm that Mr. Paul is at this time suffering from "a borderline psychotic panic or possibly an acutely psychotic decompensation. The profile suggests an acute current panic around an identity disorganizing situation or disruptive threat. Inappropriate emotional reactions, odd mannerisms, overideational fantasies, a regression under stress are typical symptoms with this pattern. Evasiveness, talkativeness, and circumstantiality are likely to cover over paranoid projections and delusional ideas. He is apt to become hyperactive and panicky in transitory phases, and during these times he would appear, hostile, demanding, perplexed, and possibly disoriented."

The MMPI-2 appraisal is consistent with the behaviors I saw during the meetings we had. These behaviors were also present when he was under similarly stressful conditions. For example, discovery materials you gave me described that the arresting officers placed him on a "suicide watch" while in custody. He also was demanding "suicide by law enforcement" as he was arrested.

It is not unreasonable to expect that many people in Mr. Paul's circumstance would react emotionally to his legal situation. In the many forensic evaluations I have done, Mr. Paul is only the second person whose competency became an issue for me. I also know that in these kinds of cases, potential for malingering exists. The MMPI-2 notes that his test scores have to be reconciled with clinical observation to make sure that his dissimulation index does not reflect malingering. In this context, his test scores are consistent with clinical observation and with the absence of dissimulation on the 16PF and the neuropsychological test battery.

The fact that Mr. Paul was reported as competent by the Butner, NC evaluation does not negate the findings of my evaluation. There are several reasons why Butner data are not incompatible with my data. First, the Butner report was based on diagnostic interviews that could not be nearly as direct,

forthright and stressful as the current meetings. Second, during the Butner evaluation, Mr. Paul blocked attempts by the team from talking about the charges against him. So the Butner team had no opportunity to see him decompensate as we could see. Third, the personality instrument that Butner used apparently could not discern that Mr. Paul has "an unusual ability to disguise or conceal psychopathology in interviews. A presentation as 'well put together' or as 'having aggression under control' should clearly not be taken at face value."

Therefore, it is my professional opinion, within a reasonable degree of psychological certainty, that your client, Jeffery William Paul, is not now able sufficiently to understand the charges against him. In my opinion, he is also now unable to cooperate sufficiently with you in effectively assisting in his own defense. I also regard Mr. Paul as not now able at all to make a rational and informed decision with respect to the plea arrangement offered by the U. S. Attorney. I also regard him at serious risk of being unable to control himself throughout the rigors of trial.

I recommend that Mr. Paul be referred immediately for psychiatric evaluation to prescribe an appropriate medication that will have the effect of restoring his emotional equilibrium. Sedating phenothiazines are reported to be effective in similar cases, but that will be the psychiatrist's decision. I also recommend that a treating psychiatrist meet with him weekly to help him consolidate the positive emotional effects of the medication. This psychiatrist can also serve the purpose of stabilizing Mr. Paul throughout trial. It will be important for the prescribing psychiatrist to know that Mr. Paul can present with a normal facade and disguise psychopathology.

This report should not be regarded as the final report for which I was originally retained. Instead, it is a response to both clinical and psychological testing data that reflect an exigent obstacle to Mr. Paul's being able effectively to participate in his own defense. With effective treatment I believe he can become sufficiently competent to understand the charges against him, participate effectively with counsel, render an appropriate judgment as to the plea offered him by the government, and maintain his composure during trial. How long it will take Mr. Paul to reach this state will depend upon the efficacy of treatment and the judgment of the attending psychiatrist.

Thank you for the opportunity to participate in this matter.

Sincerely,

H. Anthony Semone, PhD

H. Anthony Semone, PhD
Clinical Psychologist/Neuropsychologist

0617