6

COUNTY OF MONTGOMERY

STATE OF PENNSYLVANIA

## DECLARATION OF H. ANTHONY SEMONE, PhD

1. My name is H. Anthony Semone, and I am over the age of eighteen and am competent to provide the information set forth in this declaration.

2. I am a psychologist licensed to practice in the State of Pennsylvania. I have a Ph.D. in Clinical Psychology from Kent State University awarded in 1968. I have been practicing as psychologist since that date. To the present time, I have evaluated between 60 and 70 criminal defendants as to the psychological and neuropsychological correlates of their homicidal behavior.

3. I was appointed by the trial court in the capital murder case of Jeffery Paul to assist the defense in evaluating and assessing Mr. Paul's mental health. I conducted an evaluation of Mr. Paul, which included a clinical interview of him at the Garland County (Hot Springs) Detention Center, as well a series of psychological and neuropsychological tests. I provided reports to the defense attorneys representing Mr. Paul.

4. My primary concern after the initial interview was Mr. Paul's mental competency. I indicated my concerns in a letter addressed to the attorneys. In that letter I stated that I had serious concern about Mr. Paul's present competency to stand trial. These doubts were based upon several flagrant and emotional outbursts shown by Mr. Paul during the interviews with him and his attorneys. His attorneys had told me they were concerned that he would react at trial in the same manner. They also told me they did not know whether his resistance and his explosiveness were feigned or if in fact they represented underlying serious psychological problems.

5. In my letter to the attorneys addressing these issues, I made it clear that I had concluded Jeffery Paul was suffering from what I believed to be were consistent with, and had psychological testing evidence for, an underlying severe mental disease, and that the behaviors the attorneys were concerned about were a direct product of that disease and were not feigned behaviors. Moreover, as I have said, I informed the attorneys that Mr. Paul's condition was sufficiently severe that I had concerns about his ongoing competency. I was also concerned that the stresses of an ongoing trial would lead to further deterioration in his mental stability. I stated that my initial testing had demonstrated the presence of a "psychotic panic" or an acutely psychotic decompensation, and that his condition could worsen under stress and produce paranoid projections and delusional ideas which might be masked by other conditions where he would appear hostile, demanding, perplexed and possibly

disoriented. I also indicated that under conditions of stress my concerns about his competency would become more elevated. I even noted, as examples that had already occurred, his suicidal tendencies when he was arrested and at the jail.

6. After the trial was under way, I attended several days of the proceedings I observed Jeff, his demeanor, and his interactions with his attorneys.

7. What I observed was the kind of mental deterioration that I anticipated might well occur in my initial correspondence with his trial attorneys. I saw how Mr. Paul's appearance changed: his demeanor appeared remote and uninvolved from the proceedings at times, and, at other times, he appeared to have significant difficulty with controlling his emotions. On those occasions he engaged in outbursts and blatant gesturing. I was concerned as to how the trial judge might react to these behaviors, fearing that he may see them as hostile reactions toward him and the proceedings, rather than as the overt symptoms of a probable underlying mental disease. It was my judgment at the time, and it remains my judgment, that whether or not Mr. Paul was incompetent prior to trial, the stress of the trial proceedings caused a severe deterioration in his mental capacity such that he may well have become incompetent while the trial was ongoing.

8. Mr. Paul's current attorneys have represented to me a number of other observations, which if verified, appear to provide further support for those hypotheses. First, I have been told that Mr. Paul's mental condition has deteriorated while he has been in prison. I understand he has tried to commit suicide, he has lapsed into a delusional state filled with paranoid thinking and a frequent inability to communicate coherently, and that he has on several occasions attempted to give up his appeals. I have also been told by his counsel that a friend of Mr. Paul's who visited him in the jail while the trial was going on has informed the attorneys that Mr. Paul talked about his attorneys working for the government, and about how he was being "controlled" by someone or something, and that he was not making a lot of sense at times. I also understand that psychiatrist Seymour Halleck, MD, has interviewed Mr. Paul on the telephone on several occasions during the past months, and that while he must await a proper in-person evaluation at the prison, he has grave concerns that Mr. Paul is suffering from a mental disease with a component of psychosis or thought disorder. I also understand that Dr. Halleck has serious concerns based upon what he has observed and has been informed from a review of relevant materials, that Mr. Paul may well have been incompetent at the time of trial.

9. This information is consistent with my own observations, testing and evaluation of Mr. Paul, and the conclusions I reached several years ago at the time of his trial. These present behaviors, if true, are consis-

JZUHG

tent with the testing that I conducted, and the opinions I expressed about Mr. Paul's mental condition, and his propensity for psychotic reactions and disordered thinking.

10. I have rarely reached the conclusion that a person facing a criminal trial was incompetent, and at that time, Mr. Paul's case was only the second such case in which I had drawn that conclusion. I have since had two other occasions on which I have reached the same conclusion. On the other hand, since my evaluation of Mr. Paul, there have been three death penalty cases in which my responsibility was to inform defendant's counsel that I believed their client to be giving an unrepresentative effort such that their testing performances were not credible.

11. I believed on the basis of all the evidence that I had available to me at the time of the trial that Mr. Paul was not competent to proceed, and I believe that today, despite the contrary opinion rendered by the psychiatrist to whom he had been referred at my request by his Counsel. Moreover, the behaviors he is reported to have shown since the trial and his conviction, and noted above, are consistent with the presence of a severe mental illness. Additional evidence as to the accuracy of this interpretation could be gotten if a contemporaneous examination were carried out.

Under penalty of perjury under the laws of the State of Pennsylvania and the United States, I hereby swear that the foregoing is true and correct to the best if my information and belief.

This 12th day of February, the year 2005.

H. Anthony Semone, PhD

H. Anthony Semone, PhD

A 3 UNB