FILED
SEP 24 1996
BY CHRIS R. JOHNSON, CLERK
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA )
) Criminal No. 6:96CR60022-001
vs. ) 18 U.S.C. § 1111(a)
) 18 U.S.C. § 924(c)
JEFFERY WILLIAM PAUL ) 18 U.S.C. § 924(i)(1)
18 U.S.C. § 2
(Aiding & Abetting)

INDICTMENT

The Grand Jury charges:

COUNT 1

On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another person known to the grand jury, while aiding and abetting each other, did, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to Title 18 U.S.C. § 7(3), kill Sherman Williams, by means of gunshot wounds, in the perpetration of a robbery, in violation of 18 U.S.C. § 1111(a) and § 2.

COUNT 2

On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another person known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant

to Title 18 U.S.C. § 7(3), during and in relation to a crime of violence, did knowingly use a firearm which caused the death of Sherman Williams, in violation of 18 U.S.C. §§ 924(c), 924(i)(1) and § 2.

A True Bill.

[signature]
Foreperson

P. K. Holmes III
United States Attorney

By: [signature]
William M. Cromwell
FAUSA/Criminal Chief
Ark. Bar No. 76023
P. O. Box 1524
Fort Smith, AR 72902-1524
(501) 783-5125



([redacted])

Paul v. USA 8th Circ. 14.1872 USSC

3

67

# EQUAL PROTECTION

(1) EDMONSON V. LEESVILLE CONCRETE CO. INC., 860 F2d 1308 (5th Cir. 1988)
Principle of equal protection applies to governmental action in civil and criminal matters.

(2) JACOBS, VISONSI & JACOBS CO. V. CITY OF LAWRENCE, KS, 927 F2d 1111 (10th Cir.1991)
CITY OF CLEBURNE V. CLEBURNE LIVING CENTER, 473 US 432, 87 LEd2d 313, 105 SCt 3249 (1985)

1) The equal protection clause essentially requires that all persons similarly situated be treated alike.
2) Equal protection violation occurs when government threats someone differently than another who is similarly situated.

(3) CENTRAL AIRLINES, INC. V. US, 138 F3d 333 (8th Cir. 1988)
Equal Protection clause prohibits government officials from selectively applying law in discriminatory way.

(4) FRATERNAL ORDER OF POLICE V. US, 152 F3d 998 (D.C. Cir. 1998)
Equal protection analysis is substantially identical under the Fifth and Fourteenth Amendments.

(5) ANDERSON V. ROMERO, 72 F3d 518 (7th Cir. 1995)
Equal protection clause forbids state to treat one group, including group of prison inmates, arbitrarily worse than another.

(6) PARADISE V. CCI WARDEN, 136 F3d 331 (2nd Cir. 1998)
Due Process Clause prohibits defendant from being retaliated against through imposition of harsher sentence simply for exercising right to appeal.

(7) ~~BROWN V. NATIONSBANK CORP., 188 F3d 579 (5th Cir. 1999)~~
The guarantee of due process protects citizens against deliberate harm from government officials.

(8) EAGLESTON V. GUIDO, 41 F3d 865 (2nd Cir. 1994)
(4) Threshold requirement of equal protection claim is a showing that government discriminated among groups.

(9)

NAT. COUNCIL OF RESISTENCE TO IRAN V. DEPT. OF STATE, 251 F3d 192 (D.C. Cir. 2001)
MATTHEWS V. ELDRIDGE, 424 US 319, 333, 47 LEd2d 18, 96 SCt 892 (1976)
ARNSTRONG V. MONZO, 380 US 545, 552, 14 LEd2d 62, 85 SCt 1187 (1965)

1) Due process requires as general matter opportunity to be heard at meaningful time and in a meaningful manner.
2) Citizens must be afforded due process before deprivation of life, liberty or property.

Paul v. USA 14-1832 8th Cir. USCt

4.




# A word about our services.........

Starlite Support Services is the same corporation that has been bringing you The Citebook for the past 18 years. Starlite utilizes the finest computerized research facilities available: period! We also employ personal that are experienced, professional, goal driven and do whatever it takes to secure judicial relief for our clients. Combining cutting edge computerized equipment with individuals who give 110% puts you in an enviable legal position that is second to none.

When an individual initially contacts us to review their case we require the necessary documents for a proper assessment. We accept only cases which we feel have merit and are capable of securing judicial relief. Starlite has a minimum charge of $1000 for technical services. (research and investigation) and $2,500 for pleadings and briefs. All fees must be paid in advance. If you have any questions please feel free to contact us through any of the mediums listed below.

Starlite Support Services
P.O. Box 20004, St. Petersburg, FL 33742
Check out our E-Com Web sites at:
WWW.Starlite-inc.com or WWW.Citebook.com
E-Mail at: Starlite@Citebook.com
(800)577-2929 (727)392-2929 (727)392-6161
Orders Office FAX

Starlite Support Services makes no promises regarding the results or accuracy of its services and information.

# DOUBLE JEOPARDY

(1) US V. McCLAIN, 133 F3d 1191 (9th Cir. 1998)
US V. DiFRANCESCO, 449 US 117, 66 LEd2d 328, 101 SCt 426 (1980)

Double jeopardy prohibits increase in defendant's sentence when legitimate expectation of finality has attached to sentence.

(2) US V. LANIER, 73 F3d 1380 (6th Cir. 1996)
BIFULCO V. US, 447 US 381, 65 LEd2d 205, 100 SCt 2247 (1980)
US V. BASS, 404 US 336, 92 SCt 515 (1971)

1) Rule that, where there is ambiguity in criminal statute doubts are resolved in favor of defendant, applies to criminal prohibitions as well as penalties.
2) Criminal statutes should normally be construed strictly.

(3) US V. GAY, 240 F3d 1222 (10th Cir. 2001)
HUDDLESTON V. US, 415 US 831, 39 LEd2d 782; 94 SCt 1262 (1974)
US V. BASS, 404 US 336, 30 LEd2d 488, 92 SCt 515 (1971)

1) "Rule of lenity" requires sentencing court to impose lesser of two penalties when there is actual ambiguity over which penalty should apply.
2) Rule of lenity requires that doubts be resolved in favor of defendant when there is ambiguity in criminal statute.
3) Rule of lenity applies to Sentencing Guidelines as well as to penal statutes.

(4) US V. BOUCHA, 236 F3d 768 (6th Cir. 2001)
US V. SANDERS, 162 F3d 396 (6th Cir. 1998)

Courts may apply the rule of lenity to interpret Sentencing guidelines.

(5) US V. FENTON, 309 F3d 825 (3rd Cir. 2002)

When the Sentencing Guidelines do not clearly call for enhancement, the rule of lenity should prevent the application of a significantly increased sentence.

(6) TURNER V. GLICKMAN, 207 F3d 419 (7th Cir. 2000)

If statute challenged on double jeopardy grounds serves as a criminal punishment in purpose and effect, court must disregard Congress' intent to create a civil sanction.

(7) SNOWDEN V. LEXMARK INTERN., INC., 237 F3d 620 (6th Cir. 2001)
US V. MIRANDA, 197 F3d 1357 (11th Cir. 1999)

Ex post facto clause flatly prohibits retroactive application of penal legislation.

(8) US V. KARRO, 257 F3d 112 (2nd Cir. 2001)

For purposes of determining which Sentencing Guidelines were in effect on date of offense, the last date of the offense, as alleged in the indictment, is the controlling date.

Paul v. USA 7th Circ. 14-1832 USSCt

(6) (74)



Pub.L. 100–204, Title I, § 140(d)(2), Dec. 22, 1987, 101 Stat. 1347, as amended, which is classified to 22 U.S.C.A. § 2656f(d)(2).

101(a)(22) of the Immigration and Nationality Act, referred to in subsec. (b)(1), is Act June 27, 1952, c. 477, Title I, § 101(a)(22), 66 Stat. 166, as amended, which is classified to 8 U.S.C.A. § 1101(a)(22).

Section 101(a)(20) of the Immigration and Nationality Act, referred to in subsec. (b)(1), is Act June 27, 1952, c. 477, Title I, § 101(a)(20), 66 Stat. 166, as amended, which is classified to 8 U.S.C.A. § 1101(a)(20).

## CHAPTER 113C—TORTURE

Sec.
2340. Definitions.
2340A. Torture.
2340B. Exclusive remedies.

### HISTORICAL AND STATUTORY NOTES

Codifications

Pub.L. 104–294, Title VI, § 601(j)(1), Oct. 11, 1996, 110 Stat. 3501, which directed that chapter 113B, relating to torture, be redesignated chapter 113C, was incapable of execution due to prior identical amendment by section 303(c)(1) of Pub.L. 104–132.

Effective and Applicability Provisions

2002 Acts. Amendment by section 4002(c)(1) of Pub.L. 107–273, as therein provided, effective Oct. 11, 1996, which is the date of enactment of Pub.L. 104–294, to which such amendment relates.

## § 2340. Definitions

As used in this chapter—

(1) "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;

(2) "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from—

(A) the intentional infliction or threatened infliction of severe physical pain or suffering;

(B) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(C) the threat of imminent death; or

(D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality; and

(3) "United States" means the several States of the United States, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

(Added Pub.L. 103–236, Title V, § 506(a), Apr. 30, 1994, 108 Stat. 463, and amended Pub.L. 103–415, § 1(k), Oct. 25, 1994, 108 Stat. 4301; Pub.L. 103–429, § 2(2), Oct. 31, 1994, 108 Stat. 4377; Pub.L. 108–375, Div. A, Title X, § 1089, Oct. 28, 2004, 118 Stat. 2067.)

### HISTORICAL AND STATUTORY NOTES

Effective and Applicability Provisions

1994 Acts. Section 506(c) of Pub.L. 103–236 provided that: "The amendments made by this section [enacting this chapter] shall take effect on the later of—

"(1) the date of enactment of this Act [Apr. 30, 1994]; or

"(2) the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment."

[Convention entered into force with respect to the United States Nov. 20, 1994, Treaty Doc. 100–20.]

## § 2340A. Torture

(a) Offense.—Whoever outside the United States commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both, and if death results to any person from conduct prohibited by this subsection, shall be punished by death or imprisoned for any term of years or for life.

(b) Jurisdiction.—There is jurisdiction over the activity prohibited in subsection (a) if—

(1) the alleged offender is a national of the United States; or

(2) the alleged offender is present in the United States, irrespective of the nationality of the victim or alleged offender.

(c) Conspiracy.—A person who conspires to commit an offense under this section shall be subject to the same penalties (other than the penalty of death) as the penalties prescribed for the offense, the commission of which was the object of the conspiracy.

(Added Pub.L. 103–236, Title V, § 506(a), Apr. 30, 1994, 108 Stat. 463, and amended Pub.L. 103–322, Title VI, § 60020, Sept. 13, 1994, 108 Stat. 1979; Pub.L. 107–56, Title VIII, § 811(g), Oct. 26, 2001, 115 Stat. 381.)

### HISTORICAL AND STATUTORY NOTES

Effective and Applicability Provisions

1994 Acts. Section effective on the later of Apr. 30, 1994, or the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman

-Sec.2 -Pg.7 -22.

IN THE OFFICE OF THE U.S. ATTORNEY -

Jeffery W.Paul
Rg#10517-042
SCU/DEATH ROW -
USP Terre Haute
P.O.Box 33
Terre Haute,IN.
47808-0033

(7)

Subject:ACTUAL-INNOCENCE -Violation of Civil-Rights,Due-Process on Appeal,to redress A FUNDAMENTAL MISCARRIAGE OF JUSTICE...see: U.S.Code,Federal Criminal Code(&)Rules-Title 18 -

------------------

Attached Exhibits to support Letter - 4 Pg!s - Front(&)Back Copy-Marked Pg.1.-8.,at top Right Corner of Page -

------------------

*LEGAL DEMAND LETTER*

Dear Sirs,

Please review the enclosed documents,which contain evidence of my ACTUAL-INNOCENCE,including(a) written confession of the perpetrater of the crime I was convicted of,titled:THE DECLARATION OF TRINITY E.INGLE - which is marked at the bottom,Doc.A02253-A02255-,(&)Page No.,5.,6.(&)7., at top...that statement is consistent with previous statements on the the record,(&)attributed to that individual,(&)he was in fact convicted of the crime I was also convicted of,due to Official Government Mal-feasance in The Western District Court,Hot Springs Division,Garland Cty., ARKANSAS -see:U.S. V. Jeffery W.Paul-6:96 cv 600022-(1997)-on appeal in The 8th Circuit...see:Pg.3.,(&)4.

The Affidavit was sent to me via SPECIAL LEGAL MAIL,by accredited U.S. Defense Attorneys,who authenticated the content(&)source reference,(&) it is wholly exonerating...see:Pg.1.,(&)2.

The Bureau of Prisons claims to have no Purview or cause to interdict (&)in fact has attempted to execute me despite the evidence,(&)regularly obstructs my appellate rights,by omitting resources or jurisprudence... see:Pg.8.

The Affidavit is dated 2/11/2005,(&)The Department of Justice has known for 10 Full Years,to date,that there is an innocent person on Death -Row; Please contact the appropriate authorities to expedite this most urgent plea!!!

Sincerely,

Signed [signature]*
Jeffery William Paul
Rg#10517-042

Done This Day-4/7/15 -

(8)

Department of Justice
# INMATE SKILLS DEVELOPMENT PLAN

Federal Bureau of Prisons
## Current Program Review: 04-03-2015



| | | | |
|---|---|---|---|
| **Name:** | PAUL, JEFFERY WILLIAM | **Institution:** | TERRE HAUTE USP<br>4700 BUREAU ROAD<br>SOUTH<br>TERRE HAUTE, IN 47802 |
| **Register Number:** | 10517-042 | | |
| **Security/Custody:** | HIGH/MAX | **Telephone:** | (812) 244-4400 |
| **Projected Release:** | / DEATH SENT | **Fax:** | 812-244-4791 |

| | | | |
|---|---|---|---|
| **Next Review Date:** | 09-29-2015 | **Driver's License/State:** | / |
| **Next Custody Review Date:** | 10-07-2015 | **FBI Number:** | 220926WA9 |
| **Age/DOB/Sex:** | 38 / 09-02-1976 / M | **DCDC Number:** | |
| **CIM Status:** | Y<br>If yes, reconciled: Y | **INS Number:** | |
| | | **PDID Number:** | |
| | | **Other IDs:** | |

| | | | |
|---|---|---|---|
| **Release Residence:** | No residence, Homeless, No residence.<br>730 UNITED ST<br>KEY WEST, FL 33040 | **Release Employer:** | *[Name]*<br>*[Address]* |
| | | **Contact** | *[POC]* |
| **Telephone:** | [Phone] | **Telephone:** | |

| | | | |
|---|---|---|---|
| **Primary Emergency Contact:** | Paula Paul, Mother<br>Rt. 1 Box 93D<br>Paris, MS 38949 | **Secondary Emergency Contact:** | *[POC]*<br>*[Address]* |
| **Telephone:** | (662) 234-3152 | **Telephone:** | |

**Mentor Information:**

**Controlling Sentence Information:**

| Offense(s)/Violator Offenses | Sentence | Sentencing Procedure | Supervision Term |
|---|---|---|---|
| | DEATH | 3559 VCCLEA VIOLENT SENTENCE | NOT APPLICABLE |

| Controlling Sentence Began | Time Served/Jail Credit/Inoperative Time | Days GCT/EGT/SGT | Days FSGT/WSGT/DGCT | Parole Status | |
|---|---|---|---|---|---|
| 06-25-1997 | 18 YEARS 7 MONTHS 11 DAYS / 307 / 0 | 0 / 0 / 0 | 0 / 0 / 0 | **Hearing Date:**<br>**Hearing Type:**<br>**Last USPC Action:** | NOT APPLICABLE<br>NOT ELIGIBLE |

**Detainers:** N

**Special Parole Term:** NOT ENTERED
**Pending Charges:** None known
**Cim Status:** Y

**Cim Reconciled:** Y

| Financial Responsibility | Imposed | Balance | Case No./Court of Jurisdiction | Assgn/Schedule Payment |
|---|---|---|---|---|
| ASSESSMENT USDC | $200.00 | $25.00 | 96-60022-001 (expired) | FINANC RESP-COMPLETED |

| | | | |
|---|---|---|---|
| **Financial Plan Active:** | N | **Comm Dep-6 mos:** | $1004.00 |
| **Financial Plan Date:** | *[Date]* | **Commissary Balance:** | $10.00 |

**Payments**

**Commensurate:** *[Y,N]*
**Missed:** *[Y,N]*

**Judicial Recommendations:** None / None / None

**Special Conditions of Supervision:** See J&C.

Documents Authenticate

(on) 9/17/13 (&) again on 4/11/14
by Public (Federal) Defender of DE. (State)
Jennifer A. Merrigan; at USP. Terre Haute, IN.
(In Person)
(et al) J. Osborne, K. Schwartz
(&) L. Berg (on) 5/08/14, 6/10/14
(&) 10/07/14

(Pg. 9)

OFFICE OF THE
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE
800 KING STREET, SUITE 200
WILMINGTON, DE 19801

SPECIAL MAIL - OPEN ONLY IN THE
PRESENCE OF THE INMATE PERSON
ENTITLED TO INVOKE PROTECTION OF
SPECIAL MAIL 28 C.F.R. § 540.18

Jeffery Paul, # 10517-042
United States Penitentiary
P.O.Box 33
Terre Haute, IN 47808-0033

X 63-47L

SPECIAL MAIL - OPEN ONLY IN THE
PRESENCE OF THE INMATE PERSON
ENTITLED TO INVOKE PROTECTION OF
SPECIAL MAIL 28 C.F.R. § 540.18

B16341.16
$0.46 0
US POSTAGE
FIRST-CLASS
062S0007246923
19801

(Pg 89)

OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

(pg.10)

EDSON A. BOSTIC
FEDERAL PUBLIC DEFENDER

KARL D. SCHWARTZ
CHIEF, CAPITAL HABEAS UNIT

JENNIFER A. MERRIGAN
ASSISTANT DEFENDER,
CAPITAL HABEAS UNIT

July 11, 2013

Jeffery Paul, # 10517-042
United States Penitentiary
P.O.Box 33
Terre Haute, IN 47808-0033

Jeff,

It was good to talk to you today. I am enclosing the affidavit you requested. I ordered you the Almanac and Dictionary, you should receive them soon. I know that you have requested other books, and I have let the team know.

Sincerely,

Jennifer Merrigan

Enclosures

Ms. Jennifer Merrigan
800 King Street, Suite 200
Wilmington, DE 19801

(Cell Ph) 302/573/6010

Western District of Arkansas; Hot Springs Division
U.S. v. Ingle
Case no. 97 3443
(157 F3d 1147
(8th Cir. 1998)



(pg.40)

REPORT OF THE
INFORMATION RESOURCES DIVISION
FEDERAL BUREAU OF INVESTIGATION
WASHINGTON, D. C. 20535

Pg 11

Pg

To: SAC, Little Rock (Squad 5)

October 30, 1996

FBI File No. 70A-LR-36698

Lab No. 60417026 E QL

Reference: Communication dated April 12, 1996

Your No.

Re: TRINITY EDWARD INGLES, aka;
JEFFERY WILLIAM PAUL, aka -
FUGITIVE (a);
SHERMAN WILLIAMS (DECEASED) - VICTIM;
HOT SPRINGS NATIONAL PARK,
HOT SPRINGS, ARKANSAS;
CGR - MURDER

Specimens received: April 16, 1996

Q7 One Nagra blue cassette magnetic tape dated "34222"

Result of examination:

Two processed stereo copies of Q7 were prepared in a cassette format. Each copy is contained on two cassette tapes in three parts with an overlap between parts.

SSA George W. Clark, Jr. conducted the examination.

Q7 and the processed copies were forwarded to your office under separate cover via Federal Express on June 13, 1996.

GOVERNMENT EXHIBIT "H"

AGENT COPY

SEARCHED ____ INDEXED ____
SERIALIZED ____ FILED ____
NOV - 1 1996
FBI - LITTLE ROCK

#5

This Report Is Furnished For Official Use Only

(Pg 37)

(Pg. 12) (Pg 4)

Furthermore, as noted above, evidence presented at both trials established Ingle as the ringleader in these crimes:

»Ingle said he struck the victim first, App. 316;

»Ingle said he taped the victim's hands and feet, App. 319;

»Ingle chose to shoot the victim because he peeked at them, App. 319-20;

»Ingle said he shot the victim himself in the head and chest, App. 320;

»Ingle drove the car, T. 683, App. 258;

»Ingle paid for food and motel afterwards, App. 258;



»Ingle got rid of the gun, T. 1085, 1107; and,

»Ingle got rid of the car, App. 321.

Confirming Ingle's role as the driver, the only item of direct, physical evidence in the entire case was the fingerprint of co-defendant Trinity Ingle, found on the ashtray of the victim's car. T. 777-780.

(pg. 13)

(Pg 5)

County of Jefferson

State of Texas

Declaration of Trinity E. Ingle

My name is Trinity Ingle. I am over the age of 18 and competent to make the declarations contained herein.

On June 22, 1995 me and Jeff were downtown in Hot Springs by the Arlington Hotel. I was wanting to rob a shop downstairs. Jeff was high and was pretty much just following me where I was going to. I was high too otherwise I would not have been wanting to rob a shop in broad daylight. But so we're standing outside of the mall when Mr. Williams drove by. I had not slept for days and was high on Methamphetamine which can make you paranoid and was making me paranoid after ten days of it and not sleeping. It was one of those times where if things had gone different, if a cop car had come by or something like that, I would have just left, but when Mr. Williams drove by he looked at me and I just locked in on him. In my paranoia I knew he had seen the gun in my waistband and knew that now he knew what I was thinking to do by robbing the shop downstairs. So when he got out of the car I told Jeff to come on and follow me. At this point Jeff did not know what I was doing and so he wasn't arguing any about it yet. As far as I knew, Jeff did not know that I had a gun. I didn't tell Jeff about my suspicions of Mr. Williams, nor did I say anything to him about what I planned to do.

A02253

(pg 41)

(Pg. 14)
(Pg 6)

I followed Mr. Williams up the trail and Jeff was following me. I stopped him by asking him if he had the time. After he told us the time I pulled the gun out and told him to give up everything he had. When he didn't, I hit him and kicked him on the ground. By this time, Jeff was getting very nervous. He was trying to get me to leave, saying, "come on, let's go." But I wasn't about to leave, but I still had the gun in my hand and Jeff knew it.

I told Jeff to keep quiet and I tied the guy up with the tape. Then Jeff and I started back down the trail but when I looked back at him the guy was looking right at me. I turned to go back but Jeff grabbed me by the arm and said, "let's just leave him and get out of here." Jeff kept arguing with me but I yanked free of him holding me. I still had the gun in my hand and Jeff was looking at it as I held it in his direction. Even though Jeff didn't know what it was I was going back up the mountain for, I made sure he knew if he put his hands on me again trying to stop me I would have shot him, too, and it would have been two people left up on that mountain.

So I walked back up the trail and asked the guy if he was going to call the cops. He said no but of course I knew he was lying. So I stood over him and shot him in the chest but one shot was rat shot which I had forgot was in the chamber. I heard Jeff yelling at me to stop, but I turned back around and shot Mr. Williams



A02254

(Pg 42)

(Pg 7) (Pg 15)

with the real bullet in the head.

Everything else I believe is already known which followed that.

The gun I got from a burglary off Higden Ferry Road, New Oscar Point and Amity. It was a brown and yellow house and part of the yard was fences. It was in the morning that I broke into the house and found the guns in a closet. I think I recall that they were in a box on the closet floor. I also took some things out of the ice box and some change and silver dollars. Actually I had gotten two guns from there, a .357 and the .38 I used to shoot Mr. Williams. The .357 I had already sold.

Under penalty of perjury I hereby swear that the foregoing is true and correct to the best of my information and belief.

[signature]
Trinity E. Ingle

Dated this 11 day of February, 2005.





(Pg 43)

(Pg16)

Authenticated (4)

Unit Mgr. Bayless; Again on 4/11/14, by Public Defender [Jennifer A. Merrigan]

Will You Please review these pgs. (&) note that I did get confirmation from my Attorney that Trinity Ingle did write (&) sign that affidavit, Titled: Declaration of Trinity E. Ingle; (&)

I have a copy of this in my central file.

I would like (BoP) (SIS) or appropriate staff to present the Affidavit (&) certify he confirms the text (&) signature; Because for some reason, not disclosed to me; the courts refusing to acknowledge any obligation to release or lower the penalty; for 7.5 yrs now.

Please confirm my lawyers are my lawyers (&) that this Affidavit is genuine (&) note that I am indigent due to copyright infringement (&) suffering medical (&) psychological injury due to bad dental, dermal, vision care (&) the rape of my wife estrangement etcetera.

Please respond (&) return papers.

Sincerely, Jeffery Paul (10517042) 417cell / C Range 7/21/2013

r. Paul-
The BOP|SIS is not authorized authenticate the document. efore, the BOP can not te the document is uine. ← Therefore State ✓ Genuine ✓

-MBayless, 8/2/13

(Pg44)

AIDING (&) ABETTING

US V. YOSSUNTHORN. 167 F3d 1267 (9th Cir. 1999)
To support attempt conviction, conduct cannot be mere preparation, but must be a substantial step strongly corroborative of the firmness of a defendant's criminal intent.

US V. HEATH. 188 F3d 916 (7th Cir. 1999)
US V. ANDERSON. 174 F3d 515 (5th Cir. 1999)
Two types of conduct that fail to prove aiding and abetting are "mere presence" and "guilt by association."

US V. ROMERO. 189 F3d 576 (7th Cir. 1999)
Attempt requires the intent to commit a crime plus a substantial step toward its commission.

US V. DADI. 235 F3d 945 (5th Cir. 2000)
US V. BEUTENMULLER. 29 F3d 973 (5th Cir. 1994)
1) To convict defendant of aiding and abetting, government must prove that defendant intentionally associated with criminal venture and sought by his action to make venture succeed.
2) To prove aiding and abetting, government must demonstrate beyond reasonable doubt that each element of offense that defendant is accused of aiding and abetting was committed by some other person.

US V. SAMUELS. 308 F3d 662 (6th Cir. 2002)
Attempt to aid and abet is not a crime.

US V. DOWNS-MOSES. 320 F3D 253 (1st Cir. 2003)
Defendant's mere presence at scene or even knowledge that crime is being committed is generally insufficient to establish aiding and abetting.

US V. LINWOOD. 142 F3d 418 (7th Cir. 1998)
Aiding and abetting by its very nature, requires proof that actor engaged in some type of overt act.

US V. GUERRERO. 114 F3d 332 (1st Cir. 1997)
US V. DAVIS. 61 F3d 291 (5th Cir. 1995)
To prove aiding and abetting liability, government needs to establish that defendants participated in venture and sought by their actions to make it succeed.

US V. MORENO. 102 F3d 994 (9th Cir. 1996)
US V. ARTHURS. 73 F3d 444 (1st Cir. 1996)
Duress defense has three elements; (1) immediate threat of serious bodily injury or death; (2) well-grounded belief that threat will be carried out; and (3) no reasonable opportunity to escape or otherwise to frustrate threat.

# DURESS & NECESSITY

US V. BAILEY, 444 US 394, 62 LEd2d 575, 100 SCt 624 (1980)
The availability of a duress and necessity defense held to depend on there being a bona fide effort to surrender or return.

US V. SIXTY ACRES IN ITOWAH CO., 930 F2d 857 (11th Cir. 1991)
General concern that conspirator might retaliate does not establish duress defense.

US V. JOHNSON, 956 F2d 894 (9th Cir. 1992)
There are 3 elements of a duress defense: immediate threat of death or serious body injury, well grounded fear that threat will be carried out, and no reasonable opportunity to escape threatened harm.

US V. LaFLEUR, 971 F2d 200 (9th Cir. 1991)
When defendant commits a criminal act under the direct threat of another person, defendant commits crime under "duress."



US V. RAWLINGS, 982 F2d 590 (D.C. Cir. 1993)
Defendant cannot claim defense of duress when he had, but passed up, opportunity to seek aid of law enforcement officials.

US V. RIFFE, 28 F3d 565 (6th Cir. 1994)
Defendant has preliminary burden to introduce some evidence to trigger consideration of duress defense, although that burden is not a heavy one.

US V. VEILLEUX, 40 F3d 9 (1st Cir. 1994)
Uncontrollable duress, to excuse defendant's failure to appear for sentencing must be sufficient to produce unavoidable fear of serious bodily injury or death.

US V. MORENO, 102 F3d 994 (9th Cir. 1996)
US V. ARTHURS, 73 F3d 444 (1st Cir. 1996)
Duress defense has three elements; (1) immediate threat of serious bodily injury or death; (2) well-grounded belief that threat will be carried out; and (3) no reasonable opportunity to escape or otherwise to frustrate threat.

US V. GAVIRIA, 116 F3d 1498 (D.C. Cir. 1997)
Defendant asserting affirmative defense of duress must show that he had no reasonable legal alternative to commiting crime.

US V. CABAN, 173 F3d 89 (2nd Cir. 1999)
A duress defense requires, inter alia, defendant's showing that there was no reasonable opportunity to escape the threat other than by engaging in the unlawful activity.

(Pg19)



## CHAPTER 51—HOMICIDE

Sec.
1111. Murder.
1112. Manslaughter.
1113. Attempt to commit murder or manslaughter.
1114. Protection of officers and employees of the United States.
1115. Misconduct or neglect of ship officers.
1116. Murder or manslaughter of foreign officials, official guests, or internationally protected persons.
1117. Conspiracy to murder.
1118. Murder by a Federal prisoner.
1119. Foreign murder of United States nationals.
1120. Murder by escaped prisoners.
1121. Killing persons aiding Federal investigations or State correctional officers.
1122. Protection against the human immunodeficiency virus.

### § 1111. Murder

(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life;

Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life.

(c) For purposes of this section—

(1) the term "assault" has the same meaning as given that term in section 113;

(2) the term "child" means a person who has not attained the age of 18 years and is—

(A) under the perpetrator's care or control; or

(B) at least six years younger than the perpetrator;

(3) the term "child abuse" means intentionally or knowingly causing death or serious bodily injury to a child;

(4) the term "pattern or practice of assault or torture" means assault or torture engaged in on at least two occasions;

(5) the term "serious bodily injury" has the meaning set forth in section 1365; and

(6) the term "torture" means conduct, whether or not committed under the color of law, that otherwise satisfies the definition set forth in section 2340(1).

(June 25, 1948, c. 645, 62 Stat. 756; Oct. 12, 1984, Pub.L. 98–473, Title II, § 1004, 98 Stat. 2138; Nov. 10, 1986, Pub.L. 99–646, § 87(c)(4), 100 Stat. 3623; Nov. 14, 1986, Pub.L. 99–654, § 3(a)(4), 100 Stat. 3663; Nov. 18, 1988, Pub.L. 100–690, Title VII, § 7025, 102 Stat. 4397; Sept. 13, 1994, Pub.L. 103–322, Title VI, § 60003(a)(4), 108 Stat. 1969; Apr. 30, 2003, Pub.L. 108–21, Title I, § 102, 117 Stat. 652.)

#### HISTORICAL AND STATUTORY NOTES

Effective and Applicability Provisions

1986 Acts. Amendment by section 87 of Pub.L. 99–646 effective 30 days after Nov. 10, 1986, see section 87(e) of Pub.L. 99–646, set out as a note under section 2241 of this title.

### § 1112. Manslaughter

(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

Voluntary—Upon a sudden quarrel or heat of passion.

Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of voluntary manslaughter, shall be fined under this title or imprisoned not more than 15 years, or both;

Whoever is guilty of involuntary manslaughter, shall be fined under this title or imprisoned not more than 8 years, or both.

(June 25, 1948, c. 645, 62 Stat. 756; Sept. 13, 1994, Pub.L. 103–322, Title XXXII, § 320102, Title XXXIII, § 330016(1)(H), 108 Stat. 2109, 2147; Oct. 11, 1996, Pub.L. 104–294, Title VI, § 604(b)(13), 110 Stat. 3507; Jan. 7, 2008, Pub.L. 110–177, Title II, § 207, 121 Stat. 2538.)

#### HISTORICAL AND STATUTORY NOTES

Effective and Applicability Provisions

1996 Acts. Amendment by section 604 of Pub.L. 104–294 effective Sept. 13, 1994, see section 604(d) of Pub.L. 104–294, set out as a note under section 13 of this title.



Exibit (__) 7th Circ.

(20)

Special Agent / FBI



Q Okay. Was the interview video taped?
A No, it was not. By rules and regulations of the F.B.I., we do not, I do not videotape without proper authorization.
Q And was it taped at all, audio taped?
A No, it was not.

Q Okay. Did you tell him that the more he cooperated the better it would be for him?
A I don't recall saying that to him.
Q Did you ever tell him that if he didn't do this murder that he wouldn't have to worry about going to jail?
A No, sir.
Q Did he tell you that he was worried about staying in jail, that he wanted out of jail?
A The following day -- this would have been August 23rd, when I went back to the Marshal Service to see him -- he told me that he couldn't do 20 years in prison for a murder that he only witnessed!

Paul v. USA 8th Cir. 14. 1832 **WITNESSES** US S Ct

Jurisprudence

(1-21)

(64)

HAYES V. WOODFORD. 301 F3d 1054 (9th Cir. 2002)
BYRD V. COLLINS. 209 F3d 486 (6th Cir. 2000)
US V. AGURS. 427 US 97, 49 LEd2d 342, 96 SCt 2392 (1976)

(1) When the prosecution is or should be aware that it is presenting perjured testimony, a strict standard of materiality will be applied, and/or conviction will be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Conviction obtained by knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the outcome of the trial. A new trial is required if perjured testimony could in any reasonable likelihood have affected the judgment of the jury.

RYAN V. MILLER. 303 F3d 231 (2nd Cir. 2002)

(2) Essence of a violation of the Confrontation Clause is the presentation of an accusation against the defendant without presenting the accuser.

US V. ANGWIN. 271 F3d 786 (9th Cir. 2001)
LILLY V. VIRGINIA. _____ US _____, _____ LEd2d _____, 119 SCt 1887 (1999)
BRUTON V. US. 391 US 123, 20 LEd2d 476, 88 SCt 1620

(3) (1968) Post-arrest statements made by non-testifying co-defendants that facially incriminate defendant are inadmissible because such statements violate defendant's Sixth Amendment right to cross-examine adverse witnesses.

US V. LOPEZ-LOPEZ. 282 F3d 1 (1st Cir. 2002)
BRUTON V. US. 391 US 123, 20 LEd2d 476, 88 SCt 1620

(4) (1968) Admission of testimony by a nontestifying defendant inculpating a condefendant in a joint trial is prohibited.

US V. UNIVERSAL REHABILITATION SERVICES, INC., 167 F3d 171 (3rd Cir. 1999)

(6) Plea agreements of co-conspirators cannot be used as evidence of defendant's guilt.

US V. SESCHILLIE. 310 F3d 1208 (9th Cir. 2002)

(5) In those rare cases of an evenly balanced record, issue of whether defendant was prejudiced by erroneous exclusion of witness from courtroom must be resolved in defendant's favor.

ELLSWORTH V. WARDEN, NEW HAMPSHIRE STATE PRISON. 318 F3d 285 (1st Cir. 2003)

(7) Criminal defendant's entitlement to cross-examine witness increases in sensitivity in direct proportion to witness's importance to prosecution's case.

SPLUNGE V. PARKE. 160 F3d 369 (7th Cir. 1998)

(8)
1) Mistaken curtailment of cross-examination constitutes trial error.
2) Defendant is entitled to cross-examine witnesses about potential sources of bias, including the prospect that witness will receive a benefit, such as lower sentence in exchange for favorable testimony.

DAVIS V. ALASKA. 415 US 308, 39 LEd2d 347, 94 SCt 1105 (1974)
POINTER V. TEXAS. 380 US 400, 13 LEd2d 923, 85 SCt 1065 (1965)

(9) Violation of the confrontation clause require reversal unless they are harmless beyond a reasonable doubt.

(No 26)

(Pg 22.)

As discussed elsewhere in this Brief, Paul was only eighteen years old at the time, and was thus younger than Ingle. T. 978, DE 1 (birth certificate of Jeffery Paul); App. 501, 514 (Ingle nineteen years old at time of offense); see also Claim II.

Importantly here, Jeffery Paul's prior criminal history was far less substantial than that of Trinity Ingle. While Paul had a relatively minor criminal history, Ingle had five prior felony convictions, including two burglary convictions and two firearms convictions. T. 567; App. 472-73.

The government charged and tried both Mr. Paul's case, and that of his co-defendant, Trinity Ingle, on a theory of aiding and abetting, 18 U.S.C. §2, although in each trial, the government contradictorily argued that the defendant on trial had actually shot the victim. Mr. Ingle received a life sentence for the same offenses less than three weeks before Mr. Paul received a death sentence.

4. *Evidence of Equal Culpability – Trinity Ingle Trial*

The government's evidence of Ingle's primary role in the offense was more substantial than that presented or argued by the government during Mr. Paul's trial. At Ingle's trial, government witness Derrick Bell testified that Ingle had repeatedly told him, at least five times, that he personally had hit and shot Sherman Williams, in the head and chest. App. 312-13, 320.[8] Ingle told Bell he was the one who struck the victim immediately after they first confronted him and asked for the time. App. 316.

(1.)

Sec.3. -Pg.23 -33.

(8th Circ. Appeals Court) 23.

## JURISDICTIONAL STATEMENT

Appellant Jeffery Paul was convicted and sentenced to death for the crime of murder on federal land, and the use of a firearm in relation to a crime of violence. See 18 U.S.C. §§1111, 924. This Court affirmed his conviction on appeal, *United States v. Paul,* 217 F.3d 989 (8th Cir. 2000). Mr. Paul on December 17, 2002, moved pursuant to 28 U.S.C. § 2255 to set aside his conviction and sentence in the United States District Court for the Western District of Arkansas, alleging that his conviction and sentence were obtained in violation of the laws and Constitution of the United States. The district court denied the motion, without a hearing, in an order and judgment issued on January 31, 2005, and on June 27, 2005, denied appellant's timely filed motion to reconsider filed pursuant to Federal Rule of Civil Procedure 59(e). A timely notice of appeal to this Court was filed by appellant on August 24, 2005. This Court, on January 25, 2007, issued a certificate of appealability. The district court order denying relief is unpublished and is reproduced in the Addendum at 1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

(24) (68)

BOOMER V. AT&T CORP., 309 F3d 404 (7th Cir. 2002)
ACE AUTO BODY & TOWING LTD. V. CITY OF NEW YORK. 171 F3d 765 (2nd Cir. 1999)
BROAD V. SEALASKA CORP., 85 F3d 422 (9th Cir. 1996)

(1) Under Supremacy Clause, federal law preempts state law either by express provision, by implication, or by conflict between federal and state law.

SILVEIRA V. LOCKYER. 312 F3d 1052 (9th Cir. 2002)

(2) Court is required, wherever possible, to give force to each word in every statute, or constitutional provision.

SALAHUDDIN V. MEAD. 174 F3d 271 (2nd Cir. 1999)
US V. MYERS. 106 F3d 936 (10th Cir. 1997)

(3) It is basic canon of statutory construction that use of word "shall" indicates mandatory intent.

US V. DABEIT. 231 F3d 979 (5th Cir. 2000)

(4) Court of Appeals has duty to follow precedent, especially Supreme Court precedent.

GENTALA V. CITY OF TUCSON. 213 F3d 1055 (9th Cir. 2000)

(5) The loss of First Amendment freedoms, for even minimal periods of time, constitutes "irreparable injury" for purposes of entitlement of injunctive relief.

SIMPSON V. MATESANZ. 175 F3d 200 (1st Cir. 1999)

(6) Federal habeas court may excuse petitioner's procedural default if he can demonstrate either cause for and resulting prejudice from the default, or that he has suffered a fundamental miscarriage of justice.

CALDWELL V. RUSSELL. 181 F3d 731 (6th Cir. 1999)

(7) A federal habeas forum may excuse a procedural default if a fundamental miscarriage of justice will otherwise result.

SOUTHWORTH V. GREBE. 151 F3d 717 (7th Cir. 1998)

(8) The First Amendment trumps the democratic process and protects the individual's rights even when a majority of citizens wants to infringe upon them.

In The USSCt. No. 14.1652 7th circ. 14.1722 (25.) (59)

Rcp Pt III: Rule 8(e) ... to do Justice

# PRO SE COMPLAINTS

McCORMICK V. CITY OF CHICAGO, 230 F3d 319 (7th Cir. 2000)
BOAG V. MacDOUGALL, 454 US 364, 70 LEd2d 551, 102 SCt 700 (1982)
HAINES V. KERNER, 404 US 519, 30 LEd2d 652, 92 SCt 594 (1972)

Pro se litigants pleadings are to be construed liberally and held to less stringent standard than formal pleadings drafted by lawyers; if court can reasonably read pleadings to state valid claim on which litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.

US V. MAJORS, 329 F3D 791 (5th Cir. 2003)

Denial of defendant's right to represent himself, if established, requires reversal without need for harmless error analysis.

SHAPIRO V. CANTOR, 123 F3d 717 (2nd Cir. 1997)

District court should freely give leave to amend complaint.

(Rule 11 RCP Pt III
withholding (&) Nonfeasance; Budgets
Evid. Requirements... (Prima facie)

Bateman v. U.S. Postal Service, 231 F3d 1220 (9th Cir 2000)
Partys failure to cite relevant authority, or discuss relevant legal principles, does not relieve Court of duty to apply correct legal standard.

(p9)

Case 2:13-cv-00304-JMS-MJD Document 53-1 Filed 04/22/15 Page 28 of 35 PageID #: 573

(26)



meaning should, therefore, be spelled out in more detail in the section as is done by the amendment."

**1966 Acts.** Senate Report No. 1797, see 1966 U.S. Code Cong. and Adm. News, p. 3663.

**References in Text**

Section 408 of the Controlled Substances Act, referred to in subsec. (h), is classified to section 848 of Title 21, Food and Drugs.

## § 2255. Federal custody; remedies on motion attacking sentence

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run [illegible]

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

(June 25, 1948, c. 646, 62 Stat. 967; May 24, 1949, c. 139, § 114, 63 Stat. 105; Apr. 24, 1996, Pub.L. 104–132, Title I, § 105, 110 Stat. 1220.)

### HISTORICAL AND STATUTORY NOTES

**References in Text**

Section 408 of the Controlled Substances Act, referred to in text, is classified to section 848 of Title 21, Food and Drugs.

## [§ 2256. Omitted]

### HISTORICAL AND STATUTORY NOTES

**Codifications**

This section as added by Pub. L. 95–598, Title II, § 250(a), Nov. 6, 1978, 92 Stat. 2672, effective June 28, 1984, pursuant to Pub. L. 95–598, Title IV, § 402(b), Nov. 6, 1978, 92 Stat. 2682, as amended by Pub. L. 98–249, § 1(a), Mar. 31, 1984, 98 Stat. 116; Pub. L. 98–271, § 1(a), Apr. 30, 1984, 98 Stat. 163; Pub. L. 98–299, § 1(a), May 25, 1984, 98 Stat. 214; Pub. L. 98–325, § 1(a), June 20, 1984, 98 Stat. 268 [set out as an

IN THE UNITED STATES OF AMERICA

-Attached EXIBIT -



Subject-Legal Cites/cases(&)Standards of review-

Case No#-Lorenzo L.Jones,Petitioner

V.

Barbara Bock,Warden,(et al).(No.05-7058)

*

Timothy Williams,Petitioner

V.

William S.Overton,(et al).(No.05-7142)

*

John H.Walton,Petitioner

V.

Barbara Bouchard,(et al).-549 U.S.-,127 S.Ct.910,166 L.Ed. 2d 798,2007-U.S.LEXIS 1325

---

Decision-(§3)...allows Court to proceed with claims under PLRA-Prison litigation Reform Act-when petition contained exhausted(&)unexhausted claims in the complaint...Court is to separate claims into "Good"(or) "Bad"claims (&) review the complaint with respect to merits...

---

Signed *Jeffery W. Paul* *
Jeffery W.Paul-(10517042)
USP Terre Haute,IN-47808
(Date - / / ) *

IN THE US DISTRICT FOR THE 8th Circ.

Jeffery W.Paul
10517-042
P.O.Box 33
Terre Haute,IN.
47808

(28)

In Rēm:

The United States of America
Plaintiff

V.

Jeffery W.Paul
Defendant

Case No#6:96 cr 60022-001

on Appeal-from The Western District of Arkansas-JLH/BAB

---

-Affidavit-Exibit/Attachment- 28 USC, 7(b), 43(e)(RCP)

(1.) I,Jeffery William Paul,do hereby swear to the following- That I am currently under Penalty of death in The State of Indiana, United States Federal Jurisdiction,Terre Haute Prison...(&)am attempting to appeal the conviction,because I am innocent(&)have been doing that for 17.10 Years in June of 2014.

(2.) On or about 2005-09,The 8th circuit court of appeals did receive correspondence attributed to me which is described as confessional(&) cited in their decision to deny my release or order a new trial...the message allegedly sent by me is 38 Words long,(&)I deny that I did/ would write that(&)requested to see the envelope(&)handwriting(&)still have not been allowed to do so...(&)speculate the letter may be inchoate but regardless,I would not write The Appeals or District Court(&)Jeopardize my release(&)restitution from a wrongful conviction...

(3.) I deny I wrote any such message to any Court(&)claim that The 8th Circuit violated my Equal rights by refusing to vacate my Conviction (&)order a New Trial,by any standard of review(&)(HAD) cause to believe that I will be allowed,by rights,to call/cross the convicted Perpetrater of that crime,who has exonerated me at least 3 Times on tape(&) in sworn Affidavit. ..which would require NO LESS THAN FULL RESTITUTION of My Fundamental Rights,Release from Prison(&)Due-Process for the Bureau of Prisons;breach of Peace/Genocide against my former Wife(&)I... which I filed Criminal Complaints of.

Sincerely,

Signed Jeffery W. Paul *
6/7/14

(pg. 1 of 2)

IN THE 8th CIRCUIT COURT OF APPEALS



Jeffery William Paul,Appellant

V.

United States of America,Appellee

534 F.3d 832;2008 U.S.App.LEXIS 15571
No.# 05-3431

Submitted:12/10/2007
filed:July:7/22/2008

Certiorari Denied:US Supreme Court-588 US 828,130 S.Ct.51,175 L.Ed.2d 43,2009 US LEXIS 5457(2009)

On Appeal:United States V.Paul 6:96 cv 60022-(JLH)WD/AR 217 F.3d 989,2000 US App.LEXIS 14636(8th Cir. ARK.2000)

------------------------------------------------------

Two days later, however, the court received a handwritten letter from Paul, in which Paul asked "to be declared competent to waive further appeals hindering the imposition of this sentence upon me." Paul further stated, "I do know that I am guilty of the crime which resulted in Mr. Williams (Sherman) untimely and unnatural death," and "I regret the pain caused by my robbing, kicking and incapacitating Mr. Williams." The letter concluded: "Please consider my appeals dropped." (A 1579). In response to this letter, the court requested that Paul's counsel postpone any meetings between Paul and mental health professionals until further notice from the court. On December 9, after visiting Paul, Paul's counsel filed a document, prepared by counsel and signed by Paul, in which Paul withdrew his "uncounseled expression of his desire to waive his appeal." This document stated that Paul would continue to pursue his § 2255 motion, and that he repudiated the positions expressed

(30)

In the issue No 14-1652 7th Cir. 14-1722

(71)

# *AMERICANS WITH DISABILITIES ACT*

(1) HALL V. THOMAS, 190 F3d 693 (5th Cir. 1999)
PENNSYLVANIA DEPT. OF CORRECTIONS V. YESKEY, 524 US 206, 141 LEd2d 215, 118 SCt 1952 (1998)
The Americans with Disabilities Act applies to prisoners.

(2) McALINDIN V. COUNTY OF SAN DIEGO, 192 F3d 1226 (9th Cir. 1999)
Sleeping, interacting with others, and engaging in sexual relations, like procreation, are all "major life activities" for purposes of the ADA.

(3) DOYAL V. OKLAHOMA HEART, INC., 213 F3d 492 (10th Cir. 2000)
An inquiry into whether an ADA plaintiff is substantially limited in a major life activity requires an individualized analysis.

(4) MacDONALD V. COHEN, 233 F3d 648 (1st Cir. 2000)
The ADA does not require an employer to make accommodations that would subvert other, more qualified applicants for the job.



(5) BASITH V. COOK COUNTY, 241 F3d 919 (7th Cir. 2001)
ADA only protects a "qualified individual with a disability."

(6) COOPER V. OLIN CORP., WINCHESTER DIV., 246 F3d 1083 (8th Cir. 2001)
Whether a person has a disability under the ADA is an individualized inquiry.

(7) PUGH V. CITY OF ATTICA, INDIANA, 259 F3d 619 (7th Cir. 2001)
City employee who was preceived as an alcoholic as "regarded as disabled" within meaning of the ADA.

(8) BRISTOL V. BD. OF COUNTY COM'RS OF CLEAR CREEK, 281 F3d 1148 (10th Cir. 2002)
The ADA imposes a duty on an employer to reassign an employee only if the employer has vacant positions.

(9) CARROLL V. XEROX CORP., 294 F3d 231 (1st Cir. 2002)
An impairment that disqualifies a person from a narrow range of jobs is not considered a "substantially limiting" one under ADA.

(31)

Paul v. USA 14.1872 8th Cir. USCA

(69)

# *MARRIAGE * DIVORCE * CHILDREN*

(1) TRAMMEL V. US. 445 US 40, 63 LEd2d 186, 100 SCt 906 (1980)
A spouse can testify against the other party if the marriage is irretrievably broken.

(2) P.O.P.S. V. GARDNER. 998 F2d 764 (9th Cir. 1993)
Rights to marry, have children, and maintain relationship with children are fundamental rights protected by the Fourteenth Amendment and thus, strict scrutiny is required of any statutes that directly and substantially impair those rights.

(3) MONTGOMERY V. CARR. 101 F3d 1117 (6th Cir. 1996)
Right to marry is both fundamental substantive due process and associational right.

(4) DOUZADO V. US. 105 F3d 1389 (11th Cir. 1997)
Under Florida law, spouse of person who is injured as proximate result of negligence of another has right of action against that person for loss of consortium.

(5) McCREARY V. LIBBEY-OWENS-FORD CO., 132 F3d 1159 (7th Cir. 1997)
Claim for loss of consortium is derivative in nature and its viability depends upon validity of injured spouse's claims.

(6) SINGLETON V. CECIL. 155 F3d 983 (8th Cir. 1998)
The law does not generally impute the actions of one spouse to another, or the actions of an adult child to the parent.

(7) DOE V. MADISON SCHOOL DIST. NO. 321. 177 F3d 789 (9th Cir. 1999)
Parents have a right to direct the religious upbringing of their children and, on that basis, have standing to protect their right.

(8) WILKINSON EX REL. WILKINSON V. RUSSELL. 182 F3d 89 (2nd Cir. 1999)
Parent's interest in the custody of a child is a constitutionally protected liberty interest subject to due process protection.

(9) US V. YERARDI. 192 F3d 14 (1st Cir. 1999)
The privilege against adverse spousal testimony is construed strictly.

any of the purposes of this chapter or any provision thereof.

(Added Pub.L. 90–284, Title X, § 1002(a), Apr. 11, 1968, 82 Stat. 91.)

# CHAPTER 13—CIVIL RIGHTS


Sec.
241. Conspiracy against rights.
242. Deprivation of rights under color of law.
243. Exclusion of jurors on account of race or color.
244. Discrimination against person wearing uniform of armed forces.
245. Federally protected activities.
246. Deprivation of relief benefits.
247. Damage to religious property; obstruction of persons in the free exercise of religious beliefs.
248. Freedom of access to clinic entrances.


## § 241. Conspiracy against rights

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(June 25, 1948, c. 645, 62 Stat. 696; Apr. 11, 1968, Pub.L. 90–284, Title I, § 103(a), 82 Stat. 75; Nov. 18, 1988, Pub.L. 100–690, Title VII, § 7018(a), (b)(1), 102 Stat. 4396; Sept. 13, 1994, Pub.L. 103–322, Title VI, § 60006(a), Title XXXII, §§ 320103(a), 320201(a), Title XXXIII, § 330016(1)(L), 108 Stat. 1970, 2109, 2113, 2147; Oct. 11, 1996, Pub.L. 104–294, Title VI, §§ 604(b)(14)(A), 607(a), 110 Stat. 3507, 3511.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

**1996 Acts.** Amendment by section 604 of Pub.L. 104–294 effective Sept. 13, 1994, see section 604(d) of Pub.L. 104–294, set out as a note under section 13 of this title.

**Short Title**

**1996 Amendments.** Pub.L. 104–155, § 1, July 3, 1996, 110

Welfare, enacting provisions set out as a note under section 247 of this title, and amending provisions set out as a note under section 534 of Title 28, Judiciary and Judicial Procedure] may be cited as the 'Church Arson Prevention Act of 1996'."

**Repeals**

Pub.L. 103–322, Title XXXII, § 320103(a)(1), Sept. 13, 1994, 108 Stat. 2109, appearing in the credit of this section, was repealed by Pub.L. 104–294, Title VI, § 604(b)(14)(A), Oct. 11, 1996, 110 Stat. 3507.

## § 242. Deprivation of rights under color of law

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(June 25, 1948, c. 645, 62 Stat. 696; Apr. 11, 1968, Pub.L. 90–284, Title I, § 103(b), 82 Stat. 75; Nov. 18, 1988, Pub.L. 100–690, Title VII, § 7019, 102 Stat. 4396; Sept. 13, 1994, Pub.L. 103–322, Title VI, § 60006(b), Title XXXII, §§ 320103(b), 320201(b), Title XXXIII, § 330016(1)(H), 108 Stat. 1970, 2109, 2113, 2147; Oct. 11, 1996, Pub.L. 104–294, Title VI, §§ 604(b)(14)(B), 607(a), 110 Stat. 3507, 3511.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

**1996 Acts.** Amendment by section 604 of Pub.L. 104–294 effective Sept. 13, 1994, see section 604(d) of Pub.L. 104–294, set out as a note under section 13 of this title.

**Repeals**

was repealed by Pub.L. 104–294, Title VI, § 604(b)(14)(B), Oct. 11, 1996, 110 Stat. 3507.

## § 243. Exclusion of jurors on account of race or color

No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude; and whoever, being an officer or other person charged with any duty in the selection or summoning of jurors, excludes or fails to summon any citizen for such cause, shall be fined not more than $5,000.

(June 25, 1948, c. 645, 62 Stat. 696.)

## § 244. Discrimination against person wearing uniform of armed forces

Whoever, being a proprietor, manager, or employee of a theater or other public place of entertainment or amusement in the District of Columbia, or in any Territory, or Possession of the United States, causes any person wearing the uniform of any of the armed forces of the United States to be discriminated against because of that uniform, shall be fined under this title.

(June 25, 1948, c. 645, 62 Stat. 697; May 24, 1949, c. 139, § 5, 63 Stat. 90; Sept. 13, 1994, Pub.L. 103–322, Title XXXIII, § 330016(1)(G), 108 Stat. 2147.)

## § 245. Federally protected activities

(a)(1) Nothing in this section shall be construed as indicating an intent on the part of Congress to prevent any State, any possession or Commonwealth of the United States, or the District of Columbia, from exercising jurisdiction over any offense over which it would have jurisdiction in the absence of this section, nor shall anything in this section be construed as depriving State and local law enforcement authorities of responsibility for prosecuting acts that may be violations of this section and that are violations of State and local law. No prosecution of any offense described in this section shall be undertaken by the United States except upon the certification in writing of the Attorney General, the Deputy Attorney General, the Associate Attorney General, or any Assistant Attorney General specially designated by the Attorney General that in his judgment a prosecution by the United States is in the public interest and necessary to secure substantial justice, which function of certification may not be delegated.

(2) Nothing in this subsection shall be construed to limit the authority of Federal officers, or a Federal grand jury, to investigate possible violations of this section.

(b) Whoever, whether or not acting under color of [...]

dates or interferes with, or attempts to injure, intimidate or interfere with—

(1) any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from—

(A) voting or qualifying to vote, qualifying or campaigning as a candidate for elective office, or qualifying or acting as a poll watcher, or any legally authorized election official, in any primary, special, or general election;

(B) participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States;

(C) applying for or enjoying employment, or any perquisite thereof, by any agency of the United States;

(D) serving, or attending upon any court in connection with possible service, as a grand or petit juror in any court of the United States;

(E) participating in or enjoying the benefits of any program or activity receiving Federal financial assistance; or

(2) any person because of his race, color, religion or national origin and because he is or has been—

(A) enrolling in or attending any public school or public college;

(B) participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof;

(C) applying for or enjoying employment, or any perquisite thereof, by any private employer or any agency of any State or subdivision thereof, or joining or using the services or advantages of any labor organization, hiring hall, or employment agency;

(D) serving, or attending upon any court of any State in connection with possible service, as a grand or petit juror,

(E) traveling in or using any facility of interstate commerce, or using any vehicle, terminal, or facility of any common carrier by motor, rail, water, or air;

(F) enjoying the goods, services, facilities, privileges, advantages, or accommodations of any inn, hotel, motel, or other establishment which provides lodging to transient guests, or of any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility which serves the public and which is principally engaged in selling food or beverages for consumption on the premises, or of any gasoline station, or of any motion picture house, theater, concert hall, sports arena, stadium, or any other place of exhibition or entertainment which serves the public, or of any other [...]