UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JEFFERY WILLIAM PAUL | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 2:13-cv-00304-WTL-WGH |
| | ) | |
| SUPERINTENDENT, USP Terre Haute | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondents. | ) | |

**RETURN TO ORDER TO SHOW CAUSE**

For their return to the Order to Show Cause and in response to Petitioner Jeffery William Paul's ("Paul") petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, the Respondents advise the Court as follows:

**BACKGROUND**[1]

Paul is a federal inmate currently housed on death row at the United States Penitentiary at Terre Haute ("USP-Terre Haute"). In 1997, Paul was convicted in the United States District Court for the Western District of Arkansas (the "trial court"), of murder, while aiding and abetting another, in violation of 18 U.S.C. §§ 2 and 1111(a), and for knowing use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924. A jury sentenced Paul to death under the Federal Death Penalty Act, 18 U.S.C. §§ 3591, et seq. Paul's convictions

---

[1] The background information is taken in part from the opinion issued by the United States Court of Appeals for the Eighth Circuit affirming Paul's conviction and death sentence, *United States v. Paul*, 217 F.3d 989 (8th Cir. 2000), and from the government's brief in opposition to Paul's direct appeal. *United States v. Paul*, No. 98–3497 (8th Cir. Nov. 24, 1999). In addition, throughout this response the United States will make the following references: Dkt. = the docket in this § 2241 case; Crim. Dkt. = the docket in Paul's criminal case in the Western District of Arkansas (6:96-cr-60022).

and death sentence were affirmed on appeal, *United States v. Paul*, 217 F.3d 989 (8th Cir. 2000), and the Supreme Court denied certiorari review. *Paul v. United States*, 534 U.S. 829 (2001). The trial court subsequently denied Paul's motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255. Crim. Dkt. 322. The Eighth Circuit denied Paul's habeas appeal. *Paul v. United States*, 534 F.3d 832 (8th Cir. 2008).

**A. The Murder**

On June 22, 1995, Paul and an acquaintance, Trinity Ingle, followed Sherman Williams, an eighty-two-year-old man, from downtown Hot Springs, Arkansas, to a walking trail in Hot Springs National Park. Paul and Ingle robbed and beat Williams and then shot him in the head and shoulder. They attempted to hide the body by pulling it about thirty feet off the trail. On June 26, 1995, a hiker found Williams' body under logs and rocks with hands and ankles tightly bound by duct tape. A piece of duct tape around Williams' neck was presumed to have once been around Williams' mouth. Williams' head was nearly detached from his spine and there was a large open wound at the right temple above the jaw. The medical examiner testified that the body had gunshot wounds to the head and chest, and that Williams died as a result of the wound to the head.

Williams' wallet was later found in the park near his body. A few days later, Williams' vehicle was found 150 feet down in a pit in a remote area of the park. Trinity Ingle's latent fingerprint was recovered from inside of the vehicle.

**B. The Trial**

At trial, several of Paul's acquaintances testified that Paul confessed his involvement in the murder. Each of these witnesses gave similar accounts of what Paul had told them about the offense. Kris Rogers testified that Paul admitted that he and Ingle had killed an old man in the park after beating him and kicking him in the head. Rogers testified that Paul stated when

Williams resisted the robbery, they began beating him, including kicking him in the head hard enough to knock his eye out of its socket. Paul also told Rogers that because Williams was not yet dead following the beating, he shot him, and then Ingle shot him. Paul and Ingle then dragged the body into the woods and covered it up, according to what Paul told Rogers.

Rogers's testimony was corroborated by several other witnesses. Christine Lapaglia testified that Paul told her he had killed someone when he kicked him and broke his neck. Cindy Wallace testified that Paul told her he had a recurring dream about following an old man, taking his money, and beating him so severely his eye came out of the socket. Paul also told Wallace the old man begged for his life, but fearing that he would talk, Paul shot him in the head. Dan Coughlin testified Paul said that he and another Arkansas man had robbed an old man for his vehicle, then shot and killed him. Jason Paul, Paul's older brother, testified that he saw Paul and Ingle driving a car which matched the description of Williams' stolen vehicle on the afternoon of Williams's murder.

Paul left Arkansas shortly after the murder and evaded authorities for a little more than one year. He was arrested in August 1996, and confessed his involvement to law enforcement. Paul's statement to law enforcement was consistent with the accounts given by Paul's acquaintances, except he told law enforcement that only Ingle had shot Williams.

The jury found Paul guilty of both counts, and the same jury then proceeded to the penalty phase of the trial. At the penalty phase, the victim's two daughters and a co-worker gave victim-impact statements. Paul's mother testified about various aspects of Paul's unsettled childhood. Paul also offered a tape-recorded jailhouse conversation in which Ingle implicated two people named "Bob" and "Andy" in Williams' murder.

Following penalty-phase deliberations, the jury unanimously found that Paul was eighteen years or older at the time he committed the offense and that he intentionally aided and

abetted in the killing. The jury also unanimously found several statutory and non-statutory aggravating factors. No jurors found any statutory mitigating factors. Some members of the jury found several non-statutory mitigating factors, which mostly related to Paul's upbringing and family life, and also took into account the fact that Paul was youthful at the time of the offense and had witnessed violent acts in the past. No jurors, however, found that Paul's participation in the offense was minor, that his prior history of criminal conduct was insignificant, that he committed the offense while experiencing emotional disturbance, that Ingle was equally culpable and did not receive the death penalty, or that Paul reversed parental roles with his mother. After balancing these aggravating and mitigating factors, the jury unanimously decided to impose a death sentence.[2]

**C. Direct appeal and Postconviction Challenges**.

On direct appeal, Paul alleged among other claims that:

1) the government took inconsistent actions in his trial and at Ingles trial by arguing that each defendant shot the victim;

2) his rights under the Federal Death Penalty Act and the Constitution were violated because the jury failed to unanimously find and consider the fact that Ingle received a life sentence;

3) the government relied on unadjudicated bad act evidence in the guilt and sentencing phases in violation of his statutory and constitutional rights;

4) the government presented unnecessary and prejudicial evidence regarding the victim's life during the guilt phase; and

5) there was error in the prosecutor's closing argument.

---

[2] The jury was asked to return a unitary verdict on sentence, rather than a recommendation as to each count.

On June 27, 2000, the Eighth Circuit affirmed Paul's convictions and death sentence. *United States v. Paul*, 217 F.3d 989 (8th Cir. 2000). The Supreme Court denied Paul's petition for a writ of certiorari on October 1, 2001, *Paul v. United States*, 534 U.S. 829 (2001), and denied Paul's petition for rehearing. *Paul v. United States*, 534 U.S. 1156 (2002).

On December 17, 2002, Paul filed a timely motion for a new trial and to vacate, set aside, and correct his conviction and sentence under 28 U.S.C. § 2255. Crim. Dkt. 271. In addition to various claims of ineffective assistance of counsel, among Paul's grounds for relief were:

1) the government relied on inconsistent theories at Paul's and Ingle's trials which violated Paul's rights to a fair trial and due process;

2) actual innocence of the murder;

3) the jury failed to unanimously find and consider as a mitigating factor that Ingle was equally culpable for the murder and did not receive a death sentence; and

4) a myriad of conclusory assertions of alleged prosecutorial misconduct only one claim of which Paul identified any purported factual basis—that witnesses were paid for their testimony.

The district court denied Paul's § 2255 motion without an evidentiary hearing and did not issue a certificate of appealability. Crim. Dkt. 322. The United States Court of Appeals for the Eighth Circuit subsequently granted a certificate of appealability on the following issues:

1) Whether trial counsel were ineffective for failing to investigate and present evidence of Paul's mental, medical and physical history;

2) Whether trial counsel were ineffective for failing to investigate and assert Paul's incompetence to stand trial; and

3) Whether Paul had a constitutional right to competence during his federal habeas corpus proceedings and, if so, whether that constitutional right was violated. Crim. Dkt. 351.

The Eighth Circuit affirmed the district court's denial of Paul's § 2255 motion on July 22, 2008. *Paul v. United States*, 534 F.3d 832 (8th Cir. 2008). The Supreme Court denied Paul's petition for a writ of certiorari on October 5, 2009. *Paul v. United States*, 558 U.S. 828 (2009).

On February 7, 2013, Paul, *pro se*, filed a second § 2255 motion raising claims of actual innocence, prosecutorial misconduct, and his death sentence was unfair because his co-defendant received a life sentence. Crim. Dkt. 362; *Paul v. United States*, No. 6:13-cv-06014 (W.D. Ark.). The government responded, Crim. Dkt. 365, and the district court subsequently denied Paul's second § 2255 motion. Crim. Dkt. 392. The Eighth Circuit denied Paul's application for authorization to file a successive § 2255 motion raising his claims of actual innocence—the same claim of innocence he raises in this Court—and ineligibility for the death penalty. *Paul v. United States*, No. 13-2987 (8th Cir. Oct. 1, 2013).

Paul filed the pending Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in this Court on August 20, 2013. Dkt. 1 and 103. Paul contends that his incarceration is illegal based on claims of actual innocence, ineligibility for the death penalty based on his alleged mental illness, and that he is entitled to a new sentencing hearing on his 18 U.S.C. § 924(C) conviction based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). The government moved to dismiss Paul's petition based on lack of jurisdiction because Paul is challenging his conviction and sentence. Dkt. 39. This Court denied the government's motion stating "'[w]hether the proceeding is allowable under [28 U.S.C.] § 2255(e) is a question on the merits; it does not affect subject-matter jurisdiction.' *Sperberg v. Marberry*, 381 Fed. Appx. 602 (7th Cir. 2010) (nonprecedential)." Dkt. 44. This Court subsequently ordered the government to respond to Paul's petition. Dkt 131.

After filing his habeas petition in this Court, Paul filed a *pro se* application in the Eighth Circuit requesting permission to file a successive § 2255 motion attacking his sentence and

raising claims for relief based on actual innocence and ineligibility for the death penalty. Eighth Circuit No. 13–2987. The Eighth Circuit issued its mandate denying Paul's request on October 1, 2013. Paul then filed a subsequent Petition for Extraordinary Writ in the Eighth Circuit on April 9, 2014. Eighth Circuit No. 14–1832. The court denied this petition on April 22, 2014.

Paul then filed a Petition for Other Extraordinary Writ in the Seventh Circuit, No. 16–2220, on May 20, 2016. In this petition, Paul alleged that his detention was illegal and that he was actually innocent of the crimes he was convicted of out of the Western District of Arkansas. The Seventh Circuit denied this petition on May 26, 2016.

On May 25, 2016, Paul filed an application for authorization to file a successive motion under 28 U.S.C. § 2255. Eighth Circuit No. 16–2330. In his application, Paul argued (1) that under *Johnson* the residual clause of § 924(c)(3)(B) is unconstitutionally vague, (2) that the robbery offense the jury was instructed on does not qualify as a crime of violence under the force clause of § 924(c)(3)(A), and (3) he is entitled to a resentencing because his § 924(c) conviction is invalid. On August 5, 2016, after the government responded to Paul's application, the Eighth Circuit denied Paul's request to file a successive § 2255 motion, holding that § 924(c)(3)(B) is not unconstitutionally vague.

In the instant § 2241 habeas corpus petition Paul raises the same arguments that he presented to the trial court and Eighth Circuit in his § 2255 motions and in his applications for leave to file successive § 2255 motions. Dkt. 1 and 130. Paul's § 2241 petition should be denied because the savings clause of § 2255 is not available to him.

## ISSUE

Whether Paul's 28 U.S.C. § 2241 habeas corpus petition must be dismissed pursuant to the "gatekeeping" provision of 28 U.S.C. § 2244(a) or whether, pursuant to the "savings clause" provision of 28 U.S.C. § 2255(e), this Court may consider the merits of Paul's challenge to his convictions and sentence.

## DISCUSSION[3]

### I. PAUL'S § 2241 PETITION MUST BE DISMISSED PURSUANT TO THE "GATEKEEPING" PROVISION OF 28 U.S.C. § 2244(A).

A § 2255 motion is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *Davis v. United States*, 417 U.S. 333, 343 (1974); *Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004). A prisoner is therefore generally limited to bringing only one motion under § 2255. *Id.*

A prisoner may not file a "second or successive" motion unless a panel of the appropriate court of appeals certifies that such motion contains either (1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

However, it is possible, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under 28 U.S.C. § 2241. The "savings clause" in 28 U.S.C. § 2255(e) authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is

---

[3] Because "courts should apply the law of the circuit of conviction in reviewing a sentence or conviction under section 2241," the government's analysis will be based predominately on Eighth Circuit law. *Salazar v. Sherrod*, No. 09–cv–619–DRH–DGW, 2012WL 3779075 at *3 (S.D. Ill. Aug. 31, 2012) (unpublished) (citing cases); *Hernandez v. Gilkey*, 242 F.Supp.2d 549, 554 (S.D. Ill. 2001).

"inadequate or ineffective to test the legality of his detention." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016); *Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010); 28 U.S.C. § 2255(e).

The Supreme Court has not adopted a specific test for when a prisoner may invoke the savings clause of § 2255(e), but several circuits require that the prisoner must (among other elements) demonstrate that he seeks to apply (1) a new rule of law that (2) has been found to apply retroactively. *See e.g.*, *United States ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1062 (8th Cir. 2002); *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998); *Reyes-Requena v. United States*, 243 F.3d 893 (5th Cir. 2001); *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1274 (11th Cir. 2013).

A remedy via § 2255 is "inadequate" when its provisions limiting multiple § 2255 motions prevent a prisoner from obtaining review of a legal theory that establishes the petitioner's actual innocence. *Abdullah v. Hedrick*, 392 F.3d 357, 961–64 (8th Cir. 2004) (following other circuits regarding claims of legal innocence, but not explicitly finding that claims of actual factual innocence may be challenged under § 2241); *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *see also Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015). For example, § 2255 is inadequate or ineffective when the petitioner (1) relies on a new, retroactive case not available when he moved under 28 U.S.C. § 2255 that (2) interprets a statute in a way that (3) decriminalizes the crime of conviction. *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). It is the petitioner's burden to establish that his remedy under § 2255 is inadequate or ineffective. *Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003); *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001); *Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir.1999)).

In order to establish that a remedy is "inadequate or ineffective" under § 2255, a petitioner cannot rely on that fact that there is a procedural barrier to bringing a § 2255 petition, such as a remedy being time-barred, and the petition cannot be based on the assertion that the

claim was previously raised in a § 2255 motion and denied. *See Abdullah*, 392 F.3d at 959; *see also Hill*, 349 F.3d at 1091–92; *United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir.2000) (citations omitted) (§ 2255 will not be viewed as inadequate or ineffective "merely because § 2255 relief has already been denied . . . or because petitioner has been denied permission to file a second or successive § 2255 motion . . . or because a second or successive § 2255 motion has been dismissed . . . or because petitioner has allowed the one year statute of limitations and/or grace period to expire."). Nor is § 2255 inadequate or ineffective, thereby allowing a prisoner to challenge his conviction or sentence in a § 2241 habeas corpus petition, "where a petitioner had any opportunity to present his claim beforehand." *Abdullah*, 392 F.3d at 963; *see also Hill*, 349 F.3d at 1092 (§ 2255 is not an inadequate or ineffective remedy where the petitioner had "at least two opportunities to raise [his] argument before the sentencing court").

In *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015), a death penalty case, the Seventh Circuit made clear that while there is no absolute bar to the use of the § 2255(e) savings clause for *new evidence*, the obstacle in the petitioner's path to earlier relief must have been a "structural problem with section 2255." *Webster*, 784 F.3d at 1125. "In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster*, 784 F.3d at 1136. The test remains whether § 2255 is an inadequate or ineffective remedy, meaning "whether it allows the petitioner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Webster*, 784 F.3d at 1136 (internal quotation marks and citation omitted). *See also Abdullah*, 392 F.3d at 963 (this exception does not apply where the petitioner had an unobstructed procedural opportunity to correct a fundamental defect in his convictions under pre-existing law, or actually asserted a claim in a prior post-conviction motion under § 2255 but was denied relief).

The Seventh Circuit has further explained the scope of *Webster*: "there is nothing in *Webster* to suggest that its holding applies outside the context of new evidence." *Poe*, 834 F.3d at 774. Indeed, as noted in *Poe*, "the *Webster* court took great care to assure that its holding was narrow in scope [stating]− 'it will be the *rare* case where records that *predate* the trial are found much later, despite diligence on the part of the defense, and where those records bear directly on the constitutionality of [the defendant's] sentence.'" *Poe*, 834 F.3d at 774 (quoting *Webster* 784 F.3d at 1140) (first emphasis added).

If a federal prisoner brings a § 2241 petition that does not fall within the scope of the "savings clause," then the district court must dismiss the "unauthorized habeas motion . . . for lack of jurisdiction." *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010).

**A. PAUL CANNOT DEMONSTRATE THAT THERE IS A STRUCTURAL PROBLEM WITH § 2255 THAT PREVENTED HIM FROM SEEKING RELIEF ON HIS CLAIM OF ACTUAL INNOCENCE.**

Paul contends that the Supreme Court's decision in *In re Davis*, 557 U.S. 952 (2009), provides this Court jurisdiction to hear his previously litigated claim of actual innocence. But Paul had an unobstructed procedural opportunity to raise his claim and *Davis* did not change § 2255's savings clause analysis regarding claims of actual innocence. This Court lacks jurisdiction to grant the relief Paul seeks.

1. <u>The savings clause in § 2255(e) is unavailable to Paul</u>.

Paul has raised the same claim of actual innocence in at least two previous § 2255 motions. He initially raised actual innocence in his Motion for a New Trial and to Vacate, Set Aside and Correct Conviction and Death Sentence, and for Relief from Judgment, made pursuant to 28 U.S.C. § 2255 and Rule 33 of the Federal Rules of Criminal Procedure, in the trial court in 2002. Crim. Dkt. Doc. 271 at 78-84. The district court, after thoroughly analyzing the evidence, ruled:

> The Court does not believe that petitioner points to any reasonable basis to support his contention that he is actually innocent of the crime of which he was convicted . . . . Accordingly, this claim is rejected and found to be without merit.

Crim. Dkt. 322, p. 39.

Subsequently, on February 14, 2005, Paul filed a Motion to Reconsider Memorandum and Orders, or in the Alternative to Vacate, Set Aside or Correct Memorandum and Order Denying Relief Pursuant to Rule 59(e) and Rule 60(b). Crim. Dkt. 329. The February 11, 2005 declaration of Trinity Ingle was attached as Exhibit 4 to Paul's motion. Crim. Dkt. 329-5. The district court denied the motion. Crim. Dkt. 333.

Paul continued to raise this issue in subsequent proceedings:

- In the appeal of the denial of his § 2255 motion. *Paul v. United States*, 534 F.3d 832, 838-39 (8th Cir. 2008) (the Eighth Circuit discussed Paul's tendency to exaggerate his "badness" and also discussed Ingle's declaration that exculpates Paul. The Eight Circuit concluded that Paul failed to make a sufficient showing to undermine confidence in the jury's guilty verdict on the capital offense).
- In the February 7, 2013, pro se successive § 2255 motion. Crim. Dkt. 362 (denied for lack of jurisdiction (Crim. Dkt. 392)).
- In his unsuccessful September 9, 2013, motion for permission to file a successive § 2255 motion in the Eighth Circuit where he attached Trinity Ingle's declaration. *Paul v. United States*, No. 13-2987 (8th Cir.).

Paul has availed himself of numerous unobstructed opportunities to raise his claim of actual innocence and therefore is not entitled to another post-conviction action. *Garza v. Lappin*, 253 F.3d 918, 992 (7th Cir. 2001) ("The mere fact that [the] petition would be barred as a successive petition under § 2255 . . . is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would

mean little or nothing."); *Lurie*, 207 F.3d at 1077 (§ 2255 will not be viewed as inadequate or ineffective "merely because § 2255 relief has already been denied . . . or because petitioner has been denied permission to file a second or successive § 2255 motion."). This Court lacks jurisdiction to hear this claim because Paul's claim does not fall within the scope of § 2255's savings clause. *Rice*, 617 F.3d at 807.

2. Freestanding claim of actual innocence.

The savings clause of § 2255(e) does not give Paul an avenue to raise his factual innocence claim. The Eighth Circuit has not explicitly stated that a claim of actual innocence may be challenged under § 2241. *Abdullah*, 393 F.3d at 959–60. As stated above, however, other courts have found that § 2255's savings clause applies to claims of actual innocence when the claim is based on a retroactively applicable Supreme Court decision establishing the petitioner may have been convicted of a nonexistent offense and the claim was foreclosed by circuit law when the petitioner should have raised the claim in a procedurally appropriate manner. *See Reyes-Requena*, 243 F.3d at 904. Here, Paul does not rely on a new rule of law made retroactive to his case. Nor does he claim a procedural impediment that obstructed his raising this claim in a prior proceeding. Assuming he relies on *In re Davis* for his claim, the Supreme Court gave no indication that its ruling in that case has retroactive application. Paul, therefore, fails to demonstrate that he meets § 2255's savings clause requirements.

Paul contends *In re Davis* established the existence of freestanding actual innocence claims. It did not. *In re Davis* dealt with a state capital prisoner's habeas petition filed directly with the Supreme Court seeking to invoke that court's original jurisdiction. Davis argued that he was "actually innocent," pointing to recantations by seven of the State's witnesses. The Supreme Court took the extraordinary step of remanding the petition for an evidentiary hearing to "receive

testimony and make findings of fact as to whether evidence that could not have been obtained at the time of trial clearly establishes petitioner's innocence."

As Paul notes, *In re Davis* involves an original writ of habeas corpus. Subsequently, the Supreme Court in *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), held:

> . . . actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S., at 329, 115 S. Ct. 851; *see House*, 547 U.S., at 538, 126 S. Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met).

The federal courts have subsequently interpreted *McQuiggin* to apply only to a petitioner's initial habeas petition. *See Gage v. Chappell*, 793 F.3d 1159 1169 (9th Cir. 2015); *Candelario v. Warden,* 592 Fed. Appx. 784, 785 (11th Cir. 2014); *In re Warren,* 537 Fed. Appx. 457, 458 (5th Cir. 2013).

The Supreme Court has recognized a limited "actual innocence" exception to certain procedural bars to habeas review. Under the exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ [of habeas corpus] even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *McQuiggin*, 133 S. Ct. at 1931 ("In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief.") This exception is grounded in the equitable discretion habeas courts possess to see that constitutional errors do not result in the incarceration of innocent persons. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). But the Court has been clear that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare" and the exception only

applies in limited circumstances: "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Paul fails to proffer a compelling argument that his "new" evidence makes it more likely than not that no reasonable juror would have convicted him. *Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir. 1996). First, as stated above, this evidence—the Ingle declaration—is not new. Paul has presented this declaration to both the trial court and the Eighth Circuit in unsuccessfully litigating this actual innocence claim. Second, Ingles's declaration does not establish that it is more likely than not that no reasonable juror would have convicted him. "Experience has shown, however, that such affidavits are to be treated with a fair degree of skepticism." *Herrera*, 506 U.S. at 424.

The factual predicate of Paul's claim—that the murder was committed by Ingle with no involvement by Paul—could have been discovered previously. Ingle was a codefendant, so his physical participation in the murder was known by defense counsel prior to trial. More importantly, the declaration does not explain the strong testimony of several of Paul's acquaintances that he confessed to his involvement in the murder along with corroborating testimony by other witnesses. The declaration also fails to square with the jury's finding that Paul was more culpable than Ingle, because there was evidence that Paul and not Ingle shot the victim. Paul cannot possibly satisfy his burden that Ingle's declaration is of such convincing evidence that no reasonable factfinder could have found him guilty.

Likewise, Paul's contention that there are inconsistencies between the testimony surrounding Paul's purported statements and the physical evidence were presented in Paul's original § 2255 motion. Crim. Dkt. 271, p. 6, 8-10, 81-82, 309-310. Also, his claim that witnesses were in line for a monetary reward in exchange for their cooperation and the fact that

Kris Rogers eventually did receive a reward were presented in Paul's original § 2255 motion. *Id*. at 123, 277). The district court considered these claims and as stated earlier concluded there was no merit to Paul's claim of actual innocence. (Crim. Dkt. 322 at 22, 36, 39).

Paul also misapprehends *In re Davis's* significance to his case. In *In re Davis*, the Supreme Court took the extraordinary step of remanding a state inmate's petition in a capital case to the district court to conduct an evidentiary hearing when seven witnesses recanted their trial testimony. Here, Paul only submits a 2005 declaration from his co-defendant. This declaration fails to answer the strong evidence presented at trial regarding Paul's inculpatory statements admitting to the murder and his subsequent actions. He has failed to present extraordinary circumstances warranting this Court's disregard for the Eighth Circuit's previous decisions denying a successive § 2255 motion on this claim.

**B. PAUL IS NOT ENTITLED TO RELIEF ON HIS CLAIM THAT SEVERE MENTAL ILLNESS RENDERS HIM INELIGIBLE FOR THE DEATH PENALTY.**

Paul contends that he is ineligible for the death penalty based on his claim that he is severely mentally ill. Relying on *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Roper v. Simmons*, 543 U.S. 551 (2005), Paul claims that the Eighth Amendment prohibits the execution of persons with severe mental illness. He argues that his claim is cognizable under § 2241 because his current mental illness did not exist at the time of his original § 2255 motion and has significantly progressed only after postconviction relief had been denied. Paul could have raised this claim in earlier proceedings, thus § 2241 is unavailable to him and this Court lacks jurisdiction to grant relief. Even assuming § 2241 is available to Paul, he is not entitled to relief because the Supreme Court has not recognized severe mental illness as a bar to execution.

1. <u>Paul had an unobstructed procedural opportunity to raise this claim</u>

As a threshold matter, Paul failed to raise this claim in his direct appeal or in his § 2255 motion. He argues that he could not have raised this claim during prior proceedings because he

allegedly was in the beginning stages of Schizophrenia at the time of trial and his current level of mental illness did not exist until after relief was denied in his § 2255 appeal. But there was nothing obstructing Paul from raising this issue during his post-conviction proceedings—according to Paul, he was suffering from severe mental illness at the time of trial, albeit in the beginning stages. The new evidence did not predate the trial. *Poe*, 834 F.3d at 774. Paul therefore had unencumbered opportunities to receive a decision on the merits—his failure to do so does not render § 2255 inadequate or ineffective. *Potts v. United States*, 210 F.3d 770 (7th Cir. 2000) ("The essential point is that a prisoner is entitled to one unencumbered opportunity to receive a decision on the merits.") As such, this Court lacks jurisdiction to entertain this claim. *Abdullah*, 392 F.3d at 959.

Paul argues that new evidence from mental health experts provides an opening to allow his claim to be heard under § 2241. He claims that review under § 2241 is the only way under which he can obtain review of this issue. But other than arguing that his mental evidence worsened since his post-conviction proceedings, Paul offers no argument that there was some kind of structural problem with § 2255 rendering it inadequate or ineffective. Because Paul's mental illness was present at trial, and during his post-conviction proceedings, he had "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his . . . sentence." *In re Davenport*, 147 F.3d at 610–12. This Court lacks jurisdiction to grant relief.

Moreover, Paul's argument that § 2255's savings clause allows him to pursue this claim in a § 2241 petition is without merit. Citing *Webster*, Paul contends that § 2241 is the only avenue in which to test the fundamental legality of his death sentence. *Webster* does not assist Paul. In *Webster*, the Seventh Circuit held that "there is no categorical bar against resort to section 2241 in cases where new evidence would reveal that the Constitution categorically

prohibits a certain penalty." 784 F.3d at 1139. Paul's "new evidence," however, does not reveal that the Constitution categorically prohibits his death sentence. As stated below, the Supreme Court has never recognized severe mental illness as a per se bar to execution.

2. Even if § 2241 is available, Paul is not entitled to relief

Paul argues that his mental illness renders him ineligible for the death penalty. He contends that the Supreme Court decisions in *Atkins* (prohibiting the execution of the intellectually disabled) and *Roper* (prohibiting the execution of juveniles) apply to individuals suffering severe mental illness. In addition, Paul relies on "evolving standards of decency," resolutions of private mental health and legal organizations, and state court opinions to attempt to demonstrate that the severely mentally ill are similar to the intellectually disabled and those under the age of 18. These arguments have overwhelmingly been rejected by other federal courts, and the Supreme Court has never held that the severely mentally ill are exempt from the death penalty.

At the outset, it is clear and undisputed that the Supreme Court has not recognized mental illness as a *per se* bar to execution. *See Mays v. Stephens*, 757 F.3d 211, 219 (5th Cir. 2014) (holding neither *Roper* nor *Atkins* created a new rule of constitutional law making the execution of mentally ill persons unconstitutional); *Franklin v. Bradshaw*, 695 F.3d 439, 455 (6th Cir. 2012) (noting absence of case law extending *Atkins* to prohibit the execution of those with mental illnesses); *Baird v. Davis*, 388 F.3d 1110, 1114 (7th Cir. 2004) (recognizing Supreme Court's exemptions from execution for the intellectually disabled and minors, but that "it has not yet ruled out the execution of persons who kill under a mental illness"); *Runyon v. United States*,

228 F. Supp. 3d 569, 647–49 (E.D. Va. 2017).[4] Indeed, in *Atkins*, the Supreme Court expressly limited its holding to the intellectually disabled. *Atkins*, 536 U.S. at 320 ("[Offenders who are not mentally retarded] are unprotected by the exemption and will continue to face the threat of execution.").

Nor do the "evolving standards of decency" command that the Supreme Court's reasoning in *Atkins* or *Roper* should be extended to insulate from capital punishment those with mental illness. *See Thacker v. Workman*, Case No. 06-CV-0028, 2010 WL 3466707, *23-24 (N.D. Okla. Sept. 2, 2010) (declining the petitioner's "invitation to extend the Supreme Court's prohibition on executions of mentally retarded persons and minors to person with mental health issues based on 'evolving standards of decency'"). Indeed, Paul points to no "objective indicia of society's standards," *Atkins*, 536 U.S. at 312, indicating that modern sensibilities favor such a prohibition on subjecting the mentally ill to capital prosecution. *See id*. ("Proportionality review under those evolving standards should be informed by objective factors to the maximum possible extent." (internal quotations omitted)); *Roper*, 543 U.S. at 563 (holding same).

The clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures. *Atkins*, 536 U.S. at 312. For example, at the time *Atkins* was handed down, the Court tallied that 14 states prohibited the death penalty outright, 18 states plus the federal government prohibited imposition of the death penalty upon mentally retarded individuals, and three more states had similar bills pending. *Id*. at 315; *see also id*. ("It is not so much the number of these States that is significant, but the consistency of the direction of change."). Here, however, Paul has not cited, and the United States has not

---

[4] Albeit in a much different context, it is worth noting that the Supreme Court has recognized that the differences between the mentally retarded and the mentally ill permit states to treat them differently. *See Heller v. Doe*, 509 U.S. 312, 321-22 (1993).

found, a single legislative act prohibiting the imposition of capital punishment upon individuals who displayed mental illness at the time they committed a capital offense, other than, of course, those who satisfy the time-tested defense of insanity.

Likewise, several states' high courts have refused to recognize a constitutional bar to imposing capital punishment upon mentally ill individuals. In fact, the wave of post-*Atkins* authority from state courts demonstrates that the national consensus is *against* an absolute bar to capital punishment for the mentally ill. *See People v. Hajek*, 324 P.3d 88, 173-74 (Cal. 2014) (holding serious mental illness does not necessarily negate moral responsibility for killing and declining "to say that executing a mentally ill murderer would not serve societal goals of retribution and deterrence" ); *State v. Dunlap*, 313 P.3d 1, 35-36 (Idaho 2013) (joining several state and federal courts "in holding that a defendant's mental illness does not prevent imposition of a capital sentence"); *Malone v. State*, 293 P.3d 198, 216 (Okla. Crim. App. 2013) ("We expressly reject that the *Atkins* rule or rationale applies to the mentally ill."); *Mays v. State*, 318 S.W.3d 368, 379 (Tex. Crim. App. 2010) (holding prohibition under *Atkins* against execution of mentally retarded as cruel and unusual punishment did not extend to a mentally ill defendant); *Dotch v. State*, 67 So.3d 936, 1006 (Ala. 2010) ("Under constitutional guidelines, in order to be exempt from the imposition of the death penalty, a defendant must meet the definition of mentally retarded or the definition of legal insanity . . . and this Court will not extend or expand the constitutional prohibitions against the application of the death penalty in this case.") (citations omitted); *State v. Hancock*, 840 N.E.2d 1032, 1059-60 (Ohio 2006) (holding Eighth Amendment's prohibition against execution of mentally retarded persons did not extend to mentally ill defendant; rather, mental illness was mitigating factor that jury could consider); *Diaz v. State*, 945 So.2d 1136, 1152 (Fla. 2006) (holding that even if petitioner could prove he suffered from mental illness, this fact "would not automatically exempt him from execution as

there is no per se 'mental illness' bar to execution"), *abrogated in part on other grounds by Darling v. State*, 45 So.3d 444 (Fla. 2010);[5] *People v. Runge*, 917 N.E.2d 940, 985-86 (Ill. 2009) (declining to extend *Atkins* or *Roper*, and holding that even a finding of "guilty but mentally ill" does not preclude imposition of the death penalty); *State v. Johnson*, 207 S.W.3d 24, 51 (Mo. 2006) (noting that "federal and state courts have refused to extend *Atkins* to mental illness situations"); *Baird v. State*, 831 N.E.2d 109, 115-16 (Ind. 2005) (holding neither evolving standards of decency, changes in legal landscape, nor development of statewide consensus since petitioner was sentenced to death indicated that death sentence had come to constitute cruel and unusual punishment for persons with mental illness); *Lewis v. State*, 620 S.E.2d 778, 786 (Ga. 2005) (stating defendant failed to "cite any authority that establishes a constitutional prohibition on convicting and sentencing to death a defendant who is competent but mentally ill," and declining to extend the holding of *Atkins*).

Recognizing there is no national consensus in favor of abolishing the death penalty for mentally ill offenders, this Court's inquiry on the merits should stop here. While the Supreme Court has stated that it must also bring its independent judgment to bear on the question of the acceptability of the death penalty under the Eighth Amendment, *Atkins*, 536 U.S. at 312, the Court has never expressed its independent judgment regarding the propriety of imposing capital punishment upon the mentally ill. Thus, this Court would exercise an extraordinary and unprecedented assumption of power to do so in this case. Instead, this Court should leave to Congress the duty of creating new laws. *Atkins*, 536 U.S. at 324 (Rehnquist, C.J., dissenting)

---

[5] The Florida and Indiana Supreme Courts have also rejected equal protection challenges to the imposition of the death penalty upon mentally ill persons because such persons are not similarly situated to persons with mental retardation or persons aged younger than 18 at the time of their crimes. *See Carroll v. State*, 114 So.3d 883 (Fla. 2013); *Matheny v. State*, 833 N.E.2d 454 (Ind. 2005).

(stating it is undeniable that "the democratic branches of government and individual sentencing juries are, by design, better suited than courts to evaluat[e] and giv[e] effect to the complex societal and moral considerations that inform the selection of publicly acceptable criminal punishments").

3. The rationale underlying *Atkins* and *Roper* does not apply to the mentally ill.

Even ignoring the legal deficiencies of Paul's claim, he has not set forth a sufficient basis for this Court to "disagree with the judgment reached by the citizenry and its legislators," *Atkins*, 536 U.S. at 313, as well as the several courts cited above, who have refused to establish a categorical bar to the imposition of capital punishment upon mentally ill individuals who do not meet the criteria of an insanity defense.

In *Atkins* and *Roper*, the Supreme Court held that the justifications for the death penalty (retribution and deterrence) did not apply to the mentally retarded or juveniles because they were generally less morally culpable and less susceptible to deterrence. *See id*. at 319-20; *Roper*, 543 U.S. at 569-70. The *Atkins* Court also stated that the reduced mental capacity of the mentally retarded impermissibly enhanced the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. *Id*. at 320-21 (citing concerns with false confessions, the inability of mentally retarded defendants to assist counsel in presentation of mitigation, that mentally retarded defendants make poor witnesses, that their demeanor may create an impression of lack of remorse, and that evidence of mental retardation may also enhance the likelihood that the jury will find future dangerousness as an aggravating factor).

The Court's rationale underlying its decisions in *Atkins* and *Roper* does not come to bear in the present context. The justifications for capital punishment, to wit: retribution and deterrence, apply with full force to mentally ill persons who do not meet insanity standards. Short of the legally insane, legislatures, courts, and the general public have not recognized the

mentally ill to be "categorically less culpable than the average criminal." *See Atkins*, 536 U.S. at 316. Nor have they recognized the mentally ill to lack the capacity to be deterred. The facts of this case certainly bear on these points. Assuming Paul displayed any form of mental illness at the time of the murder, its manner of execution, as found by the jury, required substantial planning and premeditation, and was not impulsive or the product of some diminished ability to understand or process the situation. Rather, the murder of Sherman Williams, and Paul's subsequent actions to conceal his actions, required planning and deliberate conduct. This is precisely the type of conduct and thinking that deserves the ultimate punishment and that is intended to be deterred with the federal death penalty.

What is more, classifying a person as mentally ill for the purpose of providing a blanket exemption to capital punishment is fundamentally different from classifying juveniles or the mentally retarded. A person is either under the age of 18 or he is not. He is either mentally retarded or he is not. Mental illness, on the other hand, is subject to varying types and degrees of illness. Even if mental illness is present, there must also be a question of how that illness affected the offender's ability to understand the wrongfulness of his actions or to conform his conduct to the law. Further, mental illness is, in most instances, treatable through medications and/or counseling therapy.

The differences between mentally ill and non-mentally ill offenders, unlike the differences between juvenile and adult offenders, are not "too marked and well understood" to allow a mentally ill person to be sentenced to death despite purportedly reduced culpability. *Roper*, 543 U.S. at 572-73. Further, given the need for individualization in capital sentencing, it would be arbitrary and unnecessary to adopt a categorical rule barring imposition of the death penalty upon the mentally ill. This Court should not agree to establish this new and ill-defined category of murderers who would receive a blanket exemption from capital punishment without

regard to the individualized balance between aggravation and mitigation in a specific case. *See Hancock*, 840 N.E.2d at 1059-60. To do so would, in a great number of cases, turn over the determination of the appropriateness of capital punishment to mental health professionals of varying qualifications and biases, and leave the sound judgment of juries as an afterthought.

4. Other remedies are available.

None of this is to say that individuals with severe mental illness in Paul's procedural context are without recourse. The Supreme Court has held that the Eighth Amendment prohibits the government from carrying out a sentence of death upon a prisoner who is insane. *Ford v. Wainwright*, 477 U.S. 399, 409-10 (1986); *see also* 18 U.S.C. § 3596(c) ("A sentence of death shall not be carried out upon a person who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person."). This prohibition applies despite a prisoner's earlier competency to be held responsible for committing a crime and to be tried for it.[6] *Panetti v. Quarterman*, 551 U.S. 930, 934 (2007). Lower federal courts, however, have refused to extend this rule to mentally ill individuals who do not satisfy the rather strict competency to be executed standard set forth in *Ford*. *See, e.g., Ferguson v. Sec'ty, Fla. Dept. of Corrections*, 716 F.3d 1315 (11th Cir. 2013); *Green v. Thaler*, 2012 WL 4800431 (5th Cir. 2012); *Bedford v Bobby*, 645 F.3d 372 (6th Cir. 2011).

In sum, neither *Atkins*, nor *Roper* shield mentally ill individuals from capital punishment. Nor does the Constitution or any statute.

---

[6] Paul moved for a determination of his mental competence to stand trial on November 26, 1996, (Crim. Dkt. 57) and, after receiving the government's mental status report, stipulated to his competency. Crim. Dkt. 148. Based on the parties' stipulation, the trial court determined that Paul was competent to stand trial. Crim. Dkt. 162.

### C. THIS COURT LACKS JURISDICTION TO ENTERTAIN PAUL'S ACTUAL INNOCENCE CLAIM REGARDING HIS § 924(C) CONVICTION.

Paul argues he is actually innocent of his § 924(c) conviction, and thus his death sentence, because the residual clause in § 924(c)(3)(B) suffers from the same constitutional infirmity identified in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (finding the residual clause of the Armed Career Criminal Act ("ACCA") unconstitutionally vague). Based on this contention, Paul also argues that he is entitled to resentencing on his murder conviction. He unsuccessfully raised these claims just last year in an application for authorization to file a successive § 2255 motion in the Eighth Circuit. Because *Johnson* does not apply to Paul's conviction, the savings clause of § 2255 is not available to him. Even assuming § 2241 were available, this is not the extraordinary case in which a successful claim of actual innocence can be made.

Paul was convicted of murder, while aiding and abetting another, in violation of 18 U.S.C. §§ 2 and 1111(a), and for knowing use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Crim. Dkt. 233, 234. The ACCA did not apply to his convictions and sentencing.

As a threshold matter, Paul's claims here hinge on whether *Johnson* applies to § 924(c)(3)(B). In *Johnson*, the Supreme Court held that the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B), "denie[d] fair notice to defendant's and invite[d] arbitrary enforcement by judges." 135 S. Ct. at 2557. The portion of the ACCA that the Court found unconstitutionally vague defined "violent felony" to include an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id*. at 2555–56 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

At issue in the instant case is the definition of crime of violence in § 924(c), which states:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and
> . . . .
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

By their own terms, these two statutory provisions are, obviously, not identical and contemplate different levels of risk and causation.

Both *Johnson* and *Welch* make clear they are limited to the ACCA's residual clause. The majority opinion in *Johnson* stated, "The Government and the dissent point out that dozens of federal and state criminal laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' suggesting that to hold the residual clause [of the ACCA] unconstitutional is to place these provisions in constitutional doubt. Not at all." *Johnson*, 135 S. Ct. at 2561 (internal citation omitted). The Court explained that none of the cited laws "links a phrase such as 'substantial risk' to a confusing list of examples." *Id*. Indeed, one of "two features" in the ACCA residual clause that "conspired" to make it vague was its connection to four enumerated crimes: burglary, arson, extortion, and crimes involving the use of explosives. *Id*. at 2558. The language in § 924(c)(3)(B) does not include such a list. *See United States v. Taylor*, 814 F.3d 340, 378 (6th Cir. 2016) (rejecting vagueness challenge to § 924(c) because *Johnson* "stressed that its reasoning did not control other statutes that refer to predicate crimes").

*Welch* reaffirmed this point, emphasizing that *Johnson* "cast no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages in a particular occasion.'" 136 S. Ct. at 1261. *Welch's* narrow holding is only that *Johnson* is retroactive in ACCA cases. Therefore, *Welch* offers no support to Paul's argument that *Johnson* applies to § 924(c)(3)(B).

The Eighth Circuit, following the Second and Sixth Circuits, has held that *Johnson* does not render the residual clause in § 924(c)(3)(B) unconstitutionally vague. *United States v. Prickett*, 839 F.3d 697 (8th Cir. 2016). In *Prickett*, the court found that several factors distinguish the ACCA residual clause from the residual clause in § 924(c)(3)(B). The court found that the statutory language in § 924(c)(3)(B) is distinctly narrower "in that it deals with physical force rather than physical injury." *Id*. at 699 (quoting *United States v. Taylor*, 814 F.3d 340, 376 (6th Cir. 2016). In addition, the court found that the ACCA's text, unlike § 924(c), is linked by the word "otherwise" to four enumerated and diverse crimes that sowed confusion when attempting to interpret "serious potential risk." *Id*. Finally, the court found that the Supreme Court was clear in limiting its holding to cases applying the ACCA residual clause. *Id*. at 700 (citing *Taylor*, 814 F.3d at 376).

1. <u>Paul had an unobstructed procedural opportunity to raise his *Johnson* claim</u>

Paul raises the same *Johnson* claim he presented in his petition to file a second or successive § 2255 motion. The Eighth Circuit reviewed, considered, and ultimately rejected his arguments. *See Judgment*, *Paul v. United States*, No. 16-2330 (8th Cir. Aug. 5, 2016); *Government's Response to Application for Authorization to File a Successive Motion Under § 2255*, *Paul v. United States*, 16-2330 (8th Cir. Jul. 7, 2016). In determining that Paul failed to make a *prima facie* showing that *Johnson* applied to him, *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997) ("By 'prima facie showing' we understand ... simply a sufficient showing of possible merit to warrant a fuller exploration by the district court."); *Donnell v. United States*, 826 F.3d 1014, 1015 (8th Cir. 2016) (same), the Eighth Circuit, citing *Prickett* and *Donnell*, found that *Johnson* did not apply to § 924(c)(3)(B).

Because Paul's legal theories regarding *Johnson* were considered by the Eighth Circuit, and he failed to make even a *prima facie* showing that *Johnson* applied in his circumstances, the

savings clause is not available to Paul. He had an unobstructed procedural opportunity, took advantage of that opportunity, and therefore is not entitled to another post-conviction action. *Garza v. Lappin*, 253 F.3d 918, 992 (7th Cir. 2001) ("The mere fact that [the] petition would be barred as a successive petition under § 2255 . . . is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing."); *Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999) ("Significantly, the § 2255 remedy is not considered inadequate or ineffective simply because § 2255 relief has already been denied, or because the petitioner is procedurally barred from pursuing relief under § 2255, or because the petitioner has been denied permission to file a second or successive motion to vacate."); *United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000) (same).

2. <u>Paul fails to show that *Johnson* interprets § 924(c) in a way that decriminalizes his convictions</u>

Even if this Court found that Paul had no unobstructed opportunity to raise his *Johnson* claim earlier, he is entitled to no relief because he fails to show that he is actually innocent of the crimes of which he was convicted as *Johnson* does not apply to him.

As stated above, the Eighth Circuit has held that § 924(c)(3)(B) (the residual clause) is not unconstitutionally vague. *Prickett*, 839 F.3d at 699–700. Paul's claim, therefore, is foreclosed. Because he fails to establish a theory that supports a non-frivolous claim of actual innocence, *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003), Paul cannot use § 2241 for relief.

**CONCLUSION**

For all of the foregoing reasons, the Respondents respectfully urge the Court to dismiss Paul's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, with prejudice, for lack of jurisdiction.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By: s/ Jeffrey A. Zick
Jeffrey A. Zick
Attorney
U.S. Department of Justice, Criminal Division
1331 F. Street, NW, Sixth Floor
Washington, D.C. 20530
Telephone: (202) 616-3942
E-mail: Jeffrey.Zick@usdoj.gov

By: s/ James R. Wood
James R. Wood
Chief, Appeals Division
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
E-mail: Bob.Wood@usdoj.gov

CERTIFICATE OF SERVICE

I certify that on September 28, 2017, a copy of the foregoing Return to Order to Show Cause was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system:

Shawn Nolan
Federal Community Defender Office
For the Eastern District of Pennsylvania
Shawn_Nolan@fd.org

Peter Williams
Federal Community Defender Office
For the Eastern District of Pennsylvania
Pete_Williams@fd.org

By: s/ Jeffrey A. Zick
Jeffrey A. Zick
Attorney
U.S. Department of Justice, Criminal Division
1331 F. Street, NW, Sixth Floor
Washington, D.C. 20530
Telephone: (202) 616-3942
E-mail: Jeffrey.Zick@usdoj.gov