IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTICT OF INDIANA

| | | |
|---|---|---|
| JEFFREY WILLIAM PAUL, | : | CIVIL ACTION<br>(Capital Habeas Corpus) |
| Petitioner, | : | 2:13-CV-00304-WTL-WGH |
| V. | : | |
| SUPERINTENDENT, USP-Terre Haute,<br>UNITED STATES OF AMERICA, | : | **Hon. William T. Lawrence**<br>**United States District Judge** |
| | : | **Filed Under Seal** |
| Respondents. | : | |

**REPLY IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

LEIGH SKIPPER
Federal Defender
SHAWN NOLAN
Chief, Capital Habeas Unit
PETER WILLIAMS
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
215-928-0520

Counsel for Petitioner

Dated: April 23, 2018

## PRELIMINARY STATEMENT

Petitioner Jeffrey William Paul shall be referred to as Petitioner, Mr. Paul, or, when discussed in conjunction with other members of the Paul family, Jeffrey. Respondents shall be referred to as the Government. The Government's September 28, 2017 Response shall be cited as "GR" followed by the relevant page number. Citations to witness declarations and affidavits shall be referred to as "Dec." and "Aff.," respectively, followed by the name of the relevant witness. Citations to expert reports shall be referred to as "Report," followed by the name of the expert, the date, and the page number. Citations to Petitioner's November 7, 2016 Appendix shall be referred to as "A" followed by the relevant page number.

The transcript from Petitioner's trial and § 2255 level proceedings shall be cited as "Tr.," followed by the relevant date and page number. Attorneys Lynn Williams and Steven Oliver, who represented Petitioner at trial, shall be referred to collectively as "trial counsel." Attorneys Robert McGlasson, Sean O'Brien, and Jennifer Merrigan, who represented Petitioner during his § 2255 proceedings shall be referred to collectively as "§ 2255 counsel." All other citations are either self-explanatory or will be explained.

All emphasis in this Petition is supplied unless otherwise indicated.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ i
TABLE OF CONTENTS ........ ii
PROCEDURAL HISTORY ........ 1
ISSUES APPLICABLE TO MULTIPLE CLAIMS ........ 2
A. Scope of 28 U.S.C. § 2241 Review. ........ 2
B. Precedent Governing Mr. Paul's § 2241 Petition. ........ 7
CLAIMS FOR RELIEF ........ 7
I. PETITIONER IS ENTITLED TO RELIEF BECAUSE HE IS ACTUALLY INNOCENT OF MURDER. ........ 7
A. Introduction. ........ 7
B. Petitioner's Innocence Claim Is Appropriate for § 2241 Proceedings. ........ 8
C. Petitioner's Claim of Innocence Is Meritorious. ........ 10
II. PETITIONER IS ENTITLED TO RELIEF UNDER 28 U.S.C. § 2241 BECAUSE HIS SEVERE MENTAL ILLNESS RENDERS HIM INELIGIBLE FOR THE DEATH PENALTY. ........ 13
A. Introduction. ........ 13
III. PETITIONER'S CONVICTION UNDER § 924(C) SHOULD BE VACATED. PETITIONER IS ENTITLED TO A NEW PENALTY PHASE. ........ 16
A. Introduction. ........ 16
B. Mr. Paul Is Entitled to Relief Because He Has Been Convicted of a Non-Offense and the Trial Court Had No Jurisdiction to Convict Him of § 924(c) and Sentence Him to Death. ........ 18
C. Mr. Paul Is Entitled to Relief under *United States v. Johnson*. ........ 19
1. *Johnson* Applies to § 924(c). The Supreme Court Affirmed Mr. Paul's Position and Repudiated the Government's Arguments in the Recently Issued *Sessions v. Dimaya*. ........ 19
2. *Welch* Supports Petitioner's Claim for Relief. ........ 21
3. The Government's Arguments in *Johnson* Support Petitioner's Claim for Relief. ........ 22
D. Relief Is Appropriate under 28 U.S.C. § 2241. ........ 22
CONCLUSION ........ 25

## PROCEDURAL HISTORY

1. Mr. Paul is a death sentenced inmate currently incarcerated at the United States Penitentiary at Terre Haute ("USP-Terre Haute"). After a jury trial, he was convicted of aiding and abetting another in a homicide and for knowing use of a firearm in relation to a crime of violence under 18 U.S.C. §§ 2, 1111(a), and 924 in the United States District Court for the Western District of Arkansas in connection with the shooting death of Sherman Williams ("decedent") on June 23, 1997. After a contested penalty phase before the same jury, Mr. Paul was sentenced to death on June 25, 1997. His conviction and sentence were affirmed on appeal. *United States v. Paul*, 217 F.3d 989 (8th Cir. 2000) ("*Paul-1*"). Mr. Paul filed a petition for post-conviction relief pursuant to 28 U.S.C. § 2255, which was denied. The denial was affirmed on appeal. *See United States v. Paul*, 534 F.3d 832 (8th Cir. 2008) (*cert. denied* Oct. 5, 2009) ("*Paul-2*").

2. Mr. Paul filed a *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 on August 8, 2013. Dkt. No. 1. On April 18, 2014, Petitioner filed a *pro se* motion requesting that counsel be appointed. Dkt. No. 11. On April 29, 2014, counsel from the Federal Community Defender Office for the Eastern District of Pennsylvania ("FCDO") filed a Motion to Appoint Counsel on Mr. Paul's behalf. Dkt. No. 24. This Court granted the counseled appointment motion, appointed the FCDO to Mr. Paul's case, and directed the FCDO file a counseled amended petition on Petitioner's behalf. Dkt. Nos. 25 and 26.

3. On May 25, 2016, Petitioner, represented by the Federal Public Defender for the District of Delaware, filed an Application for Authorization to File a Successive Motion under 28 U.S.C. § 2255 with the United States Court of Appeals for the Eighth Circuit. Petitioner's application was based on a new rule of constitutional law announced in *Johnson v. United States*,

135 S. Ct. 2551 (2015). On August 5, 2016, the Eighth Circuit denied the application to file a successor.

4. Mr. Paul filed his amended Petition for Writ of Habeas Corpus on October 18, 2016. The Government filed its Response on September 28, 2017. Mr. Paul submits this Reply to the Government's response.

## ISSUES APPLICABLE TO MULTIPLE CLAIMS

5. The Government makes a number of arguments that are applicable to multiple claims for relief to which Petitioner would like to respond. Rather than deal with them repetitively in each claim, Petitioner responds to each of these arguments here.

### A. Scope of 28 U.S.C. § 2241 Review.

6. The Government acknowledges that a federal prisoner is entitled to 28 U.S.C. § 2241 review under the savings clause of 28 U.S.C. § 2255 when the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention," and that the Supreme Court has not adopted a more specific test as to when review under § 2241 (rather than 28 U.S.C. § 2255) is appropriate. GR at 8-9. The Government also acknowledges that § 2255 has been found to be inadequate "when its provisions limiting multiple § 2255 motions prevent a prisoner from obtaining review of a legal theory that establishes the petitioner's innocence." GR at 9. The Government appears to concede that § 2241 review is not confined only to cases involving claims of innocence and refers to *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015). GR at 10-11. *Webster* addressed a case where the petitioner was seeking § 2241 review based on newly discovered evidence – social security records - proffered in support of a claim for relief based on *Atkins v. Virginia*, 536 U.S. 304 (2002). Because Mr. Webster's newly discovered evidence related to a claim attacking the constitutionality of his sentence, this evidence could not have been discovered through due diligence during prior proceedings, and this claim could not be

pursued through successor § 2255 proceedings because it did not aver Petitioner's innocence of the crime, the United States Court of Appeals for the Seventh Circuit authorized proceedings under § 2241. *Webster*, 784 F.3d at 1125-33.

7. Citing *In re Davenport*, 147 F.3d 605 (7th Cir. 1998) and several out of circuit cases,[1] the Government argues that the Seventh Circuit has held that habeas petitioners are only entitled to review under § 2241 if they seek to apply a new rule of law that has been found to apply retroactively. GR at 9. Citing *Poe v. Lariva*, 834 F.3d 770 (7th Cir. 2016), the Government paradoxically concedes that *Webster* permits § 2241 review outside of the retroactivity context, but appears to argue that § 2241 is applicable only in the specific factual scenario presented in *Webster*: cases involving newly discovered evidence which could not have been discovered earlier by diligent counsel. GR at 10-11. The Government further submits that Petitioner should be denied relief because "a petitioner cannot rely on the fact that there is a procedural barrier to bringing a § 2255 petition, such as a remedy being time-barred, and the petition cannot be based on the assertion that the claim was previously raised in a § 2255 motion and denied." *Id.* at 9.

8. The Government errs on all counts. "The essential function [of § 2241] is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Davenport*, 147 F.3d at 609 (internal citations omitted). Although the Seventh Circuit *acknowledges* that § 2241 relief should be granted when the habeas petitioner is seeking to apply a new retroactive rule of law, the Seventh Circuit does not *require*

[1] The out of circuit cases cited are *United States ex. rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059 (8th Cir. 2002); *Reyes-Requena v. United States*, 243 F.3d 893 (5th Cir. 2001), and *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253 (11th Cir. 2013).

that such a condition be met in order to obtain § 2241 review.[2] Indeed, the only requirement for § 2241 eligibility outlined by the Seventh Circuit is that "there must be some kind of structural problem with section 2255 before section 2241 becomes available. In other words, something more than a lack of success with a section 2255 motion must exist before savings clause is satisfied." *Webster*, 784 F.3d at 1136. In *Webster* and *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001), the Seventh Circuit granted § 2241 review because the habeas petitioners relied on new factual developments (*Webster*) and the potential creation of a new treaty obligation (*Garza*), not a new retroactive legal rule. *See Webster*, 784 F.3d at 1139 (granting § 2241 review because of new evidence relating to a claim for relief under *Atkins v. Virginia*, 536 U.S. 304 (2002)); *Garza*, 253 F.3d at 923 (granting § 2241 review because of an intervening decision from an international tribunal declaring Mr. Garza's death sentence improper). Finally, *Poe v. Lariva*, 834 F.3d 770 (7th Cir. 2016), which was relied on by the Government, describes a new retroactive rule as "[o]ne circumstance under which this court has permitted resort to § 2241," not the only circumstance. *Id.* at 772.

9. Moreover, although the claim for relief in *Webster* involved new evidence, *Webster* did not confine the grant of § 2241 review to the specific matrix of facts before it. To the contrary, as stated *supra*, *Webster* held that the only requirement for § 2241 jurisdiction was that there had to be "some kind of structural problem with section 2255 before section 2241 becomes available." *Webster*, 784 F.3d at 1136.

---

[2] *Id.* The out of circuit authority provides no support for the Government's position either. *Perez*, 286 F.3d 1059, does not confine § 2241 review to claims relying on cases rendered retroactive under Supreme Court law, but states that a claim relying on a new non-retroactive rule does not, without more, entitle the petitioner to § 2241 review. *Id.*at 1059-60. *Bryant*, 738 F.3d 1253, and *Reyes-Requena*, 243 F.3d 893, which require retroactivity, are squarely contradicted by Seventh Circuit law regarding the availability of § 2241 review as discussed *supra*.

10. Consistent with the standard for § 2241 review outlined in *Webster*, *Garza* relied on a newly issued decision from an international tribunal, not new evidence. Because this development supported Mr. Garza's claim that his death sentence was invalid and § 2255's procedural requirements prevented Mr. Garza from filing a successor, the Seventh Circuit granted § 2241 review. *Garza* 253 F.3d at 923. *Webster* discussed *Garza* with approval, cited it as an "illustration of a situation in which petitioner was entitled to attack a sentence even though he was not making a claim of actual innocence of the offense," and found that Mr. Garza's procedural bind constituted the "something more than a lack of success with a section 2255 motion" that was necessary for Mr. Garza to receive review under § 2241. *Id.* at 1137.

11. The Government's reliance on *Poe*, 834 F.3d 770, to minimize the importance of *Webster* is misplaced. *Poe* acknowledged that *Webster*'s holding stemmed from the impossibility of Mr. Webster's position: "the defendant could not have used § 2255 at the time of [*Atkins*] because he did not have the new evidence of his social security records … and he could not use the new evidence when discovered because" it did not constitute "evidence of innocence of the offense." *Id.* at 774. In *Poe*, the habeas petitioner filed a claim for relief under § 2241 when he should have pursued the same claim under § 2255, could easily have filed a timely § 2255 petition on this issue, but waited until the statute of limitations had run to request relief under § 2255. *Id.* at 774 ("In contrast to *Webster*, Poe was unable to bring his *Richardson* claim because *he* filed the wrong petition under § 2241 and his subsequent petition under § 2255 was untimely") (emphasis in original). Here, Mr. Paul raises three claims, none of which could have been raised during his § 2255 proceedings and all of which would render him ineligible for the death penalty.

12. The Government's argument that Petitioner cannot rely on procedural barriers to § 2255 review in his attempt to invoke § 2241 also fails. Although Petitioner cannot rely on "the mere fact" that § 2255 relief was or would be denied, *Garza*, 253 F.3d at 921, he can rely on the unavailability of § 2255 review in conjunction with "something more" that created "a structural problem with § 2255." *Webster*, 784 F.3d at 1136. In *Garza*, *Davenport*, and *Webster*, the Seventh Circuit based its ruling on the fact that an application to file a § 2255 successor either had been or would be denied coupled with three different structural problems with § 2255. Here, Petitioner does not rely solely on the fact that § 2255 review is unavailable for his claims, but outlines structural problems with § 2255 that have deprived him of "a reliable judicial determination of the fundamental legality of his conviction and sentence." *Webster*, 784 F.3d at 1136.

13. Moreover, the Government ignores the fact that *Webster*, *Garza*, and *Davenport* refer only to challenges to the *imposition* of the conviction and/or sentence under the savings clause. Section 2241 is also available when the habeas petitioner challenges the *execution* of the sentence, rather than the *imposition* of it. *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003); *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998) ("A motion seeking relief on grounds concerning the execution but not the validity of the conviction and sentence … may not be brought under § 2255 and therefore falls into the domain of § 2241"). Here, Petitioner also challenges the *execution* of his death sentence, in addition to the *imposition* of it. *See* Claim I, *infra* (challenging the execution of Petitioner based on his actual innocence); Claim II, *infra* (challenging the execution of Petitioner based on his severe mental illness); Claim III (challenging the execution of Petitioner based on his actual innocence of and conviction of a non-offense under 18 U.S.C. § 924(c)). Accordingly, even assuming, *arguendo*, § 2241 review

was unavailable for challenges to the imposition of Petitioner's death sentence, it would still be available to challenge the execution of that sentence.

**B. Precedent Governing Mr. Paul's § 2241 Petition.**

14. Citing *Hernandez v. Gilkey*, 242 F. Supp. 2d 549 (S. D. Ill. 2001) and *Salazar v. Sherrod*, 2012 U.S. Dist. LEXIS 123903 (S.D. Ill. 2012), the Government argues that Eighth Circuit law must apply to Petitioner's legal claims as he was convicted in the Eighth Circuit. Respondents err. Throughout its review of § 2241 cases, the Seventh Circuit has made no reference to importing precedent from the appellate circuit where the § 2241 petitioner was convicted. To the contrary, it has applied Seventh Circuit precedent on the issues brought to bear in the § 2241 petition. *See Webster*, 784 F.3d at 1142-43 (citing Seventh Circuit decisional law when considering a conviction and sentence originating from the Fifth Circuit); *see also, Garza*, 253 F.3d at 924 (same). And, *Hernandez* and *Salazar* only refer to relying on out of circuit law when considering the substantive claims brought under § 2241. They explicitly rely on Seventh Circuit law when determining the availability of § 2241 review. More fundamentally though, *Hernandez* and *Salazar* are district court decisions, not binding on this Court, and contrary to current Seventh Circuit precedent.

## CLAIMS FOR RELIEF

### I. PETITIONER IS ENTITLED TO RELIEF BECAUSE HE IS ACTUALLY INNOCENT OF MURDER.

15. The claims and factual allegations set forth in all other sections of the Habeas Petition and this Reply are realleged as if set forth entirely herein.

**A. Introduction.**

16. In Claim I, Petitioner avers his innocence. At trial, the Government relied on statements that Petitioner is purported to have made to a number of acquaintances. However, the

witnesses who testified to the inculpatory statements had credibility issues of their own and also made clear that Petitioner was prone to make false claims of his involvement in criminal activity in an attempt to impress others. During Petitioner's § 2255 proceedings, co-defendant Trinity Ingle submitted a sworn declaration which exculpated Petitioner from any involvement in the homicide and claimed full responsibility for killing the decedent. Although counsel for Petitioner proffered Ingle's declaration, Petitioner was denied an evidentiary hearing on all of his post-conviction claims in 2005. As the Supreme Court's jurisprudence on freestanding innocence claims has become more developed since Petitioner's § 2255 proceedings with the issuance of *In re Davis*, 557 U.S. 952 (2009), Petitioner has never had a review of his innocence claim under contemporary standards. Under those standards, Petitioner is entitled to relief from his conviction and death sentence. *See* Habeas Petition at 26-33.

17. The Government argues that there was no structural problem preventing him from pursuing his claim of innocence under Section 2255 and he should be precluded from attempting to pursue his innocence claim in the current proceedings. The Government also argues that there is no freestanding constitutional claim of actual innocence, that the evidence proffered by Mr. Paul could have been presented at trial, and that it would not be sufficient to support a claim of innocence. GR at 11-16.

18. Respondents' arguments lack merit. Petitioner's innocence claim is appropriately filed under Section 2241 as he could not have raised his innocence claim under current standards during prior proceedings. His claim for relief is meritorious and based on evidence that could not have been presented at trial.

**B. Petitioner's Innocence Claim Is Appropriate for § 2241 Proceedings.**

19. Citing *Garza*, 253 F.3d 918 and *United States v. Lurie*, 207 F.3d 1075 (8th Cir. 2000), the Government argues that because Petitioner had raised his innocence in the past, he

"availed himself of numerous unobstructed opportunities to raise his claim of actual innocence and therefore is not entitled to another post-conviction action." GR at 12-13.

20. The Government errs. *Garza*, *Lurie*, and the other decisions governing access to § 2241 do not preclude § 2241 review when relief has been denied in the past, but hold only that federal petitioners may not rely *merely* on the fact that that relief has been denied in § 2255 proceedings. *See* Issues Applicable to Multiple Claims, § A, *supra*; *see also Lurie*, 207 F.3d at 1077-78 (holding that the expiration of § 2255's statute of limitations "does not automatically render § 2255 inadequate or ineffective.").

21. Here, as in *Garza* and *Webster*, Petitioner relies on far more than the mere fact that he was denied relief in prior proceedings. His request for § 2241 is based on the fact that he (1) is actually innocent, (2) relies on an admission from the co-defendant that exculpates Petitioner and could not have been presented at trial, and (3) relies on *Davis*, 557 U.S. 952, which had not been issued when his § 2255 proceedings were pending.

22. Furthermore, the authorities relied upon by the Government only address federal defendants' attempts to address the legality of their convictions and sentences. In addition to being entitled to § 2241 review when § 2255 is inadequate, federal prisoners are entitled to § 2241 review when their claims challenge the *execution* of the sentence rather than the *imposition* of it. *See* Issues Applicable to Multiple Claims, § B, *supra*. In addition to challenging the *imposition* of his conviction and sentence, Petitioner challenges the execution of an innocent defendant as unconstitutional under the 8th Amendment. *See Herrera v. Collins*, 506 U.S. 390, 419 (1993) (O'Connor & Kennedy, JJ., concurring) ("[E]xecuting the innocence is inconsistent with the Constitution … [T]he execution of a legally and factually innocent person would be a constitutionally intolerable event."); *id* at 432 (Blackmun, Souter, & Stevens, JJ., dissenting)

(execution of an innocent person "is at odds with any standard of decency I can imagine"); *see also* Habeas Petition at 27. Accordingly, Mr. Paul is entitled to § 2241 review because he challenges the *execution* of his death sentence in addition to the *imposition* of that sentence.[3]

**C. Petitioner's Claim of Innocence Is Meritorious.**

23. Citing *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013) and *Murray v. Carrier*, 477 U.S. 478 (1986), the Government argues that Petitioner's innocence claim lacks merit because there is no freestanding constitutional claim of actual innocence that was established and made retroactive by the United States Supreme Court.[4] It further contends that Petitioner could have presented the proffered statement from Ingle at trial, and that Petitioner did present it during § 2255 proceedings, but relief was denied after the Section 2255 court "carefully considered" the merits of Petitioner's innocence claim. GR at 13-16.

24. The Government errs for a number of reasons. First, although § 2241 review should be granted when the habeas petitioner puts forward a claim of actual innocence based on a new rule made retroactive by the United States Supreme Court, such a claim is not required for § 2241 jurisdiction to be established. *See* Issues Applicable to Multiple Claims, § A, *supra*.

25. Second, neither Ingle's declaration nor his testimony could have been presented at trial. In his § 2255 proceedings, Petitioner argued that trial counsel were ineffective because they made no attempt to contact Ingle, interview him, and present his testimony at Mr. Paul's

[3] Finally, Respondents' reference to Petitioner's successor litigation in the Western District of Arkansas and the Eighth Circuit is misplaced. The litigation in both of those cases was *pro se* and without the assistance of counsel.

[4] Citing *Gage v. Chappell*, 793 F.3d 1159 (9th Cir. 2015), *Candelario v. Warden*, 592 F. App'x 784 (11th Cir. 2014), and *In re Warren*, 537 F. App'x 457 (5th Cir. 2013), the Government indicates that "federal courts have subsequently interpreted *McQuiggin* to apply only to a petitioner's initial habeas petition." GR at 14. This is also incorrect. The decisions cited only hold that *McQuiggin* does not permit habeas petitioners seeking to file a successor habeas petition under 28 U.S.C. § 2244 to circumvent the requirements of § 2244(b)(2)(B). They have no bearing on the applicability of *McQuiggin* to a habeas petition filed under § 2241.

trial. The Eighth Circuit found that Ingle would not have been available at Petitioner's trial, as at that time:

> Ingle had just been convicted and sentenced to life imprisonment. He was about to commence a direct appeal, in which he argued that his conviction should be reversed, and the case remanded for a new trial … There is scant reason to believe that Ingle, still represented by counsel in his direct appeal, would have waived his rights against self-incrimination and given public testimony that would have ensured his conviction in the event of a new trial.

*Paul-2* at 839.

26. Third, although the Eighth Circuit considered the Ingle declaration in its review of Petitioner's case, it did so in the context of a claim of trial counsel's ineffectiveness, not of actual innocence. Indeed, as Ingle has never testified in Petitioner's case, no finder of fact has ever assessed the credibility of the facts in his declaration. Moreover, neither the § 2255 court nor the Eighth Circuit had the benefit of *Davis* when assessing the viability of Petitioner's innocence claim.

27. Fourth, the § 2255 court did not "carefully consider" Ingle's declaration when it denied relief. As the Government acknowledges, the Ingle declaration was not submitted in connection with his initial § 2255 petition, but in a Motion to Reconsider Memorandum and Orders, or in the Alternative, to Vacate, Set Aside, or Correct Memorandum and Order Denying Relief Pursuant to Rule 59(e) and Rule 60 (b). The § 2255 court's opinion dismissing Petitioner's § 2255 petition did not address the Ingle declaration as it was not before the Court at that time.

28. Even though it was issued after Petitioner had submitted the Ingle declaration, the § 2255 court's June 27, 2005 Order disposing of Petitioner's Rule 59(e) and 60(b) motion did not address the declaration either, holding only: "The arguments and supporting affidavits submitted by petition in support of his current motion to reconsider or vacate raise issues that were

previously addressed by the Court in one way or another and they do not alter the Court's conclusions." Order, *Paul v. United States*, 96-CR-60022 (W. D. Ark. June 27, 2005) (Hendren, U.S.D.J.).

29. Fifth, Respondents' reliance on *McQuiggin* is misplaced. *McQuiggin* held that actual innocence excused procedural default in habeas proceedings as well as violations of the statute of limitations. *McQuiggin*, 133 S. Ct. at 1928. *Carrier* held, *inter alia*, that actual innocence would excuse procedural default. *Carrier*, 477 U.S. at 497. Neither one of these two cases precluded the presence of a substantive constitutional claim of actual innocence. *Id.* On the other hand, *Davis*, which remanded the petitioner's case for an evidentiary hearing and an assessment as to whether "evidence that could not have been obtained at the time of trial clearly establishes petitioner's innocence," *Davis*, 557 U.S. at 952, was implicitly based on the proposition that a substantive claim of actual innocence was viable. *See* Habeas Petition at 27.

30. Sixth, the Government's arguments regarding the strength of Petitioner's proffer cannot be resolved without an evidentiary hearing. *Townsend v. Sain*, 372 U.S. 293, 312-19 (1963) (an evidentiary hearing is appropriate when a habeas petition alleges facts which, if proved, would entitle the petitioner to relief), *overruled in part on other grounds by Kenney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Consistent with *Townsend*, the *Davis* court made no credibility determinations, and instead, remanded Mr. Davis's case to the district court so that it could "receive testimony and make findings of fact as to whether evidence that could not have been obtained at the time of trial clearly establishes petitioner's innocence." *Davis*, 557 U.S. at 952. Here, Petitioner has proffered evidence that, if proved, would establish that he was innocent of the murder. As this would entitle Petitioner to relief, he is entitled to an evidentiary hearing to resolve any factual disputes.

31. Finally, Petitioner's factual proffer is stronger than that in *Davis*. Although Mr. Davis submitted affidavits from seven people who recanted their testimony, there were seven people who directly inculpated Mr. Davis at his trial, six of whom were eyewitnesses to the crime. *In re Davis*, 2010 U.S. Dist. LEXIS 87430, *159-89 (S.D. Ga. Aug. 24, 2010). Mr. Davis proffered more witness recantations because there were more witnesses who inculpated him at trial. Here, the trial presentation against Petitioner involved no eyewitness testimony to the homicide, but only testimony regarding admissions by Petitioner that were acknowledged to be unreliable at the time of trial. *See* Habeas Petition at 4-9, 28. The trial evidence against Petitioner was far less compelling than the trial evidence in *Davis*, and Petitioner has proffered exculpatory eyewitness testimony from the only potential eyewitness who existed: Ingle.

## II. PETITIONER IS ENTITLED TO RELIEF UNDER 28 U.S.C. § 2241 BECAUSE HIS SEVERE MENTAL ILLNESS RENDERS HIM INELIGIBLE FOR THE DEATH PENALTY.

32. The claims and factual allegations set forth in all other sections of the Habeas Petition and this Reply are realleged as if set forth entirely herein.

### A. Introduction.

33. In Claim II, Petitioner avers that he is ineligible for the death penalty because he is severely mentally ill. Born into a family with a multi-generational history of mental illness, Mr. Paul had already manifested mental health symptoms during his adolescence and was in the initial stages of Schizophrenia at the time of his 1997 trial. Since his conviction and sentence, Mr. Paul's mental health has steadily declined to the point that he suffers impairments markedly similar to someone who is intellectually disabled. Accordingly, the Eighth Amendment requires that his sentence of death be vacated and he be resentenced to life. *See* Habeas Petition at 33-42.

34. The Government acknowledges that Petitioner's Eighth Amendment claim is predicated on the progression of his mental illness after his trial, but argues that Petitioner is not

entitled to merits review because he "offers no argument that there was some kind of structural problem with § 2255 rendering it inadequate or ineffective," and that he had "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his … sentence." GR at 17. The Government further contends that Petitioner is not entitled to relief under the Eighth Amendment, that no states have outlawed the execution of the mentally ill, that the rationales of *Roper* and *Atkins* do not apply to the mentally ill, and that Petitioner has other remedies available as he can challenge his competency to be executed. GR at 18-24.

35. The Government errs on all counts. Regarding jurisdiction, Petitioner's mental illness, which was in its early stages at the time of Petitioner's trial in 1997, has progressed significantly after that. *See* Habeas Petition at 14-24 This included periods of severe decline beginning in 2009 and 2013-2014, both of which took place after his § 2255 proceedings had concluded. *Id.* at 41-42. That § 2255 has no mechanism to review a claim such as this, which arose after his § 2255 proceedings had concluded, is a structural deficiency with § 2255 that deprives Petitioner of "a reasonable opportunity to obtain a reliable judicial determination on this claim." *Davenport*, 147 F.3d at 610-12. Moreover, Petitioner is entitled to § 2241 review because this claim relates to the *execution* of the sentence, rather than its *imposition*. *See* Issues Applicable to Multiple Claims, § A, *supra*.

36. The Government's claim that Petitioner is not entitled to Eighth Amendment relief because state legislatures have not established categorical exemption for the severely mentally ill similarly fails. The conduct of state legislatures is only one metric upon which to judge the evolving standards of decency as it relates to eligibility for capital punishment. *See, e.g.,* Habeas Petition at 35-36 (outlining the positions of relevant professional associations on the importance of examining the constitutionality of sentencing the severely mentally ill to death).

37. The Government argues that Petitioner has other remedies available to him because he can challenge his competency to be executed. This is meritless because he cannot currently raise such a challenge. Although *Ford v. Wainwright*, 477 U.S. 399, 409-10 (1986) and *Panetti v. Quaterman*, 551 U.S. 930, 934 (2007), prohibit the execution of incompetent defendants, *Ford*/*Panetti* claims are not ripe until a warrant for the inmate's execution has been issued. *Panetti*, 551 U.S. at 943-47; Dtk. No. 40 (Government confirming that *Ford/Panetti* claims "are not ripe until execution is imminent").

38. Finally, the Government's argument that the rationales behind *Roper* and *Atkins* are inapplicable to Petitioner's claim lacks merit. The Government argues, in essence, that individuals who are mentally ill but were not legally insane at the time of the crime do not have the same vulnerabilities, limitations, and lessened culpability as juveniles or the intellectually disabled, and that a hypothetical defendant's age or the presence or absence of intellectual disability is less difficult to determine than mental illness. GR at 22-24.

39. These arguments are beside the point. Regardless of whether severely mentally ill offenders *as a group* have the same impairments, vulnerabilities, and lack of culpability as juveniles or the intellectually disabled, *Petitioner as an individual* certainly does. Because of his mental illness, he has a diminished capacity to understand the world around him, process information, learn from his mistakes, and assist his legal team at trial in in post-conviction proceedings; and he was vulnerable to both a false conviction and an unjustified death sentence. *See* Habeas Petition at 37-41. *See also, id.* at 9-24 (describing Mr. Paul's mental health impairments). Although varying degrees of mental illness exist in the larger population of the mentally ill, Petitioner's mental illness is severe and longstanding. The Government does not appear to contest any of these points. Furthermore, assuming, *arguendo*, that Ingle's declaration

does not establish Petitioner's innocence, this declaration in conjunction with all of the evidence presented at trial establishes that Petitioner was an impulsive, impaired young man who followed an older, more sophisticated co-defendant. When Petitioner is considered as an individual, the rationales of *Roper* and *Atkins* clearly apply. *See* Habeas Petition at 40.

## III. PETITIONER'S CONVICTION UNDER § 924(C) SHOULD BE VACATED. PETITIONER IS ENTITLED TO A NEW PENALTY PHASE.

40. The claims and factual allegations set forth in all other sections of the Habeas Petition and this Reply are realleged as if set forth entirely herein.

### A. Introduction.

41. In Claim III, Petitioner avers that his 18 U.S.C. § 924(c) conviction and his death sentence should be vacated pursuant to *Johnson v. United States*, 1325 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court ruled that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague because it required courts to envision conduct that a crime involves in the "ordinary case" and "to judge whether that abstraction presents a serious potential risk of injury" in order to determine if it met the definition of a violent felony. *Johnson*, 135 S. Ct. at 2557. Petitioner was convicted of using or carrying a firearm while committing a crime of violence in violation of § 924(c). Section 924(c) also contains a residual clause that is similar to the residual clause in ACCA and requires the same ordinary case and risk analyses that the Supreme Court found to be invalid in *Johnson*. As Petitioner's § 924(c) conviction cannot be sustained without the residual clause, this conviction should be vacated. *See* Habeas Petition at 46-57.

42. Petitioner also avers that his § 924 conviction and death sentence should be vacated because he was convicted of conduct that does not constitute an offense under § 924(c). A § 924(c) violation does not occur unless the crime of violence in question is a crime "for

which the person [defendant] may be prosecuted in a court of the United States." § 924(c)(1)(A). While the crime of violence referred to in Mr. Paul's indictment was listed as a "robbery," he was not charged under any robbery statute at all, let alone a "robbery" that could be "prosecuted in a court of the United States." The trial court issued jury instructions that did not match any federal or Arkansas state robbery statute. Accordingly, the indictment did not allege, and the jury did not find, that Petitioner possessed the firearm while committing a crime of violence that could be prosecuted in federal court. *See* Habeas Petition at 52-57.

43. The Government argues that *Johnson* does not apply to § 924(c), was limited to ACCA alone, and left intact laws such as § 924(c) where, unlike ACCA, the residual clause was not connected to a "confusing" list of enumerated offenses. GR at 25-26. The Government also argued that *Welch v. United States*, 136 S. Ct. 1257 (2016), which confirmed that *Johnson* was retroactive, only held *Johnson* to be retroactive to ACCA and not any other stautes. *Id.* Citing the Eighth Circuit's denial of Petitioner's application for permission to file a successor § 2255 petition based on his *Johnson* claim, determination that *Johnson* was confined to ACCA, reliance on the "confusing" list of offenses in ACCA referred to above, and reliance on the fact that § 924(c) refers to risk of "physical force" rather than the risk of "physical injury" standard found in ACCA's residual clause, the Government argues that Petitioner should be denied § 2241 review because the successive § petition constituted an "unobstructed procedural opportunity" for merits review. *Id.* at 26-28.

44. The Government's arguments lack merit. Setting aside *Johnson*, Petitioner is entitled to relief because he was convicted of conduct that is not a crime under § 924. As the Government offers no argument in response to this claim for relief and does not appear to contest it, relief should be granted as unopposed. Furthermore, *Johnson* applies to § 924(c), as § 924(c)

requires an "ordinary case" analysis of the offense, as well as a determination of "whether that abstraction presents a serious potential risk of injury." *Johnson*, 135 S. Ct. at 2557. In *Sessions v. Dimaya*, 2018 U.S. LEXIS 2497 (U.S. Apr. 17, 2018), the Supreme Court very recently rejected all of the arguments made by the Government in Mr. Paul's case. *Dimaya* further held that 18 U.S.C. § 16(b), which is identical to the residual clause contained in § 924(c), was void for vagueness under *Johnson*. Moreover, after the Habeas Petition was filed, the Seventh Circuit vindicated Mr. Paul's position and found § 924(c)'s residual clause to be invalid under *Johnson*. Petitioner did not have an unobstructed procedural opportunity for merits review as the Eighth Circuit, in contrast to the majority of the Courts of Appeal, denied his application to file a successive § 2255 motion for relief based on *Johnson*.

**B. Mr. Paul Is Entitled to Relief Because He Has Been Convicted of a Non-Offense and the Trial Court Had No Jurisdiction to Convict Him of § 924(c) and Sentence Him to Death.**

45. The Government failed to address Petitioner's claim that his § 924(c) conviction is unconstitutional as he was not charged under any robbery statute at all – let alone a robbery that could be prosecuted in federal court – and he was convicted of conduct that is not criminal under § 924(c). This claim for relief is jurisdictional, cannot be waived, and is a "non-frivolous claim of innocence." *Kramer*, 347 F.3d at 217. Because it does not fall into the two categories under which review is appropriate for a successive petition, § 2241 review is appropriate. Accordingly, even assuming that Petitioner's *Johnson* is invalid, he is entitled to relief on his non-*Johnson* due process claim. The Government offers no argument in response. Mr. Paul requests that his 924(c) conviction and death sentence be vacated. *See* Habeas Petition at 52-53, 56-57.

### C. Mr. Paul Is Entitled to Relief under *United States v. Johnson*.

#### 1. *Johnson* Applies to § 924(c). The Supreme Court Affirmed Mr. Paul's Position and Repudiated the Government's Arguments in the Recently Issued *Sessions v. Dimaya*.

46. Contrary to the position taken in the Government's Response, *Johnson* not only invalidated § 924(e), but also the categorical analysis used to interpret § 924(e)'s residual clause which required courts to "estimate the risk posed by a crime" in the "judicially imagined 'ordinary case' … ." *Johnson*, 135 S. Ct. at 2558. *See* Habeas Petition at 43-45 (discussing the Supreme Court's analysis in *Johnson*). As § 924(c) contains a similarly worded clause which requires the same analyses, *Johnson* invalidates § 924(c) as well as § 924(e).

47. Petitioner's position was vindicated in *Sessions v. Dimaya*. There, the Supreme Court considered the constitutionality of 18 U.S.C. § 16(b), an immigration statute with a residual clause that is identical to the residual clause in § 924(c).[5] *Dimaya* re-affirmed that *Johnson* went beyond invalidating the residual clause of ACCA to invalidate the approach contained therein, which required courts to estimate the risk posed by a judicially imagined ordinary case of a particular offense. *Dimaya*, 2018 U.S. LEXIS 2497, at *17-19. Although the language of § 16(b)'s residual clause differs from ACCA's residual clause, because § 16(b) contained the same two defects discussed above and in *Johnson*, the Supreme Court found § 16(b) to be void for vagueness as well. As § 924(c)'s residual clause contains the same two defects found to be constitutionally fatal to the residual clauses of ACCA and § 16(b) and is identical to § 16(b), § 924(c)(3)(B) is invalid under *Johnson* and *Dimaya*.

[5] The residual clause of § 16(b) defined a crime of violence as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Similarly, the residual clause of § 924(c) defines a crime of violence as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

48. Consistent with the Supreme Court's holding in *Dimaya*, after the Habeas Petition was filed on October 18, 2016, the Seventh Circuit vindicated Mr. Paul's position as to § 924(c) specifically. In *United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016), the Seventh Circuit found § 924(c)(3)(B) to be void for vagueness under *Johnson*. Noting that § 924(c)(3)(B) is "virtually indistinguishable from the clause in *Johnson* that was found to be unconstitutionally vague," that it had already found § 16(b) to violate *Johnson* in *United States v. Vivas-Ceja*, 808 F.3d 719 (2015), and that "[t]he clause invalidated in *Vivas-Cejas* is the same residual clause contained in the provision at issue," the Seventh Circuit held "that the residual clause in 18 U.S.C. § 924(c)(3)(B) is also unconstitutionally vague." *Cardena*, 842 F.2d at 996. *See also United States v. Jackson,* 865 F.3d 946, 953-54 (7th Cir. 2017) (affirming *Cardena* and holding § 924(c)(3)(B) to be unconstitutionally vague).

49. Furthermore, *Johnson* did not turn on the "confusing list of examples" or the risk of "physical injury" standard contained in ACCA (as opposed to risk of "physical force" set forth in § 924(c)). *Dimaya* rejected the Government's argument on both of these issues and found each to be "the proverbial distinction without a difference." *Dimaya*, 2018 U.S. LEXIS 2497 at *28. *Dimaya* held that the injury/force difference was inconsequential for the purposes of this analysis: "the force/injury distinction is unlikely to affect a court's analysis of whether a crime qualifies as violent. All the same crimes might – or, then again, might not – satisfy both requirements. Accordingly, this variance in wording cannot make ACCA's residual clause vague and § 16(b) not." *Dimaya*, 2018 U.S. LEXIS 2497 at *32-34.

50. *Dimaya* further held that the list of offenses relied on so heavily by the Government was not one of the "two features" to which the *Johnson* court referred, and that its

absence from § 16(b) could not save that statute from a void for vagueness challenge under *Johnson*:

> To say that ACCA's listed crimes failed to resolve the residual clause's vagueness is hardly to say they caused the problem. Had they done so, *Johnson* would not have needed to strike down the clause. It could simply have instructed courts to give up on trying to interpret the clause by reference to the enumerated offenses. … That *Johnson* went so much further – invalidating a statutory provision rather than construing it independently of another – demonstrates that the list of crimes was not the culprit. And indeed, *Johnson* explicitly said as much. *As described earlier, Johnson found the residual clause's vagueness to reside in just "two" of its features: the ordinary case requirement and a fuzzy risk standard. Strip away the enumerated crimes – as Congress did in § 16(b) – and those dual flaws yet remain. And ditto the textual indeterminacy that flows from them.*

*Dimaya*, 2018 U.S. LEXIS 2497 at *35-36 (emphasis added).

51. Consistent with (and predicting) *Dimaya*, in *Vivas-Ceja*, 808 F.3d 719, the Seventh Circuit rejected the Government's reliance on the list of offenses referred to in *Johnson*, found the two dispositive features to be the ordinary case and risk analysis discussed above, and invalidated § 16(b) as void for vagueness. *Id.*at 723.

52. The Seventh Circuit affirmed its position on this issue in the context of § 924(c) in *Jackson*, 865 F.3d 946. Citing *Vivas-Ceja*, the Seventh Circuit rejected the government's argument that § 924(c)(3)(B) was distinguishable from ACCA's residual clause based on the list of offenses, noted that in *Vivas-Ceja* "we rejected the government's claim that the confusion created by the ACCA's enumerated list of crimes," and, as noted above, found § 924(c)(3)(B) to be void for vagueness *Id.* at 953-54.

### 2. *Welch* Supports Petitioner's Claim for Relief.

53. The Government's claim that "*Welch's* narrow holding is only that *Johnson* is retroactive in ACCA cases," GR at 26, is also incorrect. In *Welch*, the Supreme Court held that *Johnson* was retroactive, and did not confine that finding to cases involving § 924(e) (ACCA) only. Rather, the Court made clear in *Welch* and affirmed in *Dimaya* that while "*Johnson* cast

no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*," *Johnson did* invalidate the categorical approach required by § 924(e), which "required courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Welch*, 136 S. Ct. at 1262 (emphasis in original). Accordingly, *Welch* supports Petitioner's claim for relief.

**3. The Government's Arguments in *Johnson* Support Petitioner's Claim for Relief.**

54. In the *Johnson* litigation itself, the United States Government conceded that the constitutionality of the ordinary case analysis was the central issue to be decided by the Court in *Johnson* and that if § 924(e) was void for vagueness, then § 924(c) and § 16(b) would be void as well. More specifically, after noting that § 924(c) was identical to § 16(b), the Solicitor General noted in his briefing that § 16(b) was "equally susceptible to petitioner's [Johnson's] central objection to the residual clause. Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a common sense judgment about the risk of confrontations and other violent encounters." Supplemental Brief for the United States, *Johnson v. United States*, 135 S. Ct. 2551, 2015 WL 1284964, at *22-23 (Mar. 20, 2015). *See also*, *Dimaya*, 2018 U.S. LEXIS 2497 at *20 (noting the Government argued in *Johnson* that § 16(b) and ACCA would be equally susceptible to a *Johnson* challenge). Having conceded that §§ 924(e) and (c) are functionally the same under *Johnson*, the Government cannot now change its position and assert that these two statutes differ in any significant way.

**D. Relief Is Appropriate under 28 U.S.C. § 2241.**

55. Setting *Johnson* aside, Petitioner is entitled to relief because he was convicted of conduct that is not criminal under § 924(c). He is actually innocent of this offense and the trial court had no jurisdiction to convict and sentence him. *See* Habeas Petition at 52-53, 55-57. As

noted *supra*, the Government has offered no response to Petitioner's claim for relief based on the fact that he was convicted of a non-offense. Accordingly, review and relief under § 2241 should be granted.

56. The Government's argument that Petitioner's claim for relief under *Johnson* is ineligible for § 2241 review also fails. In considering the availability of § 2241, courts should "take into account the fact that a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence." *Webster*, 784 F.3d at 1139. This concern is of "paramount importance [in] avoiding the injustice of executing one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 326 (1995). "The essential function [of § 2241] is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Davenport*, 147 F.3d at 609 (internal quotations omitted). This includes, *inter alia*, a "non-frivolous claim of actual innocence" that could not have been brought under § 2255. *Kramer*, 347 U.S. at 217. For the reasons set forth in the Habeas Petition, these conditions have been satisfied. *See* Habeas Petition at 55-56.

57. That the Eighth Circuit denied Petitioner's application to file a successive petition does not mean that he had a "reasonable opportunity" to raise his *Johnson* claim. Section 2255 is ineffective where it fails to provide similarly situated federal convicts with equal access to merits consideration of their habeas claims. *See Felker v. Turpin*, 518 U.S. 651, 667 (1999) (Souter, J., concurring) ("[t]he question [of the validity of § 2244(b)'s gatekeeping provisions] could arise if the courts of appeals adopted divergent interpretations of the gatekeeper standard."). Indeed, "the harm caused by the failure to treat similarly situated defendants alike cannot be exaggerated: such inequitable treatment hardly comports with the ideal of administration of justice with an even hand." *Teague v. Lane*, 489 U.S. 288, 315 (1989) (internal quotation marks omitted).

58. Here, Petitioner is being denied equal access to a decision on the merits and to appellate review. The Eighth Circuit denied Petitioner's application to file a *Johnson* successor, preventing him from proceeding in the Western District of Arkansas. This did not constitute an adjudication on the merits and cannot be appealed or reargued. *Bennett v. United States*, 119 F.3d 468, 470 (7th Cir. 1997) (a movant must get through § 2244's gatekeeping requirements "before the merits can be considered."). In contrast, Courts of Appeal for the Second, Fourth, Seventh, Ninth, Eleventh, and District of Columbia Circuits have all granted permission to file successive petitions on *Johnson* challenges to § 924(c). *See* Habeas Petition at 47 & n.9 (citing cases); *see also, e.g., In re Ricardo Gross*, 2016 U.S. App. LEXIS 12314 (D. C. Cir. July 1, 2016) (granting permission to file a successive § 2255 petition on a *Johnson* challenge to § 924(c)). Moreover, the Eighth Circuit has categorically rejected applications for *Johnson* successors based on the grounds that (1) ACCA was distinguishable from § 924(c) based on § 924(c)'s focus on physical force rather than injury; and (2) § 924(c) did not possess the list of offenses referred to above. GR at 27. *Dimaya* repudiated both of these holdings. The disparity cited above and the Eighth Circuit's reliance on factors that have now been found to be invalid create the precise outcome that § 2241 was designed to remedy.

59. Finally, regardless of whether the savings clause permits review of Petitioner's *Johnson* claim, § 2241 review is appropriate when the petitioner is challenging the *execution* of his or her sentence, rather than the *imposition* of the sentence. *See* Issues Applicable to Multiple Claims, § B, *supra*. In addition to challenging the validity of the *imposition* of his sentence, Petitioner's *Johnson* claim (as well as his other challenge to his § 924 conviction) challenges the *execution* of his sentence in that it is unconstitutional to execute a person who is innocent of the crime charged. Accordingly, even assuming, *arguendo*, that § 2241 was an inappropriate vehicle

through which to challenge the imposition of Petitioner's conviction and sentence under § 924(c), Petitioner would still be entitled to relief under § 2241 to prevent execution of his death sentence.

**CONCLUSION**

WHEREFORE, for the reasons set forth in his Habeas Petition and this Reply, Petitioner respectfully requests that this Court grant his petition for writ of habeas corpus and vacate his convictions and or sentences or, in the alternative, order an evidentiary hearing on Petitioner's claims for relief.

Respectfully Submitted,

/s/ Shawn Nolan
LEIGH SKIPPER
Federal Defender
SHAWN NOLAN
Chief, Capital Habeas Unit
PETER WILLIAMS
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, Pennsylvania 19106
(215) 928-0520

Counsel for Petitioner, Jeffrey William Paul

Dated: April 23, 2018

**CERTIFICATE OF SERVICE**

I, Shawn Nolan, hereby certify that on this date I caused the foregoing was served via United States Mail, first class, postage prepaid on the following counsel of record:

James Robert Wood, Esquire
Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048

Jeffrey Bradford Kahan
U.S. Department of Justice, Criminal Division
Capital Case Section
1331 F Street, NW, 6th Floor
Washington, DC 20530

/s/ Shawn Nolan
Shawn Nolan

Dated: April 23, 2018