(pg 1)

Under Rule 53(g)(4), the court must decide de novo all objections to conclusions of law made or recommended by a master. As with findings of fact, the court also may decide conclusions of law de novo when no objection is made.

Apart from factual and legal questions, masters often make determinations that, when made by a trial court, would be treated as matters of procedural discretion. The court may set a standard for review of such matters in the order of appointment, and may amend the order to establish the standard. If no standard is set by the original or amended order appointing the master, review of procedural matters is for abuse of discretion. The subordinate role of the master means that the trial court's review for abuse of discretion may be more searching than the review that an appellate court makes of a trial court.

If a master makes a recommendation on any matter that does not fall within Rule 53(g)(3), (4), or (5), the court may act on the recommendation under Rule 53(g)(1).

**Subdivision (h)**

The need to pay compensation is a substantial reason for care in appointing private persons as masters.

Payment of the master's fees must be allocated among the parties and any property or subject-matter within the court's control. The amount in controversy and the means of the parties may provide some guidance in making the allocation. The nature of the dispute also may be important—parties pursuing matters of public interest, for example, may deserve special protection. A party whose unreasonable behavior has occasioned the need to appoint a master, on the other hand, may properly be charged all or a major portion of the master's fees. It may be proper to revise an interim allocation after decision on the merits. The revision need not await a decision that is final for purposes of appeal, but may be made to reflect disposition of a substantial portion of the case.

The basis and terms for fixing compensation should be stated in the order of appointment. The court retains power to alter the initial basis and terms, after notice and an opportunity to be heard, but should protect the parties against unfair surprise.

The provision of former Rule 53(a) that the "provision for compensation shall not apply when a United States Magistrate Judge is designated to serve as a master" is deleted as unnecessary. Other provisions of law preclude compensation.

**Subdivision (i)**

Rule 53(i) carries forward unchanged former Rule 53(f).

**2007 Amendments**

The language of Rule 53 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

**2009 Amendments**

The time set in the former rule at 20 days has been revised to 21 days. See the Note to Rule 6.

**HISTORICAL NOTES**

**Change of Name**

United States magistrate appointed under section 631 of Title 28, Judiciary and Judicial Procedure, to be known as United States magistrate judge after Dec. 1, 1990, with any reference to United States magistrate or magistrate in Title 28, in any other Federal statute, etc., deemed a reference to United States magistrate judge appointed under section 631 of Title 28, see section 321 of Pub.L. 101–650, set out as a note under section 631 of Title 28.

Title 7 FRCP

## TITLE VII. JUDGMENT

### Rule 54. Judgment; Costs

(a) **Definition; Form.** "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings.

(b) **Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

(c) **Demand for Judgment; Relief to Be Granted.** A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

(d) **Costs; Attorney's Fees.**

(1) ***Costs Other Than Attorney's Fees.*** Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice.

FRCP Title 17

controls those aspects of attorney-fee motions in class actions to which it is addressed.

### 2009 Amendments

Former Rule 54(d)(1) provided that the clerk may tax costs on 1 day's notice. That period was unrealistically short. The new 14-day period provides a better opportunity to prepare and present a response. The former 5-day period to serve a motion to review the clerk's action is extended to 7 days to reflect the change in the Rule 6(a) method for computing periods of less than 11 days.

### HISTORICAL NOTES

**Effective and Applicability Provisions**

**1961 Amendments.** Amendment adopted on Apr. 17, 1961, effective July 19, 1961, see Rule 86(d).

## Rule 55. Default; Default Judgment

**(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

**(b) Entering a Default Judgment.**

(1) ***By the Clerk.*** If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) ***By the Court.*** In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

**(c) Setting Aside a Default or a Default Judgment.** The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).

**(d) Judgment Against the United States.** A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

(Amended March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009.)

### 1937 Adoption

This represents the joining of the equity decree *pro confesso* (former Equity Rules 12 (Issue of Subpoena—Time for Answer), 16 (Defendant to Answer—Default—Decree *Pro Confesso* ), 17 (Decree *Pro Confesso* to be Followed by Final Decree—Setting Aside Default), 29 (Defenses—How Presented), 31 (Reply—When Required—When Cause at Issue) ) and the judgment by default now governed by U.S.C., Title 28, [former] § 724 (Conformity act). For dismissal of an action for failure to comply with these rules or any order of the court, see Rule 41(b).

**Note to Subdivision (a).** The provision for the entry of default comes from the Massachusetts practice, 2 Mass.Gen. Laws (Ter.Ed., 1932) ch. 231, § 57. For affidavit of default, see 2 Minn.Stat. (Mason, 1927) § 9256.

**Note to Subdivision (b).** The provision in paragraph (1) for the entry of judgment by the clerk when plaintiff claims a sum certain is found in the N.Y.C.P.A. (1937) § 485, in Calif.Code Civ.Proc. (Deering, 1937) § 585(1), and in Conn.Practice Book (1934) § 47. For provisions similar to paragraph (2), compare Calif.Code, *supra,* § 585(2); N.Y.C.P.A. (1937) § 490; 2 Minn.Stat. (Mason, 1927) § 9256(3); 2 Wash.Rev.Stat.Ann. (Remington, 1932) § 411(2). U.S.C., Title 28, § 1874, formerly § 785 (Action to recover forfeiture in bond) and similar statutes are preserved by the last clause of paragraph (2).

**Note to Subdivision (e).** This restates substantially the last clause of U.S.C., Title 28, [former] § 763 (Action against the United States under the Tucker Act). As this rule governs in all actions against the United States, U.S.C., Title 28, [former] § 45 (Practice and procedure in certain cases under the interstate commerce laws) and similar statutes are modified insofar as they contain anything inconsistent therewith.

### Supplementary Note

**Note.** The operation of Rule 55(b) (Judgment) is directly affected by the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix, § 501 et seq. Section 200 of the Act [50 U.S.C. Appendix, § 520] imposes specific requirements which must be fulfilled before a default judgment can be entered, e.g., *Ledwith v. Storkan,* D.Neb.1942, 6 Fed.Rules Serv. 60b.24, Case 2, 2 F.R.D. 539, and also provides for the vacation of a judgment in certain circumstances. See discussion in Commentary, Effect of Conscription Legislation on the Federal Rules, 1940, 3 Fed.Rules Serv. 725; 3 *Moore's Federal Practice,* 1938, Cum.Supplement § 55.02.

(Pg3)

# PRO SE COMPLAINTS

(1) PAPANTONY V. HEDRICK, 215 F3d 863 (8th Cir. 2000)

Pro se habeas petitioner should not unreasonably be subjected to stringent procedural niceties.

(2) McCORMICK V. CITY OF CHICAGO, 230 F3d 319 (7th Cir. 2000)
BOAG V. MacDOUGALL, 454 US 364, 70 LEd2d 551, 102 SCt 700 (1982)
HAINES V. KERNER, 404 US 519, 30 LEd2d 652, 92 SCt 594 (1972)

Pro se litigants pleadings are to be construed liberally and held to less stringent standard than formal pleadings drafted by lawyers; if court can reasonably read pleadings to state valid claim on which litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.

(3) US V. SEESING, 234 F3d 456 (9th Cir. 2000)

Pro se complaints and motions from prisoners are to be liberally construed.

(4) McBRIDE V. DEER, 240 F3d 1287 (10th Cir. 2001)

Court was to liberally construe pleadings of pro se petitioner.

(5) DILS V. SMALL, 260 F3d 984 (9th Cir. 2001)
CALDWELL V. AMEND, 30 F3d 1199 (9th Cir. 1994)
HOUSTON V. LACK, 487 US 266, 101 LEd2d 245, 108 SCt 2379 (1988)

Prisoner's pro se motion for judgement N.O.V. was deemed filed on date motion was placed in prison's "legal Mailbox," as opposed to date of its receipt by court clerk.

CB Zinger

You have the constitutional right to represent yourself in court and that if you have an attorney he is merely your agent and is bestowed only with the authority you voluntarily grant him. See the Sixth Amendment. Also see Title 28 U.S.C. 1654 and Faretta v. California, 422 US 806.

(6) HOHN V. US, 262 F3d 811 (8th Cir. 2001)

Courts interpret pro se petitions for post-conviction relief liberally.

(7) RICKS V. NICKELS, 295 F3d 1124 (10th Cir. 2002)
FLOREZ V. WILLIAMS, 281 F3d 1136 (10th Cir. 2002)

Where habeas petition was prepared pro se, Court of Appeals construed its legal arguments liberally.

(8) ARON V. US, 291 F3d 708 (11th Cir. 2002)
URBINA V. THOMAS, 270 F3d 292 (6th Cir. 2001)

Federal court should constru a habeas petition filed by a pro se litigant more liberally than one filed by an attorney.

(9) US V. MAJORS, 329 F3D 791 (5th Cir. 2003)

Denial of defendant's right to represent himself, if established, requires reversal without need for harmless error analysis.



(EXIBIT for The 7th Cir.)

(Pg 25)

(P94)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTICT OF INDIANA

| | |
|---|---|
| JEFFREY WILLIAM PAUL,<br><br>Petitioner,<br><br>V.<br><br>SUPERINTENDENT, USP-Terre Haute,<br>UNITED STATES OF AMERICA,<br><br>Respondents. | CIVIL ACTION<br>(Capital Habeas Corpus)<br><br>2:13-CV-00304-WTL-WGH<br><br>**Hon. William T. Lawrence**<br>**United States District Judge**<br><br>**Filed Under Seal** |

**PETITION FOR WRIT OF HABEAS CORPUS**

LEIGH SKIPPER
Federal Defender
SHAWN NOLAN
Chief, Capital Habeas Unit
PETER WILLIAMS
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
215-928-0520

Counsel for Petitioner

Dated: October 18, 2016

offense. When the car was finally recovered, Ingle's fingerprint, not Mr. Paul's, was found inside. *Paul-1* at 994.

**C. Trinity Ingle's Declaration.**

15. Trinity Ingle had proceeded to trial in advance of Mr. Paul, and was convicted of first-degree murder and related charges. Although the government sought a death sentence, Ingle received a life sentence after a contested penalty phase approximately two weeks before Mr. Paul's trial. His conviction and sentence were affirmed on October 8, 1998. *United States v. Ingle*, 157 F.3d 1147 (8th Cir. 1998) (*rehr'g. denied* on Nov. 9, 1998). On February 11, 2005, Ingle signed a declaration in which he took full responsibility for the murder of the decedent and exculpated Mr. Paul. In this declaration, Ingle reported that:

> On June 22, 1995 me and Jeff were downtown in Hot Springs by the Arlington Hotel. I was wanting to rob a shop downstairs. Jeff was high and was pretty much just following me where I was going to. I was high too otherwise I would not have been wanting to rob a shop in broad daylight. But so we're standing outside of the mall when Mr. Williams drove by. I had not slept for days and was high on Methamphetamine which can make you paranoid and was making me paranoid after ten days of it and not sleeping. It was one of those times where if things had gone different, if a cop car had come by or something like that, I would have just left, but when Mr. Williams drove by he looked at me and I just locked in on him. In my paranoia I knew he had seen the gun in my waistband and knew that now he knew that I was thinking to do by robbing the shop downstairs. So when he got out of the car I told Jeff to come and follow me. At this point Jeff did not know what I was doing and so he wasn't arguing about it yet. As far as I knew, Jeff did not know that I had a gun. I didn't tell Jeff about my suspicions of Mr. Williams, nor did I say anything to him about what I planned to do.
>
> I followed Mr. Williams up the trail and Jeff was following me. I stopped him by asking him if he had the time. After he told us the time I pulled the gun out and told him to give up everything he had. When he didn't, I hit him and kicked him on the ground. By this time, Jeff was getting very nervous. He was trying to get me to leave, saying, "come on, let's go." But I wasn't about to leave, but I still had the gun in my hand and Jeff knew it.
>
> I told Jeff to keep quiet and I tied the guy up with the tape. Then Jeff and I started back down the trail but when I looked back at him the guy was looking right at me. I turned to go back but Jeff grabbed me by the arm and said, "let's just leave him and get out of here." Jeff kept arguing with me but I yanked free of him

> holding me. I still had the gun in my hand and Jeff was looking at it as I held it in his direction. Even though Jeff didn't know what it was I was going back up the mountain for, I made sure he knew if he put his hands on me again trying to stop me I would have shot him, too, and it would have been two people left up on that mountain.
>
> So I walked back up the trail and asked the guy if he was going to call the cops. He said no but of course I knew he was lying. So I stood over him and shot him in the chest but one shot was rat shot which I had forgot was in the chamber. I heard Jeff yelling at me to stop, but I turned back around and shot Mr. Williams with the real bullet in the head.
>
> Everything else I believe is already known which followed that.
>
> The gun I got from a burglary off Higden Ferry Road, New Oscar Point and Amity. It was a brown and yellow house and part of the yard was fences. It was in the morning that I broke into the house and found the guns in a closet. I think I recall that they were in a box on the closet floor. I also took some things out of the ice box and some change and silver dollars. Actually I had gotten two guns from there, a .357 and the .38 I used to shoot Mr. Williams. The .357 I had already sold.

Dec. Trinity Ingle at 1-3.

16. Section 2255 counsel averred, *inter alia*, that Mr. Paul's conviction and death sentence should be overturned because he was actually innocent of the decedent's homicide and because trial counsel were ineffective for failing to present Ingle's testimony to the jury. Because the § 2255 court had denied Mr. Paul's § 2255 petition on January 31, 2005, § 2255 counsel submitted the Ingle declaration in connection with a Motion to Reconsider Memorandum and Orders, or in the Alternative, to Vacate, Set Aside, or Correct Memorandum and Order Denying Relief Pursuant to Rule 59(e) and Rule 60(b). The § 2255 court did not comment on Ingle's declaration and denied Rule 59(e) and 60(b) relief without any analysis of Ingle's proffered testimony. On appeal, the *Paul-2* court did not contest the import of Ingle's proffered testimony and acknowledged that Ingle "asserts that Paul tried to convince Ingle to leave the park before Williams was killed, and avers that Ingle alone shot Williams while Paul yelled at him to stop," and that Ingle's proffered statement took "full responsibility for the murder of

(Pg 7)

TRULINCS 10517042 - PAUL, JEFFERY WILLIAM - Unit: THP-X-A

---

FROM: Berg, Laura
TO: 10517042
SUBJECT: RE: Doc's
DATE: 06/22/2015 01:21:15 PM

Hi jeff,

It's ok to be redundant. I had been out a couple days, so it took me a little while to respond. I'm really sorry about the shakedown. I'm sure it was upsetting. We'll see if we can help get your clothes back. I requested a legal call for later this week and we can talk about all this.

The short answer about the documents: "Yes, Trinity's affidavit is authentic." But we need all your case records and prison records before filing a liberal brief. The government gave us some records, but they were redacted. We are working hard to get them ASAP.

I know you are eager to move forward. I don't blame you.

We'll talk soon, ok?

Laura

JEFFERY WILLIAM PAUL on 6/21/2015 6:34:18 PM wrote
Dear laura,
Sorry if this is redundant,Ive had a bad couple days-please resp-to this one okay?What doc's is Pete looking for if he already authenticated the affidavit from Trinity-isnt that enough-w/the Double jeopary issue(incrim)from trial counsel to RUSH(&) Guarantee a Statutory NEW TRIAL-?

501 321 2544 P.02

8-258 (Rev. 8-5-91)

(Pg. 8)

REPORT OF THE
INFORMATION RESOURCES DIVISION
~~FEDERAL BUREAU OF INVESTIGATION~~
WASHINGTON, D. C. 20535

To: SAC, Little Rock (Squad 5) October 30, 1996

FBI File No. 70A-LR-36698

Lab No. 60417026 E QL

Reference: Communication dated April 12, 1996

Your No.

Re: TRINITY EDWARD INGLES, aka;
JEFFERY WILLIAM PAUL, aka -
FUGITIVE (a);
SHERMAN WILLIAMS (DECEASED) - VICTIM;
HOT SPRINGS NATIONAL PARK,
HOT SPRINGS, ARKANSAS;
CGR - MURDER

Specimens received: April 16, 1996

Q7 One Nagra blue cassette magnetic tape dated "34222"

Result of examination:

Two processed stereo copies of Q7 were prepared in a cassette format. Each copy is contained on two cassette tapes in three parts with an overlap between parts.

SSA George W. Clark, Jr. conducted the examination.

Q7 and the processed copies were forwarded to your office under separate cover via Federal Express on June 13, 1996.

GOVERNMENT EXHIBIT "H"

#5

AGENT COPY

SEARCHED ____ INDEXED ____
SERIALIZED ____ FILED ____
NOV - 1 1996
FBI - LITTLE ROCK

This Report Is Furnished For Official Use Only

(Pg. 9.)

Furthermore, as noted above, evidence presented at both trials established Ingle as the ringleader in these crimes:

»Ingle said he struck the victim first, App. 316;

»Ingle said he taped the victim's hands and feet, App. 319;

»Ingle chose to shoot the victim because he peeked at them, App. 319-20;

»Ingle said he shot the victim himself in the head and chest, App. 320;

»Ingle drove the car, T. 683, App. 258;

»Ingle paid for food and motel afterwards, App. 258;



»Ingle got rid of the gun, T. 1085, 1107; and,

»Ingle got rid of the car, App. 321.

Confirming Ingle's role as the driver, the only item of direct, physical evidence in the entire case was the fingerprint of co-defendant Trinity Ingle, found on the ashtray of the victim's car. T. 777-780.

WITNESSES

Jurisprudence (pg 10)

HAYES V. WOODFORD, 301 F3d 1054 (9th Cir. 2002)
BYRD V. COLLINS, 209 F3d 486 (6th Cir. 2000)
US V. AGURS, 427 US 97, 49 LEd2d 342, 96 SCt 2392 (1976)

(1) When the prosecution is or should be aware that it is presenting perjured testimony, a strict standard of materiality will be applied, and/or conviction will be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Conviction obtained by knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the outcome of the trial. A new trial is required if perjured testimony could in any reasonable likelihood have affected the judgment of the jury.

RYAN V. MILLER, 303 F3d 231 (2nd Cir. 2002)

(2) Essence of a violation of the Confrontation Clause is the presentation of an accusation against the defendant without presenting the accuser.

US V. ANGWIN, 271 F3d 786 (9th Cir. 2001)
LILLY V. VIRGINIA, _____ US _____, _____ LEd2d _____, 119 SCt 1887 (1999)
BRUTON V. US, 391 US 123, 20 LEd2d 476, 88 SCt 1620

(3) (1968) Post-arrest statements made by non-testifying co-defendants that facially incriminate defendant are inadmissible because such statements violate defendant's Sixth Amendment right to cross-examine adverse witnesses.

US V. LOPEZ-LOPEZ, 282 F3d 1 (1st Cir. 2002)
BRUTON V. US, 391 US 123, 20 LEd2d 476, 88 SCt 1620

(4) (1968) Admission of testimony by a nontestifying defendant inculpating a condefendant in a joint trial is prohibited.

US V. SESCHILLIE, 310 F3d 1208 (9th Cir. 2002)

(5) In those rare cases of an evenly balanced record, issue of whether defendant was prejudiced by erroneous exclusion of witness from courtroom must be resolved in defendant's favor.

US V. UNIVERSAL REHABILITATION SERVICES, INC., 167 F3d 171 (3rd Cir. 1999)

(6) Plea agreements of co-conspirators cannot be used as evidence of defendant's guilt.

ELLSWORTH V. WARDEN, NEW HAMPSHIRE STATE PRISON, 318 F3d 285 (1st Cir. 2003)

(7) Criminal defendant's entitlement to cross-examine witness increases in sensitivity in direct proportion to witness's importance to prosecution's case.

SPLUNGE V. PARKE, 160 F3d 369 (7th Cir. 1998)

(8)
1) Mistaken curtailment of cross-examination constitutes trial error.
2) Defendant is entitled to cross-examine witnesses about potential sources of bias, including the prospect that witness will receive a benefit, such as lower sentence in exchange for favorable testimony.

DAVIS V. ALASKA, 415 US 308, 39 LEd2d 347, 94 SCt 1105 (1974)
POINTER V. TEXAS, 380 US 400, 13 LEd2d 923, 85 SCt 1065 (1965)

(9) Violation of the confrontation clause require reversal unless they are harmless beyond a reasonable doubt.

(pg 26)

FILED SEP 24 1996
BY CHRIS R. JOHNSON, CLERK
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 6:96cr60022-001 |
| vs. | ) | 18 U.S.C. § 1111(a) |
| | ) | 18 U.S.C. § 924(c) |
| JEFFERY WILLIAM PAUL | ) | 18 U.S.C. § 924(i)(1) |
| | | 18 U.S.C. § 2 (Aiding & Abetting) |

INDICTMENT

The Grand Jury charges:

COUNT 1

On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another person known to the grand jury, while aiding and abetting each other, did, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to Title 18 U.S.C. § 7(3), kill Sherman Williams, by means of gunshot wounds, in the perpetration of a robbery, in violation of 18 U.S.C. § 1111(a) and § 2.

COUNT 2

On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another person known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant

(Pg 11)

(Pg 12)

to Title 18 U.S.C. § 7(3), during and in relation to a crime of violence, did knowingly use a firearm which caused the death of Sherman Williams, in violation of 18 U.S.C. §§ 924(c), 924(i)(1) and § 2.

A True Bill.

Foreperson

P. K. Holmes III
United States Attorney

By:
William M. Cromwell
FAUSA/Criminal Chief
Ark. Bar No. 76023
P. O. Box 1524
Fort Smith, AR 72902-1524
(501) 783-5125



([redacted])

(Pg13)

COPY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA PLAINTIFF

VS. NO. 96-60022-001

JEFFERY WILLIAM PAUL DEFENDANT

---

Before HONORABLE JIMM LARRY HENDREN, U. S. District Judge, as follows:

JURY TRIAL
June 17 - 27, 1997
Hot Springs, Arkansas

VOLUME 1

---

APPEARANCES:

MR. STEPHEN SNYDER
U. S. Attorney's Office
P. O. Box 1524
Fort Smith, Arkansas 72902

ON BEHALF OF THE UNITED STATES OF AMERICA

MR. MARK WEBB
U. S. Attorney's Office
P. O. Box 1524
Fort Smith, Arkansas 72902

MR. STEVEN D. OLIVER
Bachelor, Newell & Oliver, P.
P. O. Box 1620
Hot Springs, Arkansas 71913

ON BEHALF OF THE DEFENDANT

MR. LYNN WILLIAMS
Wood, Smith, Schnipper & Clay
123 Market Street
Hot Springs, Arkansas 71901

---

Excerpt from Trial Transcripts; Trial Counsel (Pg 14)

Start

insert Exhibit!

Paul helped pull the body off the trail but even after that, keys were given to Mr. Ingle and he's the one that took the c and decided to drive it with Mr. Paul as a passenger.

(29) Now Jeff has been charged with a two count indictment. You've heard it twice already but I'm going to say it again: That on or about June 22, 1995, Jeff and Trinity Ingle, while aiding and abetting each other, committed the offense of murder in the first degree.

(4)

(30) To sustain this charge, the Government must prove beyond a reasonable doubt the elements of this offense, and I'm not going to go through that at this point.

(31) Also in Count 2 it is charged that on or about June 22, tha Jeffery Paul and Trinity Ingle, while aiding and abetting each other, committed the offense of knowingly carrying a firearm in relation to a crime of violence.

(32) And once again, the burden on the Government is to prove each element of both of these offenses beyond a reasonable doubt. But as you already know and as you, obviously from reading this-- what they're charged with, Jeff is not charged alone. It is not alleged that Jeff Paul committed this offense by himself. It is alleged that Jeff Paul and Trinity Ingle did commit these offenses together.

(5)

(33) Now you already know that Trinity Ingle has been tried and convicted and sentenced to life in prison without possibility of release. And today you will have to decide, or in the days to

Excerpt from Trial Transcripts - Trial Counsel (Pg 15)



come you will have to decide whether Jeff did aid and abet Trinity Ingle in the commission of his offenses. That will be your burden, that will be your job, and you will be instructed as to that jury instruction. I'm going to read that just briefly.

(34) "In order to have aided and abetted the commission of a crime, the person must before or at the time of the crime was committed; Number 1, had known the crime was being committed or going to be committed; and two, knowingly have acted in some way for the purpose of causing, encouraging or aiding in the commission of a crime."

(35) Now the Government, once again, must prove these elements beyond a reasonable doubt. And as you read that instruction, as you consider arguments at the conclusion of the guilt phase, I want you to consider his statement where he did plan on robbing this man but did not intend and did not plan on killing anyone.

(36) Now when you listen to the testimony and you've observed the exhibits and when you're instructed as to the law by Judge Hendren, I want you to remember the promises that you made during jury selection; Number 1, that each and every one of you will promise that you will listen attentively to evidence in this case and that you will follow the law as stated, whether you agree with it or not; that you will not allow prejudice or emotion to influence you; and that you will listen to the case with a fair and open mind. And at the conclusion of the trial, all I can

(Doc) ([redacted])

Pg. (16)



## CHAPTER 51—HOMICIDE


Sec.
1111. Murder.
1112. Manslaughter.
1113. Attempt to commit murder or manslaughter.
1114. Protection of officers and employees of the United States.
1115. Misconduct or neglect of ship officers.
1116. Murder or manslaughter of foreign officials, official guests, or internationally protected persons.
1117. Conspiracy to murder.
1118. Murder by a Federal prisoner.
1119. Foreign murder of United States nationals.
1120. Murder by escaped prisoners.
1121. Killing persons aiding Federal investigations or State correctional officers.
1122. Protection against the human immunodeficiency virus.


### § 1111. Murder

(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life;

Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life.

(c) For purposes of this section—

(1) the term "assault" has the same meaning as given that term in section 113;

(2) the term "child" means a person who has not attained the age of 18 years and is—

(A) under the perpetrator's care or control; or

(B) at least six years younger than the perpetrator;

(3) the term "child abuse" means intentionally or knowingly causing death or serious bodily injury to a child;

(4) the term "pattern or practice of assault or torture" means assault or torture engaged in on at least two occasions;

(5) the term "serious bodily injury" has the meaning set forth in section 1365; and

(6) the term "torture" means conduct, whether or not committed under the color of law, that otherwise satisfies the definition set forth in section 2340(1).

(June 25, 1948, c. 645, 62 Stat. 756; Oct. 12, 1984, Pub.L. 98–473, Title II, § 1004, 98 Stat. 2138; Nov. 10, 1986, Pub.L. 99–646, § 87(c)(4), 100 Stat. 3623; Nov. 14, 1986, Pub.L. 99–654, § 3(a)(4), 100 Stat. 3663; Nov. 18, 1988, Pub.L. 100–690, Title VII, § 7025, 102 Stat. 4397; Sept. 13, 1994, Pub.L. 103–322, Title VI, § 60003(a)(4), 108 Stat. 1969; Apr. 30, 2003, Pub.L. 108–21, Title I, § 102, 117 Stat. 652.)

#### HISTORICAL AND STATUTORY NOTES

Effective and Applicability Provisions

1986 Acts. Amendment by section 87 of Pub.L. 99–646 effective 30 days after Nov. 10, 1986, see section 87(e) of Pub.L. 99–646, set out as a note under section 2241 of this title.

### § 1112. Manslaughter

(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

Voluntary—Upon a sudden quarrel or heat of passion.

Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of voluntary manslaughter, shall be fined under this title or imprisoned not more than 15 years, or both;

Whoever is guilty of involuntary manslaughter, shall be fined under this title or imprisoned not more than 8 years, or both.

(June 25, 1948, c. 645, 62 Stat. 756; Sept. 13, 1994, Pub.L. 103–322, Title XXXII, § 320102, Title XXXIII, § 330016(1)(H), 108 Stat. 2109, 2147; Oct. 11, 1996, Pub.L. 104–294, Title VI, § 604(b)(13), 110 Stat. 3507; Jan. 7, 2008, Pub.L. 110–177, Title II, § 207, 121 Stat. 2538.)

#### HISTORICAL AND STATUTORY NOTES

Effective and Applicability Provisions

1996 Acts. Amendment by section 604 of Pub.L. 104–294 effective Sept. 13, 1994, see section 604(d) of Pub.L. 104–294, set out as a note under section 13 of this title.



Exibit PS ( ) 7th Circ.

II. REQUISITE MENTAL STATE

Instructions: For the following, answer "YES" or "NO."

Do you, the jury, unanimously find that the government has established beyond a reasonable doubt that the defendant intentionally aided and abetted in the killing of Sherman Williams?

YES ✓

NO ______

1st. 4th. 3rd 7th
vol. 6th, 14th

______
FOREPERSON

FBI INTERVIEW

(Pg 18)

Voice (&) Handwriting Samples

Special Agent / FBI



Q Okay. Was the interview video taped?
A No, it was not. By rules and regulations of the F.B.I., we do not, I do not videotape without proper authorization.
Q And was it taped at all, audio taped?
A No, it was not.

Q Okay. Did you tell him that the more he cooperated the better it would be for him?
A I don't recall saying that to him.
Q Did you ever tell him that if he didn't do this murder that he wouldn't have to worry about going to jail?
A No, sir.
Q Did he tell you that he was worried about staying in jail, that he wanted out of jail?
A The following day -- this would have been August 23rd, when I went back to the Marshal Service to see him -- he told me that he couldn't do 20 years in prison for a murder that he only witnessed.

(pg 19)

(2) That the defendant has committed, attempted to commit, and/or threatened to commit other acts of violence in addition to the capital offenses committed in this case, including but not limited to the following:

(a) An attempted armed robbery/murder at the Tri-States Liquor Store, Hot Springs, Arkansas on or about June 8, 1995.

YES ______

NO ✓

viol. 1st, 5th, 6th, 7th, 14th

FOREPERSON

1st Conspiracy Allegation, after J.T. confesses (#) Refuses to Testify; Inculpate Paul

Not Guilty

Cert. authentic doc results

FOREPERSON

(Pg20)



# RULE 61

# HARMLESS ERROR

Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

## 2007 AMENDMENTS ROADMAP

**STYLE PROJECT CHANGES:** The densely complex first sentence of this Rule was reworded. The bulky "inconsistent with substantial justice" standard was thinned to "justice requires".

**NON-STYLE CHANGES:** None.

***NOTE: The Federal Rules "Style Project" is explained in Part III-A.***

## AUTHORS' COMMENTARY ON RULE 61

### PURPOSE AND SCOPE

Rule 61 codifies the principle that "harmless" errors by the district court—those errors that do not affect the parties' substantial rights—will not justify a new trial, setting aside a verdict, or vacating, modifying, or otherwise disturbing the court's order.

### APPLICATIONS

#### Standard for "Harmlessness"

Rule 61 defines a harmless error as one that does not affect the substantial rights of the parties or does not defeat substantial justice.[1] But an error will not be discounted as harmless if the court is left with a grave doubt as to whether the error had a substantial influence in the ultimate result.[2] A more exacting definition is

1. Rule 61. *See Brandt v. Vulcan, Inc.*, 30 F.3d 752 (7th Cir.1994)(harmless error calls into question the fundamental fairness of the trial).

2. *See Krulewitch v. United States*, 336 U.S. 440, 444–45, 69 S.Ct. 716, 718–19, 93 L.Ed. 790 (1949)(defining harmlessness in criminal context); *Sims v. Great American*

(Pg 21)



Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## McCOY *v.* LOUISIANA

CERTIORARI TO THE SUPREME COURT OF LOUISIANA

No. 16–8255. Argued January 17, 2018—Decided May 14, 2018

Petitioner Robert McCoy was charged with murdering his estranged wife's mother, stepfather, and son. McCoy pleaded not guilty to first-degree murder, insisting that he was out of State at the time of the killings and that corrupt police killed the victims when a drug deal went wrong. Although he vociferously insisted on his innocence and adamantly objected to any admission of guilt, the trial court permitted his counsel, Larry English, to tell the jury, during the trial's guilt phase, McCoy "committed [the] three murders." English's strategy was to concede that McCoy committed the murders, but argue that McCoy's mental state prevented him from forming the specific intent necessary for a first-degree murder conviction. Over McCoy's repeated objection, English told the jury McCoy was the killer and that English "took [the] burden off of [the prosecutor]" on that issue. McCoy testified in his own defense, maintaining his innocence and pressing an alibi difficult to fathom. The jury found him guilty of all three first-degree murder counts. At the penalty phase, English again conceded McCoy's guilt, but urged mercy in view of McCoy's mental and emotional issues. The jury returned three death verdicts. Represented by new counsel, McCoy unsuccessfully sought a new trial. The Louisiana Supreme Court affirmed the trial court's ruling that English had authority to concede guilt, despite McCoy's opposition.

*Held*: The Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Pp. 5–13.

(a) The Sixth Amendment guarantees to each criminal defendant "the Assistance of Counsel for his defence." The defendant does not

(Pg 22)



surrender control entirely to counsel, for the Sixth Amendment, in "grant[ing] to the accused personally the right to make his defense," "speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant." *Faretta* v. *California*, 422 U. S. 806, 819–820. The lawyer's province is trial management, but some decisions are reserved for the client—including whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal. Autonomy to decide that the objective of the defense is to assert innocence belongs in this reserved-for-the-client category. Refusing to plead guilty in the face of overwhelming evidence against her, rejecting the assistance of counsel, and insisting on maintaining her innocence at the guilt phase of a capital trial are not strategic choices; they are decisions about what the defendant's objectives in fact *are*. See *Weaver* v. *Massachusetts*, 582 U. S. ___, ___. Counsel may reasonably assess a concession of guilt as best suited to avoiding the death penalty, as English did here. But the client may not share that objective. He may wish to avoid, above all else, the opprobrium attending admission that he killed family members, or he may hold life in prison not worth living and prefer to risk death for any hope, however small, of exoneration. See Tr. of Oral Arg. 21–22. Thus, when a client makes it plain that the objective of "his defence" is to maintain innocence of the charged criminal acts and pursue an acquittal, his lawyer must abide by that objective and may not override it by conceding guilt. Pp. 5–8.

(b) *Florida* v. *Nixon*, 543 U. S. 175, is not to the contrary. Nixon's attorney did not negate Nixon's autonomy by overriding Nixon's desired defense objective, for Nixon "was generally unresponsive" during discussions of trial strategy and "never verbally approved or protested" counsel's proposed approach. *Id.*, at 181. He complained about counsel's admission of his guilt only after trial. *Id.*, at 185. McCoy, in contrast, opposed English's assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court. Citing *Nix* v. *Whiteside*, 475 U. S. 157, the Louisiana Supreme Court concluded that English's refusal to maintain McCoy's innocence was necessitated by a Louisiana Rule of Professional Conduct that prohibits counsel from suborning perjury. But in *Nix*, the defendant told his lawyer that he intended to commit perjury. Here, there was no avowed perjury. English harbored no doubt that McCoy believed what he was saying; English simply disbelieved that account in view of the prosecution's evidence. Louisiana's ethical rules might have stopped English from presenting McCoy's alibi evidence if English knew perjury was involved, but Louisiana has identified no ethical rule requiring English to admit McCoy's guilt over McCoy's objection. Pp. 8–11.

(pg 23)



(c) The Court's ineffective-assistance-of-counsel jurisprudence, see *Strickland* v. *Washington*, 466 U. S. 668, does not apply here, where the client's autonomy, not counsel's competence, is in issue. To gain redress for attorney error, a defendant ordinarily must show prejudice. See *id.*, at 692. But here, the violation of McCoy's protected autonomy right was complete when the court allowed counsel to usurp control of an issue within McCoy's sole prerogative. Violation of a defendant's Sixth Amendment-secured autonomy has been ranked "structural" error; when present, such an error is not subject to harmless-error review. See, *e.g., McKaskle* v. *Wiggins*, 465 U. S. 168, 177, n. 8; *United States* v. *Gonzalez-Lopez*, 548 U. S. 140; *Waller* v. *Georgia*, 467 U. S. 39. An error is structural if it is not designed to protect defendants from erroneous conviction, but instead protects some other interest, such as "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver*, 582 U. S., at __ (citing *Faretta*, 422 U. S., at 834). Counsel's admission of a client's guilt over the client's express objection is error structural in kind, for it blocks the defendant's right to make a fundamental choice about his own defense. See *Weaver*, 582 U. S., at ___. McCoy must therefore be accorded a new trial without any need first to show prejudice. Pp. 11–12.

2014–1449 (La. 10/19/16), 218 So. 3d 535, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. ALITO, J., filed a dissenting opinion, in which THOMAS and GORSUCH, JJ., joined.

Pub.L. 100–204, Title I, § 140(d)(2), Dec. 22, 1987, 101 Stat. 1347, as amended, which is classified to 22 U.S.C.A. § 2656f(d)(2).

101(a)(22) of the Immigration and Nationality Act, referred to in subsec. (b)(1), is Act June 27, 1952, c. 477, Title I, § 101(a)(22), 66 Stat. 166, as amended, which is classified to 8 U.S.C.A. § 1101(a)(22).

Section 101(a)(20) of the Immigration and Nationality Act, referred to in subsec. (b)(1), is Act June 27, 1952, c. 477, Title I, § 101(a)(20), 66 Stat. 166, as amended, which is classified to 8 U.S.C.A. § 1101(a)(20).

## CHAPTER 113C—TORTURE

Sec.
2340. Definitions.
2340A. Torture.
2340B. Exclusive remedies.

### HISTORICAL AND STATUTORY NOTES

**Codifications**

Pub.L. 104–294, Title VI, § 601(j)(1), Oct. 11, 1996, 110 Stat. 3501, which directed that chapter 113B, relating to torture, be redesignated chapter 113C, was incapable of execution due to prior identical amendment by section 303(c)(1) of Pub.L. 104–132.

**Effective and Applicability Provisions**

**2002 Acts.** Amendment by section 4002(c)(1) of Pub.L. 107–273, as therein provided, effective Oct. 11, 1996, which is the date of enactment of Pub.L. 104–294, to which such amendment relates.

## § 2340. Definitions

As used in this chapter—

(1) "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;

(2) "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from—

(A) the intentional infliction or threatened infliction of severe physical pain or suffering;

(B) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(C) the threat of imminent death; or

(D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality; and

(3) "United States" means the several States of the United States, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

(Added Pub.L. 103–236, Title V, § 506(a), Apr. 30, 1994, 108 Stat. 463, and amended Pub.L. 103–415, § 1(k), Oct. 25, 1994, 108 Stat. 4301; Pub.L. 103–429, § 2(2), Oct. 31, 1994, 108 Stat. 4377; Pub.L. 108–375, Div. A, Title X, § 1089, Oct. 28, 2004, 118 Stat. 2067.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

**1994 Acts.** Section 506(c) of Pub.L. 103–236 provided that: "The amendments made by this section [enacting this chapter] shall take effect on the later of—

"(1) the date of enactment of this Act [Apr. 30, 1994]; or

"(2) the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment."

[Convention entered into force with respect to the United States Nov. 20, 1994, Treaty Doc. 100–20.]

## § 2340A. Torture

**(a) Offense.**—Whoever outside the United States commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both, and if death results to any person from conduct prohibited by this subsection, shall be punished by death or imprisoned for any term of years or for life.

**(b) Jurisdiction.**—There is jurisdiction over the activity prohibited in subsection (a) if—

(1) the alleged offender is a national of the United States; or

(2) the alleged offender is present in the United States, irrespective of the nationality of the victim or alleged offender.

**(c) Conspiracy.**—A person who conspires to commit an offense under this section shall be subject to the same penalties (other than the penalty of death) as the penalties prescribed for the offense, the commission of which was the object of the conspiracy.

(Added Pub.L. 103–236, Title V, § 506(a), Apr. 30, 1994, 108 Stat. 463, and amended Pub.L. 103–322, Title VI, § 60020, Sept. 13, 1994, 108 Stat. 1979; Pub.L. 107–56, Title VIII, § 811(g), Oct. 26, 2001, 115 Stat. 381.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

**1994 Acts.** Section effective on the later of Apr. 30, 1994, or the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman

(9) for an infraction, not more than five days.

(Added Pub.L. 98–473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1998.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

**1984 Acts.** Section effective on the first day of first calendar month beginning thirty-six months after Oct. 12, 1984, applicable only to offenses committed after taking effect of sections 211 to 239 of Pub.L. 98–473, and except as otherwise provided for therein, see section 235 of Pub.L. 98–473, as amended, set out as a note under section 3551 of this title.

## § 3582. Imposition of a sentence of imprisonment

(a) **Factors to be considered in imposing a term of imprisonment.**—The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. In determining whether to make a recommendation concerning the type of prison facility appropriate for the defendant, the court shall consider any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2).

(b) **Effect of finality of judgment.**—Notwithstanding the fact that a sentence to imprisonment can subsequently be—

(1) modified pursuant to the provisions of subsection (c);

(2) corrected pursuant to the provisions of rule 35 of the Federal Rules of Criminal Procedure and section 3742; or ✓

(3) appealed and modified, if outside the guideline range, pursuant to the provisions of section 3742;

a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes.

(c) **Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); ✓

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

(d) **Inclusion of an order to limit criminal association of organized crime and drug offenders.**—The court, in imposing a sentence to a term of imprisonment upon a defendant convicted of a felony set forth in chapter 95 (racketeering) or 96 (racketeer influenced and corrupt organizations) of this title or in the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 801 et seq.), or at any time thereafter upon motion by the Director of the Bureau of Prisons or a United States attorney, may include as a part of the sentence an order that requires that the defendant not associate or communicate with a specified person, other than his attorney, upon a showing of probable cause to believe that association or communication with such person is for the purpose of enabling the defendant to control, manage, direct, finance, or otherwise participate in an illegal enterprise.

(Added Pub.L. 98–473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1998, and amended Pub.L. 100–690, Title VII, § 7107, Nov. 18, 1988, 102 Stat. 4418; Pub.L. 101–647, Title XXXV, § 3588, Nov. 29, 1990, 104 Stat. 4930; Pub.L. 103–322, Title VII, § 70002, Sept. 13, 1994, 108 Stat. 1984; Pub.L. 104–294, Title VI, § 604(b)(3), Oct. 11, 1996, 110 Stat. 3506; Pub.L. 107–273, Div. B, Title III, § 3006, Nov. 2, 2002, 116 Stat. 1806.)

### HISTORICAL AND STATUTORY NOTES

**References in Text**

The Federal Rules of Criminal Procedure, referred to in text, are set out in Title 18.

(Pg 26)

consultants believe are pertinent to the factors set forth in section 3553(a). The period of the study may, in the discretion of the court, be extended for an additional period of not more than sixty days. By the expiration of the period of the study, or by the expiration of any extension granted by the court, the United States marshal shall, if the defendant is in custody, return the defendant to the court for final sentencing. The Bureau of Prisons or the professional consultants shall provide the court with a written report of the pertinent results of the study and make to the court whatever recommendations the Bureau or the consultants believe will be helpful to a proper resolution of the case. The report shall include recommendations of the Bureau or the consultants concerning the guidelines and policy statements, promulgated by the Sentencing Commission pursuant to 28 U.S.C. 994(a), that they believe are applicable to the defendant's case. After receiving the report and the recommendations, the court shall proceed finally to sentence the defendant in accordance with the sentencing alternatives and procedures available under this chapter.

**(c) Presentence examination and report by psychiatric or psychological examiners.**—If the court, before or after its receipt of a report specified in subsection (a) or (b) desires more information than is otherwise available to it as a basis for determining the mental condition of the defendant, the court may order the same psychiatric or psychological examination and report thereon as may be ordered under section 4244(b) of this title.

**(d) Disclosure of presentence reports.**—The court shall assure that a report filed pursuant to this section is disclosed to the defendant, the counsel for the defendant, and the attorney for the Government at least ten days prior to the date set for sentencing, unless this minimum period is waived by the defendant. The court shall provide a copy of the presentence report to the attorney for the Government to use in collecting an assessment, criminal fine, forfeiture or restitution imposed.

(Added Pub.L. 98–473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1988, and amended Pub.L. 99–646, § 7(a), Nov. 10, 1986, 100 Stat. 3593; Pub.L. 101–647, Title XXXVI, § 3625, Nov. 29, 1990, 104 Stat. 4965.)

## HISTORICAL AND STATUTORY NOTES

### Effective and Applicability Provisions

**1998 Acts.** Section effective on the first day of first calendar month beginning thirty-six months after October 12, 1984, applicable only to offenses committed after taking effect of sections 211 to 239 of Pub.L. 98–473, and except as otherwise provided for therein, see section 235 of Pub.L. 98–473, as amended, set out as a note under section 3551 of this title.

**1990 Acts.** Amendment by section 3625 of Pub.L. 101–647 effective 180 days after Nov. 29, 1990, see section 3631 of Pub.L. 101–647, set out as a note un[...] f Title 28, Judiciary and Judicial Procedure.

**1986 Acts.** Section 7(b) of Pub.L. [...] l that: "The amendments made by this sectio[...] is section] shall take effect on the date of t[...] fect of section 3552 of title 18, United States C[...] section]."

### Use of Certain Technology to Facilitate [...] al Conduct

Pub.L. 104–294, Title V, § 501, Oct. 11, 1[...] Stat. 3497, provided that:

"**(a) Information.**—The Administrative Of[...] the United States courts shall establish policies and [...] ures for the inclusion in all presentence reports of i[...] on that specifically identifies and describes any use o[...] tion or scrambling technology that would be releva[...] enhancement under section 3C1.1 (dealing with Obst[...] or Impeding the Administration of Justice) of the Sent[...] Guidelines [set out in this title] or to offense conduct u[...] the Sentencing Guidelines.

"**(b) Compiling and report.**—The United States Sente[...] ing Commission shall—

"(1) compile and analyze any information contained in documentation described in subsection (a) relating to the use of encryption or scrambling technology to facilitate or conceal criminal conduct; and

"(2) based on the information compiled and analyzed under paragraph (1), annually report to the Congress on the nature and extent of the use of encryption or scrambling technology to facilitate or conceal criminal conduct."

## § 3553. Imposition of a sentence

**(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**(b) Application of guidelines in imposing a sentence.—**

(1) **In general.**—Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

(2) **Child crimes and sexual offenses.—**

(A) [2] **Sentencing.**—In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless—

(i) the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

(ii) the court finds that there exists a mitigating circumstance of a kind or to a degree, that—

(I) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

(II) has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

(III) should result in a sentence different from that described; or

(iii) the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable