USDC/SOUTHERN DISTRICT OF IN.

Jeffery W.Paul
Rg#10517-042
USP Terre Haute,IN.
PO BOX 33
Terre Haute,IN.
47808-0033

(Re:PAUL V.SUPERINTENDENT(WTL/MJD)
Case No#2:13 cv 304-USDC/SD-T.28-Ch.153-
HABEAS CORPUS/DEATH SENTENCE-(Pro Se)

RECEIVED
AUG 5 2019
U.S. CLERK'S OFFICE
TERRE HAUTE, INDIANA

-----------------

* LEGAL DEMAND/LETTER OF REQUEST *

FILED
AUG 0 5 2019
U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

HON.JUDGE LAWRENCE/DINSMORE-

Dear Sirs,

On 7/9/19-I visited with Attorney Shawn Nolan here at the Prison(&)unfortunately he had no news for me(&)I believe I am going to be executed or imprisoned for LIFE,if Shawn cannot figure remedy for,8th Cir.USCA Courts denial of my Motion for a successive appeal from §2255(h)(2)-...I asked him to file the"McCoy" issue on 5/14/18,(&)he waited til' 5/14/19-(&)ultimately failed to nexus in the proper transcript references showing counsel did actually admit GUILT to the 1st Degree Offense(&)ask for a 2nd Degree sentence guideline under1111(a)Ch.53 T.18.-,which is HOMICIDE (&)exactly violated my right to reject the Plea Bargain Offered in The GARLAND COUNTY JAIL,by USAO Steve Snyder,DULY,over the phone in the LAW LIBRARY,witnessed by Attorneys OLIVER(&)WILLIAMS...

I rejected that Offer because I intended to support my NOT GUILTY Plea,with JURY INSTRUCTIONS relevant to exonerating forensics(&) WITNESS IMPEACHMENT(&)Denied the statements attributed to me,the Trial Attorney was aware that Id denied the conspiracy with TRINITY Ingle(&)had successfully defended myself against related charges in the STATE Case,(re:TRI LAKES LIQOUR STORE),(&)requested Trial Counsel

Cont...

carryover that defense,(&)recover more video etcetera demonstrating the nature of our movements(&)reality of the Crime,VS.informants versions,which were false(&)coerced,out of context.

Obviously,I was shocked by MR.NOLANS Offices inability to obtain a CERTIFICATE OF APPEALIBILITY from The 8th Circuit on such a blatant violation(&)painstakingly reviewed the MOTION,finding 2/TWO TYPOS in that after a LONG time,exacerbated by LEARNING DISABILITY,(&)pointed out that his PRIMA FACIE Proffer to demonstrate the violation ofmy right to support my Objective NOT GUILTY Plea,is not PAGE REFERENCED properly,see:Case No#19.1994-In re JEFFREY PAUL-Movant:Application for Leave to file a second or successive Motion Pursuant to 2255(h)-5/14/19- Pg.4...hes quoting trial counsels request for a 2nd degree Murder conviction(&)references Pg.896.T.,instead of pg.900...failing to reference BOTH violations of my 5th(&)6th amendment rights...which is part of the threshhold for establishing a"McCoy",claim,I alerted MR.NOLAN about the typo(&)was assured hes filing something next week,(last week now),but am not sure about what(&)am told the denials are final.

Please note,although Im told the 924(c)issue filed(&)reiterated by the DAVIS No.18-418-Sct.case is good(&)should result in my release,I am on DEATH ROW for a crime I did NOT Commit(&)the opportunity to file such a authoritive issue as the STRUCTURAL ERROR in"McCoy"is what I wanted(&)I cannot relegate the matter any longer because the position Im in is that I have a effective Lawyer w/a HIGH IQ in MR.NOLAN,who apparently slipped a KEYSTROKE(&)lost a issue that cannot be reraised,(&)thus may defacto prove inneffective assisstance on collateral claims.

USDC/Southern District,IN.



Cont...

I assure you,I plead NOT-GUILTY(&)the Judge Knew it because he was on the conference call when I rejected Attorney Snyders Offer (&)if you check,Pg.459,(&)842 Trial transcripts,youll see that the Judge repeatedly reminds the Jury the I plead NOT GUILTY...(&)if you read Olivers opening,T.Pg.497(&)498.,youll see that he states as following,"Jeff has been Charged w/2ct indictment(&)you heard it twice already,but Im going to say it again;that on June 22 95',while aiding(&)abetting each other,TRINITY(&)Jeffery committed the crime of 1st degree MURDER..."

He continues to explain that inorder to be guilty of A&A 1st degree murder,you have to know the crime was/was going to be committed,or acted in some way for the purpose of causing the crime...

He then admits to planning a ROBBERY/ARMED that results in a Homicide which is in a statement I denied,see:PG.812-814..which is the testimony of FBI Agent John LaVoie wherein he admits I stopped as soon as I realized my statement was being construed as inculpatory(the interview POST ARREST),(&)attempted to correct the record,claiming my father (family),did not know I was wanted as a principle for HOMICIDE(&)that I was in FLORIDA legitimately,had only witnessed the crime(&)was concerned that I would be used for a scapegoat,claimed I was only a witness(&)diddnt want to do 20 Yrs.for a crime I didnt commit...

Pleas note,all I had to do to satisfy the PRIMA FACIE requisites to obtain a C.O.A./Certificate of Appealibility on this issue is prove I plead NOT-GUILTY,of my own volition(&)Counsel undermined the objective of my Plea by closing my right to have the Jury consider me innocent of the crime,which is what happens when Lawyers admit their clients are guilty during the GUILT/INNOCENCE Phase of the trial... certainly,Lawyers can do that but only at terms of Plea Bargains with permission from both sides(&)if youd check the USAO Office,youll find I rejected the offer(&)went to trial on both STATE/FEDERAL Charges to

Cont...

win the cases because although the penalties are intimidating, I used to believe the JURY was confined to the bounds of fact(&) had to literally obey the instructions about forensics,hearsay(&) vitriole,I thought Id win(&)am not trying to lose now.

Please note,the NARROW RULE announced in "McCoy" ,shouldve required a remand in my favor because no reasonable JUROR"COULD"VE found me GUILTY until Counsel admitted Guilt to the crime because the trial wasnt over(&)I have LEGAL RIGHT to The BENEFIT OF THE DOUBT until the verdict is returned...obviously GUILT/INNOCENCE of the crime was not moot,only the sentence(&)aggravating circumstances because COUNSEL impermissably shifted the BURDEN of REPRESENTATION over to me,(The DEFENDANT),in lieu of presenting a rebuttal to the USAO's allegation.

You know,Attorney Olivers opening was 7 pgs long(&)defamatory(&) ultimately repeated in his closing,which was admit the 1st degree murder,ask for 2nd degree penalty phase,which I exactly rejected(&) attempted to deny.

* SUMMARY REQUEST/CLOSING LETTER TO JUDGE *

Please note the issue requires a immediate vacateur(&)remand for a NEW TRIAL for a DEFENDANT that can prove the forensics(&)credible EYEWITNESS TESTIMONY exonerates me wholly...(&)ORDER ATTORNEY SHAWN NOLANS Office to forthrightly expedite a brief to be amended/supplemented byway of T.28.Ch.153 §2242-HABEAS CORPUS - ,which allows the ORIGINAL Application to be amended ideally,as necessary to prevent a FUNDAMENTAL MISCARRIAGE of JUSTICE!

Also,note that Shawns Office did NOT send all the Documents I requested from Discovery(&)I believe that papers sent,attempting to expedite redress,were inchoate,discursive(&)maybe forged to inculpate me,or exonerate others to my detriment or beyond scope of my

Cont...

Appointed Counsels purview/resources(&)I did alert the BOP/FBI to some of my concerns because I was in contact with intelligence(&)had developed some financial theory for underwriting(&)patents that were entangled internationally(&)did attempt to reraise,contact(&)revise (&)recover private shares,as well as report some abuse(&)see if a WRIT would be available(&)feel like Ive been exploited,exposed(&)am not sure to what extent or end or by who,but its illegal to sexually harass,race bait,OBSTRUCT,or apply procedures designed to TORTURE,experiment with humans(&)Ive been subject to all the above(&)am losing Witnesses...

Please note,WESLEY IRA PURKEY not only saw certain procedures against me,but was also subject to some kind of electric "CHAIR",routine where prisoners are shocked by electrodes designed to draw the current to the head,while wearing a black sack like a hood,restrained to a woouden chair...sometimes coupled w/injections that chest pain,thrombosis type symptoms,amnesia(&)months of stuttering(&)strange mood swings,discursiveness,a review of Wesleys calls would reveal his stuttering(&)I did request the voice/recordings preserved because he had an execution date previously,(&)does now again...DANNY LEE was witness to extensive Torture from I/M's being incited by Staff(&)other procedures as well.

**Concisely *

Please order Counsel to file the amendment to the STRUCTURAL ERROR CLAIMS,(&)Release Copy of Documents Attributed to me for Consult,(&) Context for LIBERAL REMAND.

RESPECTFULLY SUBMITTED,

Signed ________________________

Jeffery William Paul Rg#10517-042

7/28/19-

Att!! Hon. Judge Lawrence / Dinsmore (Pg21)



Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## McCOY *v.* LOUISIANA

SCt!

CERTIORARI TO THE SUPREME COURT OF LOUISIANA

No. 16–8255. Argued January 17, 2018—Decided May 14, 2018

Petitioner Robert McCoy was charged with murdering his estranged wife's mother, stepfather, and son. McCoy pleaded not guilty to first-degree murder, insisting that he was out of State at the time of the killings and that corrupt police killed the victims when a drug deal went wrong. Although he vociferously insisted on his innocence and adamantly objected to any admission of guilt, the trial court permitted his counsel, Larry English, to tell the jury, during the trial's guilt phase, McCoy "committed [the] three murders." English's strategy was to concede that McCoy committed the murders, but argue that McCoy's mental state prevented him from forming the specific intent necessary for a first-degree murder conviction. Over McCoy's repeated objection, English told the jury McCoy was the killer and that English "took [the] burden off of [the prosecutor]" on that issue. McCoy testified in his own defense, maintaining his innocence and pressing an alibi difficult to fathom. The jury found him guilty of all three first-degree murder counts. At the penalty phase, English again conceded McCoy's guilt, but urged mercy in view of McCoy's mental and emotional issues. The jury returned three death verdicts. Represented by new counsel, McCoy unsuccessfully sought a new trial. The Louisiana Supreme Court affirmed the trial court's ruling that English had authority to concede guilt, despite McCoy's opposition.

*Held*: The Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Pp. 5–13.

(a) The Sixth Amendment guarantees to each criminal defendant "the Assistance of Counsel for his defence." The defendant does not

Prima facie Structural Error

objective definition! Not-Guilty

(pg 22)



surrender control entirely to counsel, for the Sixth Amendment, in "grant[ing] to the accused personally the right to make his defense," "speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant." *Faretta* v. *California*, 422 U. S. 806, 819–820. The lawyer's province is trial management, but some decisions are reserved for the client—including whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal. Autonomy to decide that the objective of the defense is to assert innocence belongs in this reserved-for-the-client category. Refusing to plead guilty in the face of overwhelming evidence against her, rejecting the assistance of counsel, and insisting on maintaining her innocence at the guilt phase of a capital trial are not strategic choices; they are decisions about what the defendant's objectives in fact *are*. See *Weaver* v. *Massachusetts*, 582 U. S. ___, ___. Counsel may reasonably assess a concession of guilt as best suited to avoiding the death penalty, as English did here. But the client may not share that objective. He may wish to avoid, above all else, the opprobrium attending admission that he killed family members, or he may hold life in prison not worth living and prefer to risk death for any hope, however small, of exoneration. See Tr. of Oral Arg. 21–22. Thus, when a client makes it plain that the objective of "his defence" is to maintain innocence of the charged criminal acts and pursue an acquittal, his lawyer must abide by that objective and may not override it by conceding guilt. Pp. 5–8.

(b) *Florida* v. *Nixon*, 543 U. S. 175, is not to the contrary. Nixon's attorney did not negate Nixon's autonomy by overriding Nixon's desired defense objective, for Nixon "was generally unresponsive" during discussions of trial strategy and "never verbally approved or protested" counsel's proposed approach. *Id.*, at 181. He complained about counsel's admission of his guilt only after trial. *Id.*, at 185. McCoy, in contrast, opposed English's assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court. Citing *Nix* v. *Whiteside*, 475 U. S. 157, the Louisiana Supreme Court concluded that English's refusal to maintain McCoy's innocence was necessitated by a Louisiana Rule of Professional Conduct that prohibits counsel from suborning perjury. But in *Nix*, the defendant told his lawyer that he intended to commit perjury. Here, there was no avowed perjury. English harbored no doubt that McCoy believed what he was saying; English simply disbelieved that account in view of the prosecution's evidence. Louisiana's ethical rules might have stopped English from presenting McCoy's alibi evidence if English knew perjury was involved, but Louisiana has identified no ethical rule requiring English to admit McCoy's guilt over McCoy's objection. Pp. 8–11.

(Pg 23)



Syllabus

(c) The Court's ineffective-assistance-of-counsel jurisprudence, see *Strickland* v. *Washington*, 466 U. S. 668, does not apply here, where the client's autonomy, not counsel's competence, is in issue. To gain redress for attorney error, a defendant ordinarily must show prejudice. See *id.*, at 692. But here, the violation of McCoy's protected autonomy right was complete when the court allowed counsel to usurp control of an issue within McCoy's sole prerogative. Violation of a defendant's Sixth Amendment-secured autonomy has been ranked "structural" error; when present, such an error is not subject to harmless-error review. See, *e.g.*, *McKaskle* v. *Wiggins*, 465 U. S. 168, 177, n. 8; *United States* v. *Gonzalez-Lopez*, 548 U. S. 140; *Waller* v. *Georgia*, 467 U. S. 39. An error is structural if it is not designed to protect defendants from erroneous conviction, but instead protects some other interest, such as "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver*, 582 U. S., at __ (citing *Faretta*, 422 U. S., at 834). Counsel's admission of a client's guilt over the client's express objection is error structural in kind, for it blocks the defendant's right to make a fundamental choice about his own defense. See *Weaver*, 582 U. S., at ___. McCoy must therefore be accorded a new trial without any need first to show prejudice. Pp. 11–12.

2014–1449 (La. 10/19/16), 218 So. 3d 535, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. ALITO, J., filed a dissenting opinion, in which THOMAS and GORSUCH, JJ., joined.