for that second phase if it becomes necessary.

Is that agreeable?

BY MR. SNYDER: Yes, sir.

BY MR. OLIVER: Yes, sir.

BY MR. WILLIAMS: Yes, sir.

BY THE COURT: Okay. Thank you very much. We'll be ready to go then when we get our jury.

[Recess taken at 8:12 a.m. - Jury Out]

[Open Court - June 23, 1997 - 8:44 a.m. - Jury Present]

[Call to Order of the Court]

P R O C E E D I N G S

BY THE COURT: Thank you, ladies and gentlemen.

Ladies and gentlemen, we are running late today. Since we have made such a good record of doing that, we thought we would just try to keep it up. [Laughter]

I want to express my thanks to the attorneys for staying with me Friday and my staff and we did get our work done, pretty much done, on the instructions and they did meet again with me this morning at 8 o'clock to deal with some other matters; and we're ready to go except there was a totally unrelated matter in another case that I was required to have a short hearing on, and that was what essentially ran us long.

So it certainly was not the fault of the attorneys or anyone really but myself and that's the why of it; so again, thank you for your patience with us.

Ladies and gentlemen, as you know, the proof has now been submitted to you in this Phase 1 of this case and we now come to the point at which I will give you the instructions that will guide you in your deliberations. These instructions are in this notebook, which will be given to you. You'll notice the first two pages are an index. In the left-hand margin, there are numbers which are keyed to the numbers in the lower right corners of the individual pages.

Now this index, the first two pages, is not a part of the instructions and I will not read it to you. It is simply there for any help that it might be to you if you wanted to look up a particular instruction. And also the verdict forms - and I'll talk about them again in a minute - are in the back of the booklet.

So if you will give me your attention now, I will read to you these instructions and they will be given to you when you retire to deliberate.

Members of the jury, the instructions at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, follow the instructions I gave you earlier as well as those I give you now. You must not single out some instructions and ignore others because all are important. This is true even though some of those I gave you at the beginning of or during the trial are not repeated here.

The instructions that I'm about to give you now are in writing and will be available to you in the jury room. I emphasize, however, that this does not mean they are more important than my earlier instructions. Again, all instructions, whenever given and whether in writing or not, must be followed.

It is your duty to find from the evidence what the facts are. You will then apply the law as I give it to you to those facts. You must follow my instructions of the law even if you thought the law was different or should be different.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense and the law as I give it to you.

I have mentioned the word evidence. The evidence in this case consists of the testimony of witnesses; the documents and other things received as exhibits; the facts that have been stipulated -- that is, formally agreed to by the parties; and the facts that have been judicially noticed -- that is, facts which I say you may but are not required to accept as true even without evidence.

You may use reason and common sense to draw deductions or conclusions from facts which have been established by the evidence in the case. Certain things are not evidence. I shall list those things again for you now.

First, statements, arguments and questions and comments by lawyers representing the parties in the case are not evidence.

Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If I sustain an objection to a question, you must ignore the question and must not try to guess what the answer might have been.

Three, testimony that I struck from the record or told you to disregard is not evidence and must not be considered.

Anything you saw or heard about this case outside the courtroom is not evidence.

Finally, if you were instructed that some evidence was received for a limited purpose only, you must follow that instruction.

If a lawyer asked a witness a question which contained an assertion of fact, you may not consider the assertion as evidence of the fact. The lawyer's statements are not evidence.

You are to consider only the evidence in the case but in your consideration of the evidence, you are not limited to the bald assertions of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw from facts which you find have been proved such reasonable inferences as seem justified in the light of your experience.

Inferences are deductions or conclusions which reason and common sense lead the jury to draw from facts which have been established by the evidence in the case.

A fact in dispute may be proved by circumstantial evidence as well as by direct evidence. Both types of evidence may properly be considered by you.

A fact is established by direct evidence when, for example, it is proved by witnesses who testify as to what they saw, heard or experienced.

A fact is established by circumstantial evidence when its existence can reasonably be inferred from other facts proved in the case.

You may recall my example concerning the case of "Jenkins' Ear" which I mentioned to you in my preliminary instructions. While it is important for you to know the difference between direct and circumstantial evidence, it is equally important for you to know that the law makes no distinction between them and that you may properly consider both kinds of evidence in deciding the facts which are to be decided by you.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said or only part of it or none of it.

You are the sole judges of the weight of the evidence and the credibility of the witnesses. In determining the credibility of any witness and the weight to be given to the testimony of that witness, you may take into consideration the demeanor of the witness while on the stand; any prejudice the witness may

have for or against any party; the means the witness had of acquiring knowledge concerning any matter to which the witness testified; any interest the witness my have in the outcome of the case; and the consistency or the inconsistency of the testimony of the witness, as well as it's reasonableness or unreasonableness.

You have heard evidence that witness Kris Rogers was once convicted of a crime. You may use that evidence only to help you decide whether to believe the witness and how much weight to give his testimony.

You have heard testimony from persons described as experts. Persons who by knowledge, skill, training, education or experience have become expert in some field may state their opinion on matters in that field and may also state the reasons for their opinions.

Expert testimony should be considered just like any other testimony. You may accept or reject it and give it as much weight as you think it deserves, considering the witnesses education and experience, the soundness of the reasons given for the opinion, the acceptability of the methods used, and all the other evidence in the case.

The indictment in this case charges the defendant, Jeffery William Paul, with two different crime and reads as follows:

Count 1: On or about the twenty-second day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the

defendant, Jeffery William Paul, and another individual known to the grand jury, while aiding and abetting each other within the confines of Hot Springs National Park, a place within the special maritime and the territorial jurisdiction of the United States pursuant to Title 18, U.S. Code Section 73, did with malice aforethought, kill Sherman Williams by means of gunshot wounds in the perpetration of robbery in violation of 18 U.S. Code Section 1111(a) and Section 2.

Count 2: On or about the twenty-second day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, Jeffery William Paul, and another individual known to the grand jury, while aiding and abetting each other within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States pursuant to Title 18, U.S. Code Section 73, did knowingly carry and use a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit: a robbery in the National Park, Hot Springs, Arkansas, on or about June 22, 1995, as set forth in Count 1 of this indictment which is realleged and incorporated by reference herein, in violation of 18 U.S. Code Section 924(c)(1) and in the course of this violation caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18, U.S. Code Section 1111, in that the defen- dant did unlawfully kill Sherman Williams by shooting him with a

firearm in the perpetration of the robbery and attempted perpetration of the robbery in violation of Title 18, U.S. Code Section, 924(i)(1) and Title 18, U.S. Code, Section 2.

The defendant has plead not guilty to these charges.

As I told you at the beginning of the trial, an indictment is simply an accusation. It is not evidence of anything. To the contrary, the defendant is presumed to be innocent. Thus the defendant, even though charged, begins the trial with no evidence against him. The presumption of innocence alone is sufficient to find the defendant not guilty and can be overcome only if the Government proves beyond a reasonable doubt each essential element of one or more of the crimes charged.

There is no burden upon a defendant to prove that he is innocent. Thus, the defendant does not have to call any witnesses or present any evidence to prove innocence. Further, the law does not compel defendant to take the witness stand and testify. Accordingly, the fact that defendant did not testify must not be considered by you in any way or even discussed in arriving at your verdict.

Keep in mind that each count charges a separate crime. You must consider each count separately and return a separate verdict for each count.

A reasonable doubt is doubt based upon reason and common sense and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person

hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

You will note that the indictment charges that the offense or the offenses were committed on or about a certain date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offenses were committed on a date reasonably near the date alleged.

In order to sustain it's burden of proof for the crime of first degree murder as charged in Count 1 of the indictment, the Government must prove the following three essential elements beyond a reasonable doubt:

One: The acts or act of killing Sherman Williams without lawful justification;

Two: The acts or act of killing was done with malice aforethought; and,

Three: That such act or acts of killing were done in the perpetration of a robbery.

For you to find the defendant of the crime charged under Count 1, the Government must prove all of these essential elements beyond a reasonable doubt; otherwise, you must find the defendant not guilty under Count 1.

Malice aforethought means an intent at the time of the killing willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life; but malice aforethought does not necessarily imply any ill will, spite or hatred towards the individual killed.

Malice, as the term is used here, is but another name for a certain state or condition of a person's mind or heart. Since no one can look into the heart or mind of another, the only means of determining whether or not malice existed at the time of the killing is by inference drawn from the surrounding facts and circumstances as shown by the evidence in the case.

In determining whether Sherman Williams was unlawfully killed with malice aforethought, the jury should consider all the facts and circumstances preceding, surrounding, and following the killing as shown by the evidence in the case which tend to shed light upon the condition of mind and heart of the killer before and at the time of the deed. No fact - no matter how small - and no circumstance - no matter how trivial - which bears upon the question of malice aforethought should escape careful consideration by the jury.

In determining whether the Government has sustained its burden of proof on the question of whether the defendant acted with malice aforethought, you may consider whether or not the defendant used a weapon or other instrument and you may also

consider the manner in which the death was caused.

You may not find the defendant guilty of first degree murder by reason of killing during the perpetration of a robbery unless you find beyond a reasonable doubt that at the time of the killing, the defendant was engaged in the perpetration of a robbery as defined in these instructions.

The crime of robbery has three essential elements which are:

One; that Sherman Williams had in his possession or on his person or presence anything of value.

Two; that the defendant took and carried away anything of value from Sherman Williams by force or violence, and

Three; that the taking occurred within the boundaries of the Hot Springs National Park.

Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find in light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

Possession of property recently stolen, if not satisfactorily explained, is also ordinarily a circumstance from which the jury may reasonably draw the inferences and find in light of the surrounding circumstances shown by the evidence in the case that the person in possession not only knew it was stolen property but also participated in some way in the theft of the property.

Ordinarily, the same inferences may reasonably be drawn from a false explanation of possession of recently stolen property.

The term "recently" is a relative term and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evidence of the case. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from an unexplained possession.

If you find beyond a reasonable doubt from the evidence in the case that the victim's automobile and money were stolen; that while recently stolen, the property was in the possession of the accused, you may from those facts draw inference not only that the victim's automobile and money were possessed by the accused with knowledge that the property was stolen, but also that the accused participated in some way in the theft of the property, unless possession of the recently stolen property by the accused is explained to the satisfaction of the jury by other facts and circumstances in this case.

In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that in the exercise of constitutional protected rights, the accused need not take the witness stand and testify.

There may be opportunities to explain possession by showing

other facts and circumstances independent of the testimony of the defendant.

You will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits you to draw from possession of recently stolen property. If any possession the accused may have had of recently stolen property is consistent with innocence or if you entertain reasonable doubt of guilt, you must acquit the accused.

The law permits the jury to determine whether the Government has proven the guilt of a defendant for any less serious offense which is by its very nature necessarily included in the crime charged in Count 1 of the indictment.

If, therefore, you unanimously find the defendant, Jeffery William Paul, not guilty of the crime of murder in the first degree as charged in Count 1 of the indictment; or if after reasonable efforts you are unable to decide unanimously on the guilt or innocence of the defendant for this charge, then you must proceed to determine whether or not the Government has proven the guilt of the defendant beyond a reasonable doubt for any less serious offense necessarily included in that charge.

The crime of murder in the first degree as charged in Count

1 of the indictment necessarily includes the less serious offense of murder in the second degree.

In order to sustain its burden of proof of the crime of murder in the second degree included in Count 1 of the indictment, the Government must establish the following two essential elements beyond a reasonable doubt:

One; that the defendant, Jeffery William Paul, killed Sherman Williams without lawful justification, and

Two; that the defendant, Jeffery William Paul, killed Sherman Williams with malice aforethought.

The crime of using a firearm during and in relation to a crime of violence as charged in Count 2 of the indictment has two essential elements which are:

One; that the defendant committed a murder during a robbery.

Two; that during and in relation to the commission of that crime, the defendant knowingly used a firearm.

I instruct you that murder is a crime of violence.

The phrase "used a firearm" means that the firearm was actively employed in the course of the commission of the murder. For you to find the defendant guilty of the crime charged under Count 2, the Government must prove all of these essential elements beyond a reasonable doubt; otherwise, you must find the defendant not guilty under Count 2.

A person may be found guilty of any crime even if he only

aided and abetted the commission of that crime. In order to have aided and abetted the commission of a crime, a person must before or at the time the crime was committed,

One: Have known the crime was being committed or going to be committed, and;

Two: Have knowingly acted in some way for the purpose of causing, encouraging, or aiding in the commission of such crime.

For you to find the defendant guilty of any crime by reason of aiding and abetting, the Government must prove beyond a reasonable doubt that all of the essential elements of the crime were committed by some person or persons and that the defendant aided and abetted the commission of that crime.

You should understand that merely being present at the scene of the event or merely acting in the same way as others or merely associating with others does not prove that a person has become an aider or abetter. A person who has no knowledge that a crime is being committed or about to be committed, but who happens to act in a way which advances some offense, does not thereby become an aider and abetter.

Intent or knowledge may be proved like anything else. You may consider any statements made and acts done by the defendant and all the facts and circumstances in evidence which may aid in a determination of the defendant's knowledge or intent.

You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly

done or knowingly omitted.

Intent and motive should never be confused. Motive is what prompts a person to act or fail to act. Intent refers only to the state of mind with which the act is done or omitted.

Personal advancement and financial gain are two well recognized motives for much of human conduct. These laudable motives may prompt one person to voluntary acts of good, another to voluntary acts of crime.

Good motives alone are never a defense where the act done or omitted is a crime. So the motive of the accused is immaterial except insofar as evidence of motive may aid determination of state of mind or intent.

Even though there has been no evidence introduced about it, I have decided to accept as proved the fact that Hot Springs Mountain, Hot Spring, Arkansas, is within the exclusive jurisdiction of the United States. I believe this fact can be so accurately and readily determined from acts of the United States and Arkansas that it cannot be reasonably disputed. You may, therefore, treat this fact as proved even though no evidence has been brought out on the point. As with any fact, however, the final decision whether or not to accept it is for you to make, and you are not required to agree with me.

In conducting your deliberations and returning your verdict, there are certain rules you must follow.

First, when you go to the jury room you must select one of

your members as your foreperson. That person will preside over your discussions and speak for you here in court.

Second, it is your duty as jurors to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment because a verdict must be unanimous.

Each of you must make your own conscience decision but only after you have considered all of the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should, but do not come to a decision simply because other jurors think it is right or simply to reach a verdict. Remember at all times you are not partisans. You are judges; judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if it should be necessary during your deliberations to communicate with the Court, you may do so by sending a note by the bailiff. It is not appropriate for me to communicate with less than all of the jury since you are a corporate body. Accordingly, any communication must be from the entire jury and I must require that the foreperson sign any such communication so as to so indicate. I will respond as soon as possible either in writing or on the record in open court.

Remember that you are not to reveal to any person, not even

the Court, how the jury stands on the questions before it numerically or otherwise, while you are deliberating and before you have returned your unanimous verdict and it has been accepted by the Court.

During your deliberations, no member of the jury should ever attempt to communicate with the Court individually concerning any matter touching on the merits of the case and the Court, likewise, will not communicate with any individual member of the jury on any subject touching on the merits of the case.

Fourth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. Your verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be; that is entirely for you to decide.

Fifth, you are not to consider punishment in any way in deciding whether the Government proved its case beyond a reasonable doubt.

Finally, the verdict forms are simply the written notice of the decisions that you reach in this case. You will take these forms to the jury room and when each of you have agreed on the verdicts, your foreperson will fill in the appropriate forms, sign and date it or them, and advise the bailiff that you are ready to return to the courtroom.

Now ladies and gentlemen, there are three verdicts which are submitted to you for your consideration. They are in the

back of this instruction booklet.

Verdict Number 1 reads:

"We, the jury, find the defendant, Jeffery William Paul," --

and there's a blank into which you will write either guilty or not guilty --

"of murder in the first degree as charged in Count 1 of the indictment."

There's a signature line for the foreperson and there's a date line. There are also two notes on the first verdict form.

Note 1 reads:

"If you make a finding of guilty on this Verdict Number 1, you will not consider or complete Verdict 2 which relates to the lesser offense of second degree murder but instead will then proceed to consider and complete Verdict 3, which relates to Count 2 of the indictment."

Note 2 says:

"If you make a finding of not guilty in this Verdict Number 1, you will then proceed to consider and complete Verdict 2 relating to the said lesser offense of second degree murder and then in due course you will consider and complete Verdict 3."

Verdict 2 reads as follows:

"We, the jury, find the defendant, Jeffery William

"We, the jury, find the defendant, Jeffery William Paul," --

again the blank into which you will write either guilty or not guilty --

"of murder in the second degree as a lesser offense necessarily included in the actual charge charged in Count 1 of the indictment."

The signature line for the foreperson and the date line.

Finally, there is Verdict Number 3 which reads:

"We, the jury, find the defendant, Jeffery William Paul," --

and there's a blank into which you will write either guilty or not guilty --

"of the crime of using a firearm during and in relation to a crime of violence as charged in Count 2 of the indictment."

There's a signature line for the foreperson and a date line.

All right. Ladies and gentlemen, that concludes the giving of the instructions. I will hand them down to Ms. Ramsey. They will be available for the counsel to use in their summations if they desire. They have their own copies and they certainly may wish to refer to them but they can certainly use the Court's copy if they wish. And then those instructions will be given to you when you're excused.

Now ladies and gentlemen, the counsel have asked for no more than, well, up to an hour and 15 minutes apiece to make

their summations to you.

The Government has the option, bearing as it does the burden of proof, to split its time with an opening address and then a closing address. They have elected to do that by taking no more than one hour in their opening statement and then making their final 15 minutes, if they desire, after the defense has made its statement.

So you'll first be hearing from the Government for up to one hour, and then you'll hear from the defense for its full time which could be as long as an hour and 15 minutes, and then you'll hear finally the last 15 minutes from the Government.

Now we've been out here now it looks like to me about 42 minutes and so I'm not going to ask you to set through another hour if it goes that long without a break.

So my plan is we will take a break now, let's say about -- I'll give you about 15 minutes and then we'll come back and hear from the Government for maybe as long as an hour and then I think we'll -- depending on how long it is -- we'll take another break and then we'll hear from the defense and possibly the Government.

So I am separating that out, ladies and gentlemen, because it's very important that, you know, we see to your comfort and that we don't keep you a long time at a stretch.

So let's come back at a quarter to ten and at that time, we'll hear the Government's closing and then we'll anticipate

another recess after that closing.

So we'll be in recess.

[Recess taken at 9:28 a.m. - Jury Out]

[Open Court - 9:15 a.m. - Jury Present]

BY THE COURT: All right. Counsel, let me remind you that Ms. Ramsey is our timekeeper. She'll tell you when you have five minutes left and when you have one minute left and if you don't stop when she calls time, there's a trap door there and you know the rest of the story, so please give attention to the time. [Laughter]

Mr. Snyder, please?

BY MR. SNYDER: Please the Court, ladies and gentlemen?

The first thing I want to do is thank you for the attention that you've shown throughout the course of this trial. I really appreciate it, Mr. Webb appreciates it, and I want to thank you.

Ladies and gentlemen, it's hard to imagine a more important case that could come before 12 jurors and two alternates than the one we have today. It's important because it involves the murder of an individual who lived in your community; who until June 22, 1995, Sherman Williams was an 82 year old man who enjoyed hiking, fishing, and his retirement from the Farmers Home Administration.

Ladies and gentlemen, I'm going to tell you how we've proved the facts of our case and how Sherman Williams was