(Pg. 1)



isn't that exactly the point? Isn't it at least a little revealing that, when the government had no motive to concoct an alternative reading, even it thought the best reading of §924(c)(3)(B) demanded a categorical analysis?

If this line of attack won't work, the dissent tries another by telling us that we have "not fully account[ed] for the long tradition of substantial-risk criminal statutes." *Post*, at 34. The dissent proceeds to offer a lengthy bill of particulars, citing dozens of state and federal laws that do not use the categorical approach. *Post*, at 7–10, and nn. 4–17. But what does this prove? Most of the statutes the dissent cites impose penalties on whoever "creates," or "engages in conduct that creates," or acts under "circumstances that create" a substantial risk of harm; others employ similar language. Not a single one imposes penalties for committing certain acts during "an offense . . . that by its nature, involves" a substantial risk, or anything similar. Marching through the dissent's own catalog thus only winds up confirming that legislatures know how to write risk-based statutes that require a case-specific analysis—and that §924(c)(3)(B) is not a statute like that.

When the dissent finally turns to address the words Congress actually wrote in §924(c)(3)(B), its main argument seems to be that a categorical reading violates the canon against superfluity. On this account, reading "offense" generically in connection with the residual clause makes the residual clause "duplicate" the elements clause and leaves it with "virtually nothing" to do. *Post*, at 20. But that is a surprising assertion coming from the dissent, which devotes several pages to describing the "many" offenders who have been convicted under the residual clause using the categorical approach but who "might not" be prosecutable under the elements clause. *Post*, at 30–33. It is also wrong. As this Court has long understood, the residual clause, read categorically, "sweeps more broadly" than the elements clause—potentially reaching offenses,

Steve Stinson

Robbery & Burglary same def.

T. 18 §2111

(Pg-2)

Robbery (Rel)



like burglary, that do not have violence as an *element* but that arguably create a substantial *risk* of violence. *Leocal*, 543 U. S., at 10. So even under the categorical reading, the residual clause is far from superfluous.

Without its misplaced reliance on the superfluity canon, there is little left of the dissent's textual analysis. The dissent asserts that the phrase "by its nature" must "focu[s] on the defendant's actual conduct"—but only because this "follows" from the dissent's earlier (and mistaken) superfluity argument. *Post*, at 21. Next, the dissent claims that "the word 'involves'" and "the phrase 'in the course of committing the offense'" both support a case-specific approach. *Post*, at 22. But these words do not favor either reading: It is just as natural to ask whether the offense of robbery *ordinarily* "involves" a substantial risk that violence will be used "in the course of committing the offense" as it is to ask whether a *particular* robbery "involved" a substantial risk that violence would be used "in the course of committing the offense." If anything, the statute's use of the present and not the past tense lends further support to the categorical reading.[10] The dissent thinks it significant, too, that the statute before us "does not use the term 'conviction,'" *post*, at 23; but that word is hardly a prerequisite for the categorical approach, as *Dimaya* makes clear. Remarkably, the dissent has noth-

---

[10] The dissent claims that *Taylor* v. *United States*, 495 U. S. 575 (1990), and *Nijhawan* v. *Holder*, 557 U. S. 29 (2009), pointed to "the *absence* of the word 'involved'" as one reason to adopt a categorical approach. *Post*, at 22. Not true. *Taylor* explained that the ACCA's elements clause requires a categorical approach in part because it refers to a crime "that 'has as an element'—not any crime that, in a particular case, involves—the use or threat of force." 495 U. S., at 600. All the work in that sentence was being done by the phrase "in a particular case," not by the word "involves." And *Nijhawan* noted that the Court had construed the ACCA's residual clause, which refers to crimes "that '*involv[e] conduct* that presents a serious potential risk of physical injury," to require the categorical approach. 557 U. S., at 36.

Case 6:96-cr-60022-STMBD Document 831-1 Filed 12/04/96 Page 1 of 2 PageID #: 3538

U. S. DISTRICT COURT
WESTERN DIST. ARKANSAS
FILED

DEC 4 1996

CHRIS R. JOHNSON, CLERK
BY [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 6:96CR60022-001 |
| | ) | 18 U.S.C. § 1111(a) |
| vs. | ) | 18 U.S.C. § 924(c)(1) |
| | ) | 18 U.S.C. § 924(i)(1) |
| JEFFERY WILLIAM PAUL | ) | 18 U.S.C. § 2 |

(Pg. 3)

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### COUNT 1

On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another person known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to Title 18 U.S.C. § 7(3), did, with malice aforethought, kill Sherman Williams, by means of gunshot wounds, in the perpetration of a robbery, in violation of 18 U.S.C. § 1111(a) and § 2.

### COUNT 2

On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another individual known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant

8
6

(Pg 4.)

to Title 18 U.S.C. § 7(3), did knowingly carry and use a firearm, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to-wit: a robbery in the national park, Hot Springs, Arkansas, on or about June 22, 1995, as set forth in Count 1 of this indictment which is realleged and incorporated by reference herein, in violation of Title 18 U.S.C. § 924(c)(1), and in the course of this violation caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18 U.S.C. § 1111, in that the defendant, did unlawfully kill Sherman Williams by shooting him with the firearm in the perpetration of the robbery and attempted perpetration of the robbery in violation of Title 18 U.S.C. § 924(i)(1) and Title 18 U.S.C. § 2.

A True Bill.

Foreperson

P. K. Holmes III
United States Attorney

By: Steven N. Snyder
Steven N. Snyder
Senior Litigation Counsel
Assistant U.S. Attorney
Ark. Bar No. 72101
P. O. Box 1524
Fort Smith, AR 72902-1524
(501) 783-5125