(Pg 1.)

**UNITED STATES OF AMERICA -v- JAIME RODRIGUEZ and STEVEN CAMACHO, Defendants.**
**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**
**2020 U.S. Dist. LEXIS 66715**
**94 Cr. 313 (CSH)**
**April 15, 2020, Decided**
**April 15, 2020, Filed**

**Editorial Information: Prior History**

United States v. Rodriguez, 187 Fed. Appx. 30, 2006 U.S. App. LEXIS 15531 (2d Cir. N.Y., June 12, 2006)

**Counsel** **{2020 U.S. Dist. LEXIS 1}**For Angel Padilla, also known as Cuson, Defendant: Angel Padilla, U.S.P. ALLENWOOD, WHITE DEER, PA.
For Anthony Morales, also known as Cuba, also known as Tony Cuba, Defendant: Alan G. Polak, LEAD ATTORNEY, Alan G. Polak, New York, NY; Irving Cohen, Irving Cohen, Attorney-At-Law, New York, NY.
For United States Of America, Plaintiff: Andrew Bauer, Arnold & Porter Kaye Scholer LLP (NYC), New York, NY; Catherine Elaine Geddes, US Attorney's Office- Southern District of New York, New York, NY; Jessica Rose Lonergan, U.S. Attorney's Office, SDNY, New York, NY; Katherine Cannella Reilly, U.S. Attorney's Office (SDNY), New York, NY.

**Judges:** CHARLES S. HAIGHT, JR., Senior United States District Judge.

**Opinion**

**Opinion by:** CHARLES S. HAIGHT, JR.

924(c)!

**Opinion**

Judge Stinson

**RULING ON DEFENDANTS' JOINT MOTION TO VACATE CONVICTIONS AND SENTENCES [Doc. 861]**

**HAIGHT, Senior District Judge:**

Defendants Steven Camacho and Jaime Rodriguez have filed a joint habeas corpus motion pursuant to 28 U.S.C. § 2255 to vacate their prior convictions under the firearms statute, 18 U.S.C. § **924**(**c**). They base that motion upon the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319, 204 L. Ed. 2d 757 (2019), which held that the so-called "residual clause" of 18 U.S.C. § **924**(**c**)(3)(B) was unconstitutionally vague.

Camacho and Rodriguez are represented by the Federal Defenders of New York.**{2020 U.S. Dist. LEXIS 2}** The Government, which opposes these habeas petitions, is represented by the United States Attorney for this District. Defendants' joint motion has been fully briefed. The Court discerns no need for oral argument. This Ruling resolves the motion.

**I**



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(Pg. 2)

Following jury trial in this Court, Camacho and Rodriguez were convicted on an indictment arising out of the shooting of three individuals - Hector Ocasio, Gilberto Garcia, and Luis Garcia - on a Bronx street during the night of January 2, 1993. Camacho and Rodriguez were each charged with five counts involving those incidents. The first four counts alleged separate violations of the RICO statute, 18 U.S.C. § 1959, each in aid of a violent drug-trafficking criminal enterprise. The fifth count alleged violations of the firearms statute, 18 U.S.C. § **924**(**c**).

Specifically, the First Count charged Camacho and Rodriguez with conspiring to murder Hector Ocasio; the Second Count, with the murder of Ocasio; the Third Count, with the murder of Gilberto Garcia; and the Fourth Count, with the attempted murder of Luis Garcia. All these crimes were alleged to have been in aid of racketeering. The Fifth Count charged Camacho and Rodriguez with using and carrying firearms during and in relation**{2020 U.S. Dist. LEXIS 3}** to the crimes charged in the preceding four counts.

The jury convicted Camacho and Rodriguez on each of these counts. Complex post-conviction and sentencing litigation ensued which need not be recounted in detail. It is sufficient for present purposes to say that the Second Circuit twice rejected Defendants' direct appeals from their convictions and sentences, 187 F. App'x 30 (2d Cir. 2006) and 511 F. App'x 8 (2d Cir. 2013). Camacho and Rodriguez then moved for habeas relief. This Court denied the habeas petitions, Nos. 14 Civ. 4628, 2017 U.S. Dist. LEXIS 205883, 2017 WL 6404900 (S.D.N.Y. Dec. 13, 2017). The Second Circuit affirmed that denial, 767 F. App'x 160 (2d Cir. 2019). The factual background of the present joint motion is more fully recited in those opinions, familiarity with which is assumed.

**II**

The prior opinions in this case, cited in Part I, were decided before the Supreme Court filed its opinion in *United States v. Davis*, upon which Defendants base their present motion to vacate their sentences. The Second Circuit's opinion in 767 F. App'x 160, the most recent of the cited opinions (affirming the denial of habeas relief), is dated April 19, 2019. The Supreme Court's opinion in *Davis* (striking part of the firearms statute as unconstitutional) is dated June 24, 2019. Defendants' theory on the present motion is that *Davis*'s retroactive invalidation of certain provisions**{2020 U.S. Dist. LEXIS 4}** in the firearms statute entitles them to a vacatur of their sentences for violating that statute.

The Government raises the threshold objection that Defendants' joint motion constitutes a "second or successive" habeas petition which requires, but has not received, an order from the Second Circuit authorizing this Court to consider it. The Government's letter brief [Doc. 862] concludes at 8: "Because the Motions are second or successive habeas petitions, they should be transferred to the Second Circuit so that the Circuit may determine whether authorization to file these new applications should be granted." That conclusion is based on the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255(h), which provides that in federal habeas cases, "A second or successive motion must be certified" by "a panel of the appropriate court of appeals" to contain "(1) newly discovered evidence . . . " or "(2) a new rule of constitutional law . . . ."

Judge Stinson

My first task, as the district judge to whom Camacho and Rodriguez present this § 2255 motion to vacate their sentences, is to determine whether in fact this is a "second or successive motion" to what has gone before in the case, as that phrase is used in the**{2020 U.S. Dist. LEXIS 5}** AEDPA. That exercise requires a further review of the procedural history.

Following the rejection of their direct appeals, Camacho and Rodriguez filed separate habeas petitions under § 2255 on June 6, 2014. They were proceeding *pro se*, with the assistance of unidentified but able sources in the prisons, who submitted lengthy affidavits and briefs. Defendants



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 3)

contended principally that during the underlying case, they received ineffective assistance of trial and appellate counsel, in a number of particular instances. The Government opposed these initial habeas petitions with a brief of comparable length, which triggered a round of reply briefs. This Court denied the habeas petitions in the opinion dated December 13, 2017, 2017 U.S. Dist. LEXIS 205883, 2017 WL 6404900. The Second Circuit affirmed on April 19, 2019, 767 F. App'x 160.

In June 2016, attorneys with the Federal Defenders of New York sent letters to this Court on behalf of Defendants. *See* Doc. 817, letter dated June 16, 2016 (for Camacho), and Doc. 819, letter dated June 21, 2016 (for Rodriguez). At the time these letters were sent, the habeas petitions of Camacho and Rodriguez were pending before this Court, but had not been decided. The June 21, 2016 letter on behalf of Rodriguez, which is**{2020 U.S. Dist. LEXIS 6}** typical of the two, stated that the Federal Defenders had been assigned by an SDNY order "to review cases in which an inmate may have a habeas claim in light of *Johnson v. United States*, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015)," and "we have identified Mr. Rodriguez as having a viable claim and will submit briefing on his behalf with respect to that claim." Letter [Doc. 819] at 1. The Assistant Federal Defender noted that Rodriguez "has a motion under 28 U.S.C. § 2255 currently pending before Your Honor," and added: "Given my appointment in this matter, which is limited to issues pertaining to *Johnson*, I respectfully request that the Court not rule on Mr. Rodriguez's § 2255 motion until I have a chance to supplement the motion in light of *Johnson*." *Id.* Counsel's letter went on to say:

> To protect Mr. Rodriguez's rights under the statute of limitations found in § 2255, which expires on June 27, 2016, I am amending his initial petition to include claims that Mr. Rodriguez's due process rights were violated when his conviction and sentence were imposed in violation of the Supreme Court's ruling in *Johnson.Id.* The Assistant Federal Defender concluded this letter to the Court by saying:

> I will provide further briefing upon discussions with the United States Attorney's Office consistent with SDNY Standing**{2020 U.S. Dist. LEXIS 7}** Order 16-Misc-0217.*Id.* at 2. The June 16, 2016 letter to the Court from another Assistant Federal Defender on behalf of Camacho was cast in the same terms. *See* Doc. 817.

Subsequent to these letters in June 2016, this Court received no further supplements or briefing from counsel for Camacho or Rodriguez in support of amendments to their petitions for habeas relief based upon the Supreme Court's holding in *Johnson v. United States*. This Court's opinion denying Camacho's and Rodriguez's initial § 2255 petitions was filed on December 13, 2017. That opinion made no reference to the *Johnson* decision or Defendants' reliance upon it. Nor did the Second Circuit's April 2019 opinion refer to *Johnson* in affirming that denial.

The *Johnson* decision, referenced by counsel for Defendants in the June 2016 letters, was filed by the Supreme Court in 2015. The Court struck down as impermissibly vague a definition of a "violent felony" that appeared in the Armed Career Criminal Act ("ACCA"). Counsel's letter of June 21, 2016, on behalf of Rodriguez, asserted that the definition of a "crime of violence" appearing in the statute Rodriguez was convicted of violating "is materially indistinguishable from the ACCA's residual**{2020 U.S. Dist. LEXIS 8}** clause, which was invalidated by the Supreme Court in *Johnson*," Letter at 2, so that application of *Johnson*'s reasoning to the facts at bar led to the conclusion that Rodriguez's conviction and sentence "were imposed in violation" of *Johnson*, *id.* at 2. The same arguments were made in the June 16, 2016 Federal Defenders' letter on behalf of Camacho. As noted *supra*, counsel for Defendants did not supplement or brief the proclaimed amendments to the pending habeas petitions, which were denied without judicial consideration of *Johnson*'s possible effect upon the case at bar.

The case at bar was overtaken by events when, in 2019, the Court decided *United States v. Davis*,



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(Pg. 4.)

139 S. Ct. 2319, 204 L. Ed. 2d 757, which held (citing *Johnson* and other precedents) that § **924**(**c**), the statute of conviction in that case and in this one, was indeed unconstitutional.

Judge Stinson

Parts III and IV of this Ruling consider the merits of Defendants' present joint motion, in the light of the Supreme Court's decision in *Davis*. I conclude in this Part II that Defendants' present joint motion, which seeks to vacate their sentences under the firearms statute, cannot be regarded as a "second or successive" habeas petition. It is, instead, an amendment pleaded by Defendants to their initial habeas petitions. The amendment**{2020 U.S. Dist. LEXIS 9}** challenges the constitutionality of Defendants' firearms conviction. Defendants asserted that challenge, first based on an extension of *Johnson* and then on the square holding of *Davis*, at a time when their initial petitions were pending undecided. The merits of this proffered amendment have never been adjudicated. In those circumstances, Defendants are not required by the AEDPA to have the Second Circuit authorize this Court to determine the merits of Defendants' constitutional claim.

That conclusion is mandated by the Second Circuit's holding *Ching v. United States*, 298 F.3d 174, 175 (2d Cir. 2002), that "a habeas petition submitted during the pendency of an initial § 2255 motion should be construed as a motion to amend the initial motion." The facts of *Ching* must be examined with care.

The defendant in *Ching* pleaded guilty to a drug charge and was sentenced to 188 months. His direct appeal was rejected. In March 1997, Ching filed a habeas petition under § 2255 which asserted ineffectiveness of trial counsel and improper calculation of the sentence. The district court dismissed that petition as untimely. Ching appealed the dismissal. In August 1998, while Ching's appeal from the dismissal of his 1997 petition under § 2255 was pending undecided in the court**{2020 U.S. Dist. LEXIS 10}** of appeals, Ching filed a § 2241 petition in the district court, seeking habeas relief on the different asserted grounds of the district court's lack of jurisdiction over the underlying criminal case and the unconstitutionality of the charging statute. The Second Circuit reversed the dismissal of the initial § 2255 petition and remanded the case to the district court for consideration of that petition's merits. The district court rejected the habeas claims asserted in Ching's initial § 2255 petition in 1997. As for the different claims asserted in Ching's 1998 petition under § 2241, the district court construed that petition as one under § 2255, and regarded it as a "second or successive" habeas petition which could be brought only by permission of the court of appeals.

In its second opinion in the case, reported at 298 F.3d 174, the Second Circuit held that the district court correctly construed Ching's 1998 petition as falling within § 2255, but erred in regarding it as an impermissible "second or successive" petition for AEDPA purposes. The 1998 petition was instead, the court of appeals concluded, a permissible amendment to Ching's timely 1997 initial petition. In consequence, the AEDPA had no gatekeeper function to perform.

**{2020 U.S. Dist. LEXIS 11}**Circuit Judge Sotomayor (as she then was) began the Second Circuit's opinion in *Ching* by observing "the district court correctly determined" that Ching's "§ 2241 petition should be construed as a motion for relief under § 2255." Thus, in the district court's view, Ching had filed two motions for § 2255 relief - one in March of 1997 and another in August of 1998." 298 F.3d at 176.

That circumstance brought the Second Circuit to the heart of the matter:

> If the newly recharacterized § 2255 motion is "second or successive" within the meaning of the AEDPA, Ching must receive authorization from this Court before he may file his petition. . . . Before applying the AEDPA's gatekeeping provision, however, this Court must first determine whether Ching's August 25 motion was in fact second or successive within the meaning of the statute, or if instead, the district court should have construed it as a motion to amend his original



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 5)

§ 2255 motion.

The AEDPA does not define what constitutes a "second or successive" § 2255 motion. Nonetheless, it is clear that for a petition to be "second or successive" within the meaning of the statute, it must at a minimum be filed subsequent to the conclusion of a proceeding that 'counts' as the first. A petition that has reached *final* decision counts for this purpose.298 F.3d at 176-77 (citations and some internal quotation marks omitted; emphasis in original). That requirement of finality precluded Ching's later-asserted habeas claims from being regarded as "second" or "successive" to his**{2020 U.S. Dist. LEXIS 12}** initial petition. The Second Circuit reasoned:

The denial of the March 1997 motion was still pending on appeal before this Court and no final decision had been reached with respect to the merits of Ching's claim. . . . Under these facts, we cannot say that adjudication of the initial § 2255 motion was complete when Ching filed his August 1998 petition. The district court therefore erred in treating Ching's August 1998 petition as a second or successive § 2255 motion.*Id.* at 178-79. The opinion in *Ching* concluded:

[W]e dismiss the motion for leave to file a second or successive §2255 motion as unnecessary, and transfer this matter to the district court for proceedings consistent with this opinion.*Id.* at 182.

The Second Circuit's holdings in *Ching* govern the case at bar and mandate the same conclusion. Just as in *Ching*, the initial habeas petitions by Camacho and Rodriguez were also pending undetermined before this district court when, by letters dated June 16 and 21, 2016, the Federal Defenders gave notice of amending Camacho's and Rodriguez's petitions to assert the firearms constitutional claims for the first time. Thus counsel for Rodriguez wrote in the June 21 letter: "I am amending his initial petition to include claims**{2020 U.S. Dist. LEXIS 13}** that Mr. Rodriguez's due process rights were violated when his conviction and sentence were imposed in violation of the Supreme Court's ruling in *Johnson*." Letter [Doc. 819] at 1. The present tense of counsel's verb - "I am amending" - reflects counsel's intent to "protect Mr. Rodriguez's rights under the statute of limitations found in § 2255, which expires on June 27, 2016," six days later. *Id.* I construe the Federal Defenders' June 2016 letters as notices of the Defendants' motions to amend their initial habeas petitions to assert these new constitutional claims.

While the record does not indicate why counsel never filed the supplemental briefing in support of their motions to amend that counsel's letters indicated would be forthcoming, or why this Court eventually denied the initial habeas petitions without mentioning the constitutional claims based on *Johnson*, the present posture of the case does not turn upon such mysteries. *Ching* controls this case because, just as in *Ching*, the Defendants at bar sought to assert a new claim for habeas relief at a time when their initial petitions were still pending undetermined. *Ching* holds that such a new claim is regarded as an amendment to the initial petition, and**{2020 U.S. Dist. LEXIS 14}** not a second or successive petition to the first one.

The effect of that principle was more recently illustrated by *Fuller v. United States*, 815 F.3d 112 (2d Cir. 2016), where the habeas petitioner attempted a third § 2255 petition after the first two had been finally adjudicated against him. The Second Circuit held in *Fuller* that the third habeas petition was "successive" under the AEDPA because the first petition had been fully adjudicated:

The adjudication of Fuller's first § 2255 motion became final in May 2013 when the time to file a petition for *certiorari* in the Supreme Court expired, thus exhausting one full opportunity for collateral review. Fuller's instant § 2255 motion, filed in January 2015, is therefore successive because it was "filed subsequent to the conclusion of 'a proceeding that counts as the first.'"815 F.3d at 113 (citing and quoting *Ching*, 298 F.3d at 177). *Fuller* further quoted *Ching*, 298 F.3d at 177, in a footnote: "[I]n general, when a § 2255 motion is filed before adjudication of an initial §



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 6)

2255 motion is complete, the district court should construe the second § 2255 motion as a motion to amend the pending § 2255 motion." *Id.* n.2.

In *Fuller* the Second Circuit held that "[a] § 2255 motion does not become final until [the] petitioner's opportunity to seek review in the Supreme Court has expired." *Id.* (citation and**{2020 U.S. Dist. LEXIS 15}** internal quotation marks omitted). The *Fuller* court rejected petitioner's contention that his third petition was not successive because it was filed during the pendency of the second:

> We decline to adopt Fuller's position because it would permit a petitioner to prevent the adjudication of an initial habeas petition from ever becoming final by extending the first habeas proceedings through an indefinite number of new petitions. Such a position is contrary to this Court's gatekeeping function and AEDPA*Id.*

The case of Camacho and Rodriguez falls within the fact pattern the Second Circuit delineated in *Ching*, and differs fundamentally from that in *Fuller*. The present motion on behalf of Camacho and Rodriguez to vacate their firearms convictions is not "successive" because it was first asserted during the undecided pendency of their initial petitions. The record at that time did not contain "the conclusion of a proceeding that counts as the first." *Ching* instructs that in those circumstances, the Defendants' motion must be characterized as a motion to amend the initial petitions, and the AEDPA gatekeeping provision has no application. *Fuller* instructs that if the denial of an initial habeas**{2020 U.S. Dist. LEXIS 16}** petition has become final, subsequent applications for habeas relief are "successive" and must conform to the AEDPA. The case at bar comes within the *Ching* body of cases, not that of *Fuller*.

Judge Stinson

For these reasons, the Court rejects the Government's contention that the present joint motion on behalf of Camacho and Rodriguez must be transferred to the Second Circuit for authorization under the AEDPA. This Court is empowered to consider the merits of Defendants' motion on the present record. I turn to that question.

**III**

In *Davis* the Supreme Court held that certain provisions in 18 U.S.C. § **924**(**c**) were unconstitutional. The present joint motion presents the question whether that holding invalidates the enhanced sentences imposed upon Camacho and Rodriguez following their convictions on the charges in the underlying indictment.

Section **924**(**c**) authorizes heightened criminal penalties for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § **924**(**c**)(1)(A). "The statute proceeds to define the term 'crime of violence' in two subparts - the**{2020 U.S. Dist. LEXIS 17}** first known as the elements clause, and the second the residual clause." *Davis*, 139 S. Ct. at 2324. Thus, § **924**(**c**)(3) provides:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and -
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.Subpart (A), in the Supreme Court's parlance, is the "elements clause"; (B) is the "residual clause."2

In *Davis* the Supreme Court held that the residual clause was unconstitutional. Thereafter the Court



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 7.)

vacated the Second Circuit's judgment affirming a § **924**(**c**) judgment in *United States v. Barrett*, 903 F.3d 166 (2d Cir. 2018), and remanded that case for further consideration in light of *Davis*. On remand in *Barrett* the Second Circuit held that defendant's "Count Two conviction for using a firearm in committing Hobbs Act robbery *conspiracy* must be vacated because the identification of that crime as one of violence depends on the § **924**(**c**)(3)(B) residual clause definition, which *Davis* has now pronounced unconstitutionally vague." 937 F.3d 126, 128 (2d Cir. 2019) (emphasis in original). Subsequent Second Circuit summary**{2020 U.S. Dist. LEXIS 18}** orders cite *Barrett* and vacate § **924**(**c**) convictions based on conspiracy crimes. *See, e.g., United States v. Delcid*, 779 Fed. Appx. 43 (2d Cir. Oct. 7, 2019) (Hobbs Act robbery conspiracy); *United States v. Brown*, 797 Fed. Appx. 52, 2019 WL 69771648 (2d Cir. 2019) (defendant pled guilty to a firearm offense under § **924**(**c**) "for which the underlying crime of violence was a racketeering conspiracy."); *United States v. Wright*, No. 17-1638, 2020 U.S. App. LEXIS 9343, 2020 WL 1479865 (2d Cir. March 24, 2020) (Hobbs Act robbery conspiracy).

This unbroken line of cases justifies Chief Judge McMahon's perceptive observation in *Boykin v. United States*, No. 16 CV 4185 (CM), 2020 U.S. Dist. LEXIS 27317, 2020 WL 774293 (S.D.N.Y. Feb. 18, 2020), at *5: "Since the Supreme Court has held 'that § **924**(**c**)(3)(B) . . . is unconstitutionally vague' (*see Davis*, 139 S. Ct. at 2336), a predicate crime qualifies as a 'crime of violence' only if it falls under the [elements] clause, § **924**(**c**)(3)(A); **924**(**c**)(3)(B) has been effectively stricken from the statute."

Post-*Davis* and *Barrett*, to be punishable under § **924**(**c**), an offense must be prosecuted in a court of the United States, constitute a felony, and have "as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § **924**(**c**)(3)(A), that being the surviving definition of "crime of violence" in the firearms statute. A felony offense may be prosecuted in a federal court if it violated a federal statute, such as the Hobbs Act in *Barrett*, or violated a state law and there is a separate federal source of subject matter**{2020 U.S. Dist. LEXIS 19}** jurisdiction. An example of the latter circumstance is furnished by the RICO statute, 18 U.S.C. § 1959(a)(1), where "what the federal statute criminalizes is behavior that qualifies as 'murder' under state law." *Boykin*, 2020 U.S. Dist. LEXIS 27317, 2020 WL 774293, at *6.3

That is what occurred in the case at bar. Camacho and Rodriguez were prosecuted in this federal district court for murders in furtherance of a racketeering enterprise. They were charged with having violated the RICO statute, 18 U.S.C. § 1959(a), and the relevant provisions of the New York Penal Law. Specifically, Defendants were tried together on a superseding indictment which alleged the same five counts against each of the two Defendants:

> Count One: conspiring to murder Hector Ocasio, in violation of 18 U.S.C. § 1959(a)(5) and N.Y. Penal Law §§ 105.15 and 125.25.
>
> Count Two: murdering Hector Ocasio, in violation of 18 U.S.C. § 1959(a)(1) and N.Y. Penal Law §§ 125.25 and 20.00.
>
> Count Three: murdering Gilberto Garcia, in violation of 18 U.S.C. § 1959(a)(1) and (2) and N.Y. Penal Law §§ 125.25 and 20.00.
>
> Count Four: attempting to murder Luis Garcia, in violation of 18 U.S.C. § 1959(a)(5) and N.Y. Penal Law §§ 125.25 and 110.00.
>
> Count Five: using and carrying firearms during and in relation to the crimes charged in Counts One to Four, in violation of 18 U.S.C. §§ **924**(**c**) and 2.4

The jury convicted Camacho and Rodriguez on each of these five counts. Each was sentenced to 25



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg 8)

years in prison on Counts One through Four concurrently,**{2020 U.S. Dist. LEXIS 20}** and 5 years consecutively on Count Five. That 5-year consecutive term is mandated by the sentence-enhancing provisions of the firearms statute, 18 U.S.C. § **924**(**c**). The Defendants' present motion seeks to vacate their convictions and sentences under that statute.

Responding to the Defendants' motion, the Government "concedes that conspiracy to commit" the murder of Hector Ocasio, as charged in Count One, "is no longer a valid predicate for a § **924**(**c**) conviction after *Davis* because its use as a [§] **924**(**c**) predicate relied on the now invalidated risk-of-force or residual clause." Letter Brief [Doc. 862] at 6. However, the Government contends that the firearms convictions and sentences of Camacho and Rodriguez under Count Five remain valid because they are "based not just on that one, invalid predicate but also on several additional predicates - murder and attempted murder in aid of racketeering - which are crimes of violence based on their elements, under the force clause of [§] **924**(**c**) - and remain valid after *Davis*." *Id.*

These contentions give rise to two questions:

(1) Can this habeas court sufficiently identify the substantive offenses serving as the predicate or predicates on which the jury based its findings of guilt on the § **924**(**c**) firearms charge?

(2) Assuming that**{2020 U.S. Dist. LEXIS 21}** Question (1) be answered in the affirmative, do the substantive offenses thus identified constitute "crimes of violence" for the purpose of § **924**(**c**) analysis?

The **first question** presents itself because the jury was not asked to complete a detailed special verdict with respect to its findings on the § **924**(**c**) charge in Count Five of the indictment. Count Five alleged that Camacho and Rodriguez "unlawfully, willfully and knowingly used and carried a firearm during and in relation to a crime of violence, to wit, the murder of and conspiracy to" murder Hector Ocasio, the murder of Gilberto Garcia, and the attempted murder of Luis Garcia "charged in Counts One, Two, Three, and Four." The foreperson of the jury reported to the Clerk that the jury found Camacho and Rodriguez "guilty" as to Count Five, a finding the Court confirmed by reading into the record the jury's answers to a special verdict which, with respect to Count Five, instructed the jurors to indicate that they found each Defendant "guilty" or "not guilty." As noted *supra*, the jury also found both Camacho and Rodriguez guilty on Count One (the conspiracy count), and Counts Two, Three and Four (the separate substantive counts).

In these circumstances,**{2020 U.S. Dist. LEXIS 22}** the Defendants contend that this habeas court cannot identify a valid post-*Davis* predicate upon which the jury based its § **924**(**c**) findings. Defendants point out that at trial the Government requested and received from the Court a *Pinkerton* charge. *See Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). "Under the *Pinkerton* theory of liability, a conspirator can be held responsible for the substantive crimes committed by his co-conspirators to the extent that those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Masotto*, 73 F.3d 1233, 1239 (2d Cir. 1996) (citation and internal quotation marks omitted). Defendants argue that "the jury might well have concluded that the defendants used or possessed a gun in connection with a conspiracy to commit murder, but not in connection with the substantive offenses." Reply Brief [Doc. 865] at 12. Given the *Pinkerton* charge, Defendants further urge that "it is possible that even the defendants' substantive convictions rested on the jury's conspiracy finding." *Id.* at 12-13. "For this reason," the argument concludes:

> it is impossible to extricate the conspiracy charge from the other charged predicates or to conclude that the defendants' § **924**(**c**) convictions were actually based on a valid**{2020 U.S. Dist. LEXIS 23}** predicate, and not the conspiracy charge - the conspiracy charge infected every



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 9)

aspect of the defendants' trial.*Id.* at 13.

The argument is grounded in the *general verdict rule*. In *Chowdhury v. Worldtel Bangl. Holding Ltd.*, 746 F.3d 42 (2d Cir. 2014), the Second Circuit said: "The Supreme Court decades ago announced the so-called general verdict rule, that 'a new trial will be required' where 'there is no way to know that [an] invalid claim . . . was not the sole basis for [a] verdict." 746 F.3d at 50 (citing and quoting *United N.Y. & N.J. Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 619, 79 S. Ct. 517, 3 L. Ed. 2d 541 (1959)).

Defendants' argument fails in the case at bar if the trial record gives a reader a "way to know" that a *valid* claim was "the sole basis" for the jury's § **924(c)** verdicts. Guidance in this regard is furnished by *United States v. Botti*, 711 F.3d 299 (2d Cir. 2013). Botti, a real estate developer, had contacts with the mayor of Shelton, Connecticut, and other public officials which resulted in his federal indictment and trial for honest services mail fraud. The trial judge's jury instructions defined honest services fraud in relatively broad terms. The jury convicted Botti on that count. Prior to Botti's sentencing, the Supreme Court held in *Skilling v. United States*, 561 U.S. 358, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010), that "honest services fraud" under the federal wire fraud statute "must be limited to schemes involving bribes or kickbacks in order to avoid due process concerns." *Botti*, 711 F.3d at 310. The district**{2020 U.S. Dist. LEXIS 24}** court denied Botti's motion for a judgment of acquittal based on *Skilling* and passed sentence.

Botti appealed on the ground that the district court "committed reversible error when it used a jury instruction on honest services mail fraud that allowed the jury to find Botti guilty of that crime without finding a bribery or kickback scheme, in contravention of the Supreme Court's decision in *Skilling*." 711 F.3d at 301. The Second Circuit agreed that because the district court's instruction "did not specify that only bribes or kickbacks could support an honest services mail fraud conviction, it was plainly erroneous." *Id.* at 310. However, Botti's appeal was rejected because he "failed to establish that the plain error in the charge affected his substantial rights." *Id.* The Second Circuit reviewed the full charge and trial record and reasoned:

> Viewing the erroneous jury instruction in this case in light of the charge as a whole and in the context of proceedings in which deprivation of honest services by bribery was the only theory that the evidence would support and the only theory that the Government argued at trial, the District Court's failure to limit honest services mail fraud to a bribery or kickback scheme**{2020 U.S. Dist. LEXIS 25}** did not affect Botti's substantial rights.*Id.* at 311. This reasoning echoed that of the district court in denying Botti's motion for acquittal, quoted by the court of appeals: "Botti nowhere suggests what this alternative, constitutionally impermissible theory of wrongdoing might be. That is not surprising, since there is no evidence in the record of any sort of wrongdoing other than Botti's bribery of public officials." *Id.* at 307. On appeal, Botti argued again for the possibility of a verdict based on a theory of honest services fraud invalidated by *Skilling*. The Second Circuit also rejected the argument:
>
> Botti's alternative theories are contrary to the only theory of honest services mail fraud that the Government actually presented to the jury and that the Government asked the Court to explain as its theory. Accordingly, these alternative theories do not demonstrate that Botti's conviction was based on a non-bribery theory of honest services mail fraud.711 F.3d at 314. These particular circumstances allowed the Government to argue in *Botti* that the constitutionally erroneous theory of criminal liability included in the district court's instructions to the jury did not invalidate defendant's conviction because the**{2020 U.S. Dist. LEXIS 26}** trial record made it clear that a valid theory (bribery) was "the sole basis" for the guilty verdict.

That argument is not available to the Government in the case at bar. The trial of Camacho and



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(Pg. 10)

Rodriguez went into extended and meticulous detail with respect to the existence and purposes of the violent RICO criminal enterprise these Defendants aspired to join, and the planning and execution of the several shootings charged in the substantive counts of the indictment. The shootings charged in the indictment involved the participation of a number of gang members in addition to Camacho and Rodriguez. In an effort to obtain guilty verdicts against Camacho and Rodriguez for those shootings and the related firearms offenses, the Government pled, undertook to prove, and argued to the jury every theory of criminal liability the evidence and law allowed against Camacho and Rodriguez: as personal and direct participants in the crimes; as aiders and abetters of the criminal conduct of other people; as co-conspirators, or personal liability under that hybrid of substantive and conspiracy law, the *Pinkerton* theory.

The prosecution succeeded. The jury convicted Camacho and Rodriguez on all counts,**{2020 U.S. Dist. LEXIS 27}** including Count Five, the § **924**(**c**) firearms charge. We know from the verdict on Count Five that the jury found the existence of a firearms statutory predicate for its imposition. What the verdict does not say, and what consequently we cannot know, is which offense or offenses the jury identified as the firearms count predicate. Since the trial and verdict in this case antedated *Davis*, the jury was instructed about, and could choose between, offenses defined as a "crime of violence" by the elements clause in § **924**(**c**)(3)(A), or by the residual clause in § **924**(**c**)(3)(B).

Subsequently, the Supreme Court held in *Davis* that the residual clause was unconstitutional. *Davis*'s retroactive effect renders the firearms verdicts in this case problematic under the general verdict rule, which the Second Circuit has applied "where one of several legal theories was improperly submitted to the jury," or "where [the] district court charged [the] jury that defendant could be found liable under either one of two statutory sections, one of which was inapplicable as a matter of law." *Morse v. Fusto*, 804 F.3d 538, 551 (2d Cir. 2015) (citations and internal quotation marks omitted). The remedy for a general verdict rule transgression, as the Second Circuit held in *Chowdhury*, is vacatur of the**{2020 U.S. Dist. LEXIS 28}** tainted sentence and a new trial.

Application of the general verdict rule in the case at bar would require that the Defendants' 18 firearms convictions and sentences be vacated, thereby mooting the **second question** posed *supra*, which inquires into whether the substantive crimes proved constitute "crimes of violence" under § **924**(**c**) analysis. However, the briefs of counsel debate that issue, and I will consider it.

Substantive crimes are charged in Counts Two, Three and Four of the indictment.5 The question is whether they constitute "crimes of violence" which fall within the elements clause of § **924**(**c**), that being the portion of the firearms statute which retains a post-*Davis* constitutional validity.6 Those substantive crimes are alleged violations of the New York penal law. The criminalization of state offenses in a federal statute such as the firearms law depends upon the elements specified in the relevant state criminal laws. *See, e.,g., Boykin*, 2020 U.S. Dist. LEXIS 27317, 2020 WL 774293, at *6 (for purposes of the RICO statute, 18 U.S.C. § 1959(a)(1), "what the federal statute criminalizes is behavior that qualifies as 'murder' under state law. That is why Count Four alleges that the murder of Lamont Young violated N.Y. Penal Law § 125.25 and N.Y. Penal Law § 20.00."); *Stokeling v. United States*, 139 S. Ct. 544, 554, 202 L. Ed. 2d 512 (2019) (in determining coverage under the ACCA, federal court**{2020 U.S. Dist. LEXIS 29}** looks to "Florida's robbery statute to determine whether it 'has as an element the use, attempted use, or threatened physical force against the person of another.'"); *United States v. Moreno*, 821 F.3d 223, 230-231 (2d Cir. 2016) (federal sentencing guidelines calculation required court of appeals to "determine which section of the divisible Connecticut statute Moreno pled guilty to" in order to decide if "Moreno's Connecticut conviction was an aggravated felony" for guidelines purposes).

Count Two charged Camacho and Rodriguez with the murder of Hector Ocasio; Count Three, with



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 11)

the murder of Gilberto Garcia; and Count Four, with the attempted murder of Luis Garcia. Each of these counts charged violation of N.Y. Penal Law § 125.25, whose relevant subsection provides: "A person is guilty of murder in the second degree when ... [w]ith intent to cause the death of another person, he causes the death of such person or of a third person. . . ." Each of these three counts tracks that statutory language; *see, e.g.*,Count Two: Camacho and Rodriguez "together, with others known and unknown, willfully and knowingly murdered and aided and abetted the murder of Hector Ocasio." In addition to § 125.25, Counts Two and Three also charged violations of N.Y. Penal Law § 20.00, which provides: "When one**{2020 U.S. Dist. LEXIS 30}** person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he . . . intentionally aids such person to engage in such conduct." In addition to § 125.25, Count Four also charged with a violation of N.Y. Penal Law § 110.00, which provides: "A person is guilty of an attempt to commit a crime when, with the intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."

Camacho and Rodriguez were convicted on each of these substantive charges. The jury returned a verdict in general form - jurors were instructed to answer "guilty" or "not guilty" with respect to each of Counts Two, Three and Four. That procedure poses no problem as to those counts standing alone. However, complications arise with respect to the "guilty" verdict on the firearms charges contained in Count Five, based on § **924**(**c**).

The firearms convictions are lawful only if the substantive offenses in the preceding counts were valid predicate acts for imposition of the firearms statute. That question depends in turn on whether those substantive counts include a "crime of violence" for § **924**(**c**) purposes, which**{2020 U.S. Dist. LEXIS 31}** following the Supreme Court's decision in *Davis*, is exclusively defined as "an offense that is a felony and has as *an element* the use, attempted use, or threatened use of *physical force* against the person or property of another." 18 U.S.C. § **924**(**c**)(3)(A) (emphases added). Whether physical force is an element of the offense in question is determined by the wording of the statute (state or federal) which creates and defines the offense.

In the case at bar, the elements of the proffered predicate offenses are found in the cited New York penal laws. If under New York law the use of physical force (actual, attempted or threatened) is not a necessary element of the crime of second degree murder (actual or attempted), it would follow that second degree murder as defined by the New York penal law is not categorically a "crime of violence" as defined by the federal firearms statute. Such a conclusion would require vacatur of these Defendants' firearm convictions and sentences.

These principles and their application are illustrated by a consistent line of cases. In *United States v. Begay*, 934 F.3d 1033 (9th Cir. 2019), the defendant was convicted of second degree murder under the federal murder statute and was also convicted of discharging a firearm "during a 'crime of**{2020 U.S. Dist. LEXIS 32}** violence' under 18 U.S.C. **924**(**c**)." 934 F.3d at 1038. The defendant having argued on appeal that "second-degree murder does not qualify as a 'crime of violence,'" the Ninth Circuit said that "we do not look to the facts underlying the conviction, but compare the elements of the statute forming the basis of the defendant's conviction with the elements of a 'crime of violence.'" *Id.* (citation and internal quotation marks omitted). The Ninth Circuit then reasoned:

> The defendant's crime cannot be a categorical "crime of violence" if the conduct proscribed by the statute of conviction is broader than the conduct encompassed by the statutory definition of a "crime of violence.". . . .
>
> . . .



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 12)

> Accordingly, we compare the elements of 18 U.S.C. § 1111, the second-degree murder statute, to the definition of a "crime of violence" found in § **924**(**c**)(3). . . . Because the Supreme Court declared 18 U.S.C. § **924**(**c**)(3)(B) unconstitutionally vague in *United States v. Davis*, we need only determine whether second-degree murder constitutes a crime of violence under the "elements clause" in subsection (A).
>
> Second-degree murder does not constitute a crime of violence under the elements clause - 18 U.S.C. § **924**(**c**)(3)(A) - because it can be committed recklessly. . . . Because second-degree murder can be committed recklessly, rather**{2020 U.S. Dist. LEXIS 33}** than intentionally, it does not categorically constitute a crime of violence. . . .
>
> . . .
>
> Second-degree murder is not categorically a crime of violence under the elements clause, 18 U.S.C. § **924**(**c**)(3)(A). And, pursuant to *Davis*, second-degree murder cannot constitute a crime of violence under the residual clause, section **924**(**c**)(3)(B), as the residual clause is unconstitutionally vague. Begay's § **924**(**c**) conviction for discharging a firearm during and in relation to a crime of violence therefore cannot stand under either the elements clause or residual clause of § **924**(**c**)(3).934 F.3d at 1038-41 (citations and internal quotation marks omitted).

In *United States v. Scott*, No. 06 CR 988-LTS, 2017 U.S. Dist. LEXIS 85033, 2017 WL 2414796, at *2 (S.D.N.Y. June 2, 2017), *aff'd*, No. 18-163, 2020 U.S. App. LEXIS 9981, 2020 WL 1522825 (2d Cir. Mar. 31, 2020), defendant Scott pleaded guilty to an ACCA charge of being in possession of a firearm after prior convictions for the "violent felonies" of manslaughter under New York law (to which he also pleaded). Subsequently, the Supreme Court in *Johnson* invalidated the residual clause of the ACCA, so that the ACCA's sentence enhancements now apply only to a crime that "has as an element the use, or attempted use, or threatened use of physical force against another." The district court granted Scott's § 2255 petition to vacate his consecutive firearms sentence. Judge Swain construed the New York**{2020 U.S. Dist. LEXIS 34}** manslaughter statute and relevant state court cases, observed that "a defendant may be convicted of violating subsection one of New York's first degree manslaughter statute by an act of omission, which by definition does not involve an act of any kind, let alone the use of force," and concluded that the New York statutory offense "is not an offense covered by the Force Clause" of the ACCA. 2017 U.S. Dist. LEXIS 85033, 2017 WL 2414796, at *2-3. In arriving at that conclusion, Judge Swain noted:

> In determining whether Scott was convicted of a crime constituting a "violent felony" within the meaning of the Force Clause, the Court must presume that the conviction rested upon nothing more than the least of the acts criminalized. In this analysis, only the minimum criminal conduct necessary for conviction under [the] particular statute is relevant.2017 U.S. Dist. LEXIS 85033, [WL] at *2 (citations and internal quotation marks omitted).

The Second Circuit engaged in a comparable exercise in *United States v. Moreno*, 821 F.3d 223 (2016). The defendant had pleaded guilty to the federal crime of illegal entry. The sentencing guidelines provided for enhancement if the defendant had previously pleaded guilty to an "aggravated felony," which in turn included a "crime of violence" defined by statute as "an offense that has as an element the use, attempted use, or threatened**{2020 U.S. Dist. LEXIS 35}** use of physical force against the person or property of another." Defendant had previously pleaded guilty in a Connecticut court to a state charge of attempted assault in the second degree. The question before the federal district court was whether that constituted a "crime of violence" and hence an "aggravated felony" for guidelines purposes. The district judge held that it did. The Second Circuit reversed.



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(Pg. 13)

Judge Lynch's opinion noted that the Connecticut assault statute defined "several distinct offenses, most of which would constitute 'crimes of violence' within the meaning of [the relevant federal statute], but at least one of which would not," and concluded:

> As there is no evidence in the record of conviction that would enable us to determine which section of the divisible Connecticut statute Moreno pled guilty to, it cannot be determined, applying the categorical or modified categorical approach, that Moreno's Connecticut conviction was an aggravated felony. The district court therefore erred by finding that it was, and thereby increasing Moreno's offense level by eight levels.821 F.3d at 228, 230-31.

What these and other cases cited in the briefs of counsel have in common is that trial, habeas or appellate**{2020 U.S. Dist. LEXIS 36}** courts look to the penal statute creating an offense to determine if that offense contains the elements necessary to trigger sentencing enhancement under the "elements clause" of a statute like § **924**(**c**). For purposes of the federal firearms statute, one might characterize § **924**(**c**) as the procedural law and the underlying penal statute as the substantive law. In the wake of the *Davis* decision, an offense is procedurally punishable under § **924**(**c**) only if the substantive penal law contains as an element of the offense the use, attempted use or threatened use of physical force.

**IV**

The jury convicted Camacho and Rodriguez on all five counts of the indictment. Count One charged them, and others unnamed, with conspiring to murder Hector Ocasio. Counts Two, Three and Four charged Camacho and Rodriguez, and others unnamed, with murdering Ocasio and another individual, and attempting to murder a third. These four counts alleged violations of the New York penal law. Count Five charged Camacho and Rodriguez with violating § **924**(**c**) by using and carrying a firearm during and in relation to "the murder of and conspiracy to murder" Ocasio.

While the Government concedes "conspiracy to commit murder" is "no longer a valid predicate for**{2020 U.S. Dist. LEXIS 37}** a § **924**(**c**) conviction after *Davis*," it contends that Defendants' convictions "were predicated not just on the conspiracy to commit murder charge but on two substantive counts of murder and one count of attempted murder," each of which "remains a valid predicate" under the elements clause of § **924**(**c**) "even after *Davis*." Letter Brief [Doc. 862] at 6, 7.

There is precedent for this proposition. *Barrett*, 937 F.3d 126, remanded by the Supreme Court to the Second Circuit for reconsideration in the light of *Davis*, held that substantive Hobbs Act robberies could serve as predicates for a § **924** (**c**) conviction, even though *Davis* required vacatur of a § **924**(**c**) conviction based on a *separate and different* Hobbs Act robbery conspiracy. Indeed, the point was not even disputed; the Second Circuit said:

> Neither party argues that *Davis* requires vacatur of Barrett's Count Four, Six or Seven § **924**(**c**) convictions. This is not surprising. The predicate offense for each of these crimes is *substantive* Hobbs Act robbery, which can be identified as a crime of violence under § **924**(**c**)(3)(A) applying the traditional, elements only, categorical approach not at issue in *Davis*. Thus, for the reasons stated in our original opinion, we again affirm Barrett's convictions on Counts Four, Six, and Seven.937 F.3d at 128 (citations omitted).**{2020 U.S. Dist. LEXIS 38}**

The Government relies principally upon *United States v. Walker*, 789 F. App'x 241 (2d Cir. 2019).7 The two defendants were convicted (one by plea, the other by trial) of substantive Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, and violating § **924**(**c**). Defendants challenged their convictions as invalid under *Davis*. The Second Circuit rejected the appeal: "The § **924**(**c**) conviction of each Defendant rested on convictions for both conspiracy *and* substantive Hobbs Act robbery as the predicate crimes of violence;" the substantive act of robbery, being "a crime of



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 14.)

violence under the elements clause of § **924**(**c**)(3)(A), is unaffected by *Davis*, . . . and remains binding on us in this case." 789 F. App'x at 244-45 (citing *Barrett*, 937 F.3d at 128-29). *Walker*, a summary order, has no precedential effect.

The Second Circuit's opinions in *Barrett* and *Walker* do not discuss, analyze or explain the continuing validity of the defendants' substantive convictions as § **924**(**c**) predicates, notwithstanding the constitutional invalidity of a conspiracy conviction for that gatekeeper purpose. It is noteworthy, however, that the defendants' physical participation in the substantive robberies in question do not appear to have been contested. The trial evidence makes it hard to see how it could have been otherwise. In *Barrett*, the**{2020 U.S. Dist. LEXIS 39}** defendant bearing that name was a member of a gang that committed "a series of frequently armed, and invariably violent, robberies," using "guns, knives, baseball bats and their fists to threaten and coerce victims, physically injuring several and killing one." *United States v. Barrett*, 903 F.3d 166, 170 (2d Cir. 2018) (original appellate opinion).8 The Second Circuit described seven such separate robberies, some participated in by Barrett, others not, as revealed by the proof. *Id.* at 170-71. One cannot imagine the defense contending at trial that Barrett was never present at any of these robberies, instead was somewhere else, and became the victim of mistaken identity. Similarly, the evidence in *Walker* identified the defendants as participants in "a series of daytime robberies that culminated in charges of Hobbs Act robbery" and "firearms offenses." 789 F. App'x at 243. The Second Circuit held in *Barrett* and *Walker* that *Davis*'s invalidation of residual clause convictions as predicates for § **924**(**c**) liability did not affect a § **924**(**c**) conviction based on that statute's elements clause.

With trial records like these, a reviewing court has no difficulty in concluding that a defendant's § **924**(**c**) conviction "*rested on* convictions for both conspiracy and substantive**{2020 U.S. Dist. LEXIS 40}** Hobbs Act robbery as the predicate crimes of violence," that being the Second Circuit's phrasing in *Walker. Id.* at 244-45 (emphasis added). Saying that one conviction "rests upon" another necessarily implies that guilt on the first conviction in the pyramid is clearly established. That point is made in *Simmons v. United States*, No. 16 Civ. 4797, 2019 U.S. Dist. LEXIS 198811, 2019 WL 6051443 (S.D.N.Y. Nov. 15, 2019), where District Judge Hellerstein said: "When a § **924**(**c**) conviction rests upon both a conspiracy to commit Hobbs Act robbery and a separate valid § **924**(**c**) predicate offense, the conviction remains valid, even after *Davis* and *Barrett*." 2019 U.S. Dist. LEXIS 198811, 2019 WL 6051443, at *2. Judge Hellerstein cited *Walker*, 789 Fed. Appx. 241, 2019 WL 4896839, at *2, and then, as authority for the same holding, cited *In re Navarro*, 931 F.3d 1298 (11th Cir. 2019), where the Eleventh Circuit said: "[A]lthough Navarro pled guilty to conspiracy to commit Hobbs Act robbery and a § **924**(**c**) violation, his plea agreement and the attendant factual proffer more broadly *establish* that his § **924**(**c**) charge was predicated both on conspiracy to commit Hobbs Act robbery and [a valid predicate offense]." 931 F.3d at 1302 (emphasis added).

The necessity of establishing the factual basis for a predicate to a § **924**(**c**) violation was stressed by the Second Circuit in *United States v. Biba*, 788 F. App'x 70 (2d Cir. 2019). The district court, following a plea of guilty, convicted the defendant of conspiracy to commit two Hobbs Act robberies, and the brandishing of a firearm in connection**{2020 U.S. Dist. LEXIS 41}** with one of the robberies, a circumstance which resulted in defendant's conviction under § **924**(**c**). Citing *Davis* and *Barrett*, defendant argued on appeal that the § **924**(**c**) conviction should be vacated because a conspiracy to commit Hobbs Act robbery was not a "crime of violence" under the statute's elements clause, and the related clause was unconstitutionally vague. The government conceded on appeal that the defendant's § **924**(**c**) conviction "cannot be based upon his guilty plea to a conspiracy to commit Hobbs Act robbery in light of *Davis* and *Barrett,"* but argued that "his firearms conviction is still valid under the elements clause" of the firearms statute. 788 F. App'x at 71. Specifically, the government sought to preserve the firearms conviction by arguing that defendant "allocuted to attempted robbery



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 15)

during his plea to the conspiracy and firearms counts, and that such allocution provides a valid predicate 'crime of violence' for the purposes of his § **924**(**c**) conviction." 788 F. App'x at 72.

The Second Circuit rejected that argument:

> [W]e have never decided whether attempted Hobbs Act robbery qualifies as a "crime of violence" under the elements clause. However, even assuming *arguendo* that attempted Hobbs Act robbery remains a "crime of violence," we**{2020 U.S. Dist. LEXIS 42}** find the government's argument must fail because Biba did not allocute to the elements of attempted robbery during his guilty plea. . . . [A]lthough he admitted that he *agreed* to be the get-away driver, Biba did not state at any point during his allocution that he *was* the get-away driver or that he took any step towards the commission of the robbery. Accordingly, because Biba only allocuted to a Hobbs Act robbery conspiracy as it relates to the § **924**(**c**) count, Biba's § **924**(**c**)conviction must be vacated under *Davis*, and Biba must be re-sentenced on the remaining counts of conviction (which Biba does not challenge on appeal).*Id.* (citations and internal quotation marks omitted).

The lesson to be derived from a case like *Biba* is that in a prosecution for conspiracy and substantive offenses, a § **924**(**c**) conviction must be vacated unless the record (plea or trial) establishes, in addition to a conspiracy conviction, the valid predicate of defendant's conduct that comes within the element clause of the firearms statute.

These principles are also displayed in *Boykin v. United States*, No. 16 CV 4185 (CM), 2020 U.S. Dist. LEXIS 27317, 2020 WL 774293 (S.D.N.Y. Feb. 18, 2020). Defendant Boykin, the leader of a violent gang, pleaded guilty to conspiracy counts and a firearms count. He was sentenced**{2020 U.S. Dist. LEXIS 43}** to a consecutive term under § **924**(**c**). Boykin moved to vacate that sentence, relying on *Johnson* and *Davis*. Chief Judge McMahon rejected the motion. She noted that "In his plea allocution, Boykin made clear that Count Twenty-Five [the firearms count] was predicated on both the actual murder and the conspiracy pursuant to which the murder plan was hatched and carried out." 2020 U.S. Dist. LEXIS 27317, 2020 WL 774293, at *4. In consequence:

> [**C**]onspiracy to commit murder was not the only predicate for Boykin's **924**(**c**) conviction. There was a second predicate for his plea: the actual murder of Lamont Young, as charged in Count Four of the indictment. Boykin's conviction on Count Twenty-Five survives as long as "substantive" murder qualifies as a crime of violence under the "force clause," § **924**(**c**)(3)(A).2020 U.S. Dist. LEXIS 27317, [WL] at *5.

In the case at bar, the Government concedes (as it did in *Biba*) that *conspiracy* to commit the underlying crime of murder "is no longer a valid predicate for a § **924**(**c**) conviction after *Davis*." Letter Brief [Doc. 862] at 6. The Government purports to find (as it did in *Biba*) valid predicates based on the *commission* of the underlying crime, specifically, conduct by Defendants sufficient to establish the element of a "crime of violence" required by § **924**(**c**)(3)(A): "the use, attempted use, or threatened use of physical**{2020 U.S. Dist. LEXIS 44}** force against the person or property of another." To establish that element in *Biba* and *Boykin*, the government relied on the defendants' guilty plea allocutions: unsuccessfully in *Biba*, successfully in *Boykin*. In the case at bar, since Camacho and Rodriguez did not plead guilty or allocute to the charged offenses but went to trial, the Government must perforce rely instead upon the jury's verdicts of guilt on the substantive offenses to establish the element necessary to sustain a valid § **924**(**c**) conviction.

For the reasons introduced in the earlier Parts of this Ruling, the Government's need to invoke Defendants' convictions on the substantive murder counts as the predicate for their § **924**(**c**) convictions presents the Government with considerable difficulty.

Camacho and Rodriguez did not plead and allocute to the murder counts. They proclaimed their



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(Pg. 16)

innocence and went to trial. The three shootings in question took place on a Bronx street during several minutes of a January night. The Government undertook to prove at trial that the murder of Hector Ocasio was occasioned by internal disputes within the **C**&**C** gang, which controlled the sale and distribution of heroin in a Bronx area. Camacho and Rodriguez**{2020 U.S. Dist. LEXIS 45}** "were at the pertinent times young men residing in New York City, engaged in the drug-trafficking business, who obtained Calderon's [a gang leader] permission to sell heroin in **C**&C's controlled territory, in exchange for a down payment and weekly rent payments." 2017 U.S. Dist. LEXIS 205883, 2017 WL 6404900, at *1 (ruling denying habeas petitions). "Camacho and Rodriguez participated in Ocasio's murder (and the concurrent shootings of others) in exchange for payment by **C**&**C** and in hopes of improving their own standing in the organization." *Id.* The Government offered evidence, principally from co-conspirators and cooperating witnesses, that Camacho was one of the shooters, and Rodriguez was present in a getaway car.

Camacho and Rodriguez denied their presence at the scene and any participation in these crimes. They produced alibi evidence at the trial.

In seeking to impose criminal liability on Camacho and Rodriguez for these events, the Government presented the jury with the broadest possible spectrum of charges and theories against these individuals. Count One was a conspiracy charge with respect to the murder of Ocasio. Counts Two, Three and Four, the substantive counts, included charges under the New York penal law for aiding and abetting**{2020 U.S. Dist. LEXIS 46}** and for attempt. Lastly, the Government asked the Court to give a *Pinkerton* instruction to the jury. The Court did so.

The jury found Defendants "guilty" on Counts One through Four, and also returned the general verdict of "guilty" on Count Five, the § **924**(**c**) charge. On the present motion, the Government contends that the Defendants' convictions on the substantive counts supply the predicate for their § **924**(**c**) convictions. That is so only if I interpret the jury's verdicts on the murder counts as findings that a particular Defendant used or carried a firearm "during and in relation to" a "crime of violence" as that phrase is used in § **924**(**c**), which following *Davis* is limited to felonies having "as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § **924**(**c**)(3)(A).

The jury verdicts on the substantive counts allow that interpretation, but do not compel it. The substantive counts charged, *inter alia*, and the jury could have found, that Defendants aided and abetted other individuals in the murders of Ocasio (Count Two) and Gilberto Garcia (Count Three), and in the attempt to murder Luis Garcia (Count Four). Alternatively, the jury could have decided the case in accordance with the *Pinkerton* theory of liability,**{2020 U.S. Dist. LEXIS 47}** which allowed the jury to convict Camacho and Rodriguez for foreseeable substantive crimes committed by co-conspirators.

In addition to these factors, the trial of this case antedated the Supreme Court's decision in *Davis*. Accordingly, the trial court instructed the jury on the original wording of § **924**(**c**), including both the elements and residual clauses. The jury could have arrived at its guilty verdict on the basis of the residual clause, subsequently held to be unconstitutional.

One cannot ascertain from its general verdicts which available path the jury followed in arriving at verdicts convicting Camacho and Rodriguez on the substantive counts. That uncertainty complicates regarding those verdicts as § **924**(**c**) predicates, as the Government asks me to do. Some alternative bases for guilty verdicts would not qualify as predicates. In *Biba*, the Second Circuit reiterated that substantive robbery qualifies as a "crime of violence" under the elements clause of the firearms statute, but left open whether an *attempted* robbery would do so. The same doubts may attend aiding and abetting the criminal conduct of other individuals.



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg-17)

In any event, the *Davis* decision, retroactively effective, would clearly disqualify**{2020 U.S. Dist. LEXIS 48}** jury verdicts of substantive guilt based on the *Pinkerton* theory of liability. On the night of the Bronx shootings in question, Camacho and Rodriguez were young men seeking to ingratiate themselves with the violent **C**&**C** gang. They were among the 16 defendants named in the federal government's original indictment against the gang leader and others. The Court severed Camacho and Rodriguez for trial on a superseding indictment, which was confined to the Bronx shootings. The Government's trial proof showed that a number of other gang-related individuals were also involved in the Bronx shootings (including a shooter named Trumont Williams). In these circumstances, it is entirely plausible to think that the jury might have convicted Camacho and Rodriguez on the substantive counts in response to, and reliance upon, the trial judge's *Pinkerton* instruction.

The *Pinkerton* instruction was properly given at the time, before the Supreme Court had decided *Davis*, but *Davis* eliminates conspiracy as a valid predicate for a § **924**(**c**) conviction, and its retroactive application renders unconstitutional guilty verdicts the jury might have returned against Camacho and Rodriguez on the basis of *Pinkerton*. I say "might**{2020 U.S. Dist. LEXIS 49}** have returned" because the forms of the verdicts leave the question uncertain, but that uncertainty requires vacatur of the firearms verdicts in this case.

Lastly, and separately, the trial judge allowed the jury to consider an invalid predicate when it included § **924**(**c**)(3)(B)'s residual clause in its instructions. Again, the judge's instructions were proper at that pre-*Davis* time, but in the light of *Davis*, this circumstance must be regarded as another manner in which the jury might have relied upon an invalid basis

**V**

The record reveals that the jury might have relied upon one or more invalid bases for its guilty verdicts on the substantive counts. The Government cannot negate all those possibilities. It follows that the Government cannot show the murder convictions of Camacho and Rodriguez necessarily furnished valid predicates for § **924**(**c**) criminal liability. The drafting of the indictment; the content of the Government's trial proof and arguments; the trial court's instructions to the jury on § **924**(**c**), before part of that statute was invalidated by *Davis*; the court's *Pinkerton* instruction to the jury; and the Supreme Court's recent decision in *Davis*: all these factors combine to place this habeas Court in a position**{2020 U.S. Dist. LEXIS 50}** where there is no way to know that an invalid basis was not the sole basis for jury verdicts that Defendants Camacho and Rodriguez were guilty of a predicate crime qualified to sustain the firearms charges.

Judge Stinson

Given that conclusion, Defendants' convictions and sentences on the firearms charges must be vacated, and the Defendants re-sentenced.

**VI**

For the foregoing reasons, the Joint Motion of Defendants Jaime Rodriguez and Steven Camacho [Doc. 861] to vacate their convictions and sentences under 18 U.S.C. § **924**(**c**) is GRANTED. Those convictions and sentences are hereby VACATED.

Defendants will be re-sentenced on the superseding indictment. It is not clear that a re-sentencing hearing will be necessary. Defendants and the Government may agree on its substance and form. Counsel for the parties are directed to file written submissions addressing that subject on or before April 24, 2020. The Court is giving the matter priority because of the exigencies of Defendants' situations.

It is SO ORDERED.



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042

(pg. 18)

Dated: New Haven, Connecticut

April 15, 2020

/s/ CHARLES S. HAIGHT, JR.

Senior United States District Judge

**Footnotes**

1

The most recent submissions on the present motion are filed under the original criminal docket number, 94 Cr. 313 (CSH). Thus Defendants' Reply Brief was filed on March 6, 2020 as Document 865 in 94 Cr. 313. The initial habeas petitions bore different docket numbers: 14 Civ. 4628 (Rodriguez) and 14 Civ. 4846 (Camacho). This Ruling will be filed in the case bearing docket number 94 Cr. 313 (CSH).

2

In *United States v. Wright*, No. 17-1638, 2020 U.S. App. LEXIS 9343, 2020 WL 1479865, at *2 (2d Cir. Mar. 24, 2020), the Second Circuit called these subparts the "force clause" and the "risk-of-force clause," respectively. Throughout this Ruling I will adhere to the Supreme Court's terminology.

3

18 U.S.C. § 1959(a)(1) applies, *inter alia*, to a person who, in aid of racketeering, murders "any individual in violation of the laws of any State or the United States," or "attempts or conspires to do so."

4

The Government's Letter Brief on the present joint motion refers to these counts by different numbers, for the stated reason that "the count numbers referred to . . . are those contained in the S12 Superseding Indictment." Letter [Doc. 862] at 2 n.2. That declaration is puzzling, since Exhibit A to the motion consists of the superseding indictment, S12 Cr. 313 (CSH), the count numbers are One through Five, and the trial transcript, Exhibit D, recites the jury's return of its verdict on each of those counts, whose numbers conform to the numbers used in the text of this Ruling.

5

Count One is the conspiracy count.

6

I am concerned, at this point of the analysis, only with Counts Two, Three and Four. As noted *supra*, the Government concedes that after *Davis*, Count One, alleging conspiracy to murder Ocasio, "is no longer a valid predicate" for a § 924(c) charge. Count Five is the § 924(c) charge at issue.

7

*Cert. denied*, 140 S. Ct. 979, 206 L. Ed. 2d 133 (2020).

8

*Cert. granted*, *judgment vacated*, 139 S. Ct. 2774, 204 L. Ed. 2d 1154 (2019) (*abrogated by United States v. Davis*, 139 S. Ct. 2319, 204 L. Ed. 2d 757 (2019)).



© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10517042