**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| JEFFERY WILLIAM PAUL, | : | |
| | : | CIVIL ACTION |
| Petitioner, | : | (Capital Habeas Corpus) |
| | : | |
| v. | : | 2:13-CV-00304-JMS-MJD |
| | : | |
| SUPERINTENDENT, USP Terre Haute, | : | **Hon. Jane Magnus-Stinson** |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondents. | : | |

## AMENDMENT TO PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Jeffrey William Paul, through undersigned counsel, pursuant to this Court's October 6, 2021, Order (Filing No. 270), hereby amends his previously filed Petition for Writ of Habeas Corpus (Filing No. 103) ("Habeas Petition") to include Claim V as set forth below. The matters and claims set forth in all other sections of the Habeas Petition and its accompanying exhibits are incorporated as if set forth entirely herein.

### V. MR. PAUL'S 18 U.S.C. § 924(C) CONVICTION IS INVALID UNDER *BORDEN V. UNITED STATES*.

#### A. Introduction

1. Mr. Paul was convicted of knowing use of a firearm in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c). To qualify as a crime of violence under § 924(c), the predicate offense must satisfy § 924(c)(3)(A)'s "force clause."[1] A crime-of-

[1] Section 924(c)(3) defines "crime of violence" as follows:

(3) For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

violence determination under the force clause must be conducted using either the categorical or the modified categorical approach. These approaches are not based on the facts of the individual cases, but the elements of the predicate offenses. *Descamps v. United States*, 507 U.S. 254, 260-65 (2013). Under *Borden v. United States,* 141 S. Ct. 1817 (2021)*,* the elements of a predicate offense must require the purposeful or knowing use, attempted use, or threatened use of violent force in order for the force clause to be met.

2. Here, the predicate offense for Mr. Paul's § 924(c) conviction was a "robbery" that did not cite or correspond to any federal robbery statute. In the absence of any identifiable statutory elements, Mr. Paul's § 924(c) conviction cannot be sustained after *Borden* because the Government cannot establish that the "robbery" required the purposeful or knowing use of violent force under the categorical approach. Even if this Court takes the modified categorical approach, which permits the Court to consider documents such as the indictment or jury instructions, the result is the same. Neither the indictment nor the jury instructions here correspond to a federal statute that would satisfy *Borden* by excluding force or violence that has been recklessly applied.

3. No alternative ground can sustain Mr. Paul's conviction. The Government initially relied on § 924(c)(3)(B)'s "residual clause" as the basis for Mr. Paul's § 924(c) conviction. Filing No. 158 at 25-28. But the Supreme Court of the United States voided the residual clause for vagueness. *See Johnson v. United States*, 576 U.S. 591 (2015); *see also United States v. Davis*, 139 S.Ct. 2319 (2019). The Government then retreated to the

---

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

force clause as the basis for Mr. Paul's § 924(c) conviction. Filing No. 231 at 6-11. However, as outlined above, the undefined "robbery" that serves as the predicate offense for Mr. Paul's § 924(c) conviction has no statutory elements or *mens rea* requirement, and it therefore can be satisfied through the reckless use of force. A force-clause based conviction cannot survive *Borden* in Mr. Paul's case.

4. After more than twenty years of litigation, the Government claimed for the first time in June 2020 that the undefined "robbery" serving as the predicate offense was robbery pursuant to 18 U.S.C. § 2111. *See Paul v. United States*, No. 20-2042 (8th Cir. June 9, 2020) ("§ 2255 Response"), at 6-7. But the Government's position is contrary to the record. Mr. Paul's indictment did not cite § 2111, the jury instruction did not match § 2111's language, and the Government failed to identify this statute as the purported predicate offense until twenty-four years after the indictment was filed in 1996. Even if it is assumed that § 2111 was the offense underlying Mr. Paul's § 924(c) conviction, § 2111 can be satisfied by the reckless use, attempted use, or threatened use of force. Thus, post-*Borden*, a § 2111 violation fails to qualify as a crime of violence under § 924(c).

5. This Court should grant habeas corpus relief under 28 U.S.C. § 2241. Under the "savings clause" of 28 U.S.C. § 2255(e), a federal prisoner may seek § 2241 review if § 2255 is "inadequate or ineffective to test the legality of his detention." § 2255(e). Here, Mr. Paul is innocent of § 924(c) under *Borden*, which establishes a new, retroactively applied rule of statutory law. But § 2255(h) does not authorize a successive motion under these circumstances. So, Mr. Paul cannot litigate this claim under § 2255. Because the issuance of *Borden* creates a "fundamental defect in [Mr. Paul's] conviction or sentence" that cannot be remedied through § 2255, *In re Davenport*, 147 F.3d 605, 611

(7th Cir. 1998), § 2255 is "inadequate or ineffective to test the legality of his detention." This Court should grant him review under § 2241, vacate Mr. Paul's § 924(c) conviction, and reverse his death sentence.

**B. Summary of Procedural History**

6. Mr. Paul is a death-sentenced inmate currently incarcerated at the United States Penitentiary at Terre Haute. After a jury trial, he was convicted of aiding and abetting another in a homicide and of the knowing use of a firearm in relation to a crime of violence under 18 U.S.C. § 2, § 1111(a), and § 924 in the United States District Court for the Western District of Arkansas in connection with the shooting death of Sherman Williams in Hot Springs National Park. After a contested penalty phase before the same jury, Mr. Paul was sentenced to death on June 25, 1997. His conviction and sentence were affirmed on appeal. *United States v. Paul*, 217 F.3d 989 (8th Cir. 2000). Mr. Paul filed a petition for post-conviction relief pursuant to 28 U.S.C. § 2255 in the Western District of Arkansas, which was denied. Filing No. 322, *Paul v. United States*, 96-CR-60022 (W.D. Ark. Jan. 31, 2005). Mr. Paul filed a motion to reconsider or, in the alternative, vacate the dismissal of his § 2255 motion, which was denied on June 27, 2005. Filing No. 333, *Paul v. United States*, 96-CR-20022 (W.D. Ark. June 27, 2005). The denial of Mr. Paul's § 2255 motion was affirmed on appeal. *See United States v. Paul*, 534 F.3d 832 (8th Cir. 2008) (cert. denied Oct. 5, 2009).

7. On May 20, 2016, Mr. Paul submitted an application to file a successive § 2255 motion to the United States Court of Appeals for the Eighth Circuit based on *Johnson*. The Eighth Circuit denied this application on August 5, 2016. *See* Order, *Paul v. United States*, 16-2330 (8th Cir. Aug. 6, 2016).

8. Mr. Paul filed his counseled Habeas Petition before this Court on October 18, 2016, asserting, inter alia, that his § 924(c) conviction should be vacated under *Johnson*. Filing No. 103. The parties submitted briefing, including supplemental briefing on *Davis*, which concluded on November 6, 2019. Filing Nos. 194 and 234. On June 1, 2020, this Court stayed these proceedings so that Mr. Paul could file an application to pursue his claim for relief under *Davis* in a successive 28 U.S.C. § 2255 motion. Filing No. 244. After the application for a successive § 2255 motion was denied by the Eight Circuit, this Court lifted the stay on June 29, 2021, and indicated that it would rule on Mr. Paul's petition in due course. Filing No. 265.

9. That same month, however, the Supreme Court issued *Borden*. Having reviewed *Borden* and assessed its applicability to Mr. Paul's case, counsel for Mr. Paul requested leave to file an amendment to his § 2241 petition, which this Court granted on October 6, 2021. Filing No. 270. Mr. Paul submits this amendment pursuant to this Court's October 6, 2021, Order.

### C. Under *Borden*, § 924(c)'s Force Clause Must Categorically Involve the Purposeful or Knowing Use of Violent Force

10. Section 924(c) criminalizes use or possession of a firearm "during . . . any crime of violence." 18 U.S.C. § 924(c)(1)(A). The statute's force clause defines a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

11. To determine whether a predicate offense qualifies as a crime of violence under § 924(c), reviewing courts must use the categorical approach. *Descamps*, 570 U.S. at 260-65; *Davis*, 139 S. Ct. at 2328. The categorical approach requires that courts "'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's [offense] and *not*

'to the particular facts underlying [the offense].'" *Descamps*, 570 U.S. at 261 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). The categorical approach focuses "on the elements, rather than the facts, of a crime," because "the only facts the court can be sure the jury . . . found are those constituting elements of the offense." *Id.* at 263, 269-70. Courts must also presume that the predicate offense "rested upon [nothing] more than the least of th[e] acts criminalized" by the statute or elements in question. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1680 (2013) (quoting *Johnson (Curtis) v. United States*, 559 U.S. 133, 137 (2010)).

12. To constitute "physical force," the level of force in question must be "*violent* force – *i.e.*, force capable of causing physical pain or injury to another person." *Johnson (Curtis),* 559 U.S. at 140 (emphasis original); *Stokeling v. United States*, 139 S. Ct. 544, 554-55 (2019) (same).

13. The force must also be purposefully or knowingly employed. In *Borden*, the Supreme Court ruled that a violent felony as defined by 18 U.S.C. § 924(e)(2)(B)(1)—the force clause of the Armed Career Criminal Act ("ACCA")—is not satisfied by the reckless use of violent force. 141 S. Ct. at 1821-22 (Kagan, Breyer, Sotomayor, and Gorsuch, JJ., plurality). ACCA's force clause defines a violent felony as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(1). The four-justice plurality in *Borden* concluded that ACCA's use of the phrase "'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." 141 S. Ct. at 1825. The *Borden* plurality also concluded that a person must be the "conscious object (not the mere recipient) of the force." *Id.* at 1826. For these reasons, a violent felony under the

ACCA's force clause "covers purposeful and knowing acts, but excludes reckless conduct." *Id.*

14. While disagreeing with the plurality on the specific aspect of the ACCA's force clause that required a purposeful or knowing *mens rea*, Justice Thomas concurred with the plurality's ultimate conclusion. Justice Thomas explained that the "use of physical force" had a "well-understood meaning applying only to intentional acts designed to cause harm," and determined that the ACCA's "force clause" could not be satisfied by recklessness. *Id.* at 1835 (Thomas, J., concurring).

15. The language of § 924(c)'s force clause, the statute under which Mr. Paul was convicted, is virtually identical to the ACCA's force clause. *Compare* § 924(c)(3)(A) (offense qualifies as crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another") *with* § 924(e)(2)(B)(i) (offense qualifies as violent felony if it "has as an element the use, attempted use, or threatened use of physical force against the person of another"). Under the rationale embraced either by the *Borden* plurality or that employed by Justice Thomas's concurrence, a predicate offense does not satisfy § 924(c)'s force clause unless it requires the purposeful or knowing use of violent force. Recklessness will not suffice.

16. Accordingly, to constitute a crime of violence under § 924(c)'s force clause, the "least of th[e] acts criminalized" *Moncrieffe*, 133 S. Ct. at 1680, by the predicate offense must require a purposeful or knowing *mens rea* as to force, and cannot be satisfied by the reckless use, attempted use, or threatened use of force.

### D. The "Robbery" Serving as the Predicate for Mr. Paul's § 924(c) Conviction Does Not Require the Purposeful and Knowing Use of Violent Force

#### 1. The undefined "robbery" does not qualify as a crime of violence under the categorical approach

17. *Borden*'s requirements cannot be met because the Government failed to identify any robbery statute upon which Mr. Paul's § 924(c) conviction was based.[2] The categorical approach requires that courts "look only to the statutory definitions'—*i.e.*, the elements" of the predicate offense. *Descamps*, 570 U.S. at 261. Accordingly, in the absence of a robbery statute, the Government cannot establish that Mr. Paul's "robbery" required the knowing or purposeful use of violent force or that the reckless use of such force would be insufficient to establish this predicate offense.

18. The fact that the indictment invoked a "robbery" does not satisfy *Borden* either. Robberies are not categorically committed with the purposeful or knowing use of violent force. As the dissent in *Borden* noted, common law robbery and the robbery statutes in multiple states "defined robbery in a way that did not require that the defendant have intent or knowledge that his conduct would cause bodily injury." *Borden*, 141 S. Ct. at n.12 (Kavanaugh, J., dissenting) (discussing common law and state robbery statutes at the time ACCA was signed into law in 1984).

19. Providing a real-life example of one of the "reckless robber[ies]," *id.*, referred to by the dissent, the plurality in *Borden* cites a Texas robbery statute as an offense that is not a crime of violence because it encompasses force that was employed recklessly. *Borden*, 141 S.Ct. at 1831 (plurality) (citing *Craver v. State*, 2015 WL

---

[2] *See* Filing No. 231-1 (Superseding Indictment for *United States v. Paul*, 96-CR-60022 (W.D.Ark. Dec. 4, 1996)).

3918057, *2 (Tex. App., June 25, 2015)), which upholds a conviction for "robbery causing bodily injury"). In *Craver*, "a shoplifter jumps off a mall's second floor balcony while fleeing security only to land on a customer." *Borden*, 141 S. Ct. at 1831 (plurality). Because the shoplifter acted recklessly and the customer was injured, he was guilty of robbery causing bodily injury. *Craver*, *supra*, at *5. But because the statute did not require a higher *mens rea* than recklessness for the use of violent force, it did not satisfy the standard set forth in *Borden*. *Borden*, *supra*, at 1831.[3]

20. In addition, in its briefing before the Supreme Court for *Borden*, the Government conceded that robbery can be committed by the reckless use of force. *See* Brief for the United States at 16-17, *Borden v. United States*, 141 S.Ct. 1817 (2021) (No. 19-5410), 2020 WL 4455245 ("Gov't *Borden* Brief") ("Congress designed the elements clause to encompass offenses committed with a mens rea of recklessness . . . And at that time, Congress would have been aware that a conviction for robbery could often be premised on proof of reckless . . . causation of bodily injury."). The Government stated that "[a]t common law, a theft resulting in bodily injury to the victim constituted robbery" and that this "was true regardless of whether the defendant intended the injury; the common law required only that the theft be accompanied by a felonious intent to deprive an owner of his property." *Id.* at *17-18 (citations omitted). The Government further identified ten state robbery statutes in place at the time ACCA was adopted that

[3] Texas is not the only state to criminalize reckless robbery. *See, e.g.,* Haw. Rev. Stat. § 708-841(1)(c) (defining robbery in the second degree as "recklessly inflict[ing] serious bodily injury on another" during the course of a theft or unlawful taking of an automobile); Me. Rev. Stat. Ann. tit. 17-A, § 651(1)(A) (same for theft or attempted theft); Ohio Rev. Code Ann. §§ 2901.21(B) and (C)(1), 2911.01(A)(3) (aggravated robbery established by recklessly inflicting "serious physical harm on another" during the course of a theft).

encompassed the reckless causation of injury: either by explicitly invoking recklessness as a qualifying *mens rea* or by failing to require any *mens rea* as to the injury at all. *Id.* at *18.

21. Although the Supreme Court has authorized courts to "consult a limited class of documents, such as indictments and jury instructions," under the modified categorical approach to determine if the predicate offense is a crime of violence, *Descamps*, 570 U.S. at 257-58, this approach is not appropriate here. The modified categorical approach can only be used in the case of a divisible statute, which "sets out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257. A statute is divisible when it "sets out one or more elements of the offense in the alternative – for example, stating that burglary involves entry into a building or an automobile." *Id.* at 257. Here, because Mr. Paul was not charged with using a firearm to violate any specific robbery statute, there is no indication that he was charged under a statute that "set[] out one or more elements of the offense in the alternative," or was otherwised charged under a divisible statute. As a result, *Descamps* prohibits the consideration of additional materials. The categorical approach should be taken and, under that approach, the predicate offense fails to satisfy *Borden*.

22. Because, as *Borden* acknowledges and the Government admits, robberies can be committed through the reckless use of violent force, the Government cannot—in the absence of an underlying robbery statute—establish that Mr. Paul's "robbery" required the knowing or purposeful use of violent force. Mr. Paul's conviction under § 924(c) is invalid and should be reversed.

**2. The underlying "robbery" does not qualify as a crime of violence even if the modified categorical approach is applied**

23. Even assuming, *arguendo*, that the modified categorical approach was appropriate here and the "limited class" of underlying documents were appropriately considered, the "robbery" would still not be a crime of violence under *Borden*. The purpose of considering underlying documents such as jury instructions of the indictment is to understand "what crime, with what elements" served as the predicate offense. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). As noted above, the indictment mentions only a "robbery" and neither identifies a robbery statute nor sets forth elements that correspond to a statute. *See* Filing No. 231-1 (Superseding Indictment).

24. The jury instructions do not establish "what crime" served as the predicate offense either. The trial court instructed the jury that robbery had three elements:

> One; that Sherman Williams had in his possession or on his person or presence anything of value.
>
> Two; that the defendant took and carried away anything of value from Sherman Williams by force or violence; and
>
> Three; that the taking occurred within the boundaries of the Hot Springs National Park.

Filing No. 231-2 at 11 (Tr. 6/20/97 at 845). These three elements do not correspond to any federal robbery statute. Accordingly, even under the modified categorical approach, the "robbery" serving as the predicate offense to Mr. Paul's case remains untied to any statute, and thus, cannot be shown to require the purposeful or knowing use of violent force.

25. Even if one accepts the elements set forth in the jury instructions as elements of a statute, they still fail to satisfy *Borden*. The "robbery" considered by the jury could be committed either "by force or violence," but the trial court's instructions did not define either term and did not require the jury to find any particular *mens rea*. As such, the

"robbery" considered by the jury in Mr. Paul's case did not require a finding that force or violence was purposefully or recklessly employed. It similarly did not require that reckless conduct be excluded. Accordingly, Mr. Paul's § 924(c) conviction is just as invalid under the modified categorical approach as it was under the categorical one.

26. Furthermore, the *Borden* dissent noted that robbery as set forth in the original version of ACCA adopted in 1984—like the "robbery" set forth in the jury instruction in Mr. Paul's case—was also satisfied by a taking "from the person or presence of another by force or violence." *Borden*, 141 S. Ct. at 1845 n.12 (Kavanaugh, J., dissenting). As the dissent noted, Congress understood this "force or violence" definition of robbery to include reckless robbery. *Id.* The Government conceded this point in its *Borden* briefing, acknowledging that "robbery-by-injury crimes" that could be committed by the reckless use of force "would have been 'robbery' under the original version of the ACCA." Gov't *Borden* Brief at **18-19. If "force or violence" did not exclude recklessness in 1984, there is no reason to conclude that it excludes recklessness in Mr. Paul's case.

**E. 18 U.S.C. § 2111 Was Not the "Robbery" Forming the Basis for Mr. Paul's § 924(c) Conviction**

27. On May 26, 2020, Mr. Paul filed an application for permission to file a successive § 2255 motion to vacate his § 924(c) conviction before the Eighth Circuit based on the advent of *Davis*. In its June 9, 2020, response to Mr. Paul's application, the Government—for the first time in this case and after Mr. Paul has consistently raised the same argument regarding the "robbery" since 2016—claimed that the "robbery" forming the basis for the § 924(c) conviction was actually an offense under § 2111. *See Paul v. United States*, No. 20-2042 (8th Cir. June 9, 2020) ("§ 2255 Response"), at 6-7. Section

2111 reads as follows: "[w]hoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years." § 2111. According to the Government, because the indictment referred to the "robbery" as a crime that could be federally prosecuted and took place in the Hot Springs National Park, the indictment referred to § 2111. § 2255 Response at 6. The Government further argued that "[c]onsistent with the charge in the indictment, the [trial] court instructed the jury on the elements of § 2111." *Id.* at 6-7.

28. The Government is wrong on both counts. The indictment failed to name any particular robbery statute—let alone § 2111. Filing No. 231-1 (Superseding Indictment). And, charging that the "robbery" occurred on federal land is hardly unique. Count 1 of the indictment, which charged murder, contained the same language regarding the special maritime or territorial jurisdiction as that was an element of the federal murder statute. *See id.*; 18 U.S.C. § 1111. Charging that the "robbery" could be prosecuted federally is not unique either, but an element of § 924(c) that should be boilerplate language in every § 924(c) indictment. *See* § 924(c)(1)(A).

29. The Government's claim is also undermined by the belated nature of its argument. Since 2016, when Mr. Paul raised a void for vagueness challenge to his § 924(c) conviction after *Johnson* was issued, Mr. Paul repeatedly argued that the "robbery" forming the predicate offense for his § 924(c) conviction did not correspond to any federal robbery statute.[4] The Government never argued that § 2111 was the predicate

[4] *See, e.g.,* Application for Authorization to File a Successive Motion under 28 U.S.C. § 2255, *Paul v. United States*, 16-2330 (8th Cir. May 25, 2016) at 11-12; *Paul v.*

offense for the § 924(c) conviction in response. Only now, after the Supreme Court's decision in *Davis* removed the only possible basis for the § 924(c) conviction, does the Government advance this argument.

30. This omission—in both the indictment and in the Government's *Johnson* and *Davis*-related filings—is particularly striking given what *was* included in the indictment. Count 2, which charged § 924(c), cited 18 U.S.C. § 2 (defining accomplice liability), § 7 (defining special maritime and territorial jurisdiction), § 1111 (defining murder as set forth in Count 1), § 924(i)(1) (establishing death-eligibility for violations of § 924(c) resulting in death), and § 924(c). The citation of multiple other criminal statutes in the indictment and § 2111's absence from the list only lends support to Mr. Paul's position that § 2111 was not the "robbery" that formed the basis of his § 924(c) conviction. The Government cannot, more than twenty years later, claim so now.

31. The Government's claim that the jury was instructed on the elements of § 2111 is similarly incorrect. Section 2111 requires that the taking or attempted taking occur "by force *and* violence, *or by intimidation*." § 2111 (emphasis added). The trial court defined the level of force necessary for the robbery to be "force *or* violence," and made no mention of intimidation. Filing No. 231-2 at 11 (Tr. 6/20/97 at 845) (emphasis added). Thus, the jury instructions rebut the Government's belated assertion and confirm that § 2111 did not serve as the predicate offense for Mr. Paul's § 924(c) conviction.

---

*Superintendent*, 13-cv-304 (S.D. Ind.), Filing No. 194 at 16-18 and Filing No. 234 at 4, 7, 10-12.

### F. Section 2111 Cannot Serve as a Predicate Offense for § 924(c) under *Borden* Because It Is Not Limited to the Purposeful or Knowing Use, Attempted Use, or Threatened Use of Violent Force

32. Even assuming that § 2111 was the predicate offense for Mr. Paul's § 924(c) conviction, this conviction would still be invalid under *Borden*. Section 2111 requires only an actual or attempted taking "by force and violence, or by intimidation . . . from the person or presence of another anything of value." § 2111. This statute does not require the "force and violence" or "intimidation" to be knowingly or purposefully employed. Moreover, as acknlowledged by the plurality, dissent, and the Government in *Borden*, robbery requiring only the reckless use of force was well-established in the common law, has been codified by a number of states, and was even employed by Congress when ACCA was originally adopted using the same operative language that was used in Mr. Paul's jury instructions. *See* Section D, *supra*.

33. In its post-*Davis* filing, the Government argued that § 2111 is a general intent statute and general intent statutes "can constitute crimes of violence." Filing No. 232 at 10. This argument fails under *Borden*. When a statute does not explicitly state its *mens rea* requirement, the doctrine of general intent states that "the presumption in favor of scienter requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Carter v. United States,* 530 U.S. 255, 269 (2000) (citing *United States v. X-Citement Video, Inc.*, 513 US 64, 72 (1994)). Here, a purposeful or knowing *mens rea* as to the use, attempted use, or threatened use of violent force is not needed to separate a robbery from innocent conduct. As the Government, the plurality, and the dissent in *Borden* recognized, robbery involving the reckless use of force is a longstanding criminal offense that was present in the common law, recognized by Congress, and codified by states and does not require that

force be knowingly or purposefully used. *See* Section D, *supra*. The Model Penal Code, which the plurality, the dissent, and the Government relied upon in *Borden*, 141 S.Ct. at 1823-24 (plurality), *id.* at 1844-45 (dissent), Gov't *Borden* Brief at *18, confirms Mr. Paul's position. Under § 2.02(3) of the Model Penal Code, when the *mens rea* for a particular element is not made explicit in a criminal statute statute, it may be satisfied by purposeful, knowing, or reckless conduct. Model Penal Code § 2.02(3).

34. A statute's status as a general intent crime is insufficient to satisfy *Borden* by itself. The crime must actually require that the defendant purposefully or knowingly used, attempted to use, or threatened to use force. For example, in *Somers v United States*, ---F.4th---, 2021 WL 4434214 (11th Cir. Sept. 28, 2021), the Eleventh Circuit held that *Borden* required "something more" than the "general intent to volitionally take the action of using, attempting to use, or threat[ening] to use force." *Id.* at *3. The defendant has to "direct the action at a target, namely another person." *Id.* Because it was not clear if the Florida assault charge in question in *Somers* required the defendant to target another person, the *Somers* court certified this question to the Florida Supreme Court for clarification. *Id.* Similarly, in *United States v. Gonzales*, the Government considered whether a New Mexico aggravated assault statute was a crime of violence under *Borden*. *See* Appellee's Answer Brief, *United States v. Gonzales*, 21-2022 (10th Cir. July 21, 2021). Because the statute required only general intent, and did not require that the defendant intended to target, harm, or threaten the victim, the Government conceded that the aggravated assault statute was not a crime of violence after *Borden*. *Id.* at 2-4. Here, because § 2111 does not require that the defendant purposefully or knowingly target

anyone as to the use, attempted use, or threatened use violent force, its status as a general intent statute does not satisfy *Borden*.

35. Moreover, Mr. Paul was convicted in the Eighth Circuit. Eighth Circuit precedent has long held that robbery by intimidation under a general intent statute does not require that the intimidation be knowingly or purposefully carried out. In *United States v. Yockel*, 320 F.3d 818 (8th Cir. 2003), the Eighth Circuit considered the *mens rea* requirement for federal bank robbery under 18 U.S.C. § 2113. Similar to robbery under § 2111, bank robbery can be committed "by force and violence, or by intimidation." § 2113(a); *Yockel*, 320 F.3d at 823. The *Yockel* court held that, under the doctrine of general intent, the "*mens rea* element of bank robbery did not apply to the element of intimiation," and that "whether or not [the defendant] intended to intimidate the teller is irrelevant to determining his guilt." *Id.* at 824. To establish intent, the *Yockel* court held that the Government need only prove that "an ordinary person" in the victim's position "reasonably could infer a threat of bodily harm" from the defendant's acts." *Id.*; *see also United States v. Pickar*, 616 F.3d 821, 826 (8th Cir. 2010) ("whether the bank robber intended to intimidate the bank teller is irrelevant," to establish bank robbery by intimidation, the Government need only "prove . . . that the defendant intended to do or say what he in fact did or said, and that the defendant's words or actions were of a kind that would make an ordinary person fear bodily harm.").

36. Because neither "force and violence" nor "intimidation" have to be knowingly or purposefully employed and either of these clauses can be satisfied with a *mens rea* of recklessness, a § 2111 violation is not a crime of violence and cannot serve as the predicate offense for Mr. Paul's § 924(c) conviction after *Borden*.

### G. Mr. Paul Is Entitled to Savings Clause Review Because Section 2255 Is Inadequate or Ineffective to Test the Legality of Mr. Paul's § 924(c) Conviction

37. Under § 2255(e)'s "savings clause," a federal habeas petitioner may challenge the legality of a conviction and sentence through § 2241 when § 2255 is "inadequate or ineffective to test the legality of his detention," including the sentence. 28 U.S.C. § 2255(e); *see also Brown v. Caraway*, 719 F.3d 583, 586–89 (7th Cir. 2013) (§ 2241 available for challenge to habeas petitioner's sentence, as well as to his conviction).

38. Section 2241 was designed "to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Davenport*, 147 F.3d at 609. Savings clause review is appropriate when there is "some kind of structural problem with section 2255." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015). This standard is met when there is "a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem." *Purkey v. United States*, 964 F.3d 603, 615 (7th Cir. 2020) (emphasis added).

39. In *Davenport*, two petitioners (Davenport and Nichols) sought § 2241 review based on a new, retroactively applied rule of statutory law, announced by the Supreme Court, that could invalidate their convictions. *Davenport*, 147 F.3d at 609-11. In the case of Nichols, circuit precedent precluded him from raising this claim at the time of his initial § 2255 proceedings, and, as a new rule of *statutory* law, the Supreme Court's new, retroactive rule did not satisfy the requirements of § 2255(h). *Id.* The Seventh Circuit held that Nichols was entitled to review under § 2241 because denying him the opportunity to rectify imprisonment for a "non-existent offense" was possibly an "inadequacy of constitutional dimensions." *Id.* at 610-11.

40. The *Davenport* court further held that savings clause review was merited whenever (1) the prisoner "had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion"; (2) the change in the law applies retroactively; (3) the change in the law "eludes the permission in section 2255 for successive motions"; and (4) the change in law is not "a difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated." *Id.* at 611-12. *see also Brown*, 719 F.3d at 595 (§ 2255 "inadequate or ineffective" to test claim because, before retroactive Supreme Court decision, "Circuit precedent foreclosed the argument advanced today" that third degree arson was not a crime of violence under sentencing guidelines).

41. Here, Mr. Paul meets all of the conditions set by *Davenport*. First, as set forth above, *Borden* constitutes a change in law which post-dates his § 2255 proceedings that renders Mr. Paul convicted of a nonexistent crime. *See* Sections C-F, *supra*.

42. Second, *Borden* must be retroactively applied. Supreme Court decisions holding that a "substantive federal statute does not reach certain conduct" carries the risk of convicting a defendant of an "act that the law does not make criminal" and must apply retroactively in habeas review. *Bousley v. United States,* 523 U.S. 614, 620-21 (1998). Because *Borden* held that a "substantive federal statute" did not encompass the reckless, as opposed to purposeful or knowing, use, attempted use, or threatened use of violent force, *see* Section C, *supra*, it is a new substantive rule of statutory law that must be applied retroactively.

43. Third, Mr. Paul cannot pursue this claim through a successive § 2255 motion. Section 2255(h), which governs the filing of successive motions, only permits

successive motions based on retroactive changes in the law that are *constitutional*. Because Mr. Paul relies on a new *statutory* rule of law, he cannot raise his *Borden* claim in a successive § 2255 motion.

44. Fourth, Mr. Paul does not rely on a difference between the law of the circuit of conviction and the circuit of confinement. Rather, he relies on the new, retroactive rule set forth by the Supreme Court in *Borden*. *See* Sections C-F, *supra*.

45. The *Davenport* court noted that, until the change in law, Nichols had "no way to compel *any* judge to listen to an argument later proved sound *and* retroactive *and* cognizeable in postconviction proceedings. . . ." 147 F.3d at 611. Mr. Paul's situation is analagous. His *mens rea* claim was not viable before *Johnson* and *Davis* because § 924(c)'s residual clause had no force requirement, had no *mens rea* requirement as to the use of force, and would have rendered the current claim futile. *See, e.g., United States v. Strong*, 415 F.3d 902, 908 (8th Cir. 2005) (finding Missouri offense of stealing from a person, which has no force requirement, to satisfy the residual clause because of the risk of violence); *United States v. Griffith*, 301 F.3d 880, 885 (8th Cir. 2002) (same for conspiracy to steal from a person Iowa, which also has no force requirement). After *Johnson* and *Davis* were issued and the residual clause had been invalidated, Mr. Paul diligently raised the above *mens rea* argument through two applications to submit successive § 2255 motions.[5] But the Eighth Circuit held that the reckless use of force satisfies the force clause, which again rendered his current argument futile. *United States*

[5] *See* Application to File Second or Successive Motion Pursuant to 28 U.S.C. § 2244 and 18 U.S.C. § 2255(h), *In re Paul*, 20-2042 (8th Cir. May 26, 2020); Application for Authorization to File a Successive Motion under 28 U.S.C. § 2255, *In re Paul*, 16-2330 (8th Cir. May 25, 2016).

*v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016) (holding that reckless conduct constitutes the use of force under the force clauses of ACCA and 18 U.S.C. § 921(a)(33)(A)(ii)). Now that *Borden* has vindicated Mr. Paul's position, he cannot raise a *Borden* claim in a successive § 2255 motion. *See* 28 U.S.C. § 2255(h)(2) (permitting a successive § 2255 motion only where the Supreme Court issues a retroactive, new rule of *constitutional* law that was previously unavailable). Mr. Paul has a valid *Borden* claim and should receive one "reasonable opportunity to obtain a reliable judicial determination" of the claim. *Davenport*, 147 F.3d at 609. This Court should accordingly allow him § 2241 review, grant him relief, and reverse his § 924(c) conviction.

**H. Mr. Paul's Death Sentence Should Be Vacated**

46. In addition to vacating Mr. Paul's invalid § 924(c) conviction, this Court should also reverse Mr. Paul's death sentence. Mr. Paul was sentenced to death based on his convictions for aiding and abetting murder under § 1111 (Count 1) and violating § 924(c) (Count 2). The jury was not instructed to sentence separately on each count, nor could it possibly have known to do so. It issued one death verdict, which was not tied to either count. For this reason, the invalidation of Mr. Paul's § 924(c) conviction requires that he be resentenced on Count 1. When the jury "did not specify the basis on which [its death verdict] was rested . . . the verdict of the jury for all we know may have been rendered on [the invalid ground] alone." *Williams et al. v. North Carolina*, 317 U.S. 287, 292 (1942).

47. Without a sentencing verdict on each count, it is impossible to know whether the jurors found death based on § 1111(a) alone, on the constitutionally invalid § 924(c) alone, or on a combination of both. Any such speculation would be unconstitutional. "[I]f one of the grounds for [sentencing] is invalid under the Federal

Constitution, the judgment cannot be sustained." *Id*. at 292 (citing *Stromberg v. California*, 283 U.S. 369, 368 (1931)); *see also Bachellar v. Maryland*, 397 U.S. 564, 567 (1970) (if verdicts "may have rested on an unconstitutional ground, they must be set aside"); *Zant v. Stephens*, 462 U.S. 862, 881 (1983) ("[A] general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient.").

48. Even if this Court could assume that Mr. Paul's death sentence did not rest on the § 924 count, a resentencing on Count 1 (§ 1111(a)) would still be constitutionally required. When a defendant has been convicted and sentenced on multiple counts, and one of the convictions is determined to be invalid, he must be resentenced on the remaining valid counts unless it is established that the sentencer did not rely on the invalid count in imposing the sentence. *United States v. Tucker*, 404 U.S. 443, 448 (1972).

49. The § 924 conviction was inextricably linked to the unitary death verdict. In this case, the firearm conviction may have been the offense that tipped the balance for the jury. This was the rationale of the Fifth Circuit in *United States v. Causey*, 185 F.3d 407, 423 (5th Cir. 1999) where, as here, the jury had returned one unitary death sentence for three death eligible convictions. Following reversal of one of the convictions, the Fifth Circuit ordered resentencing on the two remaining convictions "[b]ecause it is impossible to say that the jury's penalty phase recommendations of the death penalty were not influenced by the fact that [the defendants] had received three death eligible convictions, rather than two." *Id.*

50. There is no basis to conclude that the jury's death sentence in Mr. Paul's case was not based on the § 924 conviction; nor is there any basis to conclude that the

§ 924 conviction did not inform the death sentence. Accordingly, Mr. Paul's death sentence should be reversed as well as his conviction under § 924(c).

## REQUEST FOR RELIEF

For all of the above reasons, and based upon the full record of this matter, Petitioner requests that the Court provide the following relief:

A) That habeas relief from Petitioner's convictions and sentences, including his sentence of death, be granted;

B) That the Government be ordered to respond to this Amendment and that Petitioner be permitted to file a reply, as set forth in this Court's October 6, 2021, Order; and

C) That an evidentiary hearing be conducted on any disputed issues of fact as to the merits of Petitioner's claim or any procedural issues.

Respectfully submitted,

/s/ Peter Williams
LEIGH SKIPPER
Federal Defender
SHAWN NOLAN
Chief, Capital Habeas Unit
PETER WILLIAMS
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, Pennsylvania 19106
(215) 928-0520

Counsel for Petitioner, Jeffrey William Paul

Dated: October 22, 2021

**CERTIFICATE OF SERVICE**

I, Peter Williams, hereby certify that on this 22nd day of October, 2021, I caused a copy of the foregoing pleading to be served on the following person through the ECF system:

Jeffrey B. Kahan, Esquire
Trial Attorney
U.S. Department of Justice, Capital Case Section
1331 F Street, NW
Washington, DC 20005

/s/ Peter Williams
Peter Williams