**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| JEFFERY WILLIAM PAUL, Petitioner, | : | CIVIL ACTION (Capital Habeas Corpus) |
| v. | : | 2:13-CV-00304-JMS-MJD |
| SUPERINTENDENT, USP Terre Haute, UNITED STATES OF AMERICA, Respondents. | : | **Hon. Jane Magnus-Stinson** |

# PETITIONER'S REPLY IN SUPPORT OF AMENDMENT TO PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Jeffrey William Paul, through undersigned counsel, hereby submits this reply in support of his October 22, 2021, Amendment to his Petition for Habeas Corpus, Filing No. 271 ("Amendment").

## INTRODUCTION

In Claim V, as set forth in his Amendment, Mr. Paul avers that his conviction under 18 U.S.C. § 924(c) for using a firearm in a "crime of violence" is invalid under *Borden v. United States,* 141 S. Ct. 1817 (2021). To qualify as a crime of violence under *Borden*, the elements of the predicate offense must require the purposeful or knowing use, attempted use, or threatened use of violent force. *See* Am. to Pet. for Habeas Corpus, Filing No. 271 at 5-7. The predicate offense for Mr. Paul's § 924(c) conviction was a "robbery" that did not cite or correspond to any federal robbery statute. *Id.* In the absence of any identifiable statutory elements, Mr. Paul's § 924(c) conviction cannot be sustained after *Borden* because the Government cannot establish that the "robbery" required the purposeful or knowing use of violent force. *Id.* at 8-12.

While the Government has claimed that the undefined "robbery" serving as Mr. Paul's predicate offense was 18 U.S.C. § 2111, Mr. Paul's indictment did not cite § 2111, the jury instruction did not match § 2111's language, and the Government failed to identify this statute as the purported predicate offense until twenty-four years after the indictment was filed in 1996. Even if it is assumed that § 2111 was the offense underlying Mr. Paul's § 924(c) conviction, because § 2111 does not require a knowing or purposeful *mens rea* as to the use, attempted use, or threatened use of force, a § 2111 violation fails to qualify as a crime of violence under § 924(c). *Id.* at 12-17.

Under the "savings clause" of 28 U.S.C. § 2255(e), review under 28 U.S.C. § 2241 is appropriate when a federal prisoner seeks to correct a fundamental defect in his or her conviction based on a new, retroactive rule of statutory law; this new rule was not available at the time of the prisoner's initial § 2255 proceedings; and the prisoner's claim cannot be raised in a successive § 2255 motion. Because Mr. Paul's claim for relief meets these criteria, he is entitled to relief under § 2241. *Id.* at 18-21.

The Government agrees that the United States Court of Appeals for the Seventh Circuit authorizes savings clause review when the petitioner "(1) relies on a new, retroactive case not available when he sought § 2255 relief that (2) interprets a statute in a way that (3) decriminalizes the crime of conviction." Gov.'t Response, Filing No. 272, at 6-7. The Government does not appear to contest that *Borden* creates a new, retroactively applied rule, or that a *Borden* claim would merit savings-clause review in a case where *Borden* decriminalized a defendant's crime of conviction. *Id.* So if Mr. Paul's substantive claim for relief is valid, he is entitled to review under the savings clause.

The Government acknowledges that Mr. Paul's indictment does not identify the predicate offense, but argues that the language in the indictment "could only" have referred to § 2111. *Id.* at 8. The Government further contends that the jury instructions for the robbery matched § 2111, and that these instructions required the jury to conclude that violent force was employed. *Id.* at 8-9. Citing *Carter v. United States*, 530 U.S. 255 (2000), the Government maintains that robbery by intimidation, which is also encompassed by § 2111, requires the knowing use of threatened force. *Id.* at 9-11. The Government claims that Mr. Paul must provide an example of a defendant who was convicted of § 2111 for intimidating the victim during a robbery without the necessary *mens rea*, regardless of whether the elements of the crime encompass reckless conduct. *Id.* at 12-14. The Government further contends that, if the Court finds Mr. Paul's § 924 conviction to be invalid, then his death sentence should not be overturned because he was also convicted of murder. *Id.* at 14.

The Government errs. The jury instructions did not match the elements of § 2111, and the language in the indictment was not specific to § 2111. Even assuming, *arguendo*, that § 2111 was the predicate offense, the Government's arguments would still fail. Under the text of the statute, *Carter*, and precedent in the United States Court of Appeals for the Eighth Circuit—Mr. Paul's Circuit of conviction and the controlling authority here—§ 2111 can be satisfied through the reckless use of force or intimation. Mr. Paul has no burden to produce an example of a defendant prosecuted for recklessly intimidating someone during a robbery as the elements of § 2111 include recklessness and, consistent with the Supreme Court's holding in *Borden*, that is all that is necessary to disqualify a convicton as a crime of violence. But, in any event, Mr. Paul provides an example below.

Finally, because the jury issued a unitary death sentence based on his murder and his now-invalid § 924(c) conviction, it is impossible to know if the jury sentenced Mr. Paul to death based on his invalid conviction, the murder alone, or a combination of the two. A new capital sentencing proceeding is constitutionally required.

**A. Section 2111 Was Not the Predicate Offense for Mr. Paul's § 924(c) Conviction.**

The Government argues that the indictment refers to § 2111 because it refers to the "robbery" as a crime that could be federally prosecuted and took place in the Hot Springs National Park—which is "within the special maritime and territorial jurisdiction of the United States." Filing No. 272 at 8. The Government further maintains that the trial court "instructed the jury on the elements of § 2111," so the jury "necessarily found that Mr. Paul committed robbery in violation of § 2111." *Id.* at 8-9.

The Government's argument lacks merit for a number of reasons. To start, the trial court did not "instruct[ ] the jury on the elements of of § 2111" because the jury instructions for robbery did not match the elements of § 2111. Section 2111 requires that the taking or attempted taking occur "by force *and* violence, *or* by intimidation." 18 U.S.C. § 2111 (emphasis added). The trial court defined the level of force necessary for the robbery to be "force *or* violence," and made no mention of intimidation. Filing No. 272-2 at 11 (Trial Tr. 6/20/97 at 845) (emphasis added). If § 2111 had been the predicate offense for Mr. Paul's § 924(c) conviction, then the jury instructions would have matched the elements of that statute. Because the jury was not instructed on the elements of § 2111, the Government's claim that the indictment and jury instructions referred to § 2111 fails.

Nor does the language of the indictment salvage the Government's position. Charging that the "robbery" occurred on federal land is hardly unique. Count 1 of the

indictment, which charged murder, contained the same language regarding Hot Springs National Park and the special martime or territorial jurisdiction as that was an element of the federal murder statute. *See* Filing No. 272-1 at 1; 18 U.S.C. § 1111. Charging that the "robbery" had to be prosecuted federally is not notable either, but an element of § 924(c) that should be contained in every § 924(c) indictment. *See* § 924(c)(1)(A). And, nothing in the indictment explains why, as set forth above, the jury instructions did not match the elements of § 2111 if this statute was truly the predicate offense.

The Government's claim that the language in the indictment "could only refer to § 2111," Filing No. 272 at 8, is further undermined by the belated nature of its argument. Since 2016, when Mr. Paul raised a void-for-vagueness challenge to his § 924(c) conviction, he repeatedly argued that the "robbery" forming the predicate offense for his § 924(c) conviction did not correspond to any federal robbery statute.[1] The Government never argued that § 2111 was the predicate offense for the § 924(c) conviction until June 2020, twenty-four years after the indictment was issued in 1996. *See* Response in Opposition to Motion to File a Successive § 2255 Motion, *Paul v. United States*, No. 20-2042 (8th Cir. June 9, 2020) at 6-7.

This omission—in the indictment and the Government's previous filings—is particularly striking given what *was* in the indictment. Count 2, which charged a violation of § 924(c), cited 18 U.S.C. § 2 (defining accomplice liability), § 7 (defining special maritime and territorial jurisdiction), § 1111 (defining murder as set forth in Count 1), § 924(i)(1) (establishing death-eligibility for violations of § 924(c) resulting in death), and

---

[1] *See*, Filing Nos. 194 at 16-18 and 234 at 4, 7, 10-12 (this docket); *see also* Application for Authorization to File a Successive Motion under 28 U.S.C. § 2255, *Paul v. United States*, 16-2330 (8th Cir. May 25, 2016) at 11-12.

§ 924(c). As there were multiple criminal statutes that *were* cited, the Government cannot now claim that § 2111 was the "robbery" mentioned in Count 2 when it was not cited. This Court should reject the Government's attempt to raise § 2111 now when it has failed to do so in the past.

### B. Section 2111's "Force and Violence" Clause Can Be Satisfied Through the Reckless Use of Force

Even assuming, *arguendo*, that § 2111 was the predicate offense for Mr. Paul's firearms conviction, he would still be entitled to relief under *Borden*. As noted above, § 2111 is satisfied when a taking occurs on federal land by "force and violence" or through "intimidation." As Mr. Paul set forth in his Amendment, neither the statute itself nor the jury instructions administered in Mr. Paul's case excluded "force and violence" that was recklessly employed. *See* Filing No. 271 at 15-17. While the Government has argued that the jury instructions required violent force to be used and that "intimidation" requires knowledge rather than recklessness,[2] the Government has made no argument in response to Mr. Paul's claim that § 2111 can be satisfied by violent force that is recklessly used. Petitioner respectfully requests that relief be granted on this ground.

The Government's assertion that the "robbery" jury instruction required violent force, Filing No. 272 at 9, is similarly meritless. For one, per the trial court's instructions, the jury only needed to find that "force *or* violence" was used, not both. Filing No. 272-2 at 11 (Trial Tr. 6/20/97 at 845) (emphasis added). Second, the jury was not given any description of what level of force was needed to satisfy the "force or violence" component of the "robbery" upon which the § 924(c) conviction rested. *Id*. More to the point, these

---

[2] *See* Filing No. 272 at 9-14. As set forth in Section C, *infra*, the intimidation clause of § 2111 does not require knowledge either and the Government's arguments to the contrary are in error.

instructions did not require the jury to find any particular *mens rea* as to the use of "force or violence," and did not require a finding that the force or violence was purposefully or knowingly employed. *Id.* They similarly did not require the reckless use of force to be excluded. *Id.* Accordingly, the jury instructions failed to meet the *mens rea* requirement imposed by *Borden*.

### C. Section 2111's "Intimidation" Clause Can Also Be Satisfied Through Recklessness

Citing *Carter*, *United States v. Yockel*, 320 F.3d 818 (8th Cir. 2003), *Estell v. United States*, 924 F.3d 1291 (8th Cir. 2019), and a number of other out-of-circuit cases relating to bank robbery, the Government argues that robbery by intimidation under § 2111 requires a *mens rea* of knowledge because, according to the Government, bank robbery also requires knowledge. Filing No. 272 at 9-12. The Government further maintains that pre-*Borden* Eighth Circuit precedent holding that bank robbery was a crime of violence precludes relief for Mr. Paul. *Id.* at 11-12.

The Government misconstrues the Supreme Court's holding in *Carter*. *Carter* stated that the bank robbery statute required "that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)," but did not hold that the defendant had to know what the effects of his actions were. 530 U.S. at 268. So, while *Carter* held that the defendant needed to know what he was saying or doing, it did not hold that the defendant needed to know his actions were intimidating or know that his actions would result in force and violence being imposed.

The Government's position similarly misconstrues the Eighth Circuit's *mens rea* requirement for bank robbery by intimidation. While the United States Courts of Appeals

for the First, Fourth, Tenth, and District of Columbia Circuits interpreted *Carter* to require the defendant to *know* that he or she was being intimidating,[3] the Eighth Circuit rejected this position. In *Yockel*, the Eighth Circuit considered a case where the defendant was charged with bank robbery and was precluded from presenting evidence of his mental illness to establish that he did not know he was intimidating the bank teller. 320 F.3d at 822. The trial court determined that the only relevant issue as to knowledge was "whether he [Yockel] knew he was physically taking money that did not belong to him," and precluded the presentation of the proffered mental health evidence "in its entirety as not relevant to any issue in the case." *Id.* On appeal, the Government maintained that "the *mens rea* for the *actus reus* of bank robbery is satisfied by proof that Yockel was physically taking money." *Id* at 823. Yockel, on the other hand, argued that "the government had to prove that he knowingly intimidated the teller" for the bank robbery conviction to be valid. *Id.*

Citing *Carter*, the Eighth Circuit rejected Yockel's argument that he had to *know* he was being intimidating, held that the lower court "correctly concluded that the *mens rea* element of bank robbery did not apply to the element of intimidation and properly excluded evidence on that issue," and concluded that "intimidation" was "determined by an objective standard." *Id.* at 824. Under this objective standard, "the intimidation element of section 2113(a) is satisfied if 'an ordinary person in [the teller's] position reasonably could infer a threat of bodily harm from … [Yockel's] acts,' *whether or not* [Yockel] actually intended the intimidation." *Id.* (internal citations omitted) (emphasis in original).

---

[3] *See* Filing No. 272 at 10-12 (citing cases).

In *United States v. Pickar*, 616 F.3d 821 (8th Cir. 2010), the Eighth Circuit reaffirmed that defendants needed not know that their actions were intimidating in order to be guilty of bank robbery by intimidation. *Pickar* affirmed that intimidation was gauged by an objective standard that was satisfied "if an ordinary person in the bank teller's position could reasonably infer a threat of bodily harm from the bank robber's words and actions." *Id.* at 826. *Pickar* also affirmed that, under this standard, the Government "is also not required to prove that the defendant intended to intimidate anyone. Rather, the government must simply prove, beyond a reasonable doubt, that the defendant intended to do or say what he in fact did or said, and that the defendant's words or actions were of a kind that would make an ordinary person fear bodily harm." *Id.*

Consistent with *Yockel* and *Pickar*, in *Allen v. United States*, 836 F.3d 894 (8th Cir. 2016), the Eighth Circuit held that bank robbery was a crime of violence over a dissent that recognized that "[o]ur circuit has held the mens rea for the federal bank robbery offense, § 2113(a) does not attach to the use of violence or intimidation." *Id.* at 895 (Melloy, J., dissenting).[4]

*Yockel* and *Pickar* were also consistent with preexisting Eighth Circuit precedent which embraced an objective, rather than subjective, standard for bank robbery by intimidation. *United States v. Smith (James)*, 973 F.2d 603, 604 (8th Cir. 1992) (intimidation established when "the acts of the defendant … constitute an intimidation to an ordinary, reasonable person") (citations and quotations omitted).

[4] The Government acknowledged this point in the supplemental briefing it submitted in response to *United States v. Davis*, 139 S. Ct. 2319 (2019) in 2019. Filing No. 231 at 10 (citing *Allen*, 836 F.3d at 894-95, and arguing that, the Eighth Circuit held that "bank robbery constituted a crime of violence over a dissent that observed the law did not require knowing or intentional use of force or violence.").

By endorsing an objective standard, rejecting any *mens rea* requirement for the intimdation component of bank robbery, and affirming that the defendant only had to know what he or she was doing and saying—rather than what the effect of his or her actions would be—the Eighth Circuit affirmed that bank robbery by intimidation did not require that the defendant *knew* that his or her actions were intimidating.

The fact that other circuits have attached a *mens rea* of knowledge to intimidation does not undermine Mr. Paul's argument. Mr. Paul was convicted in the Eighth Circuit, so Eighth Circuit precedent governs the elements of the predicate offense for the crime-of-violence determination. If, as the Government argues, § 2111 was the predicate offense, then this predicate did not have the requisite *mens rea* under *Yockel*, *Pickar*, and their predecessors.

The Government argues that the Eighth Circuit's holding in *Estell*, which found that bank robbery by intimidation was a crime of violence, precludes relief for Mr. Paul. Filing No. 272 at 12. But this case actually *strengthens* Petitioner's argument for savings clause review. Issued prior to *Borden*, the *Estell* court did not hold that bank robbery by intimidation required knowledge that the defendant's actions were intimidating. 924 F.3d at 1293. It acknowledged the objective test used to define intimidation set forth in *Yockel* and found that objectively intimidating behavior constituted a threat of force regardless of the defendant's *mens rea* because a "'threat,' as commonly defined, speak[s] to what the statement conveys—not to the mental state of the author.'" *Id.* (quoting *United States v. Harper*, 869 F.3d 624 (8th Cir. 2017). The reasoning employed by the *Estell* court was appropriate at the time the opinion was issued, but is not valid after *Borden*. By requiring a knowing or purposeful *mens rea* for a predicate offense to be a crime of violence and

rejecting the argument that reckless conduct could meet this definition, *Borden* rendered the Eighth Circuit's reasoning in *Estell* invalid and entitles Mr. Paul to relief.

Finally, when a statute does not explicitly state its *mens rea* requirement, *Carter* "requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" 530 U.S. at 269 (quoting *United States v. X-Citement Video, Inc.*, 513 US 64, 72 (1994)). Here, taking property that belongs to another through the reckless use of force or intimidation has long been recognized to be a crime under common law, the Model Penal Code, at least ten states, the *Borden* majority, and the *Borden* dissent. *See* Filing No. 271 at 8-10. Because a knowing or purposeful *mens rea* is not required to avoid encompassing "otherwise innocent conduct," § 2111 cannot be read to require that force or intimidation be applied with knowledge under *Carter*.

**D. Petitioner's Assertion that the Elements of § 2111 Can Be Satisfied Through the Reckless Use of Force Is Not Theoretical**

Citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), *Moncrieffe v. Holder*, 569 U.S. 184 (2013), and three Fourth Circuit cases—*United States v. Salmons*, 873 F.3d 446 (4th Cir. 2017), *United States v. Bell*, 901 F.3d 455 (4th Cir. 2018), and *United States v. Battle*, 927 F.3d 160 (4th Cir. 2019)—the Government asserts that Mr. Paul must cite a case where the Government has prosecuted and convicted a criminal defendant under § 2111 who recklessly intimidated the victim of the robbery. Filing No. 272 at 12-13.

This argument misconstrues *Duenas-Alvarez*, *Moncrieffe*, and the Fourth Circuit authorities upon which the Government relies. There is no requirement that the defendant cite an example of a conviction under the relevant statute being upheld when physical force was not used, only that "the least of th[e] acts criminalized" by the predicate offense

encompass conduct that does not meet the definition of a crime of violence. *Moncrieffe*, 133 S. Ct. at 1680 (quoting *Johnson (Curtis) v. United States*, 559 U.S. 133, 137 (2010)). Examples are only required if the defendant is arguing that a given statute "creates a crime outside of the *generic definition of a listed crime*." *Duenas-Alvarez*, 549 U.S. at 193 (emphasis added) (addressing the categorical approach as it relates to state court convictions serving as predicate offenses in the context of an immigration statute). When a defendant argues that a statute defines a crime outside of the crime's generic definition, the defendant must show that the statute is applied "to conduct that falls *outside the generic definition of a crime*." *Id.* (emphasis added). In that setting—and only in that setting—the defendant "must at least point to his own case or other cases in which the state courts did apply the statute *in the special (nongeneric) manner for which he argues*." *Id.* (emphasis added). *See also Moncrieffe*, 569 U.S. at 191 ("[T]here must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls *outside the generic definition of a crime*.'") (quoting *Duenas-Alvarez*, *supra*) (emphasis added).

Consistent with the structure of the *Duenas-Alvarez* analysis, the *Salmons*, *Bell*, and *Battle* courts did not impose a requirement that defendants cite examples in cases involving the categorical approach. In each instance, the Fourth Circuit based its analysis on the elements of the predicate offense in question and concluded that those elements met the definition of a crime of violence. *Salmons*, 873 F.3d at 449 (holding that the text of the predicate statute "points to th[e] conclusion" that the offense consistutes a crime of violence and then discussing the elements of the offense as set forth by the statute.); *Bell*, 901 F.3d at 471 (citing the elements of the predicate offense as defined by the statute and

state court decisions and then concluding that the offense was a crime of violence based on "these elements defined by state law"); *Battle*, 927 F.3d at 165 (finding that the elements of a predicate offense requiring assault with specific attempt to murder, as defined by the state courts, satisfy the definition of a crime of violence). *Salmons* and *Bell* only note the absence of examples provided by the defendant when addressing the defendant's argument that the offense could be committed in a manner not encompassed by the generic definition of the crime. *Salmons*, 873 F.3d at 450 (noting the absence of an example from the defense in the context of establishing a realistic possibility "that the State would apply its statute to conduct that *falls outside the generic definition of a crime*") (emphasis added); *Bell*, 901 F.3d at 471 (discussing the absence of an example from the defendant when addressing his argument that de minimus force could satisfy the predicate offense in spite of the elements of the statute). And, *Battle* does not discuss the absence of an example from the defendant, but the absence of state court cases providing authority to support the defendant's argument as to what the elements of the predicate state offense were. *Battle*, 927 F.3d at 165-67 (noting that the Maryland courts defined Battle's predicate offense as an assault committed with "an intent to murder" and that Battle "cannot point to any Maryland AWIM [Battle's predicate offense] case to support the notion that AWIM may be committed by an act of mere omission.").

The *Salmons* court held that "litigants must point to the *statutory text* or actual cases in order to demonstrate that a conviction for a seemingly violent state crime could in fact be sustained for violence conduct." 873 F.3d at 451 (emphasis added). Where, as here, the statutory text establishes that the crime is not a crime of violence under the categorical approach, no examples are needed.

Mr. Paul does not argue that a nontraditional interpretation of § 2111 should apply. Filing No. 271 at 15-17. Instead, he argues that the elements of § 2111 as set forth by its text and *Carter* can be satisfied through the reckless use of force or intimidation. *Id.* Nor is Mr. Paul calling for a departure from the "generic definition" of the crime. *Duenas-Alvarez*, 873 F.3d at 450. As set forth in the Amendment, there is exensive authority from the Model Penal Code, the legislative history of the Armed Career Criminal Act ("ACCA"), the common law definition of robbery, and state robbery statutes establishing that the crime of robbery includes offenses involving the reckless use of force. Filing No. 271 at 8-10, 12. Accordingly, force and intimidation used recklessly is squarely within the traditional definition of § 2111.

Furthermore, while—contrary to the Government's assertion, Filing No. 272 at 12-13—an example is not required for Mr. Paul to avail himself of *Borden*'s protections, *Yockel* provides an example of a defendant who was convicted for recklessly intimidating the victim without knowledge or intent. Yockel, a man with a significant history of mental illness, entered a bank, provided the bank teller with his driver's license, and told her "I know I have money here." *Yockel*, 320 F.3d at 821, 826. When the bank teller informed him that there was no account matching his identification, Yockel asked the teller if she wanted to go to heaven or hell, and said "[i]f you want to go heaven, you'll give me the money." *Id.* When the teller responded that she would like to go to heaven and provided him with $6000 to make him go away, Yockel replied "[t]hat's great, I'll take it." *Id.* The following day, Yockel walked into a different bank, provided his driver's license, and protested to the teller that he had been able to obtain "money down the street yesterday" when the teller informed him that he (Yockel) could not get any money without an

account number. *Id.* The defense presented evidence that Yockel appeared mentally unstable, had attempted to withdraw money from various banks on multiple occasions, and was so impaired that he had his daily needs taken care of by his mother. *Id.* at 826. Nevertheless, as noted above, his bank robbery conviction was upheld because his actions were objectively intimidating and "the *mens rea* element of robbery did not apply to the element of intimidation." *Id.* at 824. While Yockel was convicted of bank robbery by intimidation under § 2113(a)—as opposed to robbery under § 2111—the Government appears to concede in its response that the intimidation clauses of the two statutes are analogous. Filing No. 272 at 9-12 (relying on precedent for bank robbery by intimidation). Accordingly, whether by establishing the elements of the statute or providing an example of someone who was convicted of robbery by intimidation through recklessness, Mr. Paul has shown that § 2111 is not a crime of violence under *Borden*.

The Government argues that "the mere fact that some state statutes explicitly allowed robbery convictions based on reckless behavior does not, in turn, imply that the United States could or would prosecute a defendant for recklessness under § 2111." Filing No. 272 at 13. And, it maintains that the state robbery statutes cited by Petitioner are inapplicable because "[u]nlike the state statutes Paul cites, § 2111 lacks explicit language criminalizing reckless robbery." *Id.* This misconstrues Petitioner's argument. Mr. Paul did far more than cite "some state statutes." He cited extensive authority from the Model Penal Code, legislative history of ACCA, the common law definition of robbery, state robbery statutes, the *Borden* plurality, and the *Borden* dissent identifying reckless robbery as a crime. Filing No. 271 at 8-10, 12. This extensive authority demonstrates: (1) that a knowing or purposeful *mens rea* for the use of force or intimidation is required to prevent

a prosecution under § 2111 for "otherwise innocence conduct," and (2) Mr. Paul is not departing from the generic definition of robbery under § 2111. Each of these elements of Mr. Paul's claim shows that § 2111 is not a crime of violence.

The absence of an explicit *mens rea* requirement in § 2111 does not undermine Mr. Paul's position either. In *Borden*, the Government identified three state robbery statutes without *mens rea* requirements as well as the definition of robbery in the original version of ACCA, which also has no *mens rea* requirement, and cited them all as examples of reckless robbery. Brief for the United States at 18-19, *Borden*, 141 S.Ct. 1817, No. 19-5410, 2020 WL 4455245. Just as those four robbery statutes were examples of reckless robbery in *Borden*, § 2111 is an example of reckless robbery here.

**E. Mr. Paul Is Entitled to a New Penalty Phase**

Citing *United States v. Hillary*, 106 F.3d 1170 (4th Cir. 1997), and *United States v. Gardiner*, 114 F.3d 734 (8th Cir. 1997), the Government argues that this Court has "broad and flexible power" as to how to correct a sentence based on an invalid conviction and that it should exercise that discretion to leave Mr. Paul's death sentence in place because the "conduct underlying both offenses was the same." Filing No. 272 at 14-15.

But the Government ignores the constitutional violation created by a death sentence based on two convictions when one is later proved to be invalid. "[A] general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." *Zant v. Stephens*, 462 U.S. 862, 881 (1983) (citations omitted); *see also* Filing No. 272 at 14-15 (citing cases).

Consistent with this principle, in *Johnson (Samuel) v. Mississippi*, 486 U.S. 578 (1988), the defendant had been sentenced to death based, in part, on an aggravating

circumstance stemming from a prior conviction for assault which was overturned after the defendant was sentenced to death. *Id.* at 581. Even though there were two aggravating circumstances unrelated to the assault conviction that remained undisturbed, the Supreme Court found a constitutional violation under the Eighth Amendment because the subsequently invalidated prior conviction "provided no legitimate support for the death sentence imposed on Petitioner," there was "a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence," and admitting the now-invalid conviction caused the jury to "consider evidence that has been revealed to be materially inaccurate." *Id.* at 586, 590 (internal citations omitted).

Consistent with *Johnson (Samuel)* and *Zant*, in *United States v. Causey*, 185 F.3d 407 (5th Cir. 1999), the jury returned a unitary death sentence for three death-eligible convictions. Following reversal of one of the convictions, the Fifth Circuit ordered resentencing on the two remaining convictions "[b]ecause it is impossible to say that the jury's penalty phase recommendations of the death penalty were not influenced by the fact that [the defendants] had received three death eligible convictions, rather than two." *Id.* at 423.

Because Mr. Paul's jury did not specify the basis upon which its death verdict rested, his death sentence could have rested exclusively on his invalid § 924(c) conviction. In addition, by relying on the now-invalid § 924(c) conviction, the jury considered materially inaccurate information in reaching its sentencing verdict. For either reason, Mr. Paul's death sentence must be vacated under the Eighth Amendment.

*Hillary* and *Gardiner*, which the Government cites, actually *support* Mr. Paul's request for a capital resentencing hearing. In both of these cases, the defendant received a sentence on multiple convictions, invalidated at least one of those convictions in § 2255 proceedings, and sought to prevent the Government from seeking a resentencing on the remaining convictions when the invalid convictions were vacated. *Gardiner*, 114 F.3d at 735; *Hillary*, 106 F.3d at 1171. In both cases, the Fourth Circuit ruled that the Government was entitled to resentencings on the remaining counts after the sentence for the invalid conviction was vacated. *Gardiner*, 114 F.3d at 735 (upholding the district court's grant of resentencing on the remaining convictions over defense objection); *Hillary*, 106 F.3d at 1171 (reversing the denial of the Government's request for resentencing). Even though Gardiner and Hillary had received separate sentences on the valid and now-invalid convictions, "'a multi-count sentence is a package [and] severing part of the total sentence usually will unbundle it.'" 114 F.3d at 736 (quoting *United States v. Smith*, 103 F.3d 531, 533-35 (7th Cir. 1996)). Under this sentencing "package" doctrine, courts—including the Seventh Circuit—have recognized that convictions cannot be viewed in isolation for the purposes of sentencing, but in the aggregate as an entire sentencing "package." *See United States v. Watkins*, 147 F.3d 1294, 1297 n.3 (11th Cir. 1998) (listing cases, including *Smith*, 103 F.3d 531, and citing *United States v. Binford*, 108 F.3d 723, 728 (7th Cir. 1997)).

The circumstances in Mr. Paul's case weigh even more in favor of resentencing than in the typical sentencing package case. Instead of having received separate sentences on valid and now-invalid convictions, Mr. Paul received a single death sentence for his murder and § 924(c) convictions. If convictions with separate and distinct sentences must be considered in the aggregate and are unbound when one conviction is invalidated,

separate convictions forming the basis for the *same, unitary sentence* must be considered in the same way. Even assuming, *arguendo*, that the Eighth Amendment did not require a new penalty phase, because Mr. Paul's death sentence was inextricably bound to his now-invalid § 924(c) conviction, the sentencing package is unbundled and a resentencing is warranted.

Respectfully submitted,

/s/ Peter Williams
LEIGH SKIPPER
Federal Defender
SHAWN NOLAN
Chief, Capital Habeas Unit
PETER WILLIAMS
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, Pennsylvania 19106
(215) 928-0520

Counsel for Petitioner, Jeffrey William Paul

Dated: January 18, 2022

**CERTIFICATE OF SERVICE**

I, Peter Williams, hereby certify that on this 18th day of January, 2022, I caused a copy of the foregoing pleading to be served on the following person through the ECF system:

Jeffrey B. Kahan, Esquire
Trial Attorney
U.S. Department of Justice, Capital Case Section
1331 F Street, NW
Washington, DC 20005

/s/ Peter Williams
Peter Williams